#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**KELLY MEGGS**<br><br>**ACCUSED**<br><br>*Styled as* <u>USA v. STEWART RHODES, et al.</u> *incorporating cases against multiple Defendants* | **Criminal Case No.**<br><br>1:22-cr-00015-APM<br><br>*Previously included within*<br><br>1:21-cr-00028-APM<br><br>Assigned to the Honorable Amit Mehta, District Court Judge |

### DEFENDANT KELLY MEGGS' MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO COMPEL PRODUCTIONG OF ORDERED INFORMATION BY U.S. CAPITOL POLICE

COMES NOW Defendant Kelly Meggs, by counsel, and hereby moves the Court for an order to COMPEL the Government, which includes the U.S. Capitol Police to produce the documents previously ordered.

With a looming April 15, 2022, deadline for Rule 12 motions and uncertainty as to when he will be able to file this Notice, Counsel for Meggs believes that unless or until he receives a temporary order of suspension his obligation and duty remains to preserve, advance, and advocate for Kelly Meggs' legal rights for so long as he is able, and that his duties require this.

I.   **PROCEDURAL POSTURE AND HISTORY**

It has now been almost four (4) months since Kelly Meggs, by counsel, made demand for exculpatory information held (originally) in the possession, custody or control of the U.S. Capitol Police., as specified in the Proposed Order attached to Kelly Meggs' Revised Motion on December

1

13, 2021, at ECF Dkt. # 542.

**It should be clearly confronted that these are not tangential issues, but issues the prosecution should necessarily have already investigated, compiled, and analyzed in the 15 months since January 6, 2021.  These should be documents already sitting in one or more file folders.  If the prosecution has not already compiled and considered these documents 15 months ago, then the USAO initiated prosecution without probable cause in malicious prosecution.**

Kelly Meggs asked for issuance of a subpoena to the U.S. Capitol Police, making demand that the subpoena shall order the production of:

    a. Any and all documents, communications, reports, letters, text messages, emails, or other records relating to, discussing or reporting on the discovery of pipe bombs on January 6, 2021, near the U.S. Capitol building (within 10 blocks) (subject to appropriate exclusions or redactions).

    b. Any and all documents, communications, reports, letters, text messages, emails, or other records relating to, discussing or reporting on the U.S. Capitol Police officially advising the Joint Session of Congress and/or the House of Representatives or U.S. Senate separately, on January 6, 2021, to recess.

    c. Any and all documents, communications, reports, letters, text messages, emails, or other records relating to, discussing or reporting on whether or not the Joint Session of Congress and/or the House of Representatives or U.S. Senate separately, on January 6, 2021, should recess.

    d. Any and all documents, communications, reports, letters, text messages, emails, or other records relating to, discussing or reporting on the U.S. Capitol Police officially advising Members of Congress to evacuate from the House Chamber and/or Senate Chamber in the U.S. Capitol building on January 6, 2021.

    e. Any and all documents, communications, reports, letters, text messages, emails, or other records relating to, discussing or reporting the reasons why the Joint Session of Congress should (if written beforehand) or did (if written after the fact) recess on January 6, 2021.

Kelly Meggs further made demand for --

" documents or information exclusively within the possession of the U.S. Government must be disclosed if it is likely to contain or lead to the discovery of (including identifying witnesses):

    i)    Evidence of actual innocence of the charges

    ii)    Evidence of an alternative explanation or cause or otherwise raising reasonable doubt on the standard of a defendant is presumed innocent until proven guilty beyond a reasonable doubt.

    iii)    Evidence that a defendant might be guilty of a lesser offense only

    iv)    Evidence of an affirmative defense

    v)    Evidence of the credibility of prosecution witnesses on impeachment

    vi)    Mitigating factors arguing for imposition of a lesser sentence

On December 23, 2021, the Court by the Honorable Amit Mehta, U.S. District Court Judge, issued an order at ECF Dkt. 565 denying [but actually in part] Kelly Meggs, motion by saying in the Minute Order that day:

> ORDER denying [500] Motion for Issuance of a Subpoena Duces Tecum to the U.S. Capitol Police as to KELLY MEGGS (8);

> denying Defendant KELLY MEGGS's (8) [502] Motion for Hearing on Motion for the same and; granting [547] Motion for Leave to File Amended Reply as to KELLY MEGGS (8). See attached Order for additional details. Signed by Judge Amit P. Mehta on 12/23/2021. (lcapm1) (Entered: 12/23/2021)

and by issuing the order attached hereto as Exhibit A. In Judge Mehta's December 23, 2021, Order attached as Exhibit A and filed at ECF Dkt. # 565 that:

> \* \* \*
> Unlike a subpoena directed to a third party, Defendant here seeks records from a government agency, the U.S. Capitol Police. Defendant therefore should be able to obtain the records he seeks directly from the prosecution under Federal Rule of Criminal Procedure 16. *See United States v. Cuthbertson*, 651 F.2d 189, 195 (3d Cir. 1981) (distinguishing between "exculpatory material in the possession of the prosecution" and "exculpatory evidence in the possession of third parties," and stating that "[o]nly the latter is retrievable under a [R]ule 17(c) subpoena"). He thus far has not shown an inability to do so.
>
> That said, the court will order the United States to certify by January 20, 2022, that it has requested and sought all records from the U.S. Capitol Police that reflect any communications made to the Presiding Officer of each House, and any other involved persons, that led to the decision to recess the Certification of the Electoral College vote count on January 6, 2021. The court understands such records to be what Defendant seeks from the U.S. Capitol Police. *See* Def.'s Reply Mem. of P&A, ECF No. 546, at 16 (stating that "the subpoena seeks" records "as to why the USCP recommended a recess to the presiding officer").
> \* \* \*

In fact, Kelly Meggs motion was much broader than stated in Judge Mehta's order, but the United States Attorney's Office ("USAO") actually issued the required notice to the U.S. Capitol Police instructing and construing the required Rule 16, *Brady v. Maryland*, due process disclosures very broadly and thoroughly after discussing between the USAO and Kelly Meggs' counsel.

4

It is inexplicable why Judge Mehta gave the USAO from the filing of Kelly Meggs' motion on November 26, 2021, until January 20, 2022, merely to instruct the U.S. Capitol Police that (a) the documents requested are implicated by disclosure requirements, and (b) by implication that the Government's obligation includes not only the USAO but also the U.S. Capitol Police in being required to respond.

On January 20, 2022, the USAO filed the required Certification, attached as Exhibit B and filed at ECF Dkt # 582.

On November 26, 2021, Kelly Meggs, by counsel filed his "MOTION for Exculpatory Evidence by Motion For Issuance Of A Subpoena Duces Tecum To The U.S. Capitol Police by KELLY MEGGS".  See ECF Dkt #500.

On November 27, 2021, Kelly Meggs, by counsel filed his SUPPLEMENT to his "MOTION for Exculpatory Evidence by Motion For Issuance Of A Subpoena Duces Tecum To The U.S. Capitol Police by KELLY MEGGS".  See ECF Dkt #501.

Additional consultation on December 6, 2021, was conducted and exchanged by emails between the USAO and Kelly Meggs' attorney.

On December 10, 2021, the USAO filed its "Memorandum in Opposition by USA as to KELLY MEGGS." See ECF Dkt #538.

On December 13, 2021, Kelly Meggs, by counsel, filed his "REPLY TO OPPOSITION to Motion."  See ECF Dkt. #542.  (Filing error corrected on December 14, 2021, by Clerk at ECF Dkt. # 546.)

## II.     FACTUAL CONTEXT AND BACKGROUND

The documents demanded are undeniably not just potentially but actually exculpatory

information that the Government is required to produce under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny.

The failure of the Government to produce these documents may lead to the dismissal of the case, as shown and explained by the Honorable Emmet Sullivan, District Court Judge, in the failed prosecution of U.S. Senator Ted Stevens (R-Alaska).

Of course, the information and documents that the Government must produce under *Brady v. Maryland* as potentially "exculpatory" include evidence that might show the actual innocence of the accused, but also evidence that might establish defenses.

Meanwhile the Government continues to flood the Defendants' counsel with mostly indiscriminate and irrelevant junk, with the obvious bad faith to disrupt the Defendants' ability to prepare for trial, drive up the expense and burden of litigation and thereby deprive the Defendants of their due process rights to a fair trial. See Exhibit C, attached.

For example, Kelly Meggs, by counsel, filed a Notice (in response to the Court's earlier queries about the progress of discovery) on December 29, 2021, at ECF Dkt. #567, explaining how the USAO was trying to transfer a collection of files totaling 43 to 46 gigabytes – unnecessarily because the transmission was not a single file but a collection of files that could have been sent in smaller groups – and this was bombing repeatedly throughout about 10 days of attempts.

In response, the USAO then ***doubled*** the unnecessary size of a subsequent collection from 43 gigabytes to 102 gigabytes (again, of individual files that could have been sent in smaller groups). This represents an intentional act in response to Notice to the Court of problems with discovery transmission to worsen the problems identified.

And then when the 102 gigabytes was finally downloaded, it consisted of files in an unknown and unreadable format. The folder consists of the following files in an unknown software format, under the

main folder name:  **"DOJCB_010 2022.01.16 Capitol Breach Discovery"** including --

| File Name: | Length |
|---|---|
| DOJCB_0102022-01-14-16-27-12.z01 | 4.096 gigabytes |
| DOJCB_0102022-01-14-16-27-12.z02 | 4.096 gigabytes |
| DOJCB_0102022-01-14-16-27-12.z03 | 4.096 gigabytes |
| DOJCB_0102022-01-14-16-27-12.z04 | 4.096 gigabytes |
| DOJCB_0102022-01-14-16-27-12.z05 | 4.096 gigabytes |
| DOJCB_0102022-01-14-16-27-12.z06 | 4.096 gigabytes |
| DOJCB_0102022-01-14-16-27-12.z07 | 4.096 gigabytes |
| DOJCB_0102022-01-14-16-27-12.z08 | 4.096 gigabytes |
| DOJCB_0102022-01-14-16-27-12.z09 | 4.096 gigabytes |
| DOJCB_0102022-01-14-16-27-12.z10 | 4.096 gigabytes |
| DOJCB_0102022-01-14-16-27-12.z11 | 4.096 gigabytes |
| DOJCB_0102022-01-14-16-27-12.z12 | 4.096 gigabytes |
| DOJCB_0102022-01-14-16-27-12.z13 | 4.096 gigabytes |
| DOJCB_0102022-01-14-16-27-12.z14 | 4.096 gigabytes |
| DOJCB_0102022-01-14-16-27-12.z15 | 4.096 gigabytes |
| DOJCB_0102022-01-14-16-27-12.z16 | 4.096 gigabytes |
| DOJCB_0102022-01-14-16-27-12.z17 | 4.096 gigabytes |
| DOJCB_0102022-01-14-16-27-12.z18 | 4.096 gigabytes |
| DOJCB_0102022-01-14-16-27-12.z19 | 4.096 gigabytes |
| DOJCB_0102022-01-14-16-27-12.z20 | 4.096 gigabytes |
| DOJCB_0102022-01-14-16-27-12.z21 | 4.096 gigabytes |

These files are unrecognizable to any standard software program readily available or provided. Thus, the entire contents of the 102 gigabyte folder are entirely worthless and unusuable. The USAO has once again unnecessarily acted in bad faith to increase the burden and expense of litigation.

Before, reaching this impasse, the 102 gigabyte folder came in a data "COMPRESSED" format (like Winzip). It took counsel nearly three hours just to un-zip or decompress the 102 gigabyte folder, during which time he could not use his computer for anything else. (That is, the process was so slow that he had to close every other program and activity to give it a chance to actually process and conclude without crashing, and then reboot.) However, because of these unworkable methods, Defendants' counsel cannot pick and choose what files or information to look at. A compressed folder (zipped) must be completely decompressed before any of the individual computer files or other data can be identified or looked at.  Individual subfolders or files are not visible until after the unzipping / decompression software.

Notice how each file is precisely 4,096,000 kilobytes in length, indicating that this is not actual data usable by a human but some intermediate data format. There is a file named: DOJCB_0102022-01-14-16-27-12 designated as a "Zip Archive File" (which is actually *not* a standard file designation for WinZip or similar software). But this file will not open (even within a zip program).

Even though there is a file provided named "_READ ME - How to view this production" it provides no information on how to access or view the 21 files each of exactly 4.096 gigabytes in length. It says:

> How to Extract The Multi-Part Zip File For DOJCB_010 2022.01.16 Capitol Breach Discovery
> 1. Download all of the files in the "DOJCB_010 2022.01.16 Capitol Breach Discovery" USAfx folder to the same local directory.
> 2. Once everything is downloaded, open the parent zip file: **DOJCB_0102022-01-14-16-27-12.zip**
> 3. Extract the contents of the multi-part zip file to a folder.
> 4. You should now be able to see the entire contents of this production.
>
> Note: If you are unable to extract the multi-part zip file after following these instructions, you may need to download and install a free archive extractor. Our recommendation for Windows is 7-Zip which can be found at https://www.7-zip.org/ . Our recommendation for MacOS is The Unarchiver which is available in the Mac App Store.

However, by the time one can read this file "_READ ME - How to view this production" one will already have completed the de-compression process (unzip) necessary to see and view this file, buried within the 102 gigabyte transmission. That is, one cannot read these instructions, minimal as they are, on how to decompress the folder until after the folder has already been decompressed (unzipped). Is this a prank?

There is also a covering letter – which again one cannot read until the entire folder has been downloaded and decompressed (unzipped). The covering letter does not provide any insights or

information on how to read any of these files.

Therefore, once again, a tremendous amount of attorney time has been consumed instead of preparing for trial to respond to these unworkable methods.

***<u>Yet, the Government systematically ignores the specific requests made by Defendants' counsel from their legal analysis of what is exculpatory evidence and necessary for the Defendants' defense.</u>***

### III.     GOVERNING LAW

**UNITED STATES V. SITZMANN**, 74 F.Supp.3d 128, 133 (D.D.C. 2014). "[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to either guilt or punishment, irrespective of the good faith or bad faith of the prosecution." **Id**. at 134 (*quoting* **BRADY V. MARYLAND**, 373 U.S. 83, 87 (1963)). And courts in in this jurisdiction disfavor narrow readings by prosecutors as to their obligations under **BRADY**. **UNITED STATES V. SAFFARINIA**, 424 F.Supp.3d 46, 57 (D.D.C.), *supported by* **UNITED STATES V. PAXSON**, 861 F.2d 730, 737 (D.C. Cir. 1988).

**W**hen the Defendant requests **BRADY** materials for all grand jury notes/minutes/etc.

> **"The government cannot meet its *Brady* obligations by providing the defendant with access to 600,000 documents and then claiming that the defendant should have been able to find the exculpatory information in the haystack."**

*SAFFARINIA*, 424 F.Supp.3d at 85.

Prosecutions alleging conspiracies carry the "inevitable risk of wrongful attribution of responsibility to one or more of the multiple defendants." **DENNIS**, 384 U.S. at 873. Under these circumstances, it is imperative the defense, the judge, and the jury be assured "the doors that may lead to truth have been unlocked." **Id.**

9

> In our adversarial system rarely is the prosecution justified in having "exclusive access to a storehouse of relevant fact" and exceptions to this notion must be justified by the "clearest and most compelling of considerations."

**Id.** at 873-874.

Determining usefulness can only be made by an advocate for the defense. **DENNIS** at 875. The trial judge's function is limited to determining if a case for production has been successful and supervising the process. **Id**.

Therefore, the Court found it could not rely on the assumption that inconsistencies would have been overlooked had the grand jury testimony been examined.

Rule 16 of the Federal Rules of Criminal Procedure requires that:

> \* \* \*
>
> **Rule 16. Discovery and Inspection**
>
> **(d) Regulating Discovery. (1) Protective and Modifying Orders. At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief. The court may permit a party to show good cause by a written statement that the court will inspect ex parte. If relief is granted, the court must preserve the entire text of the party's statement under seal. (2) Failure to Comply. If a party fails to comply with this rule, the court may: (A) order that party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions; (B) grant a continuance; (C) prohibit that party from introducing the undisclosed evidence; or (D) enter any other order that is just under the circumstances.**

If an appeal court determines the suppressed evidence is material, that there is a reasonable likelihood the evidence could have impacted the jury's judgment, then a new trial is required. **SITZMANN**, 74 F.Supp.3d at 134. However, the defendant must raise at least a colorable claim that the material contains evidence "favorable to him and material to his claim of innocence." **Id.**

A successful **BRADY** claim to over-turn a conviction after trial requires that favorable evidence to the accused for exculpatory or impeachment purposes was suppressed by the government which prejudiced the accused. **Id**. Favorability to the accused requires exculpatory or impeachment value. **Id.** Suppression by the government can be an intentional or inadvertent failure to disclose the evidence. **Id**. at 137.

Moreover, prejudice requires a "reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different." **Id.** at 134 (*citing* **STRICKLER V. GREENE**, 527 U.S. 263, 280 (1999)).

Under **BRADY**, evidence may still be material and favorable despite being inadmissible, provided it could lead to admissible evidence. **SAFFARINIA**, 424 F.Supp.3d at 91.

The scope of the requirements of **BRADY V. MARYLAND,** 373 U.S. 83 (1963), is very broad. *See* United States Justice Manual (USJMM) § 9-5.001. For instance, a "prosecutor must disclose information that is inconsistent with any element of any crime charged" and --

> "… must disclose information that either casts a substantial doubt upon the accuracy of any evidence---including but not limited to witness testimony—the prosecutor intends to rely on to prove an element of any crime charged, or might have a significant bearing on the admissibility of the evidence. This information must be disclosed regardless of whether it is likely to make the difference between convictions and acquittal of the defendant for a charged crime."

**Id.**

The disclosure requirement, "applies to information regardless of whether the information subject to disclosure would itself constitute admissible evidence." **Id.**

It is highly relevant that the Defendant is explicitly asking for specific information, not passively hoping that the prosecution will notice and think to disclose information on its own

11

initiative.

> "The test of materiality in a case like *Brady* in which specific information has been requested by the defense is not necessarily the same as in a case in which no such request has been made...."  [14]

**UNITED STATES V. AGURS**, 427 U.S. 97, 106, 49 L.Ed.2d 342, 96 S.Ct. 2392 (1976)

> " The heart of the holding in *Brady* is the prosecution's suppression of evidence, in the face of a defense production request, where the evidence is favorable to the accused and is material either to guilt or to punishment. Important, then, are (a) suppression by the prosecution after a request by the defense, (b) the evidence's favorable character for the defense, and (c) the materiality of the evidence.  * * * "

**MOORE V. ILLINOIS**, 8212 5001, 408 U.S. 786,794-795,  92 S.Ct. 2562, 33 L.Ed.2d 706 (1972)

> "If there is a duty to respond to a general request of that kind, it must derive from the obviously exculpatory character of certain evidence in the hands of the prosecutor. But if the evidence is so clearly supportive of a claim of innocence that it gives the prosecution notice of a duty to produce, that duty should equally arise even if no request is made. Whether we focus on the desirability of a precise definition of the prosecutor's duty or on the potential harm to the defendant, we conclude that there is no significant difference between cases in which there has been merely a general request for exculpatory matter and cases, like the one we must now decide, in which there has been no request at all. The third situation in which the Brady rule arguably applies, typified by this case, therefore embraces the case in which only a general request for "Brady material" has been made."

**UNITED STATES V. AGURS**, 427 U.S. 97, 107, 49 L.Ed.2d 342, 96 S.Ct. 2392 (1976).

> "The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt.20 Such a finding is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed."

**Id**. at 112.  To extend this point, the U.S. Supreme Court is saying that the requirement that an accused be presumed innocent until proven guilty beyond a reasonable doubt is a principle that applies to all aspects of the case, including whether a failure to disclose potentially exculpatory

12

information violates the Due Process Clause.

> "Impeachment evidence, however, as well as exculpatory evidence, falls within the *Brady* rule. See *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972). Such evidence is "evidence favorable to an accused," *Brady*, 373 U.S., at 87, 83 S.Ct., at 1196, so that, if disclosed and used effectively, it may make the difference between conviction and acquittal. Cf. *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173 1177, 3 L.Ed.2d 1217 (1959) ("The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend")."

**UNITED STATES V. BAGLEY**, 473 U.S. 667, 87 L.Ed.2d 481, 105 S.Ct. 3375 (1985).

The Defendants are entitled to the documents and the evidence, to the extent potentially or here likely to be exculpatory information as required by Brady v. Maryland, 373 U.S. 83 (1963) ; See also, USA v Theodore F. Stevens, No. 1:08-CR-00231-EGS, U.S. District Court for the District of Columbia, Memorandum and Opinion by Judge Emett Sullivan, (Docket No. 257, December 22, 2008); Anna Stolley Persky, "A Cautionary Tale: The Ted Stevens Prosecution," Washington Lawyer [publication of the D.C. Bar.], October 2009.[1]

---

[1] According to the Internet archive service "The Way Back Machine," the D.C. Bar deleted this article in June 2020. Counsel had personally reviewed this article years ago at the D.C. Bar's website, before it was deleted by the D.C. Bar.

13

## IV.     ARGUMENT

Previously, in December, the Court denied a Rule 17 subpoena directly to the U.S. Capitol Police under FRCP Rule 17, directly enforceable and with deadlines, in Judge Mehta's December 23, 2021, Order attached as Exhibit A and filed at ECF Dkt. # 565, on the grounds that:

> \* \* \*
> Defendant's request that the court issue a subpoena to the U.S. Capitol Police is denied because he has failed to show that the requested records are "not otherwise procurable reasonably in advance of trial by exercise of due diligence." *United States v. Nixon*, 418 U.S. 683, 699–700 (1974). Unlike a subpoena directed to a third party, Defendant here seeks records from a government agency, the U.S. Capitol Police. Defendant therefore should be able to obtain the records he seeks directly from the prosecution under Federal Rule of Criminal Procedure 16. *See United States v. Cuthbertson*, 651 F.2d 189, 195 (3d Cir. 1981) (distinguishing between "exculpatory material in the possession of the prosecution" and "exculpatory evidence in the possession of third parties," and stating that "[o]nly the latter is retrievable under a [R]ule 17(c) subpoena"). He thus far has not shown an inability to do so.
> \* \* \*

It is now obvious that the Defendant *cannot* rely upon production of the exculpatory information through the regular channels of Government and that "the requested records are 'not otherwise procurable reasonably in advance of trial by exercise of due diligence.'"

The Government is clearly withholding or slow-walking information and documents and evidence exculpatory to the Oath Keepers Defendants in this case and the *USA v. Crowl* group, including by attempting to hide obscure references to the actual innocence of the Defendants among a tsunami of trash.  On Evidence.com, Defendants and their counsel were subjected to videos of a parking garage where nothing happened all day and a door at the U.S. Supreme Court where nothing happened all day.  This is clearly intended to consume attorney resources and directly harm the preparation of the Defendants to defend themselves at trial.

Never forget:  ***"IF THE TIMELINE DOES NOT FIT, YOU MUST ACQUIT."***

14

Thus, disclosure of the documents demanded are obligatory and exculpatory, because Defendant Kelly Meggs is actually entitled to complete dismissal of the charges against him in Count II and Count III, an order in limine, and/or if at trial a directed verdict of acquittal (J.N.O.V.), followed by the customary lawsuits for malicious prosecution, or at the least defense of the charges, proof of a lesser-included offense, or mitigation of the charges.

> **"So the assault on the Capitol is not what caused the evacuations of those buildings? The discovery of those pipe bombs is what caused the evacuations of those?" asked Republican Oklahoma Sen. James Lankford.**
>
> **"That is correct, Sir," said** *[then U.S. Capitol Police Chief]* **Sund.**

https://www.youtube.com/watch?v=vtzwYAh1o30&t=2510s  starting at time 41:45.

The fact that the then Chief of the U.S. Capitol Police was at first focused on buildings next to the U.S. Capitol building is an unavailing distinction which does not help the Government's baseless prosecution. The Grand Jury's allegations are an admission and confession that Kelly Meggs did not reach the Capitol building *__until around 2:29 PM__*, yet the U.S. Capitol Police had ordered the evacuation of the buildings immediately across Constitution Avenue *__at or before 1:17 PM__* on January 6, 2021. Clearly a threat existed independent of Kelly Meggs having nothing to do with the Oath Keepers at around 1:17 PM, if not earlier, from the discovery at 12:52 PM of pipe bombs immediately Southeast of the Cannon House Office Building and next to the Capitol South Metro station at the physically attached office townhouses of both the Capitol Hill Club restaurant and the Republican National Committee headquarters. (There being no physical distinction between these attached townhouses.) The prosecution also argues furiously that the massive bronze Columbus Doors at the top of the center East stairway of the U.S. Capitol remained open. Thus, the presence of the crowds on the staircase veranda did not disrupt anything inside the Capitol when the U.S. Capitol Police did

15

not see a need to close the massive bronze Columbus Doors.

See: **https://www.banned.video/watch?id=6214100e00c8dc17454a7400**  Notice the female pro-Trump demonstrator ***HUGGING*** every Capitol Police office in riot gear, one by one, as they exit through the Columbus Doors to go out into the crowd of demonstrators.

## V.     CONCLUSION

Therefore, the Court should either order the issuance of a Rule 17 subpoena to the U.S. Capitol Police or issue an order to compel the production of the documents and information, as further defined in either case by the attached Proposed Order.

Dated:  April 13, 2022                                RESPECTFULLY  SUBMITTED
7:59 A.M.                                                    KELLY MEGGS, *By Counsel*

*[signature: Jonathon Moseley]*

Jonathon A. Moseley, Esq.

USDCDC Bar No. VA005
Virginia State Bar No. 41058
Mailing address only:
5765-F Burke Centre Parkway, PMB #337
Burke, Virginia 22015
Telephone:  (703)  656-1230
**Contact@JonMoseley.com**
**Moseley391@gmail.com**

## CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2022, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following CM/ECF participants.  From my review of the PACER / ECF docket records for this case that the following attorneys will receive notice through the ECF system of the U.S.

16

District Court for the District of Columbia.

>**Jeffrey S. Nestler**
>U.S. ATTORNEY'S OFFICE
>555 Fourth Street NW
>Washington, DC 20530
>202-252-7277
>**jeffrey.nestler@usdoj.gov**
>
>**Kathryn Leigh Rakoczy**
>U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA
>555 Fourth Street, NW
>Washington, DC 20530
>(202) 252-6928
>(202) 305-8537 (fax)
>**kathryn.rakoczy@usdoj.gov**
>
>**Justin Todd Sher**
>U.S. DEPARTMENT OF JUSTICE
>950 Pennsylvania Avenue NW
>Washington, DC 20530
>202-353-3909
>**justin.sher@usdoj.gov**
>
>**Troy A. Edwards, Jr**
>U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA
>555 4th Street, NW
>Washington, DC 20001
>202-252-7081
>**troy.edwards@usdoj.gov**
>
>**Alexandra Stalimene Hughes**
>DOJ-Nsd
>950 Pennsylvania Ave NW
>Washington DC, DC 20004
>202-353-0023
>**Alexandra.Hughes@usdoj.gov**
>
>**Louis J. Manzo**
>DOJ-CRM
>1400 New York Ave NW
>Washington, DC 20002
>202-616-2706
>**louis.manzo@usdoj.gov**

**Ahmed Muktadir Baset**
U.S. ATTORNEY'S OFFICE
United States Attorney's Office for the District of Col
555 Fourth Street, N.W., Room 4209
Washington, DC 20530
202-252-7097
**ahmed.baset@usdoj.gov**

_____
Jonathon Moseley, Esq.