IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) <br> ) <br> )    Case No. 1:22-cr-00015-APM <br> ) <br> ) <br> ) <br> ) <br> ) |
| v. | |
| KELLY MEGGS, | |
| Defendant. | |

**MOTION FOR SUBSTITUTION OF COUNSEL**

Defendant Kelly Meggs, by and through the undersigned counsel and pursuant to hereby Local Rule 44.5 of the Criminal Rules of Procedure for the District of Columbia bring this Motion for Substitution of Counsel and ask this Court direct the Clerk to Enter the Appearance of the undersigned counsel on behalf of Mr. Meggs in the above-captioned matter.

As the Court is aware, defense counsel presently represent Mrs. Connie Meggs in the separate but related matter captioned *United States v. Crowl*, No. 21-cr-00028-APM. Although Mr. and Mrs. Meggs are no longer co-defendants in the same matter, and defense counsel believes there is no conflict of interest between the two defendants in these two different cases, defense counsel recognize the Court's obligation to ensure that no current conflict precludes this joint representation and to ascertain whether Mr. and Mrs. Meggs waive any future conflict that might arise as a result of this joint representation. Accordingly, defense counsel anticipate and welcome the Court's appointment of conflict counsel to assist the Court in making a determination as to any current and/or future conflicts. To that end, defense counsel have conferred with the government, which advises that the government does not oppose defense counsel's representation of Mr. Meggs, subject to the Court's determination that no current or future conflict preclude the proposed joint representation, a colloquy with both Mr. and Mrs.

Meggs pursuant to Federal Rule of Procedure 44(c)(2), and written waivers from both defendants. Finally, defense counsel requests this Court schedule a status hearing so that defense counsel can also apprise the Court of several scheduling issues before the Court rules on the instant Motion.

**I.      PROCEDURAL BACKGROUND**

Kelly Meggs and his wife Connie Meggs were arrested on February 17, 2021, and thereafter initially indicted on February 19, 2021. Indictment, *United States v. Caldwell*, No. 21-cr-00028-APM (D.D.C. Feb. 19, 2021) (ECF No. 27). Initially, both Kelly and Connie Meggs were represented by attorney David Wilson. At the March 12, 2021, arraignment of Mr. Meggs, the Court first acknowledged the possibility of a conflict in the joint representation of both Kelly and Connie. The Court then appointed conflicts counsel to Mr. and Mrs. Meggs on April 7, 2021, to provide advice concerning potential conflicts of interests. Order, *United States v. Caldwell*, No. 21-cr-00028-APM (D.D.C. Apr. 07, 2021) (ECF No. 145). Subsequently, after discussions with counsel for the government and the court, Mr. Wilson filed a motion to withdraw from representation for Mrs. Meggs, denying the existence of a conflict, but doing so in an effort to "avoid[] the impact upon the expenditure of Court, government and defense time and resources . . . ." Motion to Withdraw ¶ 6, *United States v. Caldwell*, No. 21-cr-00028 (D.D.C. May 10, 2021) (ECF No. 186). Thereafter, on August 9, 2021, the undersigned filed a motion to substitute counsel for Connie Meggs, which the court granted on August 10, 2021.

On January 12, 2022, the government superseded its indictment of Connie Meggs, severing Kelly Meggs into the above-captioned matter. Kelly Meggs is now separately charged by indictment with, *inter alia*, Seditious Conspiracy in violation of 18 U.S.C. §2384. However, the seventh superseding indictment of Connie Meggs does expressly name Kelly Meggs as a co-

conspirator in the conspiracy with which she is charged and several of the charges against Mr. and Mrs. Meggs overlap.

Mr. Meggs now brings this motion seeking leave to substitute counsel with the undersigned, counsel to Connie Meggs, which would additionally enable a smooth transition in representation. Defense counsel has been working diligently to prepare Mrs. Meggs's defense and has collaborated both with prior counsel to Mr. Meggs and the other defendants in both this and the *Crowl* action. Although defense counsel has assessed all possibilities for a conflict in the joint representation of Kelly and Connie Meggs and believes there are none, given the history of this case and the obligation of the Court to ensure that no actual conflict preclude this representation, *Wood v. Georgia*, 450 U.S. 261, 272-273 (1981), defense counsel submits this motion so as to provide conflicts counsel and the government an opportunity to oppose defense counsel's request.

## II.    LEGAL ARGUMENT

The Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused . . . shall have the Assistance of Counsel for his defense." U.S. Const. amend. VI.

> We agree that disqualification is warranted only rarely in cases where there is neither a serious question as to counsel's ability to act as a zealous and effective advocate for the client, nor a substantial possibility of an unfair advantage to the current client because of counsel's prior representation of the opposing party, or prior responsibility as a government official. Except in cases of truly egregious misconduct likely to infect future proceedings, other means less prejudicial to the client's interest than disqualifying the counsel of her choice are ordinarily available to deal with ethical improprieties by counsel.

*Koller v. Richardson-Merrell Inc.*, 737 F.2d 1038, 1056 (D.C. Cir. 1984), (internal citations omitted) *vacated on other grounds*, 472 U.S. 424 (1985).

3

A defendant's Sixth Amendment right includes the "right to representation that is free from conflicts of interest," *Wood v. Georgia*, 450 U.S. 261, 271 (1981), but also carries a "presumption in favor of counsel of choice." *Wheat v. United States*, 486 U.S. 153, 160 (1988). Yet, "[t]he mere physical presence of an attorney does not fulfill the Sixth Amendment guarantee when the advocate's conflicting obligations have effectively sealed his lips on crucial matters." *Halloway v. Arkansas*, 435 U.S. 475, 490 (1978). Accordingly, where there exists even the possibility of a conflict of interest, the trial court – as opposed to any particular party – has "a duty to inquire further." *Wood*, 450 U.S. at 272-273. As the D.C. Circuit has explained, "a defendant's counsel-of-choice right may sometimes be trumped by a conflict of interest [because] where a defendant's chosen counsel suffers from a conflict of interest, . . . the court's own institutional interests" are implicated. *United States v. Lopesierra-Gutierrez*, 708 F.3d 193, 199-200 (D.C. Cir. 2013). *See also Wheat*, 486 U.S. at 161 ("Federal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them."). "In making this determination, a court balances the defendant's right to choose his representative against *both* the defendant's countervailing right to conflict-free representation *and* the court's independent interest in the integrity of criminal proceedings. The outcome of that balance turns on the nature and extent of the conflict." *Lopesierra-Gutiereez*, 708 F.3d at 200. When confronted with questions governing the practice of law, including questions regarding the substitution and suitability of counsel, this District follows the District of Columbia Rules of Professional Conduct. *See* LCrR 57.26. *See also United States v. Flynn*, 411 F. Supp. 3d 15, 27 (D.D.C. 2019) ("The District of Columbia Rules of Professional Conduct apply to the proceedings in this Court."); *United States v. Abramaoff*, 55 F. Supp. 3d 84, 87 (D.D.C. 2014) ("The District of

4

Columbia Rules of Professional Conduct have been adopted by this Court and are applicable to all lawyers who handle litigation in this District." (quoting *United States v. Philip Morris*, 312 F. Supp. 2d 27, 38-39 (D.D.C. 2004)).  Thus, questions before this Court concerning the qualification of counsel and potential conflicts are governed by the D.C. Rules of Professional Conduct, and more specifically, Rule 1.7 and its subsections.

Rule 1.7 of the Rules of Professional Conduct generally precludes representation of two clients where a conflict of interest exists.  More specifically, the Rule prohibits a lawyer from "advance[ing] two or more positions in the same matter."  D.C. Rules of Prof'l Conduct R. 1.7(a) (2007).  "Matter" is defined as "any litigation . . . investigation, arrest, charge, or accusation . . . or any other representation, except as expressly limited in a particular rule."  D.C. Rules of Prof'l Conduct R. 1(h) (2007).  Furthermore, Rule 1.7(b) prohibits a lawyer from representing a client with respect to a matter if . . . [s]uch representation will be or is likely to be adversely affected by representation of another client . . . [and] [r]epresentation of another client will be or is likely to adversely affected by such representation . . . ."  D.C. Rules of Prof'l Conduct R. 1.7(b)(2)&(3) (2007).  However, Rule 1.7(c) provides that "[a] lawyer may represent a client with respect to a matter in the circumstances described . . . above if (1) Each potentially effected client provides informed consent to such representation after full disclosure of the existence and nature of the possible conflict and the possible adverse consequences of such representation; and (2) The lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client."  D.C. Rules of Prof'l Conduct R. 1.7(c) (2007).

Both Mr. and Mrs. Meggs have been indicted, albeit in separate matters, based on allegations that they were present at the Capitol Building on January 6, 2021.  Assuming *arguendo* that these separate indictments constitute the same "matter" for purposes of any Rule

1.7 analysis, there is nevertheless no conflict that could give rise to adverse consequences for either Mr. or Mrs. Meggs. To the extent a potential conflict may arise, it has been affirmatively waived by both Mr. and Mrs. Meggs. Furthermore, the undersigned reasonably and confidently believes that counsel will be able to provide competent and diligent representation to both Mr. Meggs and Mrs. Meggs.

In addition, this Court's review of any conflict is not limited to whether such a conflict now exists, but also includes consideration of whether a future conflict may arise that would preclude the representation of any given defendant. As addressed below, defense counsel submits there is not now any conflict precluding joint representation. Moreover, any possibility of a future conflict rests solely with the prosecutorial discretion of the government, but for which defense counsel does not believe there is any realistic possibility.

    A.    *There is No Present Conflict That Precludes Undersigned Counsel From Representing Mr. Meggs*

The Supreme Court has addressed the potential harm that could result from permitting a single attorney to represent defendants who are joined into a single trial. Most recently, the Supreme Court has addressed the issue of joint representation by reemphasizing the rule that "joint representation of codefendants 'is not *per se* violative of constitutional guarantees of effective assistance of counsel . . . [but] joint representation of conflicting interests is suspect . . . .'" *Holcombe v. Florida*, 142 S. Ct. 955, 957 (2022) (quoting *Holloway*, 435 U.S. at 482, 489)). In *Holloway*, 435 U.S. 475 (1978), the Court held that "[j]oint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing . . . [such as] challenging the admission of evidence prejudicial to one client but perhaps favorable to another, or from arguing at the sentencing hearing the relative involvement and culpability of his

6

clients in order to minimize the culpability of one by emphasizing that of another." *Id*. at 489-490.  Furthermore, potential conflicts in joint representation can include

> "whether or not to present a defense that helps one defendant more than the other; whether or not to cross-examine a witness whose testimony may help one defendant and hurt the other; whether to have one defendant testify while the other remains silent; whether to have neither defendant testify because one would be a poor or vulnerable witness; whether or not to emphasize in summation that certain evidence is admitted only against (or is less compelling against) one defendant rather than the other . . . ."

*United States v. Bikundi*, 80 F. Supp. 3d 9, 18-19 (D.D.C. Feb. 13, 2015) (quoting *United States v. Curcio*, 680 F.2d 881, 887 (2d Cir. 1982)).  However, the Supreme Court observed in *Cuyler v. Sullivan*, 446 U.S. 335, 347 (1980), that "[t]he provision of separate trials . . . significantly reduced the potential for a divergence in [the defendants'] interests."

Here, Mr. and Mrs. Meggs are not codefendants in the same matter, let alone the same trial, greatly reducing the possibility of any actual conflict in their joint representation.  There will not be any simultaneous presentation of evidence nor the potential for conflicting defense theories to be presented to the same jury.  Moreover, both Mr. and Mrs. Meggs expressly waive any conflict associated with their joint representation and defense counsel is not otherwise aware of any information that would preclude their joint representation.

B.      *Potential Conflicts That Could Arise During the Course of Representation*

The court has an "independent interest in investigating potential conflicts," and thus may refuse "waivers of conflicts . . . where an actual conflict may be demonstrated before trial . . . [and] where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." *Bikundi*, 80 F. Supp. 3d at 16 (quoting *Wheat v. United States*, 486 U.S. 153 at 163 (1988)).  Defense counsel acknowledge the possibility that a conflict could arise that would preclude the joint representation of Mr. and Mrs. Meggs and have discussed these

7

possibilities with Mr. and Mrs. Meggs and confirmed they wish to proceed with joint representation.

Such potential conflicts include one defendant being "advantaged in accepting a plea offer or testifying against [her] codefendant, but the second defendant could be disadvantaged if the first defendant chooses to do so." *United States v. Williamson*, 859 F.3d 843, 851-852 (10th Cir. 2017). Another example exists where there is, "a defendant who denies his guilt and a codefendant who not only confesses his own complicity but also accuses the other of participation in the crime . . . ." *Sawyer v. Brough*, 358 F.2d 70, 73 (4th Cir. 1966).

Notably, the possibility for either conflict to arise rests solely with the goernment's prosecutorial discretion. The government could, for example, offer Mrs. Meggs immunity in exchange for her testimony as against Mr. Meggs in his trial and defense counsel acknowledge they would be conflicting from advising Mrs. Meggs in such circumstances or from cross-examining Mrs. Meggs at any trial of Mr. Meggs. However, defense counsel have conferred with the government and understand that the government does not anticipate making any such offer to Mrs. Meggs. Furthermore, if the government attempted to compel either Mr. or Mrs. Meggs to testify as against the other (assuming it could overcome any Fifth Amendment bar for so doing), the government would nevertheless be barred from questioning either Mr. or Mrs. Meggs about each other by the marital privilege. As the Supreme Court has long recognized, the spousal privilege shields one spouse from testimony as against the other spouse. *Trammel v. United State*s, 445 U.S. 40, 53 (1980). Given that neither Mr. Meggs nor Mrs. Meggs can be compelled to testify against one another in either of their trials, the possibility for that conflict to exist is reduced significantly.

### C. Mr. Meggs's Right to Choose His Representation Outweighs Any Possibility of a Conflict

"The Sixth Amendment provides that 'in all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence.'" *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006). The Supreme Court has held "that an element of this right is the right of a defendant who does not require appointed counsel to choose who will represent him." *Id.* (citing *Wheat v. United States*, 486 U.S. 153, 159 (1988). The right to choose counsel is one that is not taken lightly by courts in this District. When investigating the potential for conflict, "[t]he District Court must recognize a presumption in favor of petitioner's counsel of choice . . . ." *Wheat*, 486 U.S. at 164. Furthermore, while "that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict," nonetheless "[t]he evaluation of the facts and circumstances of each case under this standard must be left primarily to the informed judgment of the trial court." *Id*.

Here, the facts and circumstances weigh in favor of the approval of undersigned Counsel as Mr. Meggs's chosen counsel. No present conflict exists between Mr. Meggs and his spouse, Connie Meggs, and any potential conflicts that may come to exist rest on the government's actions, some of which may be barred by an existing marital privilege.

### CONCLUSION

For the foregoing reasons, Mr. Meggs respectfully requests the Court grant his request to substitute counsel.

[SIGNATURE ON NEXT PAGE]

9

Dated: May 16, 2022								Respectfully submitted,

*/s/ Stanley E. Woodward, Jr.*
Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
BRAND WOODWARD, LP
1808 Park Road, Northwest
Washington, DC  20010
202-996-7447 (telephone)
202-996-0113 (facsimile)
Stanley@BrandWoodwardLaw.com

*/s/ Juli Z. Haller*
Juli Z. Haller, (DC 466921)
The Law Offices of Julia Haller
601 Pennsylvania Avenue, Northwest, Suite 900
Washington, DC 20004
Telephone: (202) 729-2201
HallerJulia@outlook.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) ) ) |
| v. | ) **Criminal No. 1:21-cr-00537-TJK** ) ) |
| **RYAN SAMSEL,** | ) ) |
| **Defendant.** | ) ) ) |

## CERTIFICATE OF SERVICE

On May 16, 2022, the undersigned hereby certifies that a true and correct copy of the foregoing was electronically filed and served via the CM/ECF system, which will automatically send electronic notification of such filing to all registered parties.

                                         */s/ Stanley E. Woodward, Jr.*
                                   Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
                                   BRAND WOODWARD LAW, LP
                                   1808 Park Road, Northwest
                                   Washington, DC  20010
                                   202-996-7447 (telephone)
                                   202-996-0113 (facsimile)
                                   Stanley@BrandWoodwardLaw.com