```
            IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF COLUMBIA


UNITED STATES OF AMERICA,          )
                                   )
          Plaintiff,               )
                                   )    CR No. 22-15
                                   )    Washington, D.C.
          vs.                      )    May 17, 2022
                                   )    1:05 p.m.
ELMER STEWART RHODES III, ET AL.,  )
                                   )
          Defendants.              )
_____)



          TRANSCRIPT OF MOTION HEARING PROCEEDINGS
            BEFORE THE HONORABLE AMIT P. MEHTA
                UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Government:          Kathryn L. Rakoczy
                             Jeffrey S. Nestler
                             Troy Edwards
                             Justin Sher
                             U.S. ATTORNEY'S OFFICE
                             555 Fourth Street, NW
                             Washington, D.C. 20530
                             (202) 252-7277
                             Email:
                             kathryn.rakoczy@usdoj.gov
                             Email:
                             jeffrey.nestler@usdoj.gov
```

```
APPEARANCES CONTINUED:

For Defendant
Thomas E. Caldwell:              David William Fischer, Sr.
                                 FISCHER & PUTZI, P.A.
                                 7310 Governor Ritchie Highway
                                 Empire Towers, Suite 300
                                 Glen Burnie, MD 21061-3065
                                 (410) 787-0826
                                 Email:
                                 fischerandputzi@hotmail.com
For Defendant
Jessica M. Watkins:              Jonathan W. Crisp
                                 (via Zoom)
                                 CRISP AND ASSOCIATES, LLC
                                 4031 North Front Street
                                 Harrisburg, PA 17110
                                 (717) 412-4676
                                 Email: jcrisp@crisplegal.com


For Defendant
Kelly Meggs:                     Stanley Edmund Woodward, Jr.
                                 BRAND WOODWARD LAW
                                 1808 Park Road NW
                                 Washington, D.C. 20010
                                 (202) 996-7447
                                 Email:
                                 stanley@brandwoodwardlaw.com

                                 Juli Zsuzsa Haller
                                 LAW OFFICES OF JULIA HALLER
                                 601 Pennsylvania Avenue, NW
                                 Suite 900
                                 S. Building
                                 Washington, D.C. 20036
                                 (202) 352-2615
                                 Email: hallerjulia@outlook.com
```

```
APPEARANCES CONTINUED:

For Defendant
Kenneth Harrelson:              Bradford L. Geyer
                                FormerFeds LLC
                                2006 Berwick Drive
                                Cinnaminson, NJ 08077
                                (856) 607-5708
                                Email:
                                Bradford@formerfedsgroup.com

For Defendant
Roberto A. Minuta:              William Lee Shipley, Jr.
                                 (via Zoom)
                                LAW OFFICES OF
                                WILLIAM L. SHIPLEY
                                841 Bishop Street
                                Suite 2201
                                Honolulu, HI 96813
                                (808) 521-3336
                                Email: 808Shipleylaw@gmail.com

For Defendant
Joseph Hackett:                 Angela Halim
                                FEDERAL COMMUNITY
                                DEFENDER OFFICE
                                601 Walnut Street
                                Suite 501 West
                                Philadelphia, PA 19106
                                (215) 928-1100
                                Email: angie_halim@fd.org

For Defendant
David Moerschel:                Scott Weinberg
                                BROWN, SUAREZ, RIOS & WEINBERG
                                265 E. Marion Avenue
                                Suite 114
                                Punta Gorda, FL 33950
                                (941) 575-8000
                                Email: scott@bsrwlegal.com
```

```
APPEARANCES CONTINUED:

For Defendant
Elmer Stewart Rhodes, III:      Phillip A. Linder
                                BARRETT BRIGHT LASSITER LINDER
                                3300 Oak Lawn Avenue
                                Suite 700
                                Dallas, TX 75219
                                (214) 252-9900
                                Email:
                                phillip@thelinderfirm.com


For Defendant
Edward Vallejo:                 Matthew J. Peed
                                (via Zoom)
                                CLINTON & PEED
                                1775 Eye Street, NW
                                Suite 1150
                                Washington, D.C. 20006
                                (202) 919-9491
                                Email: matt@clintonpeed.com


Court Reporter:                 William P. Zaremba
                                Registered Merit Reporter
                                Certified Realtime Reporter
                                Official Court Reporter
                                E. Barrett Prettyman CH
                                333 Constitution Avenue, NW
                                Washington, D.C. 20001
                                (202) 354-3249


Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription
```

1                    P R O C E E D I N G S

2              COURTROOM DEPUTY:  All rise.  The Honorable

3    Amit P. Mehta presiding.

4              THE COURT:  Good afternoon.  Please be seated,

5    everyone.

6              COURTROOM DEPUTY:  Good afternoon, Your Honor.

7    This is Criminal Case No. 22-15, United States of America

8    versus Defendant No. 1, Elmer Stewart Rhodes III;

9    Defendant No. 2, Kelly Meggs; Defendant No. 3, Kenneth

10   Harrelson; Defendant No. 4, Jessica Watkins; Defendant No.

11   6, Roberto Minuta; Defendant 7, Joseph Hackett; Defendant 8,

12   David Moerschel; Defendant 10, Thomas Edward Caldwell; and

13   Defendant 11, Edward Vallejo.

14             Kathryn Rakoczy, Jeffrey Nestler, Troy Edwards,

15   and Justin Sher for the government.

16             Phillip Linder on behalf of Defendant Rhodes.

17             Stanley Woodward and Juli Haller on behalf of

18   Defendant Meggs.

19             Bradford Geyer on behalf of Defendant Harrelson.

20             Jonathan Crisp appearing remotely on behalf of

21   Defendant Watkins.

22             William Shipley appearing remotely on behalf of

23   Defendant Minuta.

24             Angie Halim for Defendant Hackett.

25             Scott Weinberg for Defendant Moerschel.

1          David Fischer for Defendant Caldwell.

2          And Matthew Peed appearing remotely for Defendant

3   Vallejo.

4          Defendants Rhodes, Meggs, Harrelson, and Watkins

5   are appearing in person for these proceedings.

6          Defendants Minuta, Hackett, and Vallejo are

7   appearing remotely.

8          And defendants Moerschel and Caldwell have had

9   their appearances waived.

10          THE COURT:  Okay.  Good afternoon again to

11   everyone.  Welcome to the defendants who are here; and those

12   who are remote, welcome.

13          Okay.  So we are here scheduled for the hearing on

14   the Rule 12 motions that have been filed.  So I'm ready to

15   proceed with that.

16          Does anybody have anything preliminarily that they

17   want to raise about the motions?

18          Mr. Linder, I know you've got an issue you want to

19   raise about your access to Mr. Rhodes.

20          MR. LINDER:  Yes, sir.

21          THE COURT:  But there are a few ancillary matters,

22   including representation of Mr. Meggs, that I want to take

23   up at the end so I don't have to keep everybody here for

24   defendant-specific matters.

25          So unless there's anything preliminary about the

1    motions, why don't we go ahead and turn to those.  Okay.

2              Mr. Fischer, why don't we begin with you since

3    you've drafted the main document.

4              And feel free, Mr. Fischer, if you'd like, to

5    remove your mask while you're speaking.

6              MR. FISCHER:  Thank you, Your Honor.

7              May it please the Court.

8              Your Honor, as to Count 1, there are two things to

9    keep in mind.  First of all, Congress does not execute laws,

10   and what was happening on January 6th respectfully was not

11   the execution of a law.

12             Under the case of *Baldwin versus Franks*, that

13   court held that, in order to be a seditious conspiracy, the

14   force that the conspiracy is aiming, the force must be aimed

15   at someone who has the authority to execute the law that's

16   being opposed.

17             In this case, the government -- or in the

18   indictment, there are three different laws that are stated

19   in the indictment, and they're very clear.  In paragraph 1

20   of the indictment, it lays this out, but they're the

21   20th Amendment, the 12th Amendment, and also Title III,

22   Section 15.

23             None of those laws, Your Honor, were being

24   executed.  In fact, the 20th Amendment can't be executed

25   because it's a self-operating provision.

1          As to the 12th Amendment, to the extent that
2     anyone would execute it, it would be members of Congress,
3     because Congress conducts the Electoral College.  And as
4     indicated, members of Congress do not execute the laws, they
5     cannot constitutionally execute the laws.  And even
6     theoretically, if Congress could execute a law, *Buckley v.*
7     *Valeo* specifically found that the 12th Amendment is not an
8     example of that.
9          In fact, in *Buckley v. Valeo*, the FEC, in that
10    case, had argued that it had quasi-executive authority.
11    It had a type of executive authority, as an example to show
12    to the Supreme Court at the time, why it would be a
13    precedent, so that the Supreme Court could uphold the FEC
14    having members on its commission who were able to enforce a
15    law, who could execute the law.
16          So, Your Honor, in this indictment, an essential
17    element is missing.  The government -- it's a speaking
18    indictment.  The government has not, in its indictment,
19    alleged a person who is authorized to execute the law, and
20    that would be somebody under Article II; it would be the
21    President or the President's designee.
22          The only possible individuals who could "execute"
23    the laws that they have set forth in the indictment would be
24    the President of the United States or someone in the
25    Executive Branch.

1            And I think the *Baldwin* case is very clear.  There

2    were two cases, the Seventh Circuit and the Eighth Circuit,

3    in *Anderson* and in *Haywood*, also elaborated on the holding

4    in *Baldwin*.  But the plain language of the statute requires

5    someone in the Executive Branch of government, law

6    enforcement or some other type of individual that has

7    authority to execute the law, and there's nothing in the

8    indictment that the government set forth.

9            THE COURT:  So can I just ask, Mr. Fischer,

10   I mean, the premise to this argument and the argument as to

11   Count 4 is that either the terms that are used -- well, that

12   the terms that are in the statute have the same meaning as

13   those terms as they are found in the Constitution.  And in

14   particular with respect to Count 1, your argument is not so

15   much even just definitionally, but your suggestion is that

16   the statute imports the concept of separation of powers into

17   the statute.

18           And I guess the question I have for you is, why is

19   that so?  Why do I have to assume -- or what's the authority

20   for why I should conclude that this particular

21   seditious-conspiracy statute imports the concept of

22   separation of powers and the concept of execution as that

23   term is used in the Constitution, as opposed to an ordinary

24   dictionary-definition meaning?

25           MR. FISCHER:  Understood.

1          Your Honor, my argument isn't that the statute

2    incorporates separation of powers.  My argument is that the

3    phrase "execution of any law" or "execution of the law" is a

4    term that would have been understood as involving the

5    Executive Branch.

6          THE COURT:  Well, but that still begs the question

7    which is why?  In other words, why wouldn't Congress have

8    understood executive -- "execute" to mean what it means in

9    ordinary parlance, which is to carry out, sort of bring into

10   fruition.

11         I mean, those statutory definitions that were

12   cited from sort of contemporaneous dictionaries would

13   arguably cover members of Congress, and almost certainly

14   would cover the Vice President of the United States acting

15   in his capacity as President of the Senate.

16         So why isn't that sort of the beginning and end of

17   it, that the dictionary definitions at the time reach

18   members of Congress and reach the Vice President?

19         MR. FISCHER:  Your Honor, I would dispute that

20   they would reach members of Congress.

21         I don't think -- I'm not aware of anybody ever

22   using the term "execution of the law" to be applied to

23   members of Congress.  I'm not aware that that's ever been

24   done.

25         THE COURT:  Well, it may not be, because we

```
 1   don't -- to your point, we don't traditionally think of
 2   members of Congress as executing a law.
 3              I would sort of grant you that, but this is a
 4   unique situation where they have some constitutionally
 5   prescribed duties that you are suggesting aren't -- that
 6   they don't execute.
 7              And so what you really are left with is not that
 8   this doesn't meet any ordinary understanding, meaning of the
 9   term, but, rather, something that's sort of rooted in the
10   Constitution; this notion that only the President and those
11   who are appointed by the President and inferior officers
12   execute the law.
13              MR. FISCHER:  Well, Your Honor, certainly, the
14   first thing I would say is the Supreme Court, in the 1800s,
15   as the cases that I cite, *Hartwell* and *Germaine* and others
16   indicate, they did look to the Constitution as their
17   dictionary.  That's where they look to.
18              I'd also point out, Your Honor, just as a matter
19   of the plain meaning of the statute, five times in the
20   statute it uses the term "government" as the intended
21   target.
22              So, for example, you could overthrow the
23   government, put down the government, destroy by force the
24   government, levy war against the government, or oppose by
25   force the authority of the government.
```

1           But then it switches over to the part of the

2      statute that we have, where it talks about the target is the

3      execution of a law.

4           The government, I can understand, you could use

5      force against the government, because the government is made

6      up of individuals and made up of people.  So I understand

7      how you could target force against the government.

8           In this particular situation, the force would have

9      to be targeted at someone who's executing the law.  And

10     I think from the plain language, it's a smaller subset than

11     the government.  So I think -- and, of course, as the Court

12     knows, obviously statutes have to be strictly construed.

13     This is a statute where there's virtually no case law.  But

14     to the extent that we have a Supreme Court opinion, it talks

15     about the requirement is that it's targeted at someone who

16     is carrying the laws into execution.

17           THE COURT:  So why didn't the Vice President, in

18     his capacity -- let's set aside members of Congress for a

19     moment.  But why isn't the Vice President executing the

20     12th Amendment?  The 12th Amendment spells out what the Vice

21     President's role is, what he is supposed to do, the statute

22     spells out what he is supposed to do, including right down

23     to where he and others are supposed to be standing.

24           I mean, under the ordinary understanding of

25     execution of a law, why isn't that -- why doesn't that

```
 1   satisfy the statutory term "execute" in this case?
 2            MR. FISCHER:  Because I don't -- the
 3   12th Amendment spells out obligations for the Vice President
 4   and for members of Congress to abide by.
 5            It would be like, for example, suggesting that
 6   Jeff Bezos is executing a law because he's installing
 7   handicap-accessible ramps at Amazon.  He's not executing the
 8   law, he's complying with a duty that's set forth.  And
 9   that's the same thing that the Vice President would be
10   doing, who, by the way, has no executive authority under the
11   Constitution.
12            THE COURT:  No, but we don't think of people in
13   the private sector as executing the law, right?
14   So I'm not sure that analogy holds.
15            I mean, it sort of begs the question that's asked
16   by the government's brief, which is, well, if -- I mean, is
17   it your position that no one executes the 12th Amendment,
18   that no one executes 3 U.S.C. 15, that there's no executer
19   of that law?
20            MR. FISCHER:  No, Your Honor.  For example --
21            THE COURT:  That's not your position or no one
22   does?
23            MR. FISCHER:  Well, Your Honor, my position --
24   I will give the Court an example.
25            If Congress refused to go forward and follow the
```

```
 1   12th Amendment, then the Attorney General could file a

 2   lawsuit, there could be somebody trying to enforce the

 3   dictates of the 12th Amendment.  But not members of

 4   Congress.  Members of Congress just don't execute the law.

 5             I guess a larger point, Your Honor, is, do we

 6   know?  The statute's from 1861.  We have a Supreme Court

 7   opinion -- and I would point out in both Anderson and

 8   Haywood, the Circuit Courts there, the way they translated

 9   Baldwin was that it had to be -- the person had to have a

10   duty to execute the law.

11             THE COURT:  Look, I'm not sure I disagree with

12   your concept -- and I'm not sure the government does

13   either -- that there has to be someone; in other words, that

14   the force has to be directed at someone and that someone is

15   executing a law.  I'm not -- I don't know that the

16   government disagrees with that; I'll ask them when they get

17   up here.

18             But I still come back to the same question, which

19   is, under the plain definition, if I'm supposed to consider

20   the plain meaning of the statute and the term "execute,"

21   "execution" as of its plain meaning and its understanding at

22   the time the statute was enacted, the government has

23   provided statutory definitions of the term "execution" that

24   would seem to encompass the duties that are imposed upon the

25   Vice President and, arguably, members of Congress under the
```

1    12th Amendment and 3 U.S.C. 15.

2              So we're going around in circles here, I know, but

3    the question is again just why isn't that enough, why

4    doesn't that get you there, why doesn't -- in terms of

5    having this conduct meet the elements of the statute?

6              MR. FISCHER:  Your Honor, it would be the only --

7    to my knowledge, the only statute or statutory provision

8    that anybody would ever say that Congress executed.

9              I've never heard -- I don't believe the

10   government's even pointed to any other place where members

11   of Congress execute a law.  So it would seem to me that when

12   they drafted that provision --

13             THE COURT:  Well, Hamilton had suggested -- and

14   we're sort of reaching back, but, I mean, there were

15   provisions of the Constitution that Congress does execute,

16   right?  There were treaty power, appointment power, and

17   certain bills were the sort of three examples he identified.

18   So there's at least some concepts of execution by Congress;

19   would you agree with that?

20             MR. FISCHER:  Well, your Honor, those are sort

21   of -- there are certainly all types of things in the

22   Constitution.  There are checks and balances, the veto

23   power, where there's going to be cross-pollination as far as

24   what the powers are.

25             But the reality is, the Constitution -- take, for

```
1   example, the treaty power, for example.  When Congress has
2   executive power regarding a treaty, what they're talking
3   about is Congress can execute implementing legislation that
4   can then cause the treaty to go into execution.
5          So in the Bowsher case, for example, at 733 and
6   734 in the Bowsher case, Bowsher also talked about the
7   difference between Congress executing a law and Congress
8   engaging in legislation that affects the execution of law.
9   They said Congress can't execute law, but they can affect or
10  indirectly affect the execution of a statute by repealing a
11  law or passing a different law.  So they can affect the
12  execution.  But I think the holding in Bowsher is very
13  clear:  Congress doesn't execute the law.
14         And in this case, Your Honor, a couple other
15  points.
16         THE COURT:  Before you move to your other points,
17  can I -- if I remember correctly, Article I, and I'll forget
18  which section it is, maybe it's Section 1 -- excuse me,
19  Article II, Section 1, speaks of Congress's duties with
20  respect to the election of the President, right?  And this
21  sort of precatory language of that section is words to the
22  effect of, this is the process to elect the President of the
23  United States and the Vice President of the United States,
24  right?
25         So, again, my question is, if that's what the
```

1  precatory language is, that this is action to elect the

2  Chief Executive Officer of the United States, why isn't

3  Congress executing that law to make it come into effect such

4  that a President is elected by the processes and procedures

5  that are set forth in Article II and the 12th Amendment?

6          MR. FISCHER:  Your Honor, I guess for the same

7  reason when Congress votes on -- to declare war, that

8  they're not -- yes, that brings a declaration to effect.

9          THE COURT:  But that's not a great example,

10  because there's authority for the proposition that the

11  declaration of war is exercising executive authority.

12          MR. FISCHER:  Well, it's not -- Congress is not

13  executing executive authority.

14          THE COURT:  Well, it's the execution of law,

15  right?

16          I mean, we've identified some examples of what

17  historically may have been considered execution.  That's one

18  of them; that's another one of them.

19          So sorry to interrupt you, but...

20          MR. FISCHER:  Well, Your Honor, I would say that

21  *Buckley v. Valeo*, I think, very thoroughly went through the

22  issues that the Court is talking about.  And in *Buckley v.*

23  *Valeo*, the Court specifically said that the 12th Amendment,

24  the process in the 12th Amendment is a judicial-in-character

25  function.  It's judicial in character.  I think that case is

1    binding on the Court.

2              THE COURT:  No, it most certainly is.

3              I guess the question comes back to the original

4    one, which is, *Buckley* was about the appointment power,

5    right?

6              And the question was -- or the Constitution vests

7    the appointment power in the President of the United States,

8    because the President of the United States, generally

9    speaking, executes the laws.

10             And the question was, does Congress execute the

11   law for purposes of the appointment power?  And the

12   Supreme Court said no.  And, you know, the 12th Amendment is

13   what they called sort of judicial in nature.

14             But it's not clear to me that answers the question

15   of whether what the 12th Amendment does constitute execution

16   for purpose of the seditious conspiracy statute.

17             MR. FISCHER:  Well, Your Honor, the *Buckley* -- the

18   underpinning of the *Buckley* opinion was the FEC had argued

19   that it had precedent; that Congress had executed, in

20   execution of the 12th Amendment, had passed the statute --

21   what's now section -- or Title III, Section 15 -- and

22   *Buckley* indicated -- basically shot down that argument and

23   basically said, that's not the execution of the law, that's

24   a judicial-in-character function.  Because that's what the

25   FEC was arguing, this was quasi-executive authority in the

1    12th Amendment, and that was specifically rejected in

2    *Buckley*.

3              And, Your Honor, a few other points.  We have a

4    statute here that was originally drafted in 1861.  The

5    purpose of the statute, the reason why it was drafted,

6    I think, was historically fairly obvious.  Lincoln had

7    declared martial law.  And they're sending people out, the

8    militia, the military, to execute the law, to enforce the

9    law.

10             I guess I would ask the Court this question:

11   Is my interpretation of the statute that the word "execute"

12   has its meaning that we sort of understand as far as a

13   separation of powers, that it means to enforce the law?

14   Is that an unreasonable interpretation?

15             If it's not unreasonable, Your Honor, under strict

16   construction, especially considering the statute goes back

17   to the 1860s, and especially at a time, from the cases I've

18   cited for the Court, when the Supreme Court did look to the

19   Constitution for dictionary definitions.  I would submit to

20   the Court that the plain meaning of the statute would mean

21   the enforcement of any law.

22             So, Your Honor, I don't know if the Court has any

23   further questions --

24             THE COURT:  No.  No, I don't think I do.

25             And I'll obviously give you an opportunity for

1     rebuttal if we go -- I guess we'll go count by count; that
2     works just fine for me.
3                 MR. FISCHER:  Awesome.
4                 May I stand down, Your Honor?
5                 THE COURT:  Yes, you may.  Thank you, Mr. Fischer,
6     yes.
7                 All right.  Ms. Halim, you had sort of submitted
8     an additional memo, so I'll give you an opportunity to be
9     heard, if you'd like.
10                MS. HALIM:  Thank you, Your Honor.
11                It is good to be in person and to see everyone.
12                THE COURT:  Yes, it is.
13                MS. HALIM:  Good afternoon.
14                THE COURT:  Good afternoon.
15                And feel free to remove your mask while you're
16    speaking.
17                MS. HALIM:  Oh, thank you.  I appreciate that.
18    Thank you.
19                So on behalf of Mr. Hackett, this attack on
20    Count 1 is different, it's coming from a different angle
21    than that Mr. Fischer just explained to the Court.
22                So this is a motion to dismiss under Rule 7 and
23    the Sixth Amendment of the Constitution, and that is for --
24    because Mr. Hackett respectfully asserts that the
25    indictment, lengthy though it is, is not a plain, concise,

1    and definite written statement of essential facts

2    constituting the offense charged.

3              So I'm just going to repeat that again to parse

4    through Rule 7(c).  I know we all know it very well,

5    especially after all the briefing:  "A plain, concise, and

6    definite written statement of essential facts."

7              I don't have an issue with that.  There are facts,

8    there are facts galore.  In fact, there are hundreds and

9    hundreds of facts spread out over 48 pages, to be exact.

10   So there are a lot of facts.

11             However, the second part of 7(c) is where I have

12   issue with this indictment, particularly in Count 1:

13   Facts constituting the offensive charges.  Looking again to

14   the Sixth Amendment, Mr. Hackett, like all of these

15   defendants, has a right to be informed of the nature and the

16   cause of the accusation.

17             THE COURT:  If I can interrupt you, Ms. Halim.

18             I don't think anybody disputes those sort of

19   general principles about what an indictment is supposed to

20   say or how it's supposed to say it.

21             I thought your argument was that you haven't been

22   given adequate notice of what laws were being forcefully

23   opposed by these defendants.

24             MS. HALIM:  That is one component.

25             THE COURT:  Okay.

1          MS. HALIM:  But there's actually -- and I would --

2   at this point, I'm going to ask the Court and everyone here

3   to view this, the rest of my arguments, through this

4   framework; that is, many of these facts that are stated

5   aren't in dispute, they won't be in dispute, many, not all,

6   but many of them.  At trial, there's not going to be a

7   contest over things like identity, over whether something

8   was or was not written or posted to a chat group, for

9   example.  The dispute here, and it's a big one, is what do

10  those facts mean?

11          So I think that what the indictment does a

12  full-and-fair job of is setting forth all of the facts that

13  the government believes are essential facts.  But then we've

14  got a set of facts, we have to take the next step in the

15  inquiry:  How do those facts break a law?  How do those

16  facts constitute the specific and precise offense that's

17  been charged in this indictment?  And that's where we're

18  lacking.

19          THE COURT:  Well, I guess I don't understand why

20  that is.

21          I mean, look, every -- indictments of this nature,

22  and indictments that involve conspiracy, by their very

23  nature, often are not going to have express communications

24  of agreement.  I think you'd agree with me on that, right?

25          MS. HALIM:  Of course I would.  Of course.

```
1              THE COURT:  So the elements here are that there's
2    a conspiracy.
3              And would you agree with me that it's a reasonable
4    inference or that they've established probable cause through
5    the facts alleged of a conspiracy?
6              MS. HALIM:  Of a conspiracy, yes, of that
7    component.
8              THE COURT:  Okay.
9              So of a conspiracy through the use of force.
10             And would you agree that the indictment sets forth
11   sufficient facts that constitutes the intended use of force?
12             MS. HALIM:  No, I do not.
13             THE COURT:  Even though that there are words in
14   there like "Civil War" and the like, you don't think a grand
15   jury could have concluded that?
16             MS. HALIM:  I think that with respect to the issue
17   of force, that does tie us directly to what law has been
18   broken.
19             THE COURT:  I mean, they're alleged to have
20   brought arms to the outskirts of the District of Columbia.
21             MS. HALIM:  Right.
22             But as the Court knows, merely possessing a
23   firearm does not equate to the use of force, and so...
24             THE COURT:  But all this sounds more like a jury
25   argument to me than the sufficiency of an indictment.
```

```
 1                MS. HALIM:  Okay.

 2                So if I may, if I could take a step back, perhaps,

 3     and try to come at this from a different angle.

 4                The government, in its opposition brief, this is

 5     at page 28, notes the fact that there are 48 pages and

 6     100-some-odd paragraphs of allegations in Count 1.

 7                The government calls those extensive allegations.

 8     I will agree that there is an extensive recitation of facts,

 9     and those are in Count 1 at paragraphs 18 to 134.  However,

10     as to those facts, we have precious little, and what we do

11     have is ambiguous and not clear as to how those facts

12     constitute this crime charged.

13                Paragraphs 14 through 16 --

14                THE COURT:  So if I can interrupt you.

15                Ms. Halim, can you tell me what precisely you

16     think is missing?

17                MS. HALIM:  Yes.

18                THE COURT:  What element of the offense in Count 1

19     is not supported by this indictment with sufficient detail

20     and clarity that would meet both the Sixth Amendment and

21     Rule 7?

22                MS. HALIM:  Most specifically, it's which law was

23     violated.

24                THE COURT:  Okay.

25                Because I thought that to be your main argument.
```

1    And so why does the indictment fall short on that front,

2    where it very clearly says that the laws that were intended

3    to be obstructed by force were the 12th Amendment, the

4    20th Amendment, and 3 U.S.C. Section 15?  Why doesn't that

5    give you the minimal notice that you're required to receive?

6            MS. HALIM:  Because -- and this is why the fact

7    that there are actually multiple conspiracies set forth in

8    here, that's why that's relevant, because those different

9    provisions, the 12th Amendment, the 20th Amendment, and

10   Section 15 of Title III, those would be implicated at

11   different time periods.

12           And since it is not clear which of those the

13   government is choosing, and since the government has set

14   forth -- a fair reading of the facts set forth is that there

15   are multiple conspiracies that span a much greater time

16   frame, and the government, I do believe, has to specify

17   which law was prevented.  They haven't done that.

18           If you take a look at paragraph 16 of the

19   indictment, the second to the last line says, "After setting

20   forth the purpose of the conspiracy, 'including the 12th,

21   the 20th, and Section 15 of Title III,'" "including" to

22   suggest that that might not be all, to suggest that there

23   could be others.  So at a minimum, what this indictment

24   does, it says, we're giving you three options to choose

25   from.

1          THE COURT:  Well, if that's the concern, then why

2    isn't a bill of particulars enough to solve that?

3          In other words, bills of particulars are available

4    to fill in any gaps that you might think the indictment

5    doesn't spell out for an indictment that is otherwise

6    sufficient.

7          And so why isn't a bill of particulars that

8    requires the government to spell out precisely what other

9    laws that they are going to assert to a jury that were being

10   opposed, why isn't that the remedy --

11         MS. HALIM:  Your Honor, in this particular --

12         THE COURT:  -- instead of dismissal?

13         MS. HALIM:  In this particular situation, because

14   this is the government's seventh attempt.  It is not the

15   first indictment that this grand jury has returned.  There

16   were six superseding indictments.

17         THE COURT:  It's the first seditious conspiracy

18   charge.  So it is the first time they've had to identify

19   specific laws that are the object of a seditious conspiracy.

20         MS. HALIM:  It is the first time.  But that was

21   after a year's worth of an investigation that the government

22   told us over and over again was ongoing.  So they had the

23   material, they presented it to the grand jury, and it would

24   have been easy, abundantly easy, after the year's worth of

25   material that they had gathered, to specify specifically

1    what law Mr. Hackett violated.

2            THE COURT:  Okay.

3            So just bear with me, because maybe I'm just not

4    following you, but let me ask you this:  Would you concede

5    that the 12th Amendment, the 20th Amendment, and 3 U.S.C. 15

6    are laws?  I'm not trying to be facetious.

7            MS. HALIM:  Yes.

8            THE COURT:  I want to make sure we're all in

9    agreement that those are laws.

10            MS. HALIM:  May I -- with the caveat that I adopt

11    Mr. Fischer's argument under Rule 12.

12            But, yes, I agree with the Court.

13            THE COURT:  Right.  That's a question of what the

14    verb "execution" --

15            MS. HALIM:  Yes.

16            THE COURT:  -- or -- "execution" in that statute

17    means.

18            But those are the laws.

19            I mean, I thought I heard you say that the

20    indictment doesn't identify the laws that were being

21    obstructed.

22            Now, we can talk about multiple conspiracies, et

23    cetera, but the indictment almost surely identifies the

24    laws.

25            Now, if the government has some other laws,

1    because they've used the term "including," I think -- it

2    seems to me, you know, you could flush that out with a bill

3    of particulars.

4            But I don't understand, again, why you think that

5    makes this indictment Count 1 insufficient as a matter of

6    law under Rule 7 and the Sixth Amendment.  I'm not seeing

7    it.

8            MS. HALIM:  Okay.

9            I do not believe that it is constitutionally

10   sufficient for the government to charge a statute that

11   requires proof that there was an attempt to hinder the

12   execution of a law, any law, and then doesn't specify what

13   that law is, but, instead, provides three different options.

14           It is inconceivable to me that it is

15   constitutionally sufficient for the government to put in

16   plain writing, I'm going to prove one of these three against

17   you.

18           THE COURT:  Well, maybe I don't quite comprehend

19   that either, because -- two things; one is, the conspiracy

20   doesn't have to only be aimed at the -- or the hindrance of

21   one law, it can be multiple laws, right?  You would agree

22   that a conspiracy can have -- like this, can have multiple

23   objects.  In fact, conspiracies regularly have multiple

24   objects.

25           MS. HALIM:  But not seditious conspiracy, which

1  specifically states that it's about hindering the execution

2  of a law.  So it's a little different than your ordinary

3  371 conspiracy, where we're just talking about agreement.

4          It's so rare, for example, to see an indictment of

5  371 conspiracy alone, right?  You see the --

6          THE COURT:  Would you then say -- would the

7  indictment be sufficient if the conspiracy charge that is

8  Count 1 was, in fact, three counts?  Count 1 alleges

9  hindering of the 12th Amendment, Count 2 alleges hindering

10  of the 12th Amendment, Count 3 alleges hindering of 3 U.S.C.

11  15.  Would that be enough in your view?

12          MS. HALIM:  I believe I would concede at that

13  point.

14          THE COURT:  Okay.

15          MS. HALIM:  But that's not --

16          THE COURT:  So the fact that it's all lumped into

17  one is the problem you're having.

18          MS. HALIM:  It is a problem, because -- and

19  especially I'm thinking forward to jury instructions, for

20  example, and the jury getting to deliberate and thinking,

21  okay, maybe this person hindered this.

22          THE COURT:  We could solve that with a jury

23  instruction.  I could say, look, you have to unanimously

24  conclude which law of these three laws that these defendants

25  violated.  I mean, that's easy enough and we do that all the

1    time.  I just -- you're asking for dismissal of Count 1.

2    That's quite a remedy for something that seems to me could

3    be solved by a jury instruction.

4              MS. HALIM:  You know, it is, though, the remedy

5    that's contemplated when the indictment does not meet the

6    requirements of Rule 7(c) and the Sixth Amendment right to

7    be informed of the nature and the cause of the accusation.

8              And, again, I do think it's relevant.

9    I understand the Court's point that this is the first time

10   the grand jury returned an indictment regarding seditious

11   conspiracy; however, the government -- let's be honest, the

12   government's driving what the grand jury is seeing and what

13   the grand jury is going to conclude, and for one year, that

14   never entered the grand jury space.

15             So up until January, everyone is put on notice

16   that many of the facts, many of the facts that are in

17   paragraphs 18 to 134, they're the same facts that were in

18   indictments 1 through 6 in the Caldwell matter.  Those

19   facts, the government contended, were -- those facts go to

20   delaying or hindering the certification of the Electoral

21   College vote specifically on January 6th.

22             Now the government says this same set of facts

23   proves seditious conspiracy and then says that there was a

24   violation of some law, in, perhaps, the 12th,

25   20th Amendments of the Constitution, or Section 15 of

```
 1   Title III but don't specify which.
 2            It is relevant that the government and the grand
 3   jury didn't do the work to specify the actual law because of
 4   the history of this case.  So I don't think they're
 5   unconnected matters.  I do think we have to see this as one
 6   evolution.
 7            THE COURT:  Okay.
 8            MS. HALIM:  And so this lack of specificity in the
 9   context of this very unique case where we are now on
10   indictment version No. 7, I do think the remedy of dismissal
11   is the appropriate one here, though it's -- I understand
12   it's a big remedy to ask for.
13            THE COURT:  Okay.  All right.  Anything further,
14   Counsel?
15            MS. HALIM:  No, I don't have anything.
16            THE COURT:  All right.  Thank you.
17            All right.  So with that, why don't we turn to the
18   government.
19            MR. PEED:  Do you want hear from Mr. Vallejo,
20   Your Honor?
21            THE COURT:  I suppose so, Mr. Peed.  And maybe you
22   weren't -- what I had said a long time ago, and maybe you
23   weren't part of the group, was that if you were going to
24   seek to be heard orally at these hearings, then you should
25   be here in person.  And you're not, so I assumed you didn't
```

1    want to be heard.  But why don't we go ahead and hear from

2    you then.

3            MR. PEED:  Thank you, Your Honor.  I wasn't aware

4    of that instruction.  And I wanted to be there, but I

5    contracted COVID, so I didn't want to bring that to the

6    courtroom.

7            THE COURT:  Good reason not to be here.

8            MR. PEED:  I apologize for not being there.

9            I just wanted to add, Mr. Vallejo's motion,

10   ECF 95, sort of, I think, touches upon some of the arguments

11   from both of the prior counsel.

12           To the Court's question of would it have been --

13   would the problem be solved with a three-count indictment

14   with each law.  I think that that would -- the argument from

15   Mr. Vallejo is that there's a particular form of fault in

16   the indictment by combining laws, if any one of them doesn't

17   work, when you combine them together, then you've got a

18   count that has -- you don't know which one the grand jury

19   picked; and so if there's any one that doesn't work, then

20   you've got --

21           THE COURT:  So let me ask you this.  You've

22   suggested that if, say, hypothetically, I were to agree with

23   defendants that you cannot seditiously conspire to interfere

24   with the 20th Amendment, okay, that's the argument at least

25   that -- one of the arguments that's been made, your remedy

1   for that would be to dismiss Count 1, as opposed to excise

2   the 20th Amendment as an object of that conspiracy?  I mean,

3   isn't the rule that you can narrow an indictment if it's

4   deficient in one of its objects, or a conspiracy is

5   deficient in one of its objects?

6          MR. PEED:  Well, I don't think you can under

7   *Yates*, Your Honor.

8          I may be wrong on this, but I think the way to go

9   would be dismissal without prejudice, which is not that

10  drastic a remedy, it's just telling the government to go

11  make a cleaner charging document.

12         THE COURT:  Well, look, if the objects of the

13  conspiracy are A, B, and C, and for some reason C is

14  deficient, legally deficient, why do they have to go back to

15  the grand jury to ask for a conspiracy as to only A and B?

16         MR. PEED:  Well, objects are not usually legally

17  determinative in the way that it is here.

18         So here, the charge is to block the execution of a

19  particular law.  And so if A, B, and C are three different

20  laws, then you've got a legally deficient one that the grand

21  jury --

22         THE COURT:  But why?

23         The purpose of the conspiracy was to prevent,

24  delay, and hinder the execution of the following three laws:

25  12th, 20th, and Title III, Section 15.  Isn't the proper

1   reading of that to be that the grand jury found probable

2   cause as to all three?

3            MR. PEED:  Well, perhaps, Your Honor.  But you

4   could look at it as some voted for A, some voted for B, some

5   voted for C, and you had enough.

6            Just like Your Honor talked about you'll have to

7   have jury instructions about unanimity to ferret that

8   process out.  But there was no ferreting that out in the

9   grand jury stage.  That would be something the Court would

10  do at the petit jury stage.

11           So because there was no ferreting of it out, we've

12  got this amalgam of three different laws, one of which may

13  be invalid but which may be the one that carried the day for

14  some of the grand jurors.

15           So, you know, I think the remedy for that is just

16  how the government -- a dismissal without prejudice of

17  Count 1, have the government break it into three counts, and

18  then we'll know if the grand jury does not return sufficient

19  votes for one of them, then we know that that process

20  worked.

21           THE COURT:  Okay.

22           And what case stands for the proposition that

23  I couldn't -- that the proper remedy isn't what I've

24  suggested, which is that you'd simply excise the legally

25  deficient or legally insufficient object of the conspiracy?

1          MR. PEED:  I looked for this, Your Honor.  And

2     Your Honor may be right that, I think for practical

3     purposes, it would suit the defense the same as long as the

4     deficient one is taken out.

5          I looked at *Yates*, which is about the petit jury

6     stage.  And basically the reasoning that -- the reason I

7     cited *Yates* was, if you can't go and get a conviction that

8     would stand under this indictment, then, you know, why would

9     it be legal to start the process?

10         But, you know, I couldn't find a case that applied

11    *Yates* to require a return of an indictment with the charges

12    separated out.  You know, just logically, if you can't go to

13    the jury and get a conviction of the indictment, it makes

14    sense to dismiss it at this stage, I think.

15         THE COURT:  All right.  Anything further,

16    Mr. Peed?

17         MR. PEED:  Yes, Your Honor.

18         You know, I think counsel for Mr. Caldwell

19    presented the arguments very well.

20         You know, the Court asked several times about why

21    isn't execution when government officials, as opposed to

22    private officials, are following the dictates of the law.

23         And I think the issue that we want to emphasize

24    for the Court is that, you know, especially since the

25    precedent states this is a judicial-type proceeding, the

government's interpretation that anytime a government
official follows the dictates of the law, they are executing
the law.

It would basically make seditious conspiracy
coterminous with any forcible obstruction of a judicial
proceeding.  I don't think that sort of expansive reading of
seditious conspiracy really could be adopted by the Court.

I mean, right now, the Court is obeying numerous
statutes governing hearings in the federal court system.
But the Court isn't executing any of them, it's just simply
embodying them, in a sense, obeying them.

And what I point out in reply to the government's
question of, does that mean the 12th Amendment never gets
executed?  No, we can all imagine a scenario where the
losing party's Vice President doesn't want to open the
envelopes, even though he's instructed to by the
Constitution.  And so there would have to be some execution
of that provision upon that rebellious Vice President.

THE COURT:  So a lawsuit compelling the execution
of the law -- or a lawsuit compelling adherence to the
12th Amendment would constitute execution with, but actual
adherence to the 12th Amendment would not?

MR. PEED:  Execution of that judgment.

So if the Vice President refused to do his or her
duty and there was a lawsuit to execute it, at some point,

1    the force of the Court, through the Executive Branch or

2    through its own officers, perhaps, there's some point where

3    the law is executed in a forceful way upon those who will

4    not follow it.

5            And so a Vice President who refuses to open the

6    envelope is not following the law, and a Vice President who

7    opens the envelope is following the law, but in neither case

8    is the Vice President executing the law.  It may have to be

9    executed upon that Vice President, but just opening it is

10   not executing.

11           THE COURT:  Okay.

12           All right.  Real quick before I turn to the

13   government.  Just one question I wanted to ask that I forgot

14   to ask of Mr. Fischer.

15           Can I just ask you, Mr. Fischer, your position on

16   whether you think a Capitol Hill police officer is someone

17   who's executing the laws of the United States?

18           MR. FISCHER:  A Capitol police officer is not

19   executing the election laws.  And I believe the Capitol

20   Police are not under the Executive Branch, I believe they're

21   entirely under Congress, so they would not be Article II.

22           Now, of course, Article II -- there could be

23   Article II designees.  Obviously, if the President, for

24   example, called the militia into service or used posse

25   comitatus or some other type of statute to be able to compel

1    other people to come to -- and be under his Article II

2    wings, then that could be a case.  But with the Capitol

3    Police, they're under, I believe, Speaker Pelosi's control,

4    if I'm not mistaken.

5              THE COURT:  Okay.  All right.  Thank you.

6    I appreciate that.

7              MR. FISCHER:  Thank you, Your Honor.

8              THE COURT:  All right.  Let's hear from the

9    government.

10             MR. NESTLER:  Good afternoon, Your Honor.

11             THE COURT:  Good afternoon, Mr. Nestler.

12             MR. NESTLER:  The government believes it's

13   important to start with the procedural posture here.  We're

14   here at a Rule 12 motion-to-dismiss stage.  None of the

15   defendants or any of the cases they've cited have dealt with

16   a case in which a court has dismissed a seditious conspiracy

17   indictment at the motion-to-dismiss stage, and we believe

18   that is important.

19             What the defendants here are asking the Court to

20   do is to dismiss the entirety of this indictment for failing

21   to state an offense.  As the Court pointed out during its

22   colloquy with opposing counsel, that is a low standard, it

23   is a low bar, and the government believes it has been easily

24   met here, that the indictment does state an offense.

25             THE COURT:  But if the indictment fails in terms

of its legal sufficiency; in other words, if the defendants are right that members of Congress can't execute a law for purposes of the seditious conspiracy statute, why do we have to wait to go to trial to dismiss the case? Isn't the remedy at this point -- that's a legal issue, it seems to me, that's not a factual one. If as a matter of law Congress doesn't execute any law, then you've got no basis for Count 1.

MR. NESTLER: Well, Count 1 doesn't specify that it's Congress that's executing the law.

Count 1 charges that the defendants conspired to oppose by force the lawful transfer of Presidential power, including the 12th and 20th Amendments and 3 U.S.C. 15. There's not an allegation in the indictment that only Congress is executing the law.

THE COURT: Okay.

So if not -- well, let me ask this: Who do you say is executing the law -- the three laws that you've identified?

MR. NESTLER: Well, the government is what's executing the law.

And that's when we get back to what you asked defense counsel, and you said you would ask the government the same question is, are these laws self-executing. And the answer is, no, that the government has to execute the

1   laws, they don't just come into being by themselves.

2          The government itself has to bring them into

3   execution.  Of course, the government acts through its

4   officers and employees and governmental actors, but it is

5   the government itself.  And so the government suggests we

6   get back to the language of the statute of 2384, which is

7   talking about the government.

8          And Mr. Fischer made a point which we think

9   actually has some intuitive sense, at least initially, which

10  is that 2384, the statute itself, refers to the government

11  and many of its prongs.  And in the prong the government has

12  charged here in the indictment that the grand jury used is

13  the execution of any law of the United States and does not

14  specify that the government has to be the entity executing

15  that law.  It's written in a phrase "hinder or oppose or

16  delay the execution of any law of the United States."

17         Now, in the 1800s and the early 1900s, the

18  government charged a couple of cases, both in *Baldwin versus*

19  *Franks* and then in the World War I era cases, where the

20  object of the conspiracy was focused on not government

21  actors but on private actors, on Chinese laborers in *Baldwin*

22  *versus Franks*, and on people -- and entities that were

23  contracting with the government to provide the government

24  with war supplies during World War I.

25         THE COURT:  Mr. Nestler, can I interrupt you?

1          So defendants have relied on two Circuit Court

2    decisions, *Anderson versus U.S.* from the Eighth Circuit,

3    1921; and *Hayward versus U.S.*, Seventh Circuit, 1920.

4          *Hayward versus U.S.* very specifically says that

5    the conspiracy has to be directed at someone "Who has the

6    authority to execute and who is immediately engaged in

7    executing a law of the United States."  *Anderson versus U.S.*

8    says, the conspiracy must be against, "Those whose duty it

9    should be to execute the laws."

10         Both of those cases, at least the defendants seem

11   to say, means that you've got to identify who it is, an

12   individual, because the law is only executed through an

13   individual -- well, let me ask you this:  Do you agree that

14   the indictment, or at least at trial, let's put the

15   indictment aside for a moment, at trial, you will have to

16   identify who it is that is executing the laws that these

17   defendants are accused of disrupting?

18         MR. NESTLER:  No.

19         THE COURT:  And in your view, then it is

20   sufficient that it is the government writ large that is

21   executing the law; is that right?

22         MR. NESTLER:  Correct.

23         It's the government itself, using the phrase back

24   from *Baldwin versus Franks*, which is government as

25   government.  It's the government itself.

1          THE COURT:  So is the government then, this

2     government, you, today, are you disagreeing with the

3     holdings in *Anderson* and *Hayward* or at least some of the

4     text in *Anderson* and *Hayward* that seems to suggest that the

5     conspiracy must be directed to a person who's executing the

6     law, as opposed to the government writ large?

7          MR. NESTLER:  The way we read these cases is

8     distinguishing the government from the private actors.  And

9     so when those two Circuit Court opinions from the 1910s and

10    early 1920s were talking, they were distinguishing the

11    producers of war munitions and the producers of the

12    different machinery of war that the government was

13    contracting to obtain from the government itself.  And so

14    when it used those phrases about opposing the authority of

15    the government, people who execute the laws, it's

16    distinguishing it from private actors.

17          And so the point I was making, Judge, is that when

18    we go back to the statute of 2384, what the Supreme Court

19    did in *Baldwin* and then the Seventh and Eighth Circuits did

20    around the World War I era cases is it limited that phrase

21    back to the government.

22          So in other words, when the charges were broader

23    than just the government, they included private actors in

24    the 1800s, early 1900s, these cases stand for the

25    proposition that we're getting back to the government

```
 1   itself.
 2            And that is exactly what we charge here, which is,
 3   it is the government itself.  And so rather than what
 4   Mr. Fischer says is that the execution of any law is somehow
 5   more limited than the other prongs talking about the
 6   government of the United States, our position is that it's
 7   not; in fact, it's coterminous.
 8            THE COURT:  So if you're right -- let me ask you.
 9   I mean, if your interpretation, understanding of 2384 is
10   correct, which is that it is the government writ large that
11   is being referenced here in terms of execution of any law
12   and the government doesn't need to identify who the actor
13   is, the government actor is who's identifying the law,
14   what's the best authority you have for that proposition?
15            MR. NESTLER:  Well, the remainder of the World
16   War I era cases which we cited in our brief are along those
17   lines.
18            The laws is in those cases that the seditious
19   conspirators are alleged to have violated were the draft
20   laws and the Congress's proclamation of war against Germany
21   or declaration of war and the President's proclamation of
22   war and various appropriations bills.  And so in those
23   cases, there's various different statutes that the
24   government had charged that the conspirators were trying to
25   hinder and oppose.
```

1          And in those cases, the allegations didn't focus

2    on individual actors.  It's not one selective service

3    officer trying to conscript somebody.  The allegations there

4    were that the conspirators planned to oppose by force the

5    actions of the government writ large, the government itself,

6    from enforcing those laws, from executing those laws.

7          THE COURT:  And so I guess the question then

8    becomes, in your view, the government's alleged that -- the

9    suggestion has been made that these laws aren't executable;

10   in other words, even if you're right that they don't have

11   to -- you don't have to identify somebody specific and it

12   can be the government's execution of the laws, the

13   defendant's position is still, these aren't laws that are

14   being executed, these are laws that are, I guess, in

15   Mr. Peed's term, more sort of procedural rules, akin to

16   procedural law rules and not actual laws that are executed

17   in the sense that -- well, at least in the sense that

18   perhaps it's conceived of in Article II.

19         MR. NESTLER:  We disagree.

20         We believe these are laws that need to be carried

21   out, just like most other laws in our government are.

22         We acknowledge that it is a unique circumstance

23   that Congress in this situation is playing an integral part

24   in executing the laws, which Congress does not normally

25   execute laws.  And we agree that defense counsel cited

1    numerous cases where the Supreme Court has said Congress

2    does not execute laws, the Executive Branch executes law.

3    That is normally true.

4            But there are certain circumstances, and

5    Your Honor pointed that out during the colloquy, where

6    Congress does execute a law, Congress executes treaties,

7    Congress declares war.  And in this situation, Congress has

8    an integral part in our government in declaring who the next

9    President is going to be.

10           When we talk about the 20th Amendment, the

11   20th Amendment is not self-executing.  How would anybody

12   know who is going to be the President as of 12:01 p.m. on

13   January 20th?  There's only one way that we all know who

14   that person is going to be.  And it's not from the news

15   reporting or what we watch on news about who had the most

16   Electoral votes.  It's because the Vice President, in a

17   joint session of Congress, as required by the 12th Amendment

18   and 3 U.S.C. 15 and 16, declares -- that's what the statute

19   requires, that the Vice President has to declare orally in

20   the joint session who the winner of the election is.

21           THE COURT:  So you're right, that's what the

22   process is.

23           So if that's right, then how does any further

24   conspiracy in this case prevent the execution of the

25   20th Amendment?

1          In other words, the 20th Amendment simply says the

2    current President's term ends at a certain time and the new

3    President's term begins at a specific time.  It doesn't say

4    anything about a public oath, it doesn't say anything about

5    marching down the steps to the inaugural stage, it simply is

6    a timing mechanism.  That's it.  It defines when a term ends

7    and when the next term begins.

8          So how do the allegations in this case prevent or

9    hinder the execution of that law?  It seems to me to be, by

10   definition, self-executing.  The President's already been

11   selected.

12          MR. NESTLER:  So two answers to that, Judge.

13          First is that, we believe, is a question for the

14   jury, which is, whether the government's facts as proven at

15   trial are sufficient to prove that the defendants conspired

16   to prevent or hinder the execution of the 20th Amendment.

17   That's ultimately a question for the jury and shouldn't be

18   decided at the Rule 12 stage.

19          THE COURT:  Well, why is that?

20          I mean, I'd asked the same question, I think, of

21   Ms. Halim, which is that -- or maybe I didn't -- but I mean,

22   this is a legal issue; in other words, if this is not a law

23   that you've identified that even the government does not

24   execute -- I mean, say, hypothetically, Count 1 only said,

25   you know, prevent, hinder, or delay the execution of the

20th Amendment, if I were to conclude that, as a legal

matter, it's a legal impossibility to do so, then why isn't

dismissal the right remedy in that case?  Why do I have to

wait to get to a jury about it?

MR. NESTLER:  A couple of answers.

First of all, seditious conspiracy is a conspiracy

like any other conspiracy and it's an inchoate crime.  And

so impossibility is not a defense.  The crime is the

agreement.  The crime is not the action.

THE COURT:  Well, but it is -- you're right, but

factual impossibility is not a defense, but legal

impossibility is a defense.  Legal impossibility is always a

defense.

And so if it's legally impossible to prevent,

delay, or hinder the execution of the 20th Amendment, it

doesn't matter that they thought they were doing that and

they were wrong.  That's still a legal defense, it's an

absolute defense, and one that seems to me ought to be able

to be resolvable at a motion-to-dismiss stage.

MR. NESTLER:  And the second answer to

Your Honor's question is asking the government to proffer

the facts that the government would adduce at trial that

would support the defendants' conspiracy in order to

violate -- or in order to prevent, hinder, or delay

execution of the 20th Amendment.  So that's, again, why

1    we believe it's an appropriate question for a jury to

2    ultimately decide.

3          THE COURT:  Well, but what in the indictment

4    points to -- I mean, you've pointed to overt acts following

5    January the 6th.  But I'm still a bit at a loss to

6    understand how, even if those overt acts are in furtherance

7    of some conspiracy, is a conspiracy to prevent, hinder, or

8    delay the operation of the 20th Amendment.

9          Help me understand that, because it seems to me by

10   reading the 20th Amendment, nobody has to do anything, not

11   an individual, not the government writ large.  What has to

12   be done happened, at least in this case in the early morning

13   hours of January the 7th, right?  Joe Biden was declared the

14   next President of the United States, and all the

15   20th Amendment does say when President Trump's term of

16   office ended and his term of office began.

17         So help me understand how there can be a seditious

18   conspiracy aimed at the 20th Amendment?

19         MR. NESTLER:  Sure.

20         So, first of all, Your Honor, the government is

21   not required to allege any overt acts in the indictment.

22   We have done so here, but we were not required to have done

23   so.  And so we believe under Rule 12 and under Rule 7, a

24   concise, plain statement alleging the object of the

25   conspiracy is adequate in order to survive.

49

1          THE COURT:  Okay.  But now that you've done it...

2          MR. NESTLER:  Okay.  So now that we've done it,

3    we can talk about what facts or what allegations the

4    government believes it could adduce or what the defendants

5    could have possibly tried to do that would interfere or

6    prevent or delay the execution of the 20th Amendment, and in

7    that situation, it is an effort to prolong President Trump's

8    tenure in office.

9          And so the effort to keep President Trump in

10   office and the effort to delay Joe Biden from assuming that

11   office is what we believe the conspiracy -- or the facts

12   supporting the conspiracy will show.

13         And so if that was an effort, whether it was going

14   to be successful or not, of the defendants to prolong

15   someone's term in office, that would, in that sense, not

16   allow the 20th Amendment to be executed by the government;

17   in other words, not allow the changeover in power on

18   January 20th at noon.

19         THE COURT:  So the government's theory at trial is

20   going to be not simply that they attempted to disrupt the

21   certification of the Electoral College, but that also, even

22   after January the 6th, the conspiracy continued, and the

23   purpose of that conspiracy was to prevent Joe Biden, who

24   had, on January 7th, been declared the next President of the

25   United States, from becoming the President of the

1    United States by operation of the 20th Amendment?

2              MR. NESTLER:  Correct.

3              Just because Vice President Pence declared

4    Joe Biden the next President of the United States on the

5    morning of January 7th did not mean that it was going to

6    happen.  So there were still efforts that could be

7    undertaken by others in order to try to prevent that from

8    occurring.

9              THE COURT:  But help me understand that in the

10   following sense -- and maybe what you're saying is that they

11   were intending to keep President Trump there by force as

12   long as they could, and maybe if that's the allegation, then

13   help me understand it.

14             But it seems to me the way the 12th Amendment and

15   the 20th Amendment operate is that once the votes are

16   counted and it's declared who has the most votes, that

17   person is then identified as the next President of the

18   United States; in this case, it was President Biden --

19   now President Biden.

20             By operation of the 20th Amendment, that person

21   then becomes President at 12:01 p.m. on January the 20th.

22   Whether that person is standing on the steps of the Capitol

23   or in the basement of their home in Delaware, why doesn't

24   that person become the President of the United States by

25   operation of the 20th Amendment and how can that be hindered

1    by force?

2           MR. NESTLER:  The hindrance by force can also

3    focus on the person leaving office.  And so the idea of

4    the -- if there was a conspiracy to use force to retain

5    somebody in office, such that that person would be arguably,

6    according to the conspirators, not relinquishing power or

7    not being able to relinquish power on January 20th at noon,

8    then if the object of the conspiracy is to frustrate the

9    execution of the 20th Amendment, which is, in other words,

10   not making it clear that the transfer of Presidential power

11   has been completed from the outgoing administration into the

12   incoming administration, the government's ability to

13   transfer that power from one person or one administration to

14   the next could be prevented or hindered or delayed.  That is

15   one of -- we're not saying that is the only -- but that is

16   one of the purposes of the conspiracy.

17          THE COURT:  So to be precise about it, at least in

18   my mind, the government's allegation is that an object of

19   this conspiracy was to prolong President Trump's term in

20   office beyond January 20th, 12:01 p.m.?

21          MR. NESTLER:  Yes.

22          THE COURT:  Okay.

23          Say I disagreed with you that that states a

24   seditious conspiracy or a valid legal object of a seditious

25   conspiracy, you've identified three laws in Count 1.  And if

1    I were to say, for example, that it's a legal impossibility

2    to seditiously conspire to prevent, hinder, or delay the

3    12th Amendment, then what?  What's the remedy in that case?

4            MR. NESTLER:  The remedy is Your Honor could order

5    the limiting of the indictment to not allow the government

6    to present the theory of the 20th Amendment to the jury.

7            THE COURT:  Okay.

8            And what would that mean in terms of trial

9    presentation?  Would that mean that I would -- would the

10   conspiracy then have to -- would the conspiracy then be

11   defined to have ended on January the 6th?

12           MR. NESTLER:  We'd have to think about how to

13   answer that question about putting an end date on the

14   conspiracy.  We have to think through that limitation,

15   Your Honor.

16           THE COURT:  Okay.

17           I mean, I'm not making an evidentiary ruling,

18   I'm just trying to figure out how this would play out,

19   because, I mean, you could still make the argument that the

20   conduct after the 6th was still relevant to the state of

21   mind and the conspiracy.  I get all that.  But I'm just

22   trying to understand what it would mean for the definition

23   of the conspiracy if I were to conclude that the

24   20th Amendment is not a proper object.

25           MR. NESTLER:  Understood.

```
1              THE COURT:  Okay.

2              And would that require going back to the grand

3    jury or simply narrowing the indictment as it stands?

4              MR. NESTLER:  No.  That would require the

5    narrowing down of the indictment as it stands.  We believe

6    there's sufficient authority for the Court to do that if the

7    Court saw fit to do so.

8              THE COURT:  Okay.

9              You know, Ms. Halim has complained that there are

10   only -- that you've used the term "including," I can't

11   remember what paragraph it's in.

12             As you stand here right now, are there other laws,

13   other than the three that are identified in the indictment,

14   that the government will claim at trial that these

15   defendants attempted to prevent, hinder, or delay?

16             MR. NESTLER:  I'm not prepared to fully answer

17   that question, Your Honor.  The Electoral Count Act,

18   of course, encompasses more than just 3 U.S.C. 15, it

19   encompasses 3 U.S.C. 15 through 18 --

20             THE COURT:  Right.

21             MR. NESTLER:  -- which are related provisions of

22   the Electoral Count Act.

23             But other than that, I'm not prepared to fully

24   answer that question.  The word "including" is present in

25   the indictment, in paragraph 16 of the indictment.
```

1           THE COURT:  When would you be prepared to answer

2    that question?  I mean, we are set for trial in this case.

3           MR. NESTLER:  If the defense saw fit to file a

4    motion for a bill of particulars, we would have that

5    conversation with them.  The defense saw fit to file, under

6    Rule 12, a motion to dismiss the entirety of the indictment

7    and not get into the particulars of what other laws, if any,

8    that the defendants conspired to.

9           THE COURT:  Right.

10          This isn't -- I'm not suggesting you are, but this

11   isn't a game of hide the ball.

12          I mean, the defendants are entitled to know

13   exactly what they're accused of doing and exactly which laws

14   they are claimed -- you're claiming they seditiously

15   conspired to impede.

16          MR. NESTLER:  Sure.

17          And as I think Your Honor pointed out when having

18   the colloquy with defense counsel, when conspirators get

19   together to violate a law, they don't typically identify the

20   law they're trying to violate or the law they're trying to

21   stop.  What they do is they speak in plain terms.  And so --

22          THE COURT:  Sure.

23          But the government should know by now how those

24   plain terms would translate into U.S. Code provisions or

25   regulations or whatever else you all think might qualify as

1     a law.

2                MR. NESTLER:  Understood, Your Honor.

3                We are not playing hide the ball.  There's no

4     other law right now I can think of as I'm standing here, but

5     I'm not prepared to commit the government going forward

6     binding us to not identifying anything else.

7                THE COURT:  Okay.

8                MR. NESTLER:  What Ms. Halim pointed out to, she

9     was arguing about how the government had pointed out all

10    those facts or alleged all these facts in the indictment,

11    and the government's position is, especially here at the

12    Rule 12 stage, what those facts mean is ultimately up to the

13    jury.  So we have alleged the facts here and it's up to the

14    jury to determine whether those facts adequately prove a

15    violation of the law as it has been alleged.

16               THE COURT:  Just to make sure -- I keep going back

17    to this point because maybe I did not appreciate it in your

18    briefing, but, you know, *Baldwin* says -- and I'm sort of

19    quoting from *Baldwin* -- that essentially the element of "to

20    force" -- "to prevent, hinder, or delay the execution of any

21    law of the United States, there must be a forcible

22    resistance of authority of the United States while

23    endeavor" -- I guess it must be endeavoring, "to carry out

24    the laws into execution."

25               So is it the government's position that that is

1    essentially the element of proof and that you do not need to

2    specify a particular individual or person who is endeavoring

3    to carry out the laws into execution, so long as whoever

4    that may be is a government official of some kind?

5                MR. NESTLER:  Correct.

6                THE COURT:  Okay.

7                MR. NESTLER:  And this goes to the idea of

8    seditious conspiracy itself.

9                The crime is not targeted at an individual, the

10   crime is targeted at the government and the government

11   itself, and that's why we believe it's an appropriately

12   charged crime here.

13               And Mr. Fischer talked about sort of the different

14   branches of government and how this should be focused on the

15   execution of laws for the Executive Branch, and our position

16   is there's absolutely no authority for limiting 18 U.S.C.

17   2384 to only the efforts of one branch of government.

18   We have a government, a single government in our system of

19   government.  And so opposing the government, opposing the

20   execution of the laws of the government or by the government

21   is sufficient.  We're not only talking about one branch.

22               THE COURT:  So would you say that if a court of

23   law convenes a trial and a group of individuals take up arms

24   to prevent that trial from going forward, that that would be

25   a seditious conspiracy against the execution of any law of

1    the United States?

2            MR. NESTLER:  We take the position that the Court

3    can execute a law, yes.

4            Now, whether a single judge or a single courthouse

5    would constitute the government acting as government is sort

6    of a different question and it requires some sort of

7    line-drawing exercise.

8            The defendants haven't challenged this statute on

9    any kind of due process or vagueness grounds, so we don't

10   need to engage in any line drawing here.  We believe

11   Congress declaring who the next President is going to be and

12   a transfer of Presidential power really is a core function

13   of the government and really is the government acting as

14   government.

15           THE COURT:  So I was just trying to understand how

16   far your argument goes.  And so your ultimate response to

17   Mr. Fischer and his *Buckley* citation is, even if

18   hypothetically we were to accept that *Buckley*'s observation

19   about the 12th Amendment and the Electoral College Act is

20   "judicial in nature" doesn't really matter because it is

21   still a government function that is being disrupted?

22           MR. NESTLER:  Correct.

23           And when the Supreme Court was discussing the

24   12th Amendment, it was in the context of talking about what

25   Congress is doing under the 12th Amendment, similar to what

Congress was doing when judging the qualifications of its

own members under Article I.  And that's when the

Supreme Court used the phrase, I think, judicial in nature

or judicial in character, from *Buckley*.  But that is wholly

different from the question that's before the Court here and

what the defendants are alleged to have done here.

THE COURT:  Okay.  I think I understand your

position.

MR. NESTLER:  Thank you, Your Honor.

THE COURT:  All right.  Thank you.

Mr. Fischer.

MR. FISCHER:  If the Court please, Your Honor,

just a few points.

First of all, the government's interpretation of

2384, they've basically interpreted that it applies to

anybody in the government basically at any time.

By its own words, it has to be people who would be

authorized to execute the particular law in question.

It would be silly to think that you could prosecute someone

for conspiring to violate laws of the IRS by saying they

targeted border and customs officials.  It has to be someone

who's authorized to execute the particular law in question.

That would only make sense.  And I think that's what *Haywood*

and *Anderson* both point out.  That's only a common-sense

reading.

1          Your Honor, also in *Baldwin* -- and the Court

2    actually read the language out -- that the language talks

3    about resistance -- resistance to the authority of the

4    U.S. -- the United States while endeavoring to carry the

5    laws into execution.  Authority.  That doesn't sound like

6    what Congress was doing.  Congress wasn't exercising

7    authority.  That sounds like someone who's affirmatively

8    trying to execute the law, they exert authority, and then

9    somebody forcibly resists them, which is the reading --

10   I think the common-sense reading we have, that the term

11   "execute" means enforcement of the law.

12          Your Honor, the government in its brief, instead

13   of being able to cite cases, instead of being -- well, I

14   would say this -- let me backtrack a little bit.  The cases

15   they did cite, they essentially concede -- they do sort of

16   back up our point to an extent, that when prosecutors --

17   somewhat contemporary, not perfectly contemporary but

18   somewhat contemporary in the early 20th century -- when they

19   file indictments in these case, they allege an Executive

20   Branch official who was trying to execute a particular law.

21   That's the cases they cited.

22          So, Your Honor, they have not been able to point

23   this Court to one case where even someone tried to have an

24   indictment that went broader than an Executive Branch

25   official who was trying to execute the law.  So instead of

1    being able to cite cases, they cite a dictionary.

2            Well, Your Honor, we also cited a law review

3    article that also has a definition of "execution" as well,

4    especially execution of the laws.  Not just the word

5    "execution," it's the phrase "execution of the laws," which

6    is quite different than the term "execution."

7            THE COURT:  Can I ask you a question?

8            What do I do about the historical fact of the

9    *Lebrón* case and those events in which individuals entered

10   this -- I think it was the Senate chamber with guns, shot

11   people, including, I think, one, if not two, Senators, and

12   then Congress turned around and increased the statutory

13   maximum of this particular statute.

14           So would you agree with me that as a result of

15   that historical set of events, that, at a minimum, Congress

16   views itself as being protected by this seditious conspiracy

17   statute?

18           MR. FISCHER:  Well, Your Honor, they are partly --

19   they are significantly protected by -- the statute covers

20   attempts to overthrow the government, put down the

21   government, destroy the government, and I believe it was one

22   of those sections of the statute that the government charged

23   in the *Lebrón* case.

24           The bottom line is, Your Honor, the government

25   charged the wrong section of the statute.  That's the bottom

1    line.

2              THE COURT:  You mean in this case?

3              MR. FISCHER:  In this case.

4              Mr. Nestler talks about the government.  Well,

5    respectfully, I think that's way beyond the pale to -- like

6    the Court's example about whether to -- doing -- a seditious

7    conspiracy in relation to a court proceeding.  That's not

8    what the statute says.

9              And courts do not execute laws.  This is -- the

10   government is giving this Court the most expansive

11   definition that has absolutely no basis in case law or in

12   just the plain meaning of the statute.

13             And to just say it means anything -- it's almost

14   as if they're basically -- you know, essentially trying to

15   just interpret it to reach this case, and it's almost like

16   flailing to try to reach this case, because we cited

17   *Buckley*, which talked about the 12th Amendment as being a

18   judicial-in-character function.  So now it would cover --

19   according to the government, it would cover a judicial -- a

20   trial.  Well, the Court doesn't execute laws.  And nobody in

21   the 19th century would have said -- would have thought of

22   the Court as executing the law, and no one would have

23   thought of Congress as executing the law.

24             So it comes back to this, Your Honor.  The bottom

25   line is, I know the government cited some dictionary

62

1    definitions because they have nothing else to go on.  We've

2    cited cases, and we cite, I think, a common-sense reading.

3            And the ultimate issue the Court is confronted

4    with when you're dealing with a statute that goes back to

5    the Civil War, that's rarely been litigated, and in light of

6    the courts having to strictly construe statutes, is our

7    definition of "execution," which would be the enforcement of

8    the law, is our definition of "execution" unreasonable.

9    I think it's plausible.  And if the Court believes it's

10   plausible --

11           THE COURT:  Are you suggesting I should apply some

12   sort of Rule of Lenity here if -- I mean, is that what I

13   hear you saying?  That because you've come up with a

14   reasonable and narrower interpretation, that that narrower

15   interpretation should prevail?

16           MR. FISCHER:  Not --

17           THE COURT:  Because that's not how the Rule of

18   Lenity -- you know that's not how it works.

19           MR. FISCHER:  Yeah, absolutely.

20           No, Your Honor, not the Rule of Lenity.  Just

21   straight statutory interpretation, the plain meaning, we

22   have a plausible interpretation.  Quite frankly, I think

23   most American citizens would think when they hear "execution

24   of a law," they immediately think of Article II, the

25   Executive Branch.

63

```
1                    So what did Congress intend in 1861?  We don't

2         have the members of Congress here to testify.

3                    And so what I'm saying, Your Honor, is --

4                    THE COURT:  I wish we did.

5                    MR. FISCHER:  What I'm suggesting, Your Honor, is

6         if the Court finds that our interpretation is plausible,

7         then it should be strictly construed against the government.

8                    THE COURT:  Okay.

9                    All right.  Mr. Fischer, thank you for your

10        argument, I appreciate it.

11                   MR. FISCHER:  Thank you.

12                   And, Your Honor, would you like me to move on to

13        the next issue?

14                   THE COURT:  Hang on one second.  Let me just ask

15        our court reporter if he'd like a couple minutes.  We've

16        been going for about an hour and 20.  He's nodding his head

17        yes.  So that's my cue.

18                   So why don't we take 15 minutes or so, we'll plan

19        to resume -- it's about 2:20 now, and so we'll plan to

20        resume around 2:35, 2:40, in that neighborhood, okay?

21                   Thank you, everyone.

22                   COURTROOM DEPUTY:  All rise.  This Court stands in

23        recess.

24                   (Recess from 2:22 p.m. to 2:39 p.m.)

25                   COURTROOM DEPUTY:  All rise.  This Honorable Court
```

```
 1    is again in session.  Be seated and come to order.
 2              THE COURT:  Please be seated, everyone.
 3              All right.  Do we have everybody back?  Are we
 4    waiting on anyone?  Okay.  Great.
 5              All right.  Why don't we keep going.
 6              Mr. Fischer.
 7              MR. FISCHER:  May it please the Court, Your Honor.
 8              Your Honor, we filed -- the defendants filed a
 9    motion to dismiss Counts 2 and 3, which are the 1512-related
10    counts.  And I know the Court has obviously already issued
11    an opinion on -- in the Caldwell case.  I think I've set
12    forth my arguments fairly significantly in briefing.  So if
13    the Court has no other questions, I would be more than glad
14    to answer any questions of the Court.
15              THE COURT:  Well, let me just ask you this,
16    Mr. Fischer:  Do you and -- and if you're speaking, I want
17    to make sure you're speaking on behalf of the defendants.
18    Would you agree that my earlier decision in Caldwell is law
19    of the case for purposes of this matter?
20              MR. FISCHER:  The Court has already indicated
21    that, yes, Your Honor.
22              THE COURT:  All right.
23              MR. FISCHER:  I would point out, I believe the
24    present indictment is under 1512(k), if I'm not mistaken,
25    and I spell that out in my motion.  So I guess we would --
```

1    in a footnote, I indicated that it was to tie it together.

2              THE COURT:  Right.

3              MR. FISCHER:  So it's a different -- technically a

4    different crime.  So we would apply that reasoning in the

5    same argument.  So if the Court doesn't have any other

6    questions, I'll move on.

7              THE COURT:  Yeah, I don't think so.  Thank you.

8              MR. FISCHER:  Thank you, Your Honor.

9              Your Honor, as to the 372 count in Count 4, as the

10   Court alluded to earlier, the definitions that -- from these

11   19th century statutes and cases -- I would point out that

12   the cases -- we've cited the *Hartwell* case, *Germaine*, *Smith*,

13   *Mouat*, I would submit that the legal standard for evaluating

14   Section 372 is that the term "Officer of the United States,"

15   which is used in that statute under Supreme Court precedent,

16   is presumed to have its meaning under the appointments

17   clause, absent -- and, I mean, this isn't specific language

18   from the cases, but I think it's a fair paraphrase of the

19   cases -- is that absent unambiguous language to the

20   contrary, the term "Officer of the United States" should

21   have its constitutional meaning, which would be in the

22   appointments clause.  I think that's fairly clear in the

23   case law.

24             THE COURT:  And could I ask you, Mr. Fischer.

25   I mean, those cases -- if I remember correctly, those cases

largely -- at least those early cases we're talking about,

*Hartwell*, which you've just mentioned, *and Germaine*,

I think --

MR. FISCHER:  Yeah.

THE COURT:  -- were cases involving the question

of -- they were prescriptive; in other words, they set forth

conduct that was criminalized against certain individuals.

MR. FISCHER:  Yes.

THE COURT:  And in that context, it seems to me to

make some sense for the Supreme Court to strictly construe

it so that a government employee or officer has notice as to

who's restricted by the statute.

But this is a different kind of statute.  This is

a broader statute.  It's more protective of the government

and its functions.  And so why should the rationale or the

thinking that's in those cases sort of apply here, given the

different purposes of the statute?

MR. FISCHER:  Well, Your Honor, I believe the

holdings in the cases, and I think the *Germaine* case was

fairly clear, that when used in the criminal statutes --

that's the language out of *Germaine* -- when used in the

criminal statutes, the term "Officer of the United States"

means appointments-clause officers.

So, Your Honor, I think it applies to all criminal

statutes.  So I believe the question really in this

1    particular case is --

2           THE COURT:  Well, I'm sorry to interrupt you, but

3    this was sort of my point, Mr. Fischer, which is that

4    *Germaine* says, "it is, therefore, not to be supposed that

5    Congress, when enacting a criminal law for the punishment of

6    officers of the United States intended to punish anyone not

7    appointed in one of those modes."

8           And so you're right that the Supreme Court has

9    spoken in terms of a statute in which there's punishment of

10   an officer's conduct.

11          But as I said, this is different, this is a

12   different statute.  It's not punishing the conduct of anyone

13   who was a government official, right?  And so I guess I

14   wonder why *Germaine* and that sort of general principle might

15   apply here.

16          MR. FISCHER:  Well, Your Honor, I think the

17   general principle is that the Supreme Court looked to the

18   Constitution for definitional guidance, whether it's

19   prescriptive statute or whether it's something that's

20   designed to protect members of Congress.  I don't think

21   there's -- respectfully, I don't think there's a dime's

22   worth of difference between the two from the Supreme Court's

23   perspective.

24          THE COURT:  So then what do I about *Lamar*?

25   You know, we've gone back and forth about *Lamar*.  And I will

1    freely admit to you -- as you correctly pointed out in my

2    earlier decision in *Thompson*, I was not aware there was a

3    second decision from *Lamar* from the Supreme Court.

4            But be that as it may, it seems to me the second

5    *Lamar* decision actually sort of undermines your argument in

6    the following sense, that while it's true that the Court

7    there said, you know, we're not going to completely

8    disregard the Constitution, we still ultimately need to

9    interpret what this term means, and there it was sort of

10   officer or employee of the government, in light of what it

11   meant in the statute.

12           And, in fact, in *Lamar*, the Court looked past the

13   Constitution and actually looked to dictionaries,

14   congressional understanding of the term, and ways in which

15   the term was used in other cases.  So, you know, they didn't

16   rely solely on the Constitution in *Lamar*.

17           MR. FISCHER:  That's a fair point, Your Honor;

18   however, I think the first guidepost they used was the

19   Constitution.  They cited *Hartwell* in that case.

20           I would also point out, Your Honor, I think,

21   obviously -- I don't think it's -- we're certainly not

22   contesting that the Court can certainly look at other

23   language in the statute, and if it's clear and unambiguous,

24   that, for example, in *Lamar*, part of the statute used

25   Officer of the United States, but the part of the -- the

section of the statute *Lamar* was charged under said "Officer
of the government."

    And the Court basically looked to the other
language, to the Officer of the Government, which is --
there's not binding case law on, which there is with Officer
of the United States.  They looked at the other language and
said, well, it's broader language, and because of these
comprehensive terms, we do believe the statute covers
members of Congress.

    So I would suggest to the Court the analysis would
be the presumption is that the term "Officer of the
United States" in 372 means appointments clause officers,
unless there's unambiguous language to the contrary, and
would submit, actually I believe there's unambiguous
language that shows that members of Congress are not
covered.

    I would, first of all, point out, I believe a fair
reading of the statute would be that the term "Officer of
the United States" is equivalent to someone who holds an
office, trust, or place of confidence.  And I say that
because in the statute, after the word -- or the term
"Officer of the United States," it says, "to leave the
place."  So it uses the word "place," just like place of
confidence.  And later in the statute, it uses the word
"office" as well.

1          Now, a trust isn't something that can physically

2   be occupied like an office or a place, so it doesn't use the

3   word "trust."  But I think a fair reading is that Officer of

4   the United States are individuals who occupy office, trust,

5   and places of confidence.

6          THE COURT:  So if that's true, why would there be

7   sort of an alternate or a second -- I mean, they're not

8   separated clauses, but there's a separate object, if you

9   will, which is, you know, one object is "Officer of the

10  United States," but the other object is, "Any person who is

11  holding -- accepting or holding any office, trust, or place

12  of confidence."

13          MR. FISCHER:  Sure.

14          THE COURT:  And the indictment alleges both, that

15  members of Congress are both.

16          MR. FISCHER:  Yeah, that's a fair question,

17  Your Honor.

18          The so the word "person" obviously would appear to

19  be broader; however, the reason they would have used that,

20  I think, is obvious, because a person, under -- the statute

21  can be violated -- the first section of the statute can be

22  violated in two different ways; one is by intimidation

23  against those holding an office, who we believe would be an

24  Officer of the United States; and the other way would be by

25  intimidating a person from accepting; in other words, they

71

```
1    are not yet an Officer of the United States because they
2    have not accepted the position.
3                So I think Congress used the word "person" in the
4    sense that it's not the general, any random person on the
5    street, but it would be a person who either holds an office,
6    trust, or place of confidence, or is on the cusp of
7    accepting an office.
8                THE COURT:  But your definition or your
9    understanding is that the phrase "any person holding any
10   office, trust, or place of confidence under the
11   United States" does not include members of Congress.
12               MR. FISCHER:  That's correct.  Absolutely.
13               And, in fact, Your Honor --
14               THE COURT:  And tell me why not.
15               I mean, you just said "any person" is broad,
16   right?  Members of Congress are people.
17               Would you agree with me they hold office?  They
18   hold a trust?  They hold a place of confidence?  Those are
19   three fairly broad terms.
20               MR. FISCHER:  Well, Your Honor, what I would say,
21   first of all, is that we have two verbs, "accepting" or
22   "holding."  So there are two separate ways you can violate
23   the statute in that section.  You can violate it by
24   attacking someone who's on the cusp of accepting or someone
25   who's actually in the office.
```

1           So while there are two different methods of

2     violating the statute, they both apply to the same nouns,

3     which are office, trust, or place of confidence.

4           So you can't have a situation where an office,

5     trust, or place of confidence are stations that are not

6     accepted.  Under the plain language of the statute, they

7     have to be stations that are both accepted and held.

8           Members of Congress do not accept.

9           THE COURT:  It says "accepting or holding."

10    It doesn't say accepting and holding.

11          MR. FISCHER:  Respectfully, it applies to the same

12    nouns.

13          So in order to be an office, trust, or place of

14    confidence, those have to be stations that people accept.

15          They also have to be stations that people hold.

16    It wouldn't make sense that they could be two different

17    entities.  They're the same nouns.

18          So I know it's two different ways of violating the

19    statute, but it applies to the same office or the same place

20    of confidence.

21          THE COURT:  Just to -- if I could back up for a

22    second.

23          I mean, are you suggesting that -- well, let me

24    ask you this:  "Any office, trust, or place of confidence

25    under the United States," that phrase does not include,

1    in your view, a legislator in Congress?

2           MR. FISCHER:  Absolutely not, because they don't

3    accept -- they don't accept their jobs and they're not

4    offered their jobs.

5           An acceptance presupposes an offer, and no member

6    of Congress has ever been in a debate and said, you know, to

7    his potential constituents, I've already been offered the

8    job and I accept.  They run for office.  So if they can't

9    accept an office, trust, or place of confidence, they can't

10   hold an office, trust, or place of confidence.

11          And, Your Honor, respectfully, this only makes

12   sense because this language is practically -- these terms

13   come straight out of Presidential Commissions.  The terms

14   "trust and confidence," "discharge of duty," "office,"

15   "Officer of the United States."  I know the Court is an

16   Officer of the United States, and I'm sure the Court has a

17   Commission that has that type of language in it,

18   "The President reposes trust and confidence."  So this is

19   language that's straight out of Presidential Commissions.

20   And members of Congress are not Commissioned officers.

21          And, Your Honor, historically, this makes good

22   sense, because in 1861 when this statute was debated,

23   drafted, and passed, Capitol Hill was not under attack,

24   members of Congress were not under attack, they weren't

25   being pushed out of their offices.  In fact, most members of

1    Congress that were loyal to the Union believed that the

2    confederacy was going to delay us maybe a couple of weeks.

3    They actually took their families down to watch the First

4    Battle of Bull Run three weeks after this statute went into

5    effect.

6              So they weren't looking out for themselves.  They

7    were thinking about the officers, the Commissioned officers

8    around the country; the military personnel, the Postmasters,

9    the dockyards.  All of those Commissioned officers who were

10   being run out of their offices by Confederate sympathizers

11   or Confederate soldiers and others -- so that was the

12   purpose of the statute, that was the evil it was intended to

13   address.

14             Your Honor, I'd also point out that a -- the

15   statute actually was passed in two different sections.  The

16   first section, which does not include Officer of the

17   United States, was passed in 1861, it was actually part of

18   the seditious conspiracy statute.

19             THE COURT:  Right.

20             MR. FISCHER:  The second portion was passed as

21   part of the Enforcement Acts in 1871.

22             I would point out, in between that, the 14th

23   Amendment was passed.  And in the 14th Amendment, members of

24   Congress specifically distinguished between themselves and

25   Officers of the United States.

1          And I find it hard to believe that they would put

2     the term "Officer of the United States" in this statute if

3     it meant something different than those who hold an office,

4     trust, or place of confidence.

5          But again, Your Honor, we're confronted with a

6     situation where we have a 19th century statute with very

7     little case law.  The case law the government cited,

8     basically, they were all Commissioned officers, so it wasn't

9     a situation where they were members of Congress.  But it has

10    this type of statute with antiquated language, antediluvian

11    syntax, and then the Court has to be here in 2022 and make

12    sense of it.

13         And, Your Honor, I know the Court fully enjoys

14    that task.

15         THE COURT:  Lucky me, right?

16         MR. FISCHER:  So, Your Honor, for all of those

17    reasons, I believe that this statute, members of Congress,

18    elected officials, were not included.

19         So if the Court has other questions, I would be

20    more than happy to answer.  If not, I have nothing further.

21         THE COURT:  Before you sit down, let me just look

22    at my own notes.

23         No, I don't think I have anything further.

24         MR. FISCHER:  Thank you.

25         May I stand down, Your Honor?

1          THE COURT:  Yes.  Thank you, Mr. Fischer.

2          Okay.  Why don't we turn to the government.

3    Mr. Nestler.

4          MR. NESTLER:  Good afternoon, Your Honor.

5          The government submits the Court was correct in

6    its decision in *Thompson versus Trump* when it concluded that

7    372 -- or, sorry, the civil analogue to 18 U.S.C. 372 does

8    include members of Congress.  We don't believe that anything

9    Mr. Fischer has pointed out would point to the contrary.

10         A couple of additional points to refute what

11   Mr. Fischer just said, one about members of Congress

12   accepting office.

13         First of all, linguistically, as we pointed out in

14   our brief, that doesn't really make any sense.  We do

15   believe members of Congress accept office.  They are not --

16   they don't become members of Congress against their will,

17   they have to accept that office when they take their oath of

18   office.  It also, of course, leaves out the wide swath of

19   legislators who are appointed to their position by their

20   governor of their state.  Those individuals, of course, just

21   like any other member of Congress, would be accepting an

22   appointment.

23         As Your Honor pointed out, the statute uses the

24   phrase "accept or hold."  And, of course, it would not be a

25   stretch in the English language for anyone to believe that a

1    member of Congress holds an office, trust, or place of

2    confidence under the United States.

3              To Mr. Fischer's argument about the

4    14th Amendment, it is correct that Congress did pass the

5    14th Amendment in between the first enactment and the second

6    enactment of what is now 18 U.S.C. 372.  But in the

7    14th Amendment, the Constitution does not distinguish, and

8    it's not mutually exclusive to have members of Congress as

9    officers of the United States.  They are two phrases in a

10   long list of phrases of individuals who would be

11   disqualified from holding office, and nothing says that they

12   have to be mutually exclusive.

13             THE COURT:  So let me ask you this then.

14             Do you mean to suggest that the 14th Amendment

15   should be read to essentially have overlap?  In other words,

16   it specifies representatives and Senators, and then it also

17   says "Officers of the United States."  And your view is that

18   that's not a redundancy, at least in terms of legislators?

19             MR. NESTLER:  Correct.

20             THE COURT:  You don't think that these are

21   distinct terms?

22             MR. NESTLER:  No.

23             "Officer of the United States" is -- in some parts

24   of the Constitution, has a unique term.  But Representatives

25   and Senators are officers of the United States in also a

1  constitutional sense in the fact that they are appointed for

2  or they're provided for within the Constitution itself.  And

3  as the Supreme Court said in *Lamar*, both the first *Lamar*

4  decision and the second one a few months later,

5  Representatives are Officers of the United States.

6         THE COURT:  Does it matter that the statute in

7  *Lamar* was worded differently than the one here?  I mean, it

8  didn't speak in *Lamar* to Officers of the United States.  Let

9  me just take a look at it.  The language there was --

10 statutory language was, "Officer or employee acting under

11 the authority of the United States or any department or any

12 Officer of the Government thereof."

13        MR. NESTLER:  Right.

14        So the operative phrase --

15        THE COURT:  It doesn't use the sort of term of

16 art, "Officer of the United States" that this statute does.

17        MR. NESTLER:  Right.

18        We believe "Officer of the Government" is

19 equivalent to "Officer of the United States."  It's an

20 Officer of the United States Government.

21        I note that the defense counsel tried to make a

22 distinction between those two phrases, but they appear to be

23 synonymous with one another.  An Officer of the Government

24 is also an Officer of the United States.  And

25 Representatives and Senators are Officers of the

1    United States Government.

2            The Supreme Court in *Lamar*, both of them, was very

3    clear that the Constitution, sure, can provide one way to

4    look for a definition but is not the end all, be all.

5    In fact, in both of those decisions, the Supreme Court

6    looked at plenty of other dictionaries and other reasons to

7    interpret the statutes, the penal statutes in those cases.

8    And there are, what, four different categories in the second

9    *Lamar* decision about the sources of what the Supreme Court

10   looks for in terms of how to determine what the word

11   "officer" means, including dictionary, which is the same

12   thing Your Honor did when deciding *Thompson versus Trump*.

13           THE COURT:  Can I ask you a question?

14           So fast-forward if this count survives and goes to

15   trial.  Is it the government's expectation that it would

16   present proof to establish that members of Congress are

17   either Officers of the United States or holders of offices

18   or places of trust -- excuse me, trust or places of

19   confidence, or would the expectation be that I would

20   instruct the jury that members of Congress fall into one

21   category or both?

22           MR. NESTLER:  We believe that's a legal decision

23   that the Court can instruct the jury on.  When we get to

24   jury instruction time, we can debate that.

25           But similar to an official proceeding, we would

1    anticipate the Court instructing the jury that Congress's

2    joint session on January 6th was an official proceeding as a

3    legal determination that Your Honor already ruled.  We would

4    anticipate the same thing, that Your Honor could rule that

5    members of Congress are Officers of the United States.

6            THE COURT:  So does it matter then if, say,

7    hypothetically, I were to -- or to put it differently:

8    At this stage and then ultimately at trial, say I

9    hypothetically agreed with Mr. Fischer, that Officer of the

10   United States actually does have the meaning that is in the

11   Constitution, it's a term of art, members of Congress aren't

12   Officers of the United States; however, I were to then

13   hold -- however, I did think that -- and I don't think I

14   actually -- and I went back in *Thompson*, I don't think I

15   actually held they were Officers of the United States, but

16   I did hold that they were persons who were accepting any

17   office, trust, or place of confidence, that they fell in

18   that first clause -- as long as I conclude that the

19   indictment -- or that members of Congress satisfy one of

20   those two categories, I don't need to deal with the second?

21           MR. NESTLER:  That's correct.

22           They are both charged in the same count.

23           THE COURT:  Right.

24           But in other words, what I'm trying get at is

25   that, if what you're intending to do at trial is have me

 1   instruct the jury as a legal proposition that you have to

 2   accept that members of Congress are in one category, it

 3   doesn't really matter what I think about the second

 4   category, because the jury will be instructed that that

 5   element has already been met as a legal matter beyond a

 6   reasonable doubt.

 7            MR. NESTLER:  That's correct as a legal matter,

 8   Your Honor.

 9            Though we would submit that the members of

10   Congress would fall within both categories.  Of course, to

11   preserve the government's record, as well as the entirety of

12   the record, we would submit that would be an appropriate

13   holding to have.

14            THE COURT:  Right.

15            But, again, it doesn't really matter; in other

16   words, if I agree with you on the first category, it doesn't

17   really matter, right, because as long as I instruct the jury

18   that the element is met as to one category, the jury will

19   accept that element and the count rises and falls on all the

20   other elements.

21            MR. NESTLER:  That's correct.

22            THE COURT:  Okay.

23            MR. NESTLER:  Assuming defense counsel doesn't

24   object to the legal instruction.  We believe the legal

25   instruction is --

```
1              THE COURT:  They'll object to the legal
2    instruction, I can assure you of that.
3              But I'm just sort of thinking through what this
4    looks like if we get there.
5              MR. NESTLER:  It makes sense, Your Honor.
6              The government submits, and we pointed out in our
7    brief, both Lamar and also the removal cases under
8    Section 1442, where multiple appellate courts have held that
9    legislative officers -- members of legislature are Officers
10   of the United States within the meaning of that statute, is
11   another example of Congress using that phrase "Officers of
12   the United States" to refer to themselves.
13             THE COURT:  Okay.
14             MR. NESTLER:  Thank you, Your Honor.
15             THE COURT:  All right.  Thank you, Mr. Nestler.
16             Any rebuttal, Mr. Fischer?
17             MR. FISCHER:  Thank you, Your Honor, if the Court
18   would please.
19             First of all, Mr. Nestler indicated that he
20   believes that members of Congress accept their offices.
21   But, again, the word "accepting," it presupposes that
22   something is given to you, it presupposes an offer.  So you
23   can't accept something without being offered or given.
24   It doesn't make sense.
25             That would make sense if --
```

1           THE COURT:  But what about -- sorry.

2           What about Mr. Nestler's example of a member of

3    Congress who's appointed, as some are, by the governors of

4    the state, even for a limited term?

5           MR. FISCHER:  They would assume office.

6           But, Your Honor, the statute is broadly worded.

7    If you can take one example, that doesn't mean that the

8    statute itself was aimed at members of Congress in general,

9    thinking about one potential exception.

10          I would say they assume office and that they're

11   not -- they don't accept it, they're appointed.  So even if

12   that were the case, Your Honor, again, I think the statute

13   isn't aimed at the exception, it's aimed at the general mass

14   of potential victims.

15          Secondly, the word "hold."  As I cited in my

16   filings, the clause that involves "hold," as in "hold

17   any" -- or "holding any trust" -- "office, trust, or place

18   of confidence under the United States," is practically

19   verbatim language from the Ineligibility Clause of the

20   Constitution.  And the Ineligibility Clause specifically

21   prohibits members of Congress from simultaneously holding

22   offices.  So that would be awfully strange language for

23   Congress to use to unambiguously include themselves.

24          Now, granted, I don't have 100 percent proof that

25   they went to the Constitution and wrote those words.

1   It could be the biggest coincidence in the world, but they

2   just happened to mirror language out of the Ineligibility

3   Clause.

4           Secondly, Your Honor, we're stuck on this term

5   "officer."  Your Honor, I use the example, I believe, in my

6   filing that both a Sherman tank and a Prius are both

7   automobiles, just like members of Congress and the Court are

8   officers as well, and Appointments Clause officers as well.

9           The Constitution uses the word "officer" in many

10  different contexts, and it applies to different subsets of

11  individuals.  And under *Hartwell*, *Germaine*, et cetera, the

12  word "Officer the United States" and the word "office" is

13  presumed to be by somebody who is appointed via the

14  Appointments Clause.

15          So I understand the term "officer," and I don't

16  disagree that in a number of occasions members of Congress

17  can be considered constitutional officers, the President's

18  an officer, and the Court and other members of the Court are

19  judicial officers.  But it's a case-by-case basis.  And in

20  this case, the Supreme Court holdings in *Hartwell*, *Germaine*,

21  et cetera, would apply.

22          Your Honor, Mr. Nestler said, as far as the *Lamar*

23  case, that "Officer of the Government" is equivalent to

24  "Officer of the United States."  I don't agree with that

25  reading whatsoever.  The Court had cited *Hartwell*.

1            In fact, the very notion that the government in

2    that case charged the defendant as an Officer of the

3    Government instead of an Officer of the United States gives

4    a little bit of a hint that perhaps the prosecutor in that

5    case didn't believe a member of Congress fell into that

6    first part of the statute which dealt with officers of the

7    United States.

8            So, Your Honor, I don't believe that is

9    equivalent.  I think as the Court indicated, I believe the

10   Court's language was the comprehensive terms of the statute,

11   which meant that the Court saw it as going much broader than

12   the traditional Officer of the United States definition.

13           So with that, Your Honor, unless the Court has any

14   questions, I have nothing further.

15           THE COURT:  No.  Thank you, Mr. Fischer.

16           MR. FISCHER:  Thank you, Your Honor.

17           THE COURT:  So I think that gets us through

18   Count 1 through 4.

19           Ms. Halim, did you want to present argument on

20   Count 14 and the motion for severance on that count?

21           MS. HALIM:  Yes, Your Honor, please.

22           Mr. Hackett moves to dismiss Count 14 pursuant to

23   Rule 12(b) for failure to state an offense, and this --

24   I think it's pretty straightforward, Your Honor.  The

25   element that is missing here is the object that was deleted.

1          The government alleges that Mr. Hackett deleted

2   from his cellular telephone certain media, files, and

3   communications, but with no specificity as to what those

4   files were.  I mean, that's what phones contain, they

5   contain files, they contain media, they contain

6   communications.

7          And so without specifying what exactly the object

8   is that was deleted, Count 14 fails to state an offense, and

9   the remedy for that absolutely is dismissal.

10          The government --

11          THE COURT:  I'm sorry to interrupt you.

12          So why isn't the issue the same as the one I

13   posited before, which is that if you have any question about

14   what media, what files, what communications, why isn't the

15   right route to do a bill of particulars, as opposed to

16   dismissal of the count?

17          MS. HALIM:  Because I think this is much like the

18   *Russell* case.  And it is, of course, the -- you know, the

19   grand jury, if it was presented evidence, the grand jury

20   should say what it is.  It almost begs the question if the

21   grand jury was ever actually presented any particular

22   object, you know, to find that that object was deleted,

23   allegedly in violation of 1512.

24          THE COURT:  Sorry to interrupt, but can't I

25   presume or shouldn't I presume that what this means is that

1    the grand jury heard evidence that Mr. Hackett either did

2    delete -- or did delete multiple types of files from his

3    phone, which is why media files, communications is specified

4    here.

5             And if you want to know which files he deleted --

6    and I don't know whether the government can actually point

7    to specific files, I've seen that they've been able to do

8    that at least in one other case, and I don't know whether

9    they can do that here or not.  But if they can specify which

10   files he deleted but ultimately were preserved, again, it

11   seems to me that a bill of particulars is the way to go to

12   get clarity on that.

13            MS. HALIM:  I don't agree, respectfully,

14   Your Honor, and I am using the case of *Russell versus*

15   *United States* as the primary guidance.

16            And so the government in its opposition says that

17   *Russell* is different from our case and more like some other

18   cases where the courts declined to extend *Russell* under

19   those circumstances.  Illegal re-entry, I think there was

20   one firearm in furtherance of a drug trafficking crime,

21   maybe a threat against a federal officer.  *Russell* is unlike

22   those particular cases, but *Russell* is like our case in this

23   way.

24            So in *Russell*, the Supreme Court says that you do

25   have to descend into the particulars.  And the defendant in

1    that case was charged with violation of Section 192 of

2    Title II of the United States Code, which prohibits a

3    refusal to answer any question before a congressional

4    inquiry.

5              THE COURT:  Right.

6              MS. HALIM:  And so what the Court says is that the

7    subject -- what the subject was of the question that was --

8    subject of a refusal to answer, that must be specified,

9    because it is crucial to a prosecution under that statute.

10             So in *Russell*, you have conduct that is specified,

11   right, a refusal to answer a question, and then you have --

12   then you have the what, the subject.  And the Supreme Court

13   said, by not specifying what the subject was, that

14   particular indictment failed and was dismissed under

15   Rule 12.

16             THE COURT:  So in your estimation then, what does

17   the indictment need to say?  Does it need to list the exact

18   files that Mr. Hackett, the government believes, deleted in

19   order to satisfy *Russell*?

20             MS. HALIM:  Yes.  Yes, I do, Your Honor.

21             And, in fact, if you look at our case and look at

22   1512(c)(1), that requires the government to prove that there

23   was a corrupt alteration, deleting, mutilation of a record,

24   a document, or an object.

25             What the object is is crucial to the prosecution.

You have to know what the thing was that was mutilated, destroyed, deleted in order to prove anyone guilty of that crime.

In our case, we have the conduct specified here in the indictment, which is deleting something, that is specified, but the object is left generic. And we know that it's -- it's almost super generic, because it's the same language that's parroted for every single count for every co-defendant charged with violation of 1512(c)(1).

Additionally, it's really -- it's very similar to just parroting the language of the statute, which is not acceptable. Courts are clear on that point. It is not acceptable to merely parrot the language of the statute. That doesn't meet the requirements of Rule 12 or Rule 7 of the Federal Rules of Criminal Procedure.

And here in this case it's almost like what the government has done is just supplanted the term "record, document, or other object" with "media, files, and communications." Again, things that are all of the things essentially that are already on phones.

So just like *Russell*, what you have here is the indictment saying what the conduct is, but then leaving the subject or the object of that content -- conduct generic in a way that is fatal to this count. And for that reason, Count 14 must be dismissed.

```
1                THE COURT:  Okay.  Thank you, Ms. Halim.

2                MS. HALIM:  Would you like me to address severance

3      at this point?

4                THE COURT:  Oh, severance.  Right.  I'm sorry.

5                MS. HALIM:  So in the event Your Honor doesn't

6      agree with that and denies that particular request, then the

7      reason for seeking severance is because -- and I'm actually

8      going to quote from the government's opposition because it's

9      the most clear example of the prejudice that we're talking

10     about here.  The alleged conduct here that we're going to be

11     talking about is deleting the evidence.  This is page 2 of

12     the government's opposition, ECF 121.  "As this alleged

13     conduct also constitutes admissible evidence of these

14     defendants' consciousness of guilt, the trial of the

15     tampering charges should not be severed from the trial of

16     the other counts in the indictment."

17               And I will acknowledge, Your Honor, that this is

18     purely discretionary.  I'm not suggesting that joinder was

19     improper.  And so I'm not suggesting that it's a mandatory

20     severance at this point.  It is discretionary.  And I am

21     asking the Court to exercise its discretion here for a

22     variety of reasons, and the biggest is the danger of the

23     prejudice.

24               Ordinarily when consciousness-of-guilt evidence is

25     introduced at a trial, the evidence is introduced to suggest
```

1    that it is proof that the person committed the substantive

2    offense charged, right, alter the identity, things like

3    that, that is proof that you robbed the bank or whatever is

4    being charged in a particular case.

5              Here what we have is the government has charged

6    several different counts in relation to the conduct on

7    January 6th, preceding, and some after January 6th.  And

8    they intend, it sounds from this, to say that because

9    Mr. Hackett, and maybe others, deleted items from a phone,

10   that that's evidence of consciousness of guilt.  Well, that

11   is using those facts to say he must be guilty of Counts 1

12   through 4.

13             THE COURT:  But, Ms. Halim, can I interrupt?

14             MS. HALIM:  Yes.

15             THE COURT:  Doesn't that happen all the time?

16             I mean, when criminal defendants are accused of a

17   substantive count, and some of them, in an attempt to cover

18   up or allegedly cover up what they've done, destroy

19   evidence, hide evidence, intimidate witnesses, what have

20   you, that is routinely an additional crime that we see in

21   criminal indictments.

22             And it's for two purposes; one is, it's a

23   substantive offense, right, some sort of obstruction offense

24   or derivatives of that; and, two, it's argued as

25   consciousness of guilt; that the person wouldn't have

1    intimidated this witness, the person would not have

2    destroyed this record or object if they thought what they

3    had done was lawful, right?

4              And isn't that exactly what's happening here?

5    I'm not sure why this case should be treated any differently

6    than the run-of-the-mill case where that happens all the

7    time.

8              MS. HALIM:  I do agree that in run-of-the-mill

9    cases, this does happen quite often, but I don't agree that

10   this is a run-of-the-mill case.

11             We will talk, I suspect, a lot more, from the

12   defense, about the prejudice that these defendants face just

13   because of the nature of these charges, the nature of the

14   circumstances, the fact that this is something that's

15   ongoing in congressional inquiries in the media.  So there's

16   prejudice from a number of different angles.  This is just

17   one more, and it's compounding the prejudice.  And so that

18   would be a reason for me to ask the Court to exercise your

19   discretion and sever that particular count.

20             And the second that I think is equally as

21   important as the appearance of prejudice -- and, by the way,

22   it is not the defendant's burden to show actual prejudice

23   here.  The rule is broadly enough written to say that if it

24   seems to prejudice a party, the Court may order that that

25   trial or that portion of the trial be conducted separately,

1    and that is exactly what we're asking the Court to do here.

2            The other thing, Your Honor, is, in terms of the

3    presentation of the defense, there could be an entirely

4    innocent explanation for why materials are deleted from

5    January 6th and on.

6            If tried together, Mr. Hackett's only option to

7    explain that innocent explanation would be through

8    testimony.  If he is tried on all of the counts at the same

9    time in one joint trial, he doesn't have the option of just

10   explaining that innocent purpose, and that is --

11           THE COURT:  Fair enough.

12           But I think the question is, don't you have to

13   show something more than what you are right now, which is

14   the mere theoretical possibility that he could testify as to

15   one count but not the other?

16           In other words, I mean, I can't sever just based

17   on the mere possibility that Mr. Hackett is going to be --

18   and I'm not even sure severance is appropriate on that

19   ground.

20           But, you know, for example, when severance is

21   requested because a co-defendant's testimony might be

22   exculpatory -- you know, the Circuit says, you can't just

23   come in and say it might be exculpatory, you've got to show,

24   A, the person is going to testify, and, B, that, in fact,

25   the testimony would be exculpatory.

1          So I mean, the mere fact that Mr. Hackett might be

2    able to defend himself as to one count and not the other

3    isn't a valid basis for severance.

4          MS. HALIM:  I would suggest to the Court that

5    we're dealing with something that is a little different;

6    it's not a theoretical possibility, because we're dealing

7    with a constitutional right to testify or not to testify.

8    I'm not sure that when you talk about a constitutional right

9    about testifying in your own defense, that we're really

10   talking about theoretical possibilities.  It's the kind of

11   thing that, as Your Honor knows, sometimes it comes down to

12   a last-minute decision, but it's a decision that is going to

13   tip one way if all counts are tried together, whereas it

14   might tip another way.

15         And that's one of the three factors, because,

16   again, we've got the prejudicial factor.  There are three

17   bases that the Court could rely on in terms of ordering that

18   Count 14 could be severed and tried separately.  It's one

19   that the jury may cumulate evidence of the separate crimes,

20   that, I would argue, goes to the prejudice point.

21         The jury may improperly infer a criminal

22   disposition and treat the inference as evidence of guilt,

23   which is exactly what I think I've been suggesting.

24         And then lastly, that the defendant may become

25   embarrassed.  May become.  Not will definitely.  Not with

1    any degree of burden of proof here.  But the defendant may

2    become embarrassed or confounded in presenting different

3    defenses to different charges.

4              And I am appealing greatly to Your Honor in asking

5    to exercise your discretion in light of so many unique

6    circumstances in this case.

7              THE COURT:  Okay.

8              MS. HALIM:  If I could have just one moment,

9    Your Honor.

10             I believe that's all I have.  Yes.  Thank you.

11             THE COURT:  Thank you, Ms. Halim.

12             Okay.  Ms. Rakoczy.

13             MS. RAKOCZY:  Good afternoon, Your Honor.

14             Beginning first with the severance issue since we

15   were just speaking of that, this Circuit has made clear that

16   the type of prejudice that Ms. Halim was alluding to is

17   significantly mitigated, that risk that the jury will

18   improperly cumulate the evidence is significantly mitigated

19   when evidence of each offense would be admissible in the

20   trial of the other, and we submit that, as this Court has

21   pointed out, that is exactly what is occurring here.  We are

22   alleging a destruction or deletion of evidence of the crimes

23   charged in, for lack of a better word, the substantive

24   counts.

25             And so this is very much a case where the

1    government would, in separate trials, introduce evidence of

2    the deletion in the trial of the additional counts in the

3    indictment to show a consciousness of guilt; and on the flip

4    side, in order to establish what pending investigation was

5    ongoing that prompted the deletion of evidence charged in

6    the 1512(c)(1) count, the government would have to present

7    at least some minimal evidence of the crimes charged in the

8    other counts in the indictment.

9            So we do believe here that this Circuit has

10   addressed in the cases cited in our brief, including *Blunt*

11   and *Drew* and others, that this is the type of situation

12   where these types of charges are routinely tried together

13   and that the risk of prejudice is not as high as the defense

14   suggests.

15           With respect to the issue of the dismissal, we do

16   believe that this case is very unlike the *Russell* case that

17   the defense relies upon.  In *Russell*, the Court found that

18   the words of the statute on their own could not fully,

19   directly, and expressly, without any uncertainty or

20   ambiguity, set forth all the elements necessary to

21   constitute the offense intended to be punished.

22           In this particular case, the crime of deletion of

23   evidence under 1512(c)(1) actually is fairly clear on its

24   face.  But we do not just parrot the words of the

25   indictment -- the words of the statute in our indictment.

1   With respect to Count 14 under which Mr. Hackett is charged,

2   and the same applies for the charges against Mr. Harrelson

3   and Mr. Minuta, the operative language of the statute for

4   Mr. Hackett is charged in paragraph 168, where we allege

5   that the defendant corruptly altered, destroyed, mutilated,

6   and concealed a record document and other object and

7   attempted to do so with the intent to impair its integrity

8   for use at trial or the official proceeding, that is, the

9   grand jury investigation.

10           But we go beyond that.  In the preceding

11  paragraph, paragraph 167, we make clear that the conduct

12  that we're alleging makes out those elements is that

13  Mr. Hackett deleted from his cellular telephone certain

14  media, files, and communications that showed his involvement

15  in the conduct alleged therein.

16           THE COURT:  So is the government in a position to

17  specify what those files are?  I mean, I understand that --

18  I can't remember what the name of the report is, the report

19  that -- the cell phone report -- it can show a column of

20  attempted deletion by the user of the cell phone.

21           Is the government in a position to identify the

22  specific files it believed Mr. Hackett tried to delete,

23  although ultimately technologically he wasn't able to do so?

24           MS. RAKOCZY:  We are.  We could respond to a bill

25  of particulars as such.  We also have provided the grand

1   jury materials to the defense, where there are slides of a

2   PowerPoint presentation that a law enforcement agent

3   testified to that establishes the factual bases that we

4   relied upon at least for the probable cause stage.  We might

5   present some additional evidence beyond that at a trial.

6   But in the coming weeks and months, certainly we will narrow

7   that down for our own selves as we prepare for trial, and

8   that is not a challenge for the government.

9          And we do believe, as the Court alluded to

10  earlier, that a bill of particulars would be the proper way

11  to address this and that's something that we could easily

12  respond to.

13         THE COURT:  Okay.

14         MS. RAKOCZY:  Unless the Court has further

15  questions, we have nothing further on that.  We submit on

16  our papers.

17         THE COURT:  Thank you, Ms. Rakoczy.

18         Ms. Halim, did you wish to have a rebuttal?

19         MS. HALIM:  No, Your Honor, other than what's

20  presented in the briefs on that.

21         THE COURT:  Okay.  Thank you.

22         All right.  I think that covers all of the motions

23  to dismiss -- all the counts, excuse me, that are subject to

24  motions to dismiss.

25         I think what's left then is the motion for venue

```
 1   transfer.  So why don't we start with that.
 2           And, Mr. Fischer, will that be you?
 3           MR. FISCHER:  Your Honor, if the Court would
 4   please, I'm going to turn it over to Ms. Halim at this
 5   point.  I may have a couple comments after -- I'm sorry, to
 6   Ms. Haller at this point.
 7           THE COURT:  Yeah.  Okay.
 8           MR. FISCHER:  I may have a couple comments when
 9   she's finished.  Thank you, Your Honor.
10           MS. HALLER:  Good afternoon, Your Honor.
11           THE COURT:  Hi, Ms. Haller.  How are you?
12           MS HALLER:  As Your Honor knows, this is a
13   prejudicial argument.
14           The concerns that we have, and we believe that, in
15   a sense, the government would share with us, is that there
16   is this serious risk of prejudice.
17           And I, at this point, would -- in our reply brief,
18   we cited to an exhibit from a motion that was filed for
19   change of venue in a different case as well.  But we would
20   like to incorporate an exhibit from them that we cited to in
21   the reply, which is from 21-CR-24 in which the Public
22   Defender's Office, Ann Rigby, submitted a document as
23   Exhibit 1 in her motion which summarizes a lot of the media
24   coverage.
25           And I don't think there should be much dispute
```

1    about that because I think everyone knows the Oath Keepers

2    have been significantly covered in the media.

3            But our motion is more complicated than that based

4    on the prejudice that is at issue.

5            THE COURT:  Ms. Haller, if I could just interrupt

6    you.

7            I mean, would you agree with me that the media

8    coverage is really a null issue here; in other words, you've

9    asked for transfer to the Eastern District of Virginia,

10   Alexandria branch.

11           MS. HALLER:  Yes, Your Honor.

12           THE COURT:  So to the extent that media coverage

13   is a concern, I mean, isn't that a wash?  I mean, the people

14   in the Eastern District read the same things that we read

15   here in the District.  It's the same media market, so to

16   speak, right?

17           So I don't see how --

18           MS. HALLER:  If only it were.  Your Honor, if only

19   that were true.

20           I would appreciate that point, and we would

21   emphasize moving or seeking venue transfer to the

22   jurisdictions of where either the defendants were arrested

23   or --

24           THE COURT:  Well, hang on.

25           You've just told me -- you've only moved to

```
 1    move -- you've only asked to move to Virginia, not anywhere
 2    else.  So let's stick with the Eastern District of Virginia
 3    and not the various venues where the defendants have been
 4    arrested.
 5              MS. HALLER:  Yes, Your Honor.
 6              I bring up that point because, as Your Honor
 7    knows, there's two rules, two Federal Rules of Criminal
 8    Procedure, Rule 12 and Rule 21, that deal with venue.
 9              We do have proper venue in Virginia, as Your Honor
10    pointed out, referencing the outskirts of D.C. in Virginia,
11    where the alleged QRF took place in Arlington and in
12    Northern Virginia and many of the allegations in relation to
13    this motion and the issue of venue --
14              THE COURT:  So maybe I'm not --
15              MS. HALLER:  -- aren't proper.
16              THE COURT:  -- maybe my question wasn't clear,
17    because I'm not sure, and I'll ask the government whether
18    they dispute venue could potentially be proper in the
19    Eastern District --
20              MS. HALLER:  They did in their opposition.
21              THE COURT:  I can't remember.
22              I'm not sure why -- but anyway, the bottom line
23    is, there's certainly a reasonable argument to be made that
24    venue could lie there.
25              But my question was about the media coverage, and
```

1    you said that the media is different or the market is

2    different and I'm sort of perplexed.

3            I mean, I know the Eastern District of Alexandria,

4    or Alexandria Division, I think, includes Loudoun County.

5    But, I mean, the television stations are the same, the

6    newspapers are largely the same.  You know, maybe people

7    read different blogs, that kind of thing.  But in terms of

8    access, it doesn't seem to me to be anything different than

9    what we get here in D.C.

10           MS. HALLER:  Your Honor, we've had the D.C. mayor

11   make very serious statements about white domestic terrorism

12   in relation to the January 6th defendants.  We've had the

13   D.C. chief of police make very strong statements about the

14   insurrection.  They did it as recently as on the anniversary

15   of the 22nd -- January 6th, '22.

16           There's a different dynamic in the District of

17   Columbia which ties in with the other bases for the

18   prejudice in D.C. that we have raised, which is that

19   66 percent of D.C., as we have shown in a survey, are people

20   that are personally impacted.  So D.C. has a very different

21   perspective.

22           In the chief of police's statements, he thanked

23   his officers for responding to this insurrection that they

24   individually had to deal with, because the Metropolitan

25   Police Department had to show up on January 6th.  And as we

1    know from Mayor Bowser's letter on January 5th, she made

2    clear that it is really the Metropolitan Police Department

3    who should be responding to any events on January 6th, and

4    she told all feds to stand down essentially in that letter.

5    So the point is that D.C. has a very different perspective.

6              THE COURT:  So if I can just interrupt you,

7    Ms. Haller.

8              So, look, where we started was with the media, and

9    I'm not sure --

10             MS. HALLER:  Yes, Your Honor.

11             THE COURT:  -- the media coverage, really, at the

12   end of the day, it still seems to me to be a wash.

13             Your argument is that the nature of the events of

14   January the 6th affected the residents of the District of

15   Columbia more acutely and more profoundly than they might

16   have even those folks who are across the river.  Okay, I get

17   that.  Although, you know, there are plenty of government

18   employees, there are plenty of people who work on the Hill

19   that live over there and live in that jurisdiction.

20             But be that as it may, look, I mean, why isn't --

21   how do you overcome *Haldeman*, right?  *Haldeman* is the

22   Watergate case.  It has many of the hallmarks of media

23   coverage, familiarity with the defendants, perhaps even more

24   so than here.

25             And the Circuit said, look, the way to do this is

1    through voir dire.  And you don't expect a jury that is

2    ignorant of the offenses.  And, frankly, I don't think you

3    could find very many people in the country that would be

4    ignorant of the events of January the 6th, fully unaware of

5    them.

6            We don't expect jurors who are unread about

7    particularly high profile prosecutions.  What we want is

8    jurors who come in and say they can be fair.  And, you know,

9    by your own survey, more members of the District of Columbia

10   said that they could be fair than in the other jurisdictions

11   that you had surveyed.

12           MS. HALLER:  May I respond, Your Honor?

13           THE COURT:  Sure.

14           MS. HALLER:  Yes, the survey points out a

15   difference with the District of Columbia, again, where it's

16   an outlier.

17           More people in the District of Columbia said in

18   response to those questions, after they were asked about a

19   prejudicial -- first they acknowledged that they had a

20   pre-judgment decision and determination.  And then later in

21   the questioning, answered the question and said, yeah, over

22   60 percent would think that they could be fair.

23           We have four Supreme Court cases that have said --

24   and the D.C. Circuit in *Awkward*, which has a really

25   excellent quote, if I may, Your Honor, where the

1    D.C. Circuit made clear that a jury cannot unsee what it has

2    seen.

3            And we have four Supreme Court cases, *Ervin*,

4    *Murphy*, *Marshall*, and all cited in our brief.  And there's a

5    fourth one, *Murphy versus Florida*, 421 U.S. 794, explaining

6    that in a community where most veniremen will admit to a

7    disqualifying prejudice, the reliability of the others'

8    protestations may be drawn into question.  For then it is

9    more probable that they are part of a community deeply

10   hostile to the accused, and more likely that they may

11   unwittingly, unwittingly, have been influenced by it.

12           And the point of this psychological reality of a

13   jury's functioning is something in *Jackson versus Denno*.

14           THE COURT:  Could I interrupt you, if I may.

15           MS. HALIM:  Yes.

16           THE COURT:  Look, I want to get very practical

17   about this.

18           There have been four cases tried with juries

19   regarding January the 6th in this district court, including

20   one by me.  None of the judges in any of those cases has had

21   trouble seating a jury that has said they can be fair and

22   unbiased.  And, in fact, it hasn't even taken that many

23   jurors to get there.  I mean, in my case, I think I got

24   18 qualified, I don't remember how many I got qualified, 26,

25   whatever the case may be, I'd have to look -- I qualified

35 -- excuse me, I qualified 35, they were qualified by the

53rd juror.  18 jurors were struck for cause, okay?

Of those 18 jurors that were struck for cause, only eight

were stricken for bias or some connection to the events.

In fact, there was a reporter, believe it or not, on the

panel that was actually on the Hill that day.  So only

15 percent, 15 percent were stricken for cause in my case.

And that number is sort of the same as the other three

cases, or, I guess, two other cases; Judge Walton had a

slightly different situation.

        Isn't the proof in that pudding right there?

I mean, you seem to be saying to me that the jurors of the

District of Columbia are coming up here and not being honest

and they're not being truthful when they say that they can

be fair and impartial.

        MS. HALLER:  Well, as the Supreme Court has said,

Your Honor, unwittingly.  It doesn't mean we are attributing

nefarious intent to the jurors, but we do, would, and cite

to those four jury trials as being evidence of what we are

talking about, because the *Skilling* factors make clear that

presumed prejudice is defined -- in that case, it was about

the Enron convictions, and the Court there said that nine of

the counts that *Skilling* was charged with, he was acquitted

of.  In the cases -- and they talked about his co-actors,

and they were all acquitted of a number of the charges.

1    There weren't blind convictions of guilt.  And it took days

2    for them to get a verdict in a jurisdiction where they had

3    over 4.5 million people in Houston.

4         And the *Skilling* decision is completely our point,

5    that we had four jury trials in which under three hours, all

6    four cases, under three hours the juries came back with

7    convictions on all charges.  So the point is, that is the

8    evidence of the prejudice in the jurisdiction exactly.

9         And to our point, that it's a de minimus burden --

10        THE COURT:  Can I just ask you about the obvious

11   retort that you're going to hear from the government, which

12   is, isn't that more a reflection or is equally plausible

13   that that's a reflection of the strength of the government's

14   cases?

15        MS. HALLER:  Not according to the Supreme Court,

16   Your Honor.

17        The Supreme Court cites that as the definition of

18   what they call presumed prejudice in the *Skilling* case.

19   They literally talked about that in a significant part.

20        THE COURT:  Well, it's not exactly what they say.

21   They say that the fact of acquittals negates the notion of

22   presumed prejudice.  It's not that the absence of any

23   acquittals means that there was prejudice.

24        MS. HALLER:  Well, they did -- that's how they

25   distinguished themselves.  That's how they distinguished the

*Skilling* court from the earlier venire court and the three other cases they cite to which --

THE COURT:  So I guess, Ms. Haller, the bottom line is I'm going to come back to the question I asked you earlier, which is, how do you avoid the Circuit's holding in *Haldeman*.

I mean, *Haldeman* said -- and, again, this is a case that had as much media scrutiny and intensity as this one.  That was Watergate, okay?  Perhaps until the events of January the 6th, there probably was no other criminal prosecution as widely covered as Watergate.

And even in that case, the Circuit said, the way you ferret out prejudice and bias is through a voir dire. And it's not that you are then foregoing your right to still ask for a venue transfer if the voir dire shows that there aren't enough jurors or that it's too difficult to pick jurors, although that hasn't been the experience so far.

MS. HALLER:  May I?

THE COURT:  I mean, that's the binding precedent in the Circuit.

MS. HALLER:  Your Honor, *Awkward* is a D.C. Circuit case after *Haldeman* which made clear that a jury can be -- and in that case, they talk about the jurors as being prejudicial without intending to be unwittingly, but that they do not uphold the conviction in that case because of

1        the prejudice.

2                So it's not a clear question, but Watergate, let

3        me distinguish that case for Your Honor.  Number one, that

4        case follows *Delaney*.  In footnote 40, they cite to *Delaney*.

5        They do explain --

6                THE COURT:  Right.

7                But *Delaney* is a continuance case, it's not about

8        jury transfer.

9                MS. HALLER:  Well, it's about both, Your Honor.

10               THE COURT:  No.  It's just about jury transfer,

11       right?

12               This is the First Circuit case.  The holding was

13       there's an abuse of discretion for the trial judge not to

14       continue the case in light a congressional hearing, correct?

15               MS. HALLER:  Yes, Your Honor.

16               THE COURT:  Right.

17               It didn't have anything to do with a jury

18       transfer -- or a venue transfer, excuse me.

19               MS. HALLER:  *Delaney's* holding is about having a

20       prosecution at the same time as a congressional inquiry.

21               THE COURT:  Am I wrong?  It was not about --

22               MS. HALLER:  No, you're not wrong.

23               THE COURT:  I just want to make sure we're on the

24       same page.

25               MS. HALLER:  And I'm sorry I misspoke.

 1          But the point is *Delaney* is followed by *Haldeman*

 2    in saying that -- the case there, there's a year difference

 3    for the prosecution.

 4          And so the criminal case really in *Ehrlichman*,

 5    which is a D.C. Circuit companion case to *Haldeman*, also

 6    makes clear on footnote 8 that they find *Delaney* as a

 7    required holding to follow, but they distinguish it, they

 8    distinguish their circumstances because of the one year

 9    later, and the defendants were not yet under indictment.

10    So you have a year space and no indictment at the same time.

11          In this case, you have all things coming together.

12    You have a congressional investigation going on at the same

13    time as you have media and the D.C. police chief and the

14    mayor as you have personal impact on D.C. residents.

15          THE COURT:  Ms. Haller, we can sort of, perhaps,

16    agree to the following:  Much of what you have suggested

17    warrants a transfer is no different between here and the

18    Eastern District of Virginia.

19          The people in the Eastern District heard what the

20    mayor said, the people in the Eastern District heard what

21    politicians say.  The people in the Eastern District have

22    heard what Congress is doing.  So I think that aspect of

23    your argument really is not getting you very far.

24          If you're going to tell me that somehow -- or that

25    the -- the citizens of the District of Columbia have been so

1  unduly affected by the events of January 6th, unlike the

2  folks over in the Eastern District, that they cannot be fair

3  and impartial irrespective of what they may say during voir

4  dire, that's your argument at the end of the day?

5          MS. HALLER:  Yes, Your Honor.

6          Your Honor, if I may?

7          THE COURT:  Sure.

8          MS. HALLER:  I've practiced in this jurisdiction

9  for over 20 years.  I love this city.  I honor its people.

10  And I know that our juries have always -- the ones I've

11  appeared before, have always done their best, they really

12  have.

13          I'm not suggesting any -- and we're not suggesting

14  anybody is wittingly going against these defendants.  What

15  we're saying is, you don't put a victim on the jury.  Can we

16  agree that if somebody's in a car accident and they are

17  also, say, in a civil case suing, they're not going to be on

18  your jury.

19          We are suggesting that over 66 percent of

20  residents in this town were, in some significant way, they

21  believe, to have been impacted on January 6th.  Whether they

22  had a loved one who was in law enforcement, whether they

23  were on the Hill themselves, whether they were affected by

24  lockdowns or the curfew, you have people representing that

25  they believe they were impacted on that day.

1          And those same people are making a response of

2     findings of guilt at a level of -- pre-judgment guilt at

3     91 percent as an outlier, outlier to three other states, not

4     including Atlanta, which the Federal Public Defender's

5     Office analyzed.

6          So, yes, we think in the Northern District of

7     Virginia or the Eastern District of Virginia but its

8     northern region, there are seven counties.  It's a broader,

9     larger space.  And, yes, we're suggesting it as a de minimis

10    burden to this Court.  It's de minimis in exchange for

11    reducing the severe prejudice that we submit exists here.

12         And it's not that any one of us may prefer to

13    argue a case in the Eastern District of Virginia, it's

14    simply that the jury panel is going to be different, it's

15    going to be a panel -- there are going to be people who may

16    have been impacted on January 6th personally as a victim in

17    a sense, but we can -- that is where voir dire would be

18    appropriate.

19         But in this case, it's going to be significantly

20    harder.  And, yes, we submit that the cases that have taken

21    to date are consistent with what we are saying; that you are

22    going to get jury after jury, no matter how much work these

23    defense attorneys do, no matter how much we parse the

24    definitions of the elements of the different crimes, you are

25    going to get convictions after two hours, after three hours

1    on all counts over and over and over again here.

2            And all we're asking for is a de minimis burden

3    for us all to transport ourselves eight miles to get a

4    different venue, and, in all true senses, is a proper

5    location, saying, you know, there were -- in response to the

6    government's opposition.

7            And I don't see the procedural problem for the

8    government.  Really, I don't see why it would be so hard if

9    it protects the case, if it insulates the case.  I would

10   assume it would be to their benefit, because we would lose a

11   huge prejudicial argument.  Right now, technically, there's

12   a lot to point at regarding prejudice.  We would consent to

13   go to Virginia.

14           And, yes, you know, we think you're even more

15   removed if you go to Western District of Virginia where

16   Thomas Caldwell is from or Florida where the Meggs are from

17   or the various places these people were at home and

18   arrested, which we submit would also be proper venue.

19           But the bottom line is, you have a very convenient

20   court eight miles away.  There's a practical side to it that

21   literally you could find out if -- we could find out if it

22   could seat more defendants, because my understanding is it

23   has a larger courtroom.  And there's a practical side to it.

24           But the reason I reference media is just to point

25   to one thing:  The congressional inquiry is just another --

```
1   investigation is just another -- the third, the most
2   relevant, is the impact on the residents in this community.
3   And I candidly, Your Honor, focused on Virginia, because
4   I know this area, and I know -- and I understand what people
5   felt.
6              THE COURT:  Thank you, Ms. Haller.
7              All right.  Does the government wish to be heard?
8              MS. RAKOCZY:  Briefly, Your Honor.
9              With respect to the polling cited in the defense
10  pleading, the government has addressed some of its concerns
11  about the polls in its pleading and we won't belabor them
12  here.  We cited several cases that discuss some of the
13  limitations in polling and how polling can really pale in
14  comparison to the exercise that the Court engages in when it
15  goes through the process of voir dire.
16             But even under the defense's own polling when you
17  compare residents of the District of Columbia to residents
18  of the Eastern District of Virginia, the exposure to the
19  media coverage is not that far apart.  I believe roughly
20  32 percent of the pollants in D.C. said they had been
21  exposed -- let me get the exact site for Your Honor -- they
22  had been exposed at least ten times a week --
23             THE COURT:  So, Ms. Rakoczy, look, I think you're
24  right.  The polling data with respect to the media coverage,
25  as I said to Ms. Haller, is a bit of a wash.
```

1          But I mean, they have presented some data that
2     suggests that the immediacy of the impact of this in the
3     District of Columbia has -- or the impact of this has been
4     more immediate and more long-lasting in the District than,
5     perhaps, in other places.
6          And so you're right that we could go through and
7     individually question a whole lot of folks.  But what do I
8     do about the potential for, for lack of a better term,
9     implicit bias that people may be harboring toward not all
10    January 6th defendants but particularly these January 6th
11    defendants who have arguably received more media coverage
12    than the average or the ordinary or the single defendant?
13         MS. RAKOCZY:  The government would submit that the
14    experience of the voir dire processes that have been
15    undergone to date counsel against defining that voir dire is
16    insufficient to address those issues.
17         If the Court looks at the responses of the jurors
18    in the transcripts we provided from the *Reffitt* and
19    *Robertson* cases, and if this Court draws upon its own
20    experience, it is not actually a small number of jurors who
21    answered yes to these "pre-judgment questions" in those
22    cases.
23         And in *the Reffitt* case, I think it was actually
24    maybe in the 40s rate, about 40 percent of people answered
25    yes to one of the two questions that we would use the

1    defense term as saying those were pre-judgment questions.

2    In *Robertson*, I think it was smaller, maybe more like

3    24 percent or so.

4           But a lot of people self-acknowledged as having

5    either been exposed to coverage or having views about the

6    events in general.  Very few had opinions about the

7    particular defendants on trial in those cases.

8           THE COURT:  I guess the question is how do I --

9    look, people come in, they say they can be fair but

10   perhaps -- and we can't read people's minds, we can only

11   rely on what they say on the record.

12          I mean, the defense's position is that, look, the

13   events of that day were -- are so seared in the memory of

14   the residents of this district and its after-effects, that

15   even if we get 14 people who say they can be fair,

16   implicitly, they may not -- there may be implicit issues

17   with their ability to be fair.  And why doesn't this polling

18   data at least back up that theory to some extent?

19          MS. RAKOCZY:  Your Honor -- well, first of all,

20   the polling data does not, because 70 percent of District

21   residents said that they could be fair and impartial, so the

22   polling data itself undercuts that.

23          But this Court knows that that's a risk --

24   implicit bias is a thing that exists in every community and

25   could be an issue in every particular criminal case.  People

1    having strong views about gun violence or sexual assault is

2    something that could affect a juror in every case, and yet

3    this Court employs the process of voir dire and courts

4    across this nation do the same.

5            THE COURT:  Yeah, but this is different.  This is

6    a case on -- not just this case but all the January 6th

7    prosecutions are cases of quite a different scale and

8    notoriety.

9            MS. RAKOCZY:  Well, I think the views that one

10   might have about a particular crime could be very deeply

11   held and implicit as well, Your Honor.

12           But in this particular case, I mean, this is a

13   crime that has been covered nationally, but that's going to

14   be an issue across the jurisdictions.  As the defendants'

15   own polling data shows, extensive voir dire will be

16   necessary wherever these cases are held.

17           30 percent of people in North Carolina felt

18   personally affected by the events of January 6th if you were

19   to believe the defense polling.  So everywhere this is

20   deeply felt because this was a crime of national

21   significance.

22           And so we believe voir dire will be necessary,

23   extensive voir dire in all these cases.  And that's why the

24   government is not objecting to and is working with the

25   defense in these cases to craft the questionnaire so that we

1   would do a more extensive questionnaire, we'd bring jurors

2   in early, and this Court would then have the ability and

3   time to assess those answers and then bring people in and do

4   what polling cannot, judge demeanor, judge body language,

5   ask follow-up questions.

6           THE COURT:  So, Ms. Rakoczy, can I just ask you a

7   different question which is, did the government -- is the

8   government's view that the Eastern District of Virginia is

9   not a proper -- would not be a proper venue to try this

10  case?

11          MS. RAKOCZY:  I think that -- and, you know, it's

12  a little bit difficult to say in the abstract.

13          I think we allege for the conspiracy counts overt

14  acts that occur within that district.  And I think that the

15  1512(c)(2), which is not a conspiracy, does allege an aiding

16  and abetting theory that covers, say, Defendant Vallejo, who

17  was acting largely but not exclusively in the Eastern

18  District of Virginia.  So I think there is a chance,

19  although I would want to research the issue further, that

20  venue might lie there, but it certainly would not be as

21  appropriate as the District of Columbia.

22          THE COURT:  Sure.

23          MS. RAKOCZY:  The bulk of the overt acts in the

24  indictment occurred here.  The actual act of obstructing

25  Congress on the 6th occurred here.

1          And there could be defendants who did not commit

2     any overt acts in the District of Virginia, and there is a

3     chance that that would create some legal issues with respect

4     to those defendants' charges, for a defendant who did not

5     pass through Virginia or did not drop off guns with the QRF.

6          THE COURT:  Presumably, if the defendants here are

7     all agreeing to venue, they would waive any such argument,

8     right?

9          MS. RAKOCZY:  Yes, Your Honor.

10         THE COURT:  So assume for me for a moment venue is

11    appropriate there, logistically we could do it there, and

12    that's a big assumption, what would otherwise be the

13    government's objection to trying the case in the Eastern

14    District of Virginia?

15         MS. RAKOCZY:  Well, number one, we do believe the

16    case is more properly brought here.  The gravitas of the

17    crime occurred in this district.  And under the Constitution

18    in Article III and the Sixth Amendment, crimes should be

19    charged where they occur, and we do think this district fits

20    better in terms of the gravitas of this case occurring here.

21         But we do think, based on the defendants' own

22    polling data and sort of common sense and the national scope

23    of this story, that it's only going to solve the problem so

24    much.

25         I anticipate the defense will ask you for that

1    same questionnaire in the Eastern District of Virginia that

2    they're asking for here, because an extensive voir dire is

3    going to be necessary no matter where this case is tried.

4    And so it's an awful lot to go through this whole exercise

5    to essentially do the same thing and have the same concerns

6    there.

7           And so from the government's perspective, there

8    are constitutional and gravitas-of-the-case reasons to

9    have -- to try the case here, in addition to the fact that

10   the case is brought here and is before Your Honor.  And the

11   defense has not suggested sufficient facts to show that

12   there should be a presumption of prejudice found by

13   Your Honor before even beginning voir dire.  And so we think

14   the case law is clear that under all those circumstances,

15   there is not a reason to grant the motion to change venue at

16   this time.

17          THE COURT:  Okay.

18          MS. RAKOCZY:  I would also just be remiss,

19   Your Honor, if I did not mention since it came up in the

20   reply brief and we didn't address it in our opposition, that

21   the *Delaney* case out of the First Circuit, in addition to

22   being a little bit of an outlier, is explicitly addressed in

23   *Haldeman*.  And it's not followed in the *Haldeman* case.

24          This Circuit casts aspersions on this

25   supervisory-power standard that the Court applied in

*Delaney*, and said that it thought that was essentially

interjecting a subjective nature to this test that was

unreliable.  And that's at pages 62 and 63 of the *Haldeman*

opinion.  So we don't think that that's a standard this

Court should apply here.

THE COURT:  Can I ask you a question that may not

relate directly to this motion?

But I don't know what -- I don't have any insight

into what the January 6th Commission is doing, when they

plan on doing it.  This case is scheduled for late

September.

What if we find ourselves in the position where

there are hearings, public hearings, going on in parallel

with the scheduling of this trial, or that an interim report

is released in the weeks or during trial, what then?  What's

the government's position going to be if the defendants then

say we need to continue this?

MS. RAKOCZY:  I think we will have to address that

issue when it arises, Your Honor.

And I don't see that to be cheeky, but we don't

know what information will be the focus of any such reports

or proceedings, whether it will focus on these defendants or

this case or whether it will be focusing on different

aspects of what occurred on January 6th or different actors

who may have played a role on January 6th.  We have no idea

1    what level -- we can assume it would be significant media

2    coverage, but we don't know exactly the level or duration of

3    that media coverage.

4              And so we think based on the information before

5    the Court right now, this Court has everything it needs to

6    and should deny this motion.  This Court can deny the motion

7    without prejudice so that it can be re-raised at a later

8    date or the defense can move for a continuance and we'll

9    have to address that when and if that situation arise.

10              THE COURT:  Okay.  Thank you, Ms. Rakoczy.

11              MS. RAKOCZY:  Thank you.

12              THE COURT:  Ms. Haller.

13              MS. HALLER:  Yes, Your Honor.

14              First, we would just respond briefly, Your Honor,

15    that if we wait until voir dire and the Court makes this

16    determination at that time, that just creates greater delay,

17    and this is something we can prepare for and plan for now.

18              We do know that the January 6th Commission has

19    subpoenaed telephones of these defendants.  We know that the

20    January 6th Commission had Ali Akbar testify about the list

21    of people he had approved as people to work for security on

22    January 6th and that our defendants' names would be on that

23    list or, at least, you know, the ones I know.

24              The gravitas-of-the-crime point isn't how venue is

25    defined necessarily.  Yes, there's an argument, of course,

1    to have venue here.  We're not alleging that it's improper

2    venue in the District of Columbia, we are saying that it is

3    also proper to go to the Eastern District of Virginia.

4            We would also submit that -- so Your Honor

5    understands to your earlier question, the hearing is very

6    much parallel with what the investigation is doing here.

7    So these people, the Oath Keepers as a group --

8            THE COURT:  But, Ms. Haller, I want to really stay

9    focused, because, one, I can't do anything about what

10   Congress is doing or what the scope of it is going to be,

11   that's one.

12           But, two, more importantly, that factor really

13   doesn't affect the venue transfer decision, right?  You

14   know, again, what Congress does or doesn't do is going to

15   equally impact a case, whether it's here, three blocks or

16   two blocks away, or whether it's eight miles away.  I mean,

17   all of that is going to be covered by the same media sources

18   that people read in both jurisdictions.

19           So I mean, it may be that delay may be warranted

20   depending upon what happens.  But where the trial takes

21   place is not in any way that I can see connected to what the

22   January 6th Commission does or doesn't do.  The physical

23   location of Congress doesn't seem to me to really tip in

24   either direction when you're talking about eight-mile

25   separation.

1          MS. HALLER:  Your Honor, but it's not just an
2    eight-mile separation, it's a different jury draw.
3          The difference when you work in a state, right --
4    the District of Columbia is a very unique jurisdiction in
5    that the Federal Court pulls the same jury panel that a
6    state -- or the Superior Court does.
7          In a state, you're pulling a different jury as a
8    Federal Court than as a state court.  So it's not that we're
9    saying we're going to Fairfax County and it's going to be
10   just a Fairfax jury.  We would hypothetically be going to
11   the Eastern District of Virginia, which, within its
12   district, has four courthouses.  We suggested the Alexandria
13   courthouse as a convenience to this Court, but it still
14   pulls from seven counties, which is more than --
15         THE COURT:  I hear what you're saying, but --
16   anyway.
17         MS. HALLER:  Your Honor, the D.C. impact is
18   undeniable.  This is like putting a victim on a jury.
19         People were all impacted by the curfew.  Some may
20   just be angry about the curfew.  Some may have been just
21   impacted by the fact that they couldn't walk on the Hill or
22   saw men with AR-15s everywhere surrounding the Hill after
23   January 6th.  Some are more seriously impacted.  Some were
24   there, some had some spouses there or family members or
25   various incidents.

1            But the impact on the community -- it's like in

2    the *McVeigh* case.  The government didn't address the *McVeigh*

3    case in Texas.  Timothy McVeigh's case got moved on venue

4    because they said the community was profoundly impacted.

5            We are submitting that this community is

6    profoundly impacted and that we cannot get an impartial jury

7    in this jurisdiction.  And it's very simple because it is

8    coming from so many directions against the Oath Keepers.

9    It's not just the media, it's not just the Congress, it's

10   not just the personal impact.  But the personal impact

11   argument, the fact becomes more important because it is more

12   enseared, that is where that implicit bias is that

13   Your Honor mentioned.  And implicit bias is going to be very

14   hard to identify, but we have had four Supreme Court

15   decisions explain that you can't unsee what you have seen.

16           THE COURT:  What's your response to Ms. Rakoczy's

17   statement that you're going to want to seek the same kind of

18   jury questionnaire and voir dire in the Eastern District of

19   Virginia that you would here?

20           MS. HALLER:  Well, I can represent that we, on

21   behalf of the movants, that we are waiving that.  And

22   I believe anybody who's joined our motion -- I believe

23   everyone has --

24           THE COURT:  You're waiving what?

25           MS. HALLER:  The argument of prejudice when we go

1     to Virginia as opposed to here.

2               THE COURT:  No, no, no, you're missing --

3               MS. HALLER:  I mean, prejudice applicable to the

4     venue.

5               THE COURT:  Maybe my question wasn't clear.

6               Ms. Rakoczy said that the very same things you're

7     going to want to do here to root out prejudicial jurors and

8     bias are the exact same things you're going to want to do in

9     the Eastern District of Virginia; namely, you're going to

10    want to have a very robust jury questionnaire; and, two,

11    you're going to want to have a very probing voir dire.

12              MS. HALLER:  Your Honor, these defendants --

13              THE COURT:  Do you -- hang on.

14              Do you disagree that you will in any way -- or

15    let's put it this way.

16              Do you disagree that your approach would be any

17    different in terms of jury selection here versus there?

18              MS. HALLER:  Your Honor, we would not not do jury

19    selection because we moved venue.

20              THE COURT:  If the answer is no, that's okay.

21              I can understand why the answer might be no, but

22    you can just say that.

23              MS. HALLRE:  No.

24              THE COURT:  No, it's going to be exactly the same

25    because you're looking to protect their interests.

```
 1                    MS. HALLER:  Yes.
 2                    THE COURT:  And I get it.  That's fine.  That's
 3       okay.  You can give me that answer --
 4                    MS. HALLER:  Yes.
 5                    THE COURT:  -- because that's the answer I would
 6       expect, okay?  That's fine.  Don't worry about it.  That's
 7       okay.
 8                    MS. HALLER:  Okay.  Thank you.
 9                    THE COURT:  All right.
10                    MS. HALLER:  Thank you, Your Honor.
11                    THE COURT:  Okay.  Thank you all very much for
12       your presentations, it's a lot to chew over.
13                    Ms. Rakoczy, did you want to -- I've got --
14       I haven't forgotten about the defendant-specific matters
15       that we want to raise.
16                    MS. RAKOCZY:  Yes, Your Honor.
17                    We don't have a next status date in this case, we
18       just have the trial date.  So I wasn't sure if the Court
19       wanted to address that now or at some later date.
20                    THE COURT:  Yes.  That's a good idea just to make
21       sure we're staying on track.
22                    Are you all available the afternoon of June the
23       24th, at, say, 1:00?
24                    MR. LINDER:  On behalf of Mr. Rhodes, we can be
25       here.
```

1          THE COURT:  I'm seeing one counsel shake his head.

2          MR. LINDER:  Would that be 1:00 again, Your Honor?

3          THE COURT:  Does that work for everybody, 1:00,

4   June 24th?

5          MS. HALIM:  Yes, Your Honor.

6          THE COURT:  Okay.  Great.  So we'll set June 24th

7   at 1:00.

8          All right.  So anything else that we need to take

9   up as to all defendants?

10          My list of defendant-specific matters that I just

11   wanted to raise concerns Mr. Rhodes, Mr. Meggs, and

12   Mr. Harrelson.  So those are the three I wanted to just

13   touch upon.

14          Am I missing anybody?  Or is there someone with a

15   defendant-specific issue that I've not mentioned?

16          Okay.  So other than those three defendants and

17   counsel for those defendants, everyone else may be excused.

18   And, again, I want to just thank counsel for all the really

19   well-done written submissions and the oral arguments.  As I

20   said, it's a lot to think about.

21          So why don't we start with Mr. Linder and

22   Mr. Rhodes, and I understand there are or continue to be

23   issues with access.

24          MR. LINDER:  Yep.

25          Good afternoon, Your Honor.

```
1              THE COURT:  Good afternoon.
2              MR. LINDER:  I hate to keep bringing this up.
3    But you know I've been doing this a long time; I've been
4    doing this for 30 years; I've tried 200 cases to jury
5    verdict.
6              It's been really difficult getting access to my
7    client.  And just to kind of put it in perspective, I mean,
8    he's in a very unique place.  He's the lead defendant and
9    arguably --
10             THE COURT:  Let me interrupt you.
11             You don't need to justify your need to see him.
12   What I want to understand is what the impediments have been.
13   For example, I understand you came up here to see him in
14   person.  Have you been able to do that this week?
15             MR. LINDER:  For one hour.
16             Here's what happened.
17             And it's not because of your staff.  JC and
18   Ms. Rakoczy have been great in trying to get something set
19   up.
20             So I believe it's just the fact that the Marshals
21   don't owe me a return phone call when I call them.
22             When we finally did get in touch with the
23   detention center through the Sheriff's Office, they've been
24   friendly.  We've been able to set up phone calls and have a
25   Zoom conference, and that's been great.
```

1    The problem has been -- and if you'll recall in

2    our last status conference, I held up a FedEx package that

3    I'd received back that very day of discovery that I'd sent

4    to Mr. Rhodes.

5    So after the hearing, I called -- my paralegal

6    called the jail, they said to send it regular mail.  That's

7    over two weeks ago, three weeks ago.  As of today, he still

8    had not received it.  In preparing for that, I copied all of

9    that that I'd sent him and brought him a set today just

10   because I feared that might happen.  So he still didn't have

11   that.

12   Then the issue last week or two weeks ago when we

13   called, when I knew I was coming in town --

14   THE COURT:  So, Mr. Linder, if I could just

15   interrupt you.

16   How can we solve the problem?  In other words,

17   what do you need or what do you think you need in terms of

18   access, both remotely and otherwise?  And if you tell me

19   that, then I can take it to our U.S. Marshal and ask -- and

20   make the ask.

21   And so --

22   MR. LINDER:  Just before I get there, as in, for

23   instance, today, I had a meeting set up with him this

24   morning at the jail.  I go through outside security, inside

25   security with the Sheriff's Department, I'm sitting in the

1    jail for an hour, I finally stick my -- or 45 minutes.

2    I stick my head out to the desk and they type in, oh, the

3    Marshals picked him up this morning.  So they didn't even

4    know themselves.  So I don't think they're communicating

5    very well.

6           Ms. Rakoczy has just sent you -- and I would like

7    to ask you to sign it -- a motion and an order to allow my

8    client to have a laptop and access to electronic discovery.

9           The issue has been -- will be -- that I'm supposed

10   to provide the laptop, which I have no problem doing, the

11   expense of that is not an issue.  The problem is going to be

12   for me to communicate with someone on what type of laptop

13   they'll take, who I can send it to, how Ms. Rakoczy will

14   send that evidence.  There just needs to be someone

15   coordinating that to get that done.  She's suggested

16   something that I approve of.  I just think there needs to be

17   some more intervention from someone who has authority.

18           THE COURT:  So here's what I propose, because,

19   look, here's the difficulty, which is, the location of his

20   facility is sort of not in this jurisdiction.  And I don't

21   know that I can order them to do anything, so that's issue

22   one.

23           And then issue two is whether even what

24   Ms. Rakoczy proposes would be acceptable to a facility

25   that's not within our jurisdiction and, to some degree,

1    influence.

2              All that said, here's what I think we ought to do.

3    Why don't we plan to sit down and have a phone call with our

4    U.S. Marshal.

5              And, frankly, how long are you here today?

6              MR. LINDER:  I'm flying out tomorrow.

7              THE COURT:  What time?

8              MR. LINDER:  My flight is at 3:30.  I'll go to the

9    airport about 1:00, 1:30.  So I'm here all morning.

10             THE COURT:  Let me reach out to him to see what

11   his availability is, and perhaps we can do a sit-down with

12   him and talk through what the issues are and how we can move

13   things forward.

14             MR. LINDER:  I appreciate it.

15             The other alternative -- and I know Ms. Rakoczy

16   doesn't want this and she's suggesting a theory that is

17   something that might work in the alternative -- but

18   Mr. Rhodes could be moved to the other jail where the other

19   three defendants are.  They have access to the e-Discovery.

20   I know she doesn't want them communicating, but three of

21   them are already there already.  So that would absolve --

22   resolve some of those issues.

23             THE COURT:  Look, yes, that would.

24             And why don't we talk to the Marshal about that,

25   because those -- that's above my pay grade, to where people

1    end up --

2              MR. LINDER:  I think they would listen to you.

3              THE COURT:  -- and why they end up where they end

4    up.  I mean, you can appreciate that.

5              MR. LINDER:  If they had all four of them in

6    different facilities to prevent communication, I would

7    understand that, because that's how they do it in Texas a

8    lot, they spread them out to different facilities.  But

9    three are already in the facility with the e-Discovery

10   already set up, it's already working.

11             THE COURT:  All right.  Let me do that.

12             As soon as we adjourn from here, I'll reach out to

13   the Marshal.  And we've got your contact information?

14             MR. LINDER:  JC has my cell phone.  And

15   Ms. Rakoczy does, too.  And I'll be on my cell phone.

16             THE COURT:  We'll see what we can get set up if

17   not before you leave the courthouse today, then tomorrow

18   morning.

19             MR. LINDER:  I'm just at the hotel.  Anytime they

20   respond, you can call me.  Thank you, sir.

21             THE COURT:  Sure, Mr. Linder.

22             Okay.  So let's turn to Mr. Meggs and issues

23   surrounding his counsel.

24             Ms. Haller and Mr. Woodward, I've gotten your

25   motion.  I guess the question is, you know, we've done this

1    once before.  You all may be aware of this or may not be

2    aware of it, perhaps you are, but we did -- when Mr. Meggs

3    and Ms. Meggs were jointly represented by Mr. Wilson, we did

4    have conflicts counsel come in and talk to them about the

5    potential conflict and secure waivers.  I can't remember

6    whether we got something in writing or not; Mr. Nestler, you

7    might remember that or not.

8            Look, I think the question is whether everybody

9    thinks we need to do it again.  I can ask the same counsel

10   that did it before to serve in that capacity.  I think it

11   was Mr. Conley and not Mr. Wise and Ms. Soller.  So if

12   everybody wants to do that, then I can pick up the phone and

13   see if we can get that taken care of.

14           MR. WOODWARD:  So, Your Honor, we're not opposed

15   to it.  Certainly, we've looked at the conflict issue

16   extensively.  Probably the most significant development in

17   the case since that prior analysis is that Mr. and Ms. Meggs

18   have now been severed into different trials.

19           THE COURT:  Right.

20           MR. WOODWARD:  And we won't speak for the

21   government, but we understand that that is a significant

22   fact for the government.  As we said in our motion, we

23   welcome the Court's scrutiny of this.

24           We are, however, aware that these things take

25   time.  And so appointment of conflicts counsel, having them

1    review -- I actually have spoken to Mr. Wise only because he

2    was involved in the conflict issue most recently.

3                THE COURT:  Right.

4                MR. WOODWARD:  So he is aware of the fact that we

5    are moving to do this.  Long story long, but we don't oppose

6    it and defer to the Court.

7                THE COURT:  All right.

8                Well, let me -- you know, Mr. Wise is -- I know

9    Mr. Wise, I think, has either spoken directly to Mr. Meggs

10   or certainly been involved in discussions.

11               But I don't think he's ever spoken to Ms. Meggs.

12               MR. WOODWARD:  I believe he has, Your Honor.

13               THE COURT:  Has he done that?

14               MR. WOODWARD:  Yes, Your Honor.

15               THE COURT:  Oh, that's because there was the issue

16   in the civil case.

17               So he could serve in that capacity.  I just

18   thought since -- anyway, bottom line is, it's somebody who's

19   actually spoken to both defendants and has familiarity with

20   them would probably be a little easier than someone who

21   didn't have the familiarity and prior contact.

22               Okay.  So I'll reach out to him and we'll get that

23   process moving, okay?

24               MR. WOODWARD:  Thank you, Your Honor.

25               THE COURT:  But otherwise, you know, I have

granted -- or I haven't -- I guess I haven't done it

officially, but I'll provisionally grant the motion to

withdraw.  I guess it wasn't even a motion, just the notice

that was filed.  And assuming there are no hiccups, then you

all will --

MR. WOODWARD:  Thank you, Your Honor.  I'm sorry

to speak over you.

THE COURT:  That's okay.

MR. WOODWARD:  We are proceeding with the utmost

caution because of the concern that, would a conflict be

identified by the Court or by conflicts counsel, that it

would somehow preclude our continued representation of

Ms. Meggs.

THE COURT:  Look, I think the issue is -- and it's

not -- I mean, unless there have been developments since the

last time we went through this, I am not sure that things

are different.

I mean, look, I think the question really -- in

some sense, it depends on what the government is thinking.

I have no idea, for example, to what extent they've had

discussions with Ms. Meggs, et cetera.

Mr. Nestler.

MR. NESTLER:  I don't believe, by the way,

Mr. Connolly issued a record or gave any findings.

My recollection is that he spoke with both Mr. Meggs,

1    Ms. Meggs, and David Wilson.

2            THE COURT:  Right.

3            MR. NESTLER:  And then Mr. Wilson withdrew from

4    representing Connie Meggs.

5            So I'm not sure he actually came to a resolution

6    about any conflicts.

7            THE COURT:  Oh, that may be right because --

8    that's right, because we did find someone for Ms. Meggs at

9    the time, right?

10           MR. NESTLER:  Correct.

11           So from the government's perspective, as I've told

12   Mr. Woodward and Ms. Haller, we don't object, assuming there

13   is no conflict; or if there is a conflict, conflicts counsel

14   and the Court finds it to be waivable and it's waived, both

15   in writing and orally, then we have no objection, but

16   I think we need to go through those steps.

17           THE COURT:  No.  I agree.

18           Look, I mean, the conflicts are the obvious ones,

19   and perhaps some that I'm not even thinking of.  But, look,

20   we'll go through the process; I'll give Mr. Wise a call and

21   we'll get things moving, okay?

22           MR. WOODWARD:  Thank you, Your Honor.

23           THE COURT:  But that also means that you all ought

24   to tentatively be ready to go in November for Mr. Meggs.

25           MR. WOODWARD:  Yes.

1          THE COURT:  Because we're going to move Ms. Meggs

2     and the other Caldwell defendants to February.

3          MR. WOODWARD:  The defense counsel --

4          THE COURT:  I'm sorry, the Crowl defendants.

5          MR. WOODWARD:  We've assumed as much.

6          THE COURT:  Right.

7          I know I haven't posted anything, sorry, but I

8     figured you had heard.

9          MR. WOODWARD:  Yeah, we do follow this case.

10          Your Honor, I believe that Mr. Meggs is now set

11     for trial in September.

12          THE COURT:  Oh, that's right.  It is September.

13     Okay.

14          MR. WOODWARD:  And I do have a conflict in that

15     I have another trial that is also set for September.

16          I am not asking the Court to do anything about any

17     of this today.  It's sort of a chicken or the egg type

18     question, assuming conflict works out.

19          I'm also in the process of working with the

20     government in the other matter to see if that can be

21     continued.  My client there is not detained.

22          THE COURT:  Is that in this courthouse or

23     somewhere else?

24          MR. WOODWARD:  It is in this courthouse.

25          And so at this time, Your Honor, I'd like to not

```
 1    address that issue and we're working with the government.
 2            THE COURT:  All right.  Well, look, if I can be of
 3    help, just let me know.
 4            MR. WOODWARD:  I appreciate that.
 5            I just also know that Your Honor doesn't like to
 6    be surprised by these things, so we're working on it.
 7            THE COURT:  All right.  I appreciate it.
 8            All right.  So we'll get that ball rolling.
 9            The final issue is that I just wanted to circle
10    back on Mr. Geyer's motion.  He was asking for some sort of
11    identity and other materials, and so I just wanted to see
12    where things stood on that front.
13            MR. GEYER:  Good afternoon, Your Honor.
14            THE COURT:  Good afternoon.  It's nice to see you.
15            MR. GEYER:  It's nice to finally see you in
16    person.
17            THE COURT:  I know.
18            MR. GEYER:  Thank you.
19            Actually, Mr. Nestler and I have been working
20    through our issues; we've been seeing a marriage counselor
21    now for a couple weeks, things are going well.  So I think
22    we don't have to spend anytime on this today.
23            THE COURT:  By the way, as long as I'm not that
24    counselor.
25            MR. NESTLER:  I want a divorce.
```

1           MR. GEYER:  But I wanted to make the Court aware

2     that the folks who are in custody over in D.C., they've not

3     had access to their tablets since May 4th, and I really do

4     believe that's a mission-critical issue.  We went to the

5     Federal Public Defender's Office, now we're back to the

6     government.

7           The other thing is, nobody has any access to

8     Relativity.  I think in a case like this where everybody's

9     resource-constrained, it would behoove us all if we figured

10    out a way to get these defendants access to Relativity,

11    that -- whether they're in the lockup or they're at home,

12    there might be some modifications to the lockdowns, in terms

13    of the Internet lockdowns.

14          And I'm throwing this out as an idea only because

15    I thought about it literally five minutes ago.  If you could

16    provide some kind of a laptop, right, that had that

17    narrowed-down access and we could get it to these guys and

18    everything will be good for September.  I don't know what --

19          THE COURT:  Mr. Geyer, it might be useful -- if

20    you want to have specific conversations with them about

21    doing that, that's fine.  Obviously, I would encourage

22    whatever cooperation you can accomplish.

23          I know -- I think Ms. Miller is out and she's been

24    leading up this effort and really has moved heaven and earth

25    to get to where we have so far.

1          And I wish it was as simple as, let's give them

2   access to Relativity.  It's more complicated than that in

3   terms of hardware, bandwidth, access, all of those things,

4   including, I think, from the vendor, is my understanding.

5          So anyway, bottom line is, it's not as

6   straightforward as we all might hope.

7          MR. GEYER:  We're working through it, though,

8   Your Honor.  Thank you.

9          THE COURT:  Okay.

10         All right.  With that then, is there anything

11  else -- so the bottom line is, your motion is -- I don't

12  know that I did anything formally with it.  But until I hear

13  from you, I'm going to assume that you all are continuing to

14  work through your request.

15         MR. GEYER:  Yes.  I'm hoping I can just withdraw

16  it.

17         THE COURT:  All right.  Even better.  All right.

18  So I can close that out.  We've been productive today.

19         All right.  Thank you, all, very much.  We will

20  see everybody in about five weeks.  And if you need me

21  before then, you know where to find me.

22         Please do not wait for me.  Thank you, all.

23         COURTROOM DEPUTY:  The Court stands adjourned.

24         (Proceedings concluded at 4:19 p.m.)

25

C E R T I F I C A T E

       I, William P. Zaremba, RMR, CRR, certify that
the foregoing is a correct transcript from the record of
proceedings in the above-titled matter.


Date:__June 10, 2022_____    

                           William P. Zaremba, RMR, CRR

**COURTROOM DEPUTY: [5]** 5/2 5/6 63/22 63/25 141/23

**MR. FISCHER: [47]** 7/6 9/25 10/19 11/13 13/2 13/20 13/23 15/6 15/20 17/6 17/12 17/20 18/17 20/3 37/18 38/7 58/12 60/18 61/3 62/16 62/19 63/5 63/11 64/7 64/20 64/23 65/3 65/8 66/4 66/8 66/18 67/16 68/17 70/13 70/16 71/12 71/20 72/11 73/2 74/20 75/16 75/24 82/17 83/5 85/16 99/3 99/8

**MR. GEYER: [6]** 139/13 139/15 139/18 140/1 141/7 141/15

**MR. LINDER: [14]** 6/20 127/24 128/2 128/24 129/2 129/15 130/22 132/6 132/8 132/14 133/2 133/5 133/14 133/19

**MR. NESTLER: [48]** 38/10 38/12 39/9 39/20 41/18 41/22 42/7 43/15 44/19 46/12 47/5 47/20 48/19 49/2 50/2 51/2 51/21 52/4 52/12 52/25 53/4 53/16 53/21 54/3 54/16 55/2 55/8 56/5 56/7 57/2 57/22 58/9 76/4 77/19 77/22 78/13 78/17 79/22 80/21 81/7 81/21 81/23 82/5 82/14 136/23 137/3 137/10 139/25

**MR. PEED: [9]** 31/19 32/3 32/8 33/6 33/16 34/3 35/1 35/17 36/23

**MR. WOODWARD: [16]** 134/14 134/20 135/4 135/12 135/14 135/24 136/6 136/9 137/22 137/25 138/3 138/5 138/9 138/14 138/24 139/4

**MS HALLER: [1]** 99/12

**MS. HALIM: [42]** 20/10 20/13 20/17 21/24 22/1 22/25 23/6 23/12 23/16 23/21 24/1 24/17 24/22 25/6 26/11 27/15 28/8 28/25 29/12 29/15 29/18 30/4 31/8 31/15 85/21 86/17 87/13 88/6 88/20 90/2 90/5 91/14 92/8 94/4 95/8 98/19 105/15 128/5

**MS. HALLER: [34]** 99/10 100/11 100/18

102/10 103/10 104/12 104/14 106/16 107/15 107/24 108/18 108/21 109/9 109/15 109/19 109/22 109/25 111/5 111/8 122/13 124/1 124/17 125/20 125/25 126/3 126/12 126/18 127/1 127/4 127/8 127/10

**MS. HALLRE: [1]** 126/23

**MS. RAKOCZY: [15]** 95/13 97/24 98/14 114/8 115/13 116/19 117/9 118/11 118/23 119/9 119/15 120/18 121/18 122/11 127/16

**THE COURT: [234]**

**'**

**'22 [1]** 102/15
**'including [1]** 25/20

**0**

**08077 [1]** 3/4
**0826 [1]** 2/5

**1**

**10 [2]** 5/12 142/7
**100 [1]** 83/24
**100-some-odd [1]** 24/6
**11 [1]** 5/13
**1100 [1]** 3/15
**114 [1]** 3/19
**1150 [1]** 4/9
**12 [11]** 6/14 27/11 38/14 46/18 48/23 54/6 55/12 85/23 88/15 89/14 101/8
**121 [1]** 90/12
**12:01 [3]** 45/12 50/21 51/20
**12th [23]** 7/21 13/17 14/1 14/3 17/23 17/24 18/12 18/15 18/20 25/9 25/20 27/5 29/9 29/10 30/24 33/25 36/13 36/22 39/13 45/17 52/3 57/19 57/25
**12th Amendment [13]** 8/1 8/7 12/20 12/20 13/3 15/1 17/5 19/1 25/3 36/21 50/14 57/24 61/17
**134 [2]** 24/9 30/17
**14 [8]** 24/13 85/20 85/22 86/8 89/25 94/18 97/1 116/15
**1442 [1]** 82/8
**14th [2]** 74/22 74/23
**14th Amendment [4]** 77/4 77/5 77/7 77/14
**15 [19]** 1/4 5/7 7/22 13/18 15/1 18/21 25/4 25/10 25/21 27/5 29/11 30/25 33/25 39/13

63/18 106/7
**15 percent [1]** 106/7
**1512 [7]** 64/24 86/23 88/22 89/9 96/6 96/23 118/15
**1512-related [1]** 64/9
**15s [1]** 124/22
**16 [4]** 24/13 25/18 45/18 53/25
**167 [1]** 97/11
**168 [1]** 97/4
**17 [1]** 1/5
**17110 [1]** 2/9
**1775 [1]** 4/9
**18 [5]** 24/9 30/17 53/19 106/2 106/3
**18 qualified [1]** 105/24
**18 U.S.C [3]** 56/16 76/7 77/6
**1800s [3]** 11/14 40/17 42/24
**1808 [1]** 2/13
**1860s [1]** 19/17
**1861 [5]** 14/6 19/4 63/1 73/22 74/17
**1871 [1]** 74/21
**1900s [2]** 40/17 42/24
**19106 [1]** 3/15
**1910s [1]** 42/9
**192 [1]** 88/1
**1920 [1]** 41/3
**1920s [1]** 42/10
**1921 [1]** 41/3
**19th [3]** 61/21 65/11 75/6
**1:00 [5]** 127/23 128/2 128/3 128/7 132/9
**1:05 [1]** 1/6
**1:30 [1]** 132/9

**2**

**20 [2]** 63/16 111/9
**200 [1]** 129/4
**20001 [1]** 4/15
**20006 [1]** 4/10
**20010 [1]** 2/13
**20036 [1]** 2/18
**2006 [1]** 3/3
**202 [5]** 1/16 2/14 2/19 4/10 4/15
**2022 [3]** 1/5 75/11 142/7
**20530 [1]** 1/16
**20th [11]** 25/9 25/21 33/25 39/13 45/13 46/1 49/18 50/21 51/7 51/20 59/18
**20th Amendment [26]** 7/21 7/24 25/4 27/5 32/24 33/2 45/10 45/11 45/25 46/16 47/1 47/15 47/25 48/8 48/10 48/15 48/18 49/6 49/16 50/1 50/15 50/20 50/25 51/9 52/6 52/24
**20th Amendments [1]** 30/25

**21-CR-24 [1]** 99/21
**21061-3065 [1]** 2/4
**214 [1]** 4/5
**215 [1]** 3/15
**22-15 [2]** 1/4 5/7
**2201 [1]** 3/9
**22nd [1]** 102/15
**2384 [6]** 40/6 40/10 42/18 43/9 56/17 58/15
**24 [1]** 99/21
**24 percent [1]** 116/3
**24th [3]** 127/23 128/4 128/6
**252-7277 [1]** 1/16
**252-9900 [1]** 4/5
**26 [1]** 105/24
**2615 [1]** 2/19
**265 [1]** 3/18
**28 [1]** 24/5
**2:20 [1]** 63/19
**2:22 [1]** 63/24
**2:35 [1]** 63/20
**2:39 [1]** 63/24
**2:40 [1]** 63/20

**3**

**30 [2]** 117/17 129/4
**300 [1]** 2/4
**3065 [1]** 2/4
**32 percent [1]** 114/20
**3249 [1]** 4/15
**3300 [1]** 4/3
**333 [1]** 4/14
**3336 [1]** 3/10
**33950 [1]** 3/19
**35 [2]** 106/1 106/1
**352-2615 [1]** 2/19
**354-3249 [1]** 4/15
**371 [1]** 29/5
**371 conspiracy [1]** 29/3
**372 [6]** 65/9 65/14 69/12 76/7 76/7 77/6
**3:30 [1]** 132/8

**4**

**4.5 million [1]** 107/3
**40 [2]** 109/4 115/24
**4031 [1]** 2/8
**40s [1]** 115/24
**410 [1]** 2/5
**412-4676 [1]** 2/9
**421 [1]** 105/5
**45 [1]** 131/1
**4676 [1]** 2/9
**48 [2]** 21/9 24/5
**4:19 [1]** 141/24
**4th [1]** 140/3

**5**

**501 [1]** 3/14
**521-3336 [1]** 3/10
**53rd [1]** 106/2
**555 [1]** 1/15
**5708 [1]** 3/4
**575-8000 [1]** 3/20
**5th [1]** 103/1

**60 [1]** 104/22
**601 [2]** 2/17 3/14
**607-5708 [1]** 3/4
**62 [1]** 121/3
**63 [1]** 121/3
**66 [1]** 111/19
**66 percent [1]** 102/19
**6th [34]** 7/10 30/21 48/5 49/22 52/11 52/20 80/2 91/7 91/7 93/5 102/12 102/15 102/25 103/3 103/10 104/4 105/19 108/10 111/1 111/21 112/16 115/10 115/10 117/6 117/18 118/25 121/9 121/24 121/25 122/18 122/20 122/22 123/22 124/23

**7**

**70 [1]** 116/20
**700 [1]** 4/4
**717 [1]** 2/9
**7277 [1]** 1/16
**7310 [1]** 2/3
**733 [1]** 16/5
**734 [1]** 16/6
**7447 [1]** 2/14
**75219 [1]** 4/4
**787-0826 [1]** 2/5
**794 [1]** 105/5
**7th [3]** 48/13 49/24 50/5

**8**

**8000 [1]** 3/20
**808 [1]** 3/10
**808Shipleylaw [1]** 3/11
**841 [1]** 3/9
**856 [1]** 3/4

**9**

**900 [1]** 2/17
**91 percent [1]** 112/3
**919-9491 [1]** 4/10
**928-1100 [1]** 3/15
**941 [1]** 3/20
**9491 [1]** 4/10
**95 [1]** 32/10
**96813 [1]** 3/10
**9900 [1]** 4/5
**996-7447 [1]** 2/14

**A**

**abetting [1]** 118/16
**abide [1]** 13/4
**ability [3]** 51/12 116/17 118/2
**able [12]** 8/14 37/25 47/18 51/7 59/13 59/22 60/1 87/7 94/2 97/23 129/14 129/24
**about [99]** 6/17 6/19 6/25 12/2 12/15 16/3 16/6 17/22 18/4 21/19 27/22 29/1 29/3 34/6 34/7 35/5 35/20 40/7

**A**

**about... [81]** 42/14
43/5 45/10 45/15 46/4
46/4 47/4 49/3 51/17
52/12 52/13 55/9 56/13
56/21 57/19 57/24 59/3
60/8 61/4 61/6 61/17
63/16 63/19 66/1 67/24
67/25 74/7 76/11 77/3
79/9 81/3 83/1 83/2
83/9 86/13 90/10 90/11
92/12 94/8 94/9 94/10
100/1 101/25 102/11
102/13 104/6 104/18
105/17 106/20 106/21
106/24 107/10 107/19
108/23 109/7 109/9
109/10 109/19 109/21
114/11 115/8 115/24
116/5 116/6 117/1
117/10 122/20 123/9
123/24 124/20 127/6
127/14 128/20 132/9
132/24 134/4 137/6
138/16 140/15 140/20
141/20

**above [2]** 132/25 142/4
**above-titled [1]** 142/4
**absence [1]** 107/22
**absent [2]** 65/17 65/19
**absolute [1]** 47/18
**absolutely [6]** 56/16
61/11 62/19 71/12 73/2
86/9
**absolve [1]** 132/21
**abstract [1]** 118/12
**abundantly [1]** 26/24
**abuse [1]** 109/13
**accept [15]** 57/18 72/8
72/14 73/2 73/3 73/8
73/9 76/15 76/17 76/24
81/2 81/19 82/20 82/23
83/11
**acceptable [3]** 89/12
89/13 131/24
**acceptance [1]** 73/5
**accepted [3]** 71/2 72/6
72/7
**accepting [11]** 70/11
70/25 71/7 71/21 71/24
72/9 72/10 76/12 76/21
80/16 82/21
**access [13]** 6/19 102/8
128/23 129/6 130/18
131/8 132/19 140/3
140/7 140/10 140/17
141/2 141/3
**accessible [1]** 13/7
**accident [1]** 111/16
**accomplish [1]** 140/22
**according [3]** 51/6
61/19 107/15
**accusation [2]** 21/16
30/7
**accused [4]** 41/17
54/13 91/16 105/10
**acknowledge [2]** 44/22
90/17

**acknowledged [2]** 59/18
104/19 116/4
**acquittals [2]** 107/21
107/23
**acquitted [2]** 106/23
106/25
**across [3]** 103/16
117/4 117/14
**act [4]** 53/17 53/22
57/19 118/24
**acting [5]** 10/14 57/5
57/13 78/10 118/17
**action [2]** 17/1 47/9
**actions [1]** 44/5
**actor [2]** 43/12 43/13
**actors [9]** 40/4 40/21
40/21 42/8 42/16 42/23
44/2 106/24 121/24
**acts [8]** 40/3 48/4 48/6
48/21 74/21 118/14
118/23 119/2
**actual [5]** 31/3 36/21
44/16 92/22 118/24
**actually [25]** 22/1 25/7
40/9 59/2 68/5 68/13
69/14 71/25 74/3 74/15
74/17 80/10 80/14
80/15 86/21 87/6 90/7
96/23 106/6 115/20
115/23 135/1 135/19
137/5 139/19
**acutely [1]** 103/15
**add [1]** 32/9
**addition [2]** 120/9
120/21
**additional [5]** 20/8
76/10 91/20 96/2 98/5
**Additionally [1]** 89/10
**address [10]** 74/13
90/2 98/11 115/16
120/20 121/18 122/9
125/2 127/19 139/1
**addressed [3]** 96/10
114/10 120/22
**adduce [2]** 47/22 49/4
**adequate [2]** 21/22
48/25
**adequately [1]** 55/14
**adherence [2]** 36/20
36/22
**adjourn [1]** 133/12
**adjourned [1]** 141/23
**administration [3]**
51/11 51/12 51/13
**admissible [2]** 90/13
95/19
**admit [2]** 68/1 105/6
**adopt [1]** 27/10
**adopted [1]** 36/7
**affect [5]** 16/9 16/10
16/11 117/2 123/13
**affected [4]** 103/14
111/1 111/23 117/18
**affects [1]** 16/8
**affirmatively [1]** 59/7
**after [18]** 21/5 25/19
26/21 26/24 49/22
52/20 69/21 74/4 91/7

112/22 112/25 112/25
116/14 124/22 130/5
**after-effects [1]** 116/14
**afternoon [15]** 5/4 5/6
6/10 20/13 20/14 38/10
38/11 76/4 95/13 99/10
127/22 128/25 129/1
139/13 139/14
**again [24]** 6/10 15/3
16/25 21/3 21/13 26/22
28/4 30/8 47/25 64/1
75/5 81/15 82/21 83/12
87/10 89/19 94/16
104/15 108/7 113/1
123/14 128/2 128/18
134/9
**against [16]** 11/24 12/5
12/7 28/16 41/8 43/20
56/25 63/7 66/7 70/23
76/16 87/21 97/2
111/14 115/15 125/8
**agent [1]** 98/2
**ago [5]** 31/22 130/7
130/7 130/12 140/15
**agree [23]** 15/19 22/24
23/3 23/10 24/8 27/12
28/21 32/22 41/13
44/25 60/14 64/18
71/17 81/16 84/24
87/13 90/6 92/8 92/9
100/7 110/16 111/16
137/17
**agreed [1]** 80/9
**agreeing [1]** 119/7
**agreement [4]** 22/24
27/9 29/3 47/9
**ahead [2]** 7/1 32/1
**aided [1]** 4/17
**aiding [1]** 118/15
**aimed [6]** 7/14 28/20
48/18 83/8 83/13 83/13
**aiming [1]** 7/14
**airport [1]** 132/9
**Akbar [1]** 122/20
**akin [1]** 44/15
**AL [1]** 1/6
**Alexandria [4]** 100/10
102/3 102/4 124/12
**Ali [1]** 122/20
**all [108]** 5/2 7/9 15/21
20/7 21/4 21/5 21/14
22/5 22/12 23/24 25/22
27/8 29/16 29/25 31/13
31/16 31/17 34/2 35/15
36/14 37/12 38/5 38/8
45/13 47/6 48/14 48/20
52/21 54/25 55/9 55/10
58/10 58/14 63/9 63/22
63/25 64/3 64/5 64/22
66/24 69/17 71/21 74/9
75/8 75/16 76/13 79/4
79/4 81/19 82/15 82/19
89/19 91/15 92/6 93/8
94/13 95/10 96/20
98/22 98/22 98/23
103/4 105/4 106/25
107/5 107/7 110/11

113/4 114/7 115/9
116/19 117/6 117/23
119/7 120/14 123/17
124/19 127/9 127/11
127/22 128/8 128/9
128/18 130/8 132/2
132/9 133/5 133/11
134/1 135/7 136/5
137/23 139/2 139/7
139/8 140/9 141/3
141/6 141/10 141/13
141/17 141/17 141/19
141/19 141/22
**All right [1]** 20/7
**allegation [3]** 39/14
50/12 51/18
**allegations [7]** 24/6
24/7 44/1 44/3 46/8
49/3 101/12
**allege [5]** 48/21 59/19
97/4 113/13 118/15
**alleged [13]** 8/19 23/5
23/19 43/19 44/8 55/10
55/13 55/15 58/6 90/10
90/12 97/15 101/11
**allegedly [2]** 86/23
91/18
**alleges [5]** 29/8 29/9
29/10 70/14 86/1
**alleging [4]** 48/24
95/22 97/12 123/1
**allow [4]** 49/16 49/17
52/5 131/7
**alluded [2]** 65/10 98/9
**alluding [1]** 95/16
**almost [7]** 10/13 27/23
61/13 61/15 86/20 89/7
89/16
**alone [1]** 29/5
**along [1]** 43/16
**already [12]** 46/10
64/10 64/20 73/7 80/3
81/5 89/20 132/21
132/21 133/9 133/10
133/10
**also [29]** 7/21 9/3
11/18 16/6 49/21 51/2
59/1 60/2 60/3 68/20
72/15 74/14 76/18
77/16 77/25 78/24 82/7
90/13 97/25 110/5
111/17 113/18 120/18
123/3 123/4 137/23
138/15 138/19 139/5
**alter [1]** 91/2
**alteration [1]** 88/23
**altered [1]** 97/5
**alternate [1]** 70/7
**alternative [2]** 132/15
132/17
**although [4]** 97/23
103/17 108/17 118/19
**always [3]** 47/12
111/10 111/11
**am [7]** 87/14 90/20
95/4 109/21 128/14
136/16 138/16

**amalgam [1]** 34/12
**Amazon [1]** 13/7
**ambiguity [1]** 96/20
**ambiguous [1]** 24/11
**Amendment [72]** 7/21
7/21 7/24 8/1 8/7 12/20
12/20 13/3 13/17 14/1
14/3 15/1 17/5 17/23
17/24 18/12 18/15
18/20 19/1 20/23 21/14
24/20 25/3 25/4 25/9
25/9 27/5 27/5 28/6
29/9 29/10 30/6 32/24
33/2 36/13 36/21 36/22
45/10 45/11 45/17
45/25 46/1 46/16 47/1
47/15 47/25 48/8 48/10
48/15 48/18 49/6 49/16
50/1 50/14 50/15 50/20
50/25 51/9 52/3 52/6
52/24 57/19 57/24
57/25 61/17 74/23
74/23 77/4 77/5 77/7
77/14 119/18
**Amendments [2]** 30/25
39/13
**AMERICA [2]** 1/3 5/7
**American [1]** 62/23
**AMIT [2]** 1/10 5/3
**Amit P [1]** 5/3
**analogue [1]** 76/7
**analogy [1]** 13/14
**analysis [2]** 69/10
134/17
**analyzed [1]** 112/5
**ancillary [1]** 6/21
**Anderson [7]** 9/3 14/7
41/2 41/7 42/3 42/4
58/24
**Angela [1]** 3/12
**angie [2]** 3/16 5/24
**angle [2]** 20/20 24/3
**angles [1]** 92/16
**angry [1]** 124/20
**Ann [1]** 99/22
**anniversary [1]** 102/14
**another [7]** 17/18
78/23 82/11 94/14
113/25 114/1 138/15
**answer [15]** 39/25
47/20 52/13 53/16
53/24 54/1 64/14 75/20
88/3 88/8 88/11 126/20
126/21 127/3 127/5
**answered [3]** 104/21
115/21 115/24
**answers [4]** 18/14
46/12 47/5 118/3
**antediluvian [1]** 75/10
**anticipate [3]** 80/1 80/4
119/25
**antiquated [1]** 75/10
**any [66]** 10/3 11/8
15/10 19/21 19/22 26/4
28/12 32/16 32/19 36/5
36/10 38/15 39/7 40/13
40/16 43/4 43/11 45/23
47/7 48/21 54/7 55/20

**A**

**any... [44]** 56/25 57/9 57/10 58/16 64/14 65/5 70/10 70/11 71/4 71/9 71/9 71/15 72/24 76/14 76/21 78/11 78/11 80/16 82/16 83/17 83/17 85/13 86/13 86/21 88/3 92/5 95/1 96/19 103/3 105/20 107/22 111/13 112/12 119/2 119/7 121/8 121/21 123/21 126/14 126/16 136/24 137/6 138/16 140/7

**anybody [9]** 6/16 10/21 15/8 21/18 45/11 58/16 111/14 125/22 128/14

**anyone [6]** 8/2 64/4 67/6 67/12 76/25 89/2

**anything [21]** 6/16 6/25 31/13 31/15 35/15 46/4 46/4 48/10 55/6 61/13 75/23 76/8 102/8 109/17 123/9 128/8 131/21 138/7 138/16 141/10 141/12

**anytime [3]** 36/1 133/19 139/22

**anyway [4]** 101/22 124/16 135/18 141/5

**anywhere [1]** 101/1

**apart [1]** 114/19

**apologize [1]** 32/8

**appealing [1]** 95/4

**appear [2]** 70/18 78/22

**appearance [1]** 92/21

**appearances [5]** 1/12 1/19 2/20 3/21 6/9

**appeared [1]** 111/11

**appearing [5]** 5/20 5/22 6/2 6/5 6/7

**appellate [1]** 82/8

**applicable [1]** 126/3

**applied [3]** 10/22 35/10 120/25

**applies [6]** 58/15 66/24 72/11 72/19 84/10 97/2

**apply [7]** 62/11 65/4 66/16 67/15 72/2 84/21 121/5

**appointed [7]** 11/11 67/7 76/19 78/1 83/3 83/11 84/13

**appointment [6]** 15/16 18/4 18/7 18/11 76/22 134/25

**appointments [6]** 65/16 65/22 66/23 69/12 84/8 84/14

**appointments-clause [1]** 66/23

**appreciate [9]** 20/17 38/6 55/17 63/10 100/20 132/14 133/4 139/4 139/7

**approach [1]** 126/16

**appropriate [7]** 31/11

112/18 118/21 119/11

**appropriately [1]** 56/11

**appropriations [1]** 43/22

**approve [1]** 131/16

**approved [1]** 122/21

**AR [1]** 124/22

**AR-15s [1]** 124/22

**are [180]**

**area [1]** 114/4

**aren't [7]** 11/5 22/5 44/9 44/13 80/11 101/15 108/16

**arguably [5]** 10/13 14/25 51/5 115/11 129/9

**argue [2]** 94/20 112/13

**argued [3]** 8/10 18/18 91/24

**arguing [2]** 18/25 55/9

**argument [29]** 9/10 9/10 9/14 10/1 10/2 18/22 21/21 23/25 24/25 27/11 32/14 32/24 52/19 57/16 63/10 65/5 68/5 77/3 85/19 99/13 101/23 103/13 110/23 111/4 113/11 119/7 122/25 125/11 125/25

**arguments [6]** 22/3 32/10 32/25 35/19 64/12 128/19

**arise [1]** 122/9

**arises [1]** 121/19

**Arlington [1]** 101/11

**arms [2]** 23/20 56/23

**around [5]** 15/2 42/20 60/12 63/20 74/8

**arrested [3]** 100/22 101/4 113/18

**art [2]** 78/16 80/11

**article [13]** 8/20 16/17 16/19 17/5 37/21 37/22 37/23 38/1 44/18 58/2 60/3 62/24 119/18

**Article I [2]** 16/17 58/2

**Article III [1]** 119/18

**as [170]**

**aside [2]** 12/18 41/15

**ask [34]** 9/9 14/16 19/10 22/2 27/4 31/12 32/21 33/15 37/13 37/14 37/15 39/17 39/23 41/13 43/8 60/7 63/14 64/15 65/24 72/24 77/13 79/13 92/18 101/17 107/10 108/15 118/5 118/6 119/25 121/6 130/19 130/20 131/7 134/9

**asked [8]** 13/15 35/20 39/22 46/20 100/9 101/1 104/18 108/4

**asking [10]** 30/1 38/19 47/21 90/21 93/1 95/4 113/2 120/2 138/16

**aspect [1]** 110/22

**aspects [1]** 121/24

**aspersions [1]** 120/24

**assault [1]** 117/1

**assert [1]** 26/9

**asserts [1]** 20/24

**assess [1]** 118/3

**ASSOCIATES [1]** 2/8

**assume [7]** 9/19 83/5 83/10 113/10 119/10 122/1 141/13

**assumed [2]** 31/25 138/5

**assuming [5]** 49/10 81/23 136/4 137/12 138/18

**assumption [1]** 119/12

**assure [1]** 82/2

**Atlanta [1]** 112/4

**attack [3]** 20/19 73/23 73/24

**attacking [1]** 71/24

**attempt [3]** 26/14 28/11 91/17

**attempted [4]** 49/20 53/15 97/7 97/20

**attempts [1]** 60/20

**Attorney [1]** 14/1

**Attorney General [1]** 14/1

**ATTORNEY'S [1]** 1/15

**attorneys [1]** 112/23

**attributing [1]** 106/17

**authority [23]** 7/15 8/10 8/11 9/7 9/19 11/25 13/10 17/10 17/11 17/13 18/25 41/6 42/14 43/14 53/6 55/22 56/16 59/3 59/5 59/7 59/8 78/11 131/17

**authorized [3]** 8/19 58/18 58/22

**automobiles [1]** 84/7

**availability [1]** 132/11

**available [2]** 26/3 127/22

**Avenue [2]** 2/17 3/18 4/3 4/14

**average [1]** 115/12

**avoid [1]** 108/5

**aware [9]** 10/21 10/23 32/3 68/2 134/1 134/2 134/24 135/4 140/1

**away [3]** 113/20 123/16 123/16

**Awesome [1]** 20/3

**awful [1]** 120/4

**awfully [1]** 83/22

**Awkward [2]** 104/24 108/21

**B**

**back [27]** 14/18 15/14 18/3 19/16 24/2 33/14 39/22 40/6 41/23 42/18 42/21 42/25 53/2 55/16 59/16 61/24 62/4 64/3

107/6 108/4 116/18 130/3 139/10 140/5

**backtrack [1]** 59/14

**balances [1]** 15/22

**Baldwin [11]** 7/12 9/1 9/4 14/9 40/18 40/21 41/24 42/19 55/18 55/19 59/1

**ball [3]** 54/11 55/3 139/8

**bandwidth [1]** 141/3

**bank [1]** 91/3

**bar [1]** 38/23

**BARRETT [2]** 4/3 4/14

**based [4]** 93/16 100/3 119/21 122/4

**basement [1]** 50/23

**bases [3]** 94/1 98/3 102/17

**basically [9]** 18/22 18/23 35/6 36/4 58/15 58/16 61/14 69/3 75/8

**basis [4]** 39/7 61/11 84/19 94/3

**Battle [1]** 74/4

**be [249]**

**bear [1]** 27/3

**because [82]** 7/25 8/3 10/25 12/5 13/2 13/6 17/10 18/8 18/24 20/24 24/25 25/6 25/8 26/13 27/3 28/1 28/19 29/18 31/3 34/11 41/12 45/16 48/9 50/3 52/19 55/17 57/20 61/16 62/1 62/13 62/17 69/7 69/21 70/20 71/1 73/2 73/12 73/22 81/4 81/17 86/17 88/9 89/7 90/7 90/8 91/8 92/13 93/21 94/6 94/15 100/1 101/6 101/17 102/24 106/20 108/25 110/8 113/10 113/22 114/3 116/20 117/20 120/2 123/9 125/4 125/7 125/11 126/19 126/25 127/5 129/17 129/20 135/12 136/23 138/10 140/4

**believed [2]** 74/1 97/22

**believes [7]** 22/13 38/12 38/23 49/4 62/9 82/20 88/18

**benefit [1]** 113/10

**Berwick [1]** 3/3

**best [2]** 43/14 111/11

**better [4]** 95/23 115/8 119/20 141/17

**between [16]** 16/7 67/22 74/22 74/24 77/5 78/22 110/17

**beyond [5]** 51/20 61/5 81/5 97/10 98/5

**Bezos [1]** 13/6

**bias [7]** 106/4 108/13 115/9 116/24 125/12 125/13 126/8

**before [16]** 1/10 10/16 37/12 58/5 75/21 86/13 88/3 111/11 120/10 120/13 122/4 130/22 133/17 134/1 134/10 141/21

**began [1]** 48/16

**begin [1]** 7/2

**beginning [3]** 10/16 95/14 120/13

**begins [2]** 46/3 46/7

**begs [3]** 10/6 13/15 86/20

**behalf [9]** 5/16 5/17 5/19 5/20 5/22 20/19 64/17 125/21 127/24

**behoove [1]** 140/9

**being [25]** 7/16 7/23 21/22 26/9 27/20 32/8 40/1 43/11 44/14 51/7 57/21 59/13 59/13 60/1 60/16 61/17 73/25 74/10 82/23 91/4 106/13 106/14 106/19 108/23 120/22

**belabor [1]** 114/11

**believe [55]** 15/9 25/16 28/9 29/12 37/19 37/20 38/3 38/17 44/20 46/13 48/1 48/23 49/11 53/5 56/11 57/10 60/21 64/23 66/18 66/25 69/8 69/14 69/17 70/23 75/1 75/17 76/8 76/15 76/25 78/18 79/22 81/24 84/5 85/5 85/8 85/9 95/10 96/9 96/16 98/9 99/14 106/5 111/21 111/25 114/19 117/19 117/22 119/15 125/22 125/22 129/20 135/12 136/23 138/10 140/4

**B**

**back [27]** 14/18 15/14 18/3 19/16 24/2 33/14 39/22 40/6 41/23 42/18 42/21 42/25 53/2 55/16 59/16 61/24 62/4 64/3

105/11 105/18 108/17 110/25 111/21 112/16 114/20 114/22 115/3

**B**

**Biden [6]**  48/13 49/10 49/23 50/4 50/18 50/19
**big [3]**  22/9 31/12 119/12
**biggest [2]**  84/1 90/22
**bill [8]**  26/2 26/7 28/2 54/4 86/15 87/11 97/24 98/10
**bills [3]**  15/17 26/3 43/22
**binding [4]**  18/1 55/6 69/5 108/19
**Bishop [1]**  3/9
**bit [6]**  48/5 59/14 85/4 114/25 118/12 120/22
**blind [1]**  107/1
**block [1]**  33/18
**blocks [2]**  123/15 123/16
**blogs [1]**  102/7
**Blunt [1]**  96/10
**body [1]**  118/4
**border [1]**  58/21
**both [25]**  14/7 24/20 32/11 40/18 41/10 58/24 70/14 70/15 72/2 72/7 78/3 79/2 79/5 79/21 80/22 81/10 82/7 84/6 84/6 109/9 123/18 130/18 135/19 136/25 137/14
**bottom [9]**  60/24 60/25 61/24 101/22 108/3 113/19 135/18 141/5 141/11
**Bowser's [1]**  103/1
**Bowsher [4]**  16/5 16/6 16/6 16/12
**Bradford [3]**  3/2 3/5 5/19
**branch [13]**  8/25 9/5 10/5 37/1 37/20 45/2 56/15 56/17 56/21 59/20 59/24 62/25 100/10
**branches [1]**  56/14
**BRAND [1]**  2/12
**brandwoodwardlaw.c om [1]**  2/15
**break [2]**  22/15 34/17
**brief [10]**  13/16 24/4 43/16 59/12 76/14 82/7 96/10 99/17 105/4 120/20
**briefing [3]**  21/5 55/18 64/12
**briefly [2]**  114/8 122/14
**briefs [1]**  98/20
**BRIGHT [1]**  4/3
**bring [6]**  10/9 32/5 40/2 101/6 118/1 118/3
**bringing [1]**  129/2
**brings [1]**  17/8
**broad [2]**  71/15 71/19
**broader [7]**  42/22 59/24 66/14 69/7 70/19 85/11 112/8

**broadly [1]**  83/8
**broken [1]**  23/18
**brought [4]**  23/20 119/16 120/10 130/9
**BROWN [1]**  3/18
**bsrwlegal.com [1]**  3/20
**Buckley [12]**  8/6 8/9 17/21 17/22 18/4 18/17 18/18 18/22 19/2 57/17 58/4 61/17
**Buckley's [1]**  57/18
**Building [1]**  2/18
**bulk [1]**  118/23
**Bull [1]**  74/4
**burden [5]**  92/22 95/1 107/9 112/10 113/2
**Burnie [1]**  2/4

**C**

**Caldwell [10]**  2/2 5/12 6/1 6/8 30/18 35/18 64/11 64/18 113/16 138/2
**call [6]**  107/18 129/21 129/21 132/3 133/20 137/20
**called [5]**  18/13 37/24 37/25 130/6 130/13
**calls [2]**  24/7 129/24
**came [4]**  107/6 120/19 129/13 137/5
**can [88]**  9/9 12/4 16/3 16/4 16/9 16/11 16/17 21/17 24/14 24/15 27/22 28/21 28/22 28/22 33/3 33/6 36/14 37/15 40/25 44/12 48/17 49/3 50/25 51/2 55/4 57/3 60/7 68/22 70/1 70/21 70/21 71/22 71/23 79/3 79/13 79/23 79/24 82/2 83/7 84/17 87/6 87/9 87/9 91/13 97/19 103/6 104/8 105/21 106/14 107/10 108/22 110/15 111/15 112/17 114/13 116/9 116/10 116/15 118/6 121/6 122/1 122/6 122/7 122/8 122/17 123/21 125/20 126/21 126/22 127/3 127/24 130/16 130/19 131/13 131/21 132/11 132/12 133/4 133/16 133/20 134/9 134/12 134/13 138/20 139/2 140/22 141/15 141/18
**can't [19]**  7/24 16/9 35/7 35/12 39/2 53/10 72/4 73/8 73/9 82/23 86/24 93/16 93/22 97/18 101/21 116/10 123/9 125/15 134/5
**candidly [1]**  114/3
**cannot [6]**  8/5 32/23 105/1 111/2 118/4

**capacity [4]**  10/15 12/18 134/10 135/17
**Capitol [6]**  37/16 37/18 37/19 38/2 50/22 73/23
**car [1]**  111/16
**care [1]**  134/13
**Carolina [1]**  117/17
**carried [2]**  34/13 44/20
**carry [4]**  10/9 55/23 56/3 59/4
**carrying [1]**  12/16
**case [124]**  5/7 7/12 7/17 8/10 9/1 12/13 13/1 16/5 16/6 16/14 17/25 31/4 31/9 34/22 35/10 37/7 38/2 38/16 39/4 45/24 46/8 47/3 48/12 50/18 52/3 54/2 59/19 59/23 60/9 60/23 61/2 61/3 61/11 61/15 61/16 64/1 64/19 65/12 65/23 66/19 67/1 68/19 69/5 75/7 75/7 83/12 84/19 84/19 84/20 84/23 85/2 85/5 86/18 87/8 87/14 87/17 87/22 88/1 88/21 89/4 89/16 91/4 92/5 92/6 92/10 95/6 95/25 96/16 96/16 96/22 99/19 103/22 105/23 105/25 106/7 106/21 107/18 108/8 108/12 108/22 108/23 108/25 109/3 109/4 109/7 109/12 109/14 110/2 110/4 110/5 110/11 111/17 112/13 112/19 113/9 113/9 115/23 116/25 117/2 117/6 117/6 117/12 118/10 119/13 119/16 119/20 120/3 120/8 120/9 120/10 120/14 120/21 120/23 121/10 121/23 123/15 125/2 125/3 125/3 127/17 134/17 135/16 138/9 140/8
**cases [57]**  9/2 11/15 19/17 38/15 40/18 40/19 41/10 42/7 42/20 42/24 43/16 43/18 43/23 44/1 45/1 59/13 59/14 59/21 60/1 62/2 65/11 65/12 65/18 65/19 65/25 65/25 66/1 66/5 66/16 66/19 68/15 79/7 82/7 87/18 87/22 92/9 96/10 104/23 105/3 105/18 105/20 106/9 106/9 106/24 107/6 107/14 108/2 112/20 114/12 115/19 115/22 116/7 117/7 117/16 117/23 117/25 129/4
**casts [1]**  120/24

**categories [1]**  79/20
**category [5]**  79/21 81/2 81/4 81/16 81/18
**cause [9]**  16/4 21/16 23/4 30/7 34/2 98/4 106/2 106/3 106/7
**caution [1]**  136/10
**caveat [1]**  27/10
**cell [2]**  97/19 97/20 133/14 133/15
**cellular [2]**  86/2 97/13
**center [1]**  129/23
**century [4]**  59/18 61/21 65/11 75/6
**certain [6]**  15/17 45/4 46/2 66/7 86/2 97/13
**certainly [11]**  10/13 11/13 15/21 18/2 68/21 68/22 98/6 101/23 118/20 134/15 135/10
**certification [2]**  30/20 49/21
**Certified [1]**  4/13
**certify [1]**  142/2
**cetera [4]**  27/23 84/11 84/21 136/21
**CH [1]**  4/14
**challenge [1]**  98/8
**challenged [1]**  57/8
**chamber [1]**  60/10
**chance [2]**  118/18 119/3
**change [2]**  99/19 120/15
**changeover [1]**  49/17
**character [5]**  17/24 17/25 18/24 58/4 61/18
**charge [5]**  26/18 28/10 29/7 33/18 43/2
**charged [24]**  21/2 22/17 24/12 40/12 40/18 43/24 56/12 60/22 60/25 69/1 80/22 85/2 88/1 89/9 91/2 91/4 91/5 95/23 96/5 96/7 97/1 97/4 106/23 119/19
**charges [12]**  21/13 35/11 39/11 42/22 90/15 92/13 95/3 96/12 97/2 106/25 107/7 119/4
**charging [1]**  33/11
**chat [1]**  22/8
**checks [1]**  15/22
**cheeky [1]**  121/20
**chew [1]**  127/12
**chicken [1]**  138/17
**chief [4]**  17/2 102/13 102/22 110/13
**Chinese [1]**  40/21
**choose [1]**  25/24
**choosing [1]**  25/13
**Cinnaminson [1]**  3/4
**circle [1]**  139/9
**circles [1]**  15/2
**Circuit [20]**  9/2 9/2

**80/20 81/10
**Circuit [20]**  11/4 41/1 41/2 41/3 42/9 93/22 95/15 96/9 103/25 104/24 105/1 108/12 108/20 108/21 109/12 110/5 120/21 120/24
**Circuit's [1]**  108/5
**Circuits [1]**  42/19
**circumstance [1]**  44/22
**circumstances [6]**  45/4 87/19 92/14 95/6 110/8 120/14
**citation [1]**  57/17
**cite [9]**  11/15 59/13 59/15 60/1 60/1 62/2 106/18 108/2 109/4
**cited [22]**  10/12 19/18 35/7 38/15 43/16 44/25 59/21 60/2 61/16 61/25 62/2 65/12 68/19 75/7 83/15 84/25 96/10 99/18 99/20 105/4 114/9 114/12
**cites [1]**  107/17
**citizens [2]**  62/23 110/25
**city [1]**  111/9
**civil [5]**  23/14 62/5 76/7 111/17 135/16
**Civil War [2]**  23/14 62/5
**claim [1]**  53/14
**claimed [1]**  54/14
**claiming [1]**  54/14
**clarity [2]**  24/20 87/12
**clause [11]**  65/17 65/22 66/23 69/12 80/18 83/16 83/19 83/20 84/3 84/8 84/14
**clauses [1]**  70/13
**cleaner [1]**  33/11
**clear [25]**  7/19 9/1 16/13 18/14 24/11 25/12 51/10 65/22 66/20 68/23 79/3 89/12 90/9 95/15 96/23 97/11 101/16 103/2 105/1 106/20 108/22 109/2 110/6 120/14 126/5
**clearly [1]**  2/15
**client [3]**  129/7 131/8 138/21
**CLINTON [1]**  4/8
**clintonpeed.com [1]**  4/11
**close [1]**  141/18
**co [3]**  89/9 93/21 106/24
**co-actors [1]**  106/24
**co-defendant [1]**  89/9
**co-defendant's [1]**  93/21
**Code [2]**  54/24 88/2
**coincidence [1]**  84/1
**College [4]**  8/3 30/21 49/21 57/19
**colloquy [3]**  38/22 45/5

colloquy... [1] 54/18
COLUMBIA [14] 1/1 23/20 102/17 103/15 104/9 104/15 104/17 106/13 110/25 114/17 115/3 118/21 123/2 124/4
column [1] 97/19
combine [1] 32/17
combining [1] 32/16
come [13] 14/18 17/3 24/3 38/1 40/1 62/13 64/1 73/13 93/23 104/8 108/4 116/9 134/4
comes [3] 18/3 61/24 94/11
coming [6] 20/20 98/6 106/13 110/11 125/8 130/13
comitatus [1] 37/25
comments [2] 99/5 99/8
commission [6] 8/14 73/17 121/9 122/18 122/20 123/22
Commissioned [4] 73/20 74/7 74/9 75/8
Commissions [2] 73/13 73/19
commit [2] 55/5 119/1
committed [1] 91/1
common [4] 58/24 59/10 62/2 119/22
common-sense [3] 58/24 59/10 62/2
communicate [1] 131/12
communicating [2] 131/4 132/20
communication [1] 133/6
communications [7] 22/23 86/3 86/6 86/14 87/3 89/19 97/14
community [8] 3/13 105/6 105/9 114/2 116/24 125/1 125/4 125/5
companion [1] 110/5
compare [1] 114/17
comparison [1] 114/14
compel [1] 37/25
compelling [2] 36/19 36/20
complained [1] 53/9
completed [1] 51/11
completely [2] 68/7 107/4
complicated [2] 100/3 141/2
complying [1] 13/8
component [2] 21/24 23/7
compounding [1] 92/17
comprehend [1] 28/18
comprehensive [2]

computer [1] 4/17
computer-aided [1] 4/17
concealed [1] 97/6
concede [3] 27/4 29/12 59/15
conceived [1] 44/18
concept [4] 9/16 9/21 9/22 14/12
concepts [1] 15/18
concern [3] 26/1 100/13 136/10
concerns [4] 99/14 114/10 120/5 128/11
concise [3] 20/25 21/5 48/24
conclude [6] 9/20 29/24 30/13 47/1 52/23 80/18
concluded [3] 23/15 76/6 141/24
conduct [14] 15/5 52/20 66/7 67/10 67/12 88/10 89/4 89/22 89/23 90/10 90/13 91/6 97/11 97/15
conducted [1] 92/25
conducts [1] 8/3
confederacy [1] 74/2
Confederate [2] 74/10 74/11
conference [1] 129/25 130/2
confidence [21] 69/20 69/24 70/5 70/12 71/6 71/10 71/18 72/3 72/5 72/14 72/20 72/24 73/9 73/10 73/14 73/18 75/4 77/2 79/19 80/17 83/18
conflict [8] 134/5 134/15 135/2 136/10 137/13 137/13 138/14 138/18
conflicts [6] 134/4 134/25 136/11 137/6 137/13 137/18
confounded [1] 95/2
confronted [2] 62/3 75/5
Congress [102] 7/9 8/2 8/3 8/4 8/6 10/7 10/13 10/18 10/20 10/23 11/2 12/18 13/4 13/25 14/4 14/4 14/25 15/8 15/11 15/15 15/18 16/1 16/3 16/7 16/7 16/9 16/13 17/3 17/7 17/12 18/10 18/19 37/21 39/2 39/7 39/10 39/15 44/23 44/24 45/1 45/6 45/6 45/7 45/7 45/17 57/11 57/25 58/1 59/6 59/6 60/12 60/15 61/23 63/1 63/2 67/5 67/20 69/9 69/15 70/15 71/3 71/11 71/16 72/8 73/1 73/6 73/20 73/24 74/1 74/24

76/15 76/16 76/21 77/1 77/4 77/8 79/16 79/20 80/5 80/11 80/19 81/2 81/10 82/11 82/20 83/3 83/8 83/21 83/23 84/7 84/16 85/5 110/22 118/25 123/10 123/14 123/23 125/9
Congress's [3] 16/19 43/20 80/1
congressional [7] 68/14 88/3 92/15 109/14 109/20 110/12 113/25
Conley [1] 134/11
connected [1] 123/21
connection [1] 106/4
Connie [1] 137/4
Connolly [1] 136/24
consciousness [5] 90/14 90/24 91/10 91/25 96/3
conscript [1] 44/3
consent [1] 113/12
consider [1] 14/19
considered [2] 17/17 84/17
considering [1] 19/16
consistent [1] 112/21
conspiracies [4] 25/7 25/15 27/22 28/23
conspiracy [65] 7/13 7/14 9/21 18/16 22/22 23/2 23/5 23/6 23/9 25/20 26/17 26/19 28/19 28/22 28/25 29/3 29/5 29/7 30/11 30/23 33/2 33/4 33/13 33/15 33/23 34/25 36/4 36/7 38/16 39/3 40/20 41/5 41/8 42/5 45/24 47/6 47/6 47/7 47/23 48/7 48/7 48/18 48/25 49/11 49/12 49/22 49/23 51/4 51/8 51/16 51/19 51/24 51/25 52/10 52/10 52/14 52/21 52/23 56/8 56/25 60/16 61/7 74/18 118/13 118/15
conspirators [5] 43/19 43/24 44/4 51/6 54/18
conspire [2] 32/23 52/2
conspired [4] 39/11 46/15 54/8 54/15
conspiring [1] 58/20
constituents [1] 73/7
constitute [6] 18/15 22/16 24/12 36/21 57/5 96/21
constitutes [2] 23/11 90/13
constituting [2] 21/2 21/13
Constitution [28] 4/14 9/13 9/23 11/10 11/16 13/11 15/15 15/22

25/20 36/17 67/18 68/8 68/13 68/16 68/19 77/7 77/24 78/2 79/3 80/11 119/17
constitutional [6] 65/21 78/1 84/17 94/7 94/8 120/8
constitutionally [4] 8/5 11/4 28/9 28/15
constrained [1] 140/9
construction [1] 19/16
construe [2] 62/6 66/10
construed [2] 12/12 63/7
contact [1] 133/13 135/21
contain [4] 86/4 86/5 86/5 86/5
contemplated [1] 30/5
contemporaneous [1] 10/12
contemporary [3] 59/17 59/17 59/18
contended [1] 30/19
content [1] 89/23
contest [1] 22/7
contesting [1] 68/22
context [3] 31/9 57/24 66/9
contexts [1] 84/10
continuance [2] 109/7 122/8
continue [3] 109/14 121/17 128/22
continued [6] 2/1 3/1 4/1 49/22 136/12 138/21
continuing [1] 141/13
contracted [1] 32/5
contracting [2] 40/23 42/13
contrary [3] 65/20 69/13 76/9
control [1] 38/3
convenes [1] 56/23
convenience [1] 124/13
convenient [1] 113/19
conversation [1] 54/5
conversations [1] 140/20
conviction [3] 35/7 35/13 108/25
convictions [4] 106/22 107/1 107/7 112/25
cooperation [1] 140/22
coordinating [1] 131/15
copied [1] 130/8
core [1] 57/12
correct [15] 41/22 43/10 50/2 56/5 57/22 71/12 76/5 77/4 77/19 80/21 81/7 81/21 109/14 137/10 142/3

correctly [3] 16/17 65/25 68/1
corrupt [1] 88/23
corruptly [1] 97/5
coterminous [2] 36/5 43/7
could [63] 8/6 8/13 8/15 8/22 11/22 12/4 12/7 14/1 14/2 23/15 24/2 25/23 28/2 29/22 29/23 30/2 34/4 36/7 37/22 38/2 49/4 49/5 50/6 50/12 51/14 52/4 52/19 58/19 65/24 72/16 72/21 80/4 84/1 93/3 93/14 94/17 94/18 95/8 96/18 97/24 98/11 100/5 101/18 101/24 104/3 104/10 104/22 105/14 113/21 113/21 113/22 115/6 116/21 116/25 117/2 117/10 119/1 119/11 130/14 132/18 135/17 140/15 140/17
couldn't [3] 34/23 35/10 124/21
counsel [20] 31/14 32/11 35/18 38/22 39/23 44/25 54/18 78/21 81/23 115/15 128/1 128/17 128/18 133/23 134/4 134/9 134/25 136/11 137/13 138/3
counselor [2] 139/20 139/24
count [48] 7/8 9/11 9/14 20/1 20/1 20/20 21/12 24/6 24/9 24/18 28/5 29/8 29/8 29/9 29/10 30/1 32/13 32/18 33/1 34/17 39/8 39/9 39/11 46/24 51/25 53/17 53/22 65/9 65/9 79/14 80/22 81/19 85/18 85/20 85/20 85/22 86/8 86/16 89/8 89/24 89/25 91/17 92/19 93/15 94/2 94/18 96/6 97/1
Count 1 [19] 7/8 9/14 20/20 21/12 24/6 24/9 24/18 28/5 29/8 29/8 30/1 33/1 34/17 39/8 39/9 39/11 46/24 51/25 85/18
Count 14 [6] 85/20 85/22 86/8 89/25 94/18 97/1
Count 2 [1] 29/9
Count 3 [1] 29/10
Count 4 [2] 9/11 65/9
counted [1] 50/16
counties [2] 112/8 124/14
country [2] 74/8 104/3
counts [16] 29/8 34/17

**counts... [14]** 64/9 64/10 90/16 91/6 91/11 93/8 94/13 95/24 96/2 96/8 98/23 106/23 113/1 118/13
**Counts 2 [1]** 64/9
**County [2]** 102/4 124/9
**couple [9]** 16/14 40/18 47/5 63/15 74/2 76/10 99/5 99/8 139/21
**course [12]** 12/11 22/25 22/25 37/22 40/3 53/18 76/18 76/20 76/24 81/10 86/18 122/25
**court [148]**
**Court's [6]** 30/9 32/12 61/6 67/22 85/10 134/23
**courthouse [5]** 57/4 124/13 133/17 138/22 138/24
**courthouses [1]** 124/12
**courtroom [2]** 32/6 113/23
**courts [7]** 14/8 61/9 62/6 82/8 87/18 89/12 117/3
**cover [6]** 10/13 10/14 61/18 61/19 91/17 91/18
**coverage [12]** 99/24 100/8 100/12 101/25 103/11 103/23 114/19 114/24 115/11 116/5 122/2 122/3
**covered [5]** 69/16 100/2 108/11 117/13 123/17
**covers [4]** 60/19 69/8 98/22 118/16
**COVID [1]** 32/5
**CR [2]** 1/4 99/21
**craft [1]** 117/25
**create [1]** 119/3
**creates [1]** 122/16
**crime [17]** 24/12 47/7 47/8 47/9 56/9 56/10 56/12 65/4 87/20 89/3 91/20 96/22 117/10 117/13 117/20 119/17 122/24
**crimes [5]** 94/19 95/22 96/7 112/24 119/18
**criminal [13]** 5/7 66/20 66/22 66/24 67/5 89/15 91/16 91/21 94/21 101/7 108/10 110/4 116/25
**criminalized [1]** 66/7
**Crisp [3]** 2/7 2/8 5/20
**crisplegal.com [1]** 2/10
**critical [1]** 140/4
**cross [1]** 15/23
**cross-pollination [1]**

**Crowl [1]** 138/4
**CRR [2]** 142/2 142/8
**crucial [2]** 88/9 88/25
**cue [1]** 63/17
**cumulate [2]** 94/19 95/18
**curfew [3]** 111/24 124/19 124/20
**current [1]** 46/2
**cusp [2]** 71/6 71/24
**custody [1]** 140/2
**customs [1]** 58/21

**D**

**D.C [21]** 1/5 1/16 2/13 2/18 4/10 4/15 101/10 102/9 102/10 102/13 102/18 102/19 102/20 103/5 108/21 110/5 110/13 110/14 114/20 124/17 140/2
**D.C. [2]** 104/24 105/1
**D.C. Circuit [2]** 104/24 105/1
**Dallas [1]** 4/4
**danger [1]** 90/22
**data [7]** 114/24 115/1 116/18 116/20 116/22 117/15 119/22
**date [8]** 52/13 112/21 115/15 122/8 127/17 127/18 127/19 142/7
**David [5]** 2/2 3/17 5/12 6/1 137/1
**David Moerschel [1]** 5/12
**day [7]** 34/13 103/12 106/6 111/4 111/25 116/13 130/3
**days [1]** 107/1
**de [4]** 107/9 112/9 112/10 113/2
**deal [3]** 80/20 101/8 102/24
**dealing [3]** 62/4 94/5 94/6
**dealt [2]** 38/15 85/6
**debate [2]** 73/6 79/24
**debated [1]** 73/22
**decide [1]** 48/2
**decided [1]** 46/18
**deciding [1]** 79/12
**decision [13]** 64/18 68/2 68/3 68/5 76/6 78/4 79/9 79/22 94/12 94/12 104/20 107/4 123/13
**decisions [3]** 41/2 79/5 125/15
**declaration [3]** 17/8 17/11 43/21
**declare [2]** 17/7 45/19
**declared [5]** 19/7 48/13 49/24 50/3 50/16
**declares [2]** 45/7 45/18
**declaring [2]** 45/8 57/11

**deadline [1]** 113/24
**deeply [3]** 105/9 117/10 117/20
**defend [1]** 94/2
**defendant [41]** 2/2 2/6 2/11 3/2 3/6 3/12 3/17 4/2 4/7 5/8 5/9 5/9 5/10 5/10 5/11 5/11 5/12 5/13 5/16 5/18 5/19 5/21 5/23 5/24 5/25 6/1 6/2 6/24 85/2 87/25 89/9 94/24 95/1 97/5 115/12 118/16 119/4 127/14 128/10 128/15 129/8
**Defendant No [1]** 5/9
**defendant's [3]** 44/13 92/22 93/21
**defendant-specific [4]** 6/24 127/14 128/10 128/15
**defendants [52]** 1/7 6/4 6/6 6/8 6/11 21/15 21/23 29/24 32/23 38/15 38/19 39/1 39/11 41/1 41/10 41/17 46/15 49/4 49/14 53/15 54/8 54/12 57/8 58/6 64/8 64/17 91/16 92/12 100/22 101/3 102/12 103/23 110/9 111/14 113/22 115/10 115/11 116/7 119/1 119/6 121/16 121/22 122/19 126/12 128/9 128/16 128/17 132/19 135/19 138/2 138/4 140/10
**defendants' [6]** 47/23 90/14 117/14 119/4 119/21 122/22
**DEFENDER [1]** 3/13
**Defender's [3]** 99/22 112/4 140/5
**defense [29]** 35/3 39/23 44/25 47/8 47/11 47/12 47/13 47/17 47/18 54/3 54/5 54/18 78/21 81/23 92/12 93/3 94/9 96/13 96/17 98/1 112/23 114/9 116/1 117/19 117/25 119/25 120/11 122/8 138/3
**defense's [2]** 114/16 116/12
**defenses [1]** 95/3
**defer [1]** 135/6
**deficient [7]** 33/4 33/5 33/14 33/14 33/20 34/25 35/4
**defined [3]** 52/11 106/21 122/25
**defines [1]** 46/6
**defining [1]** 115/15
**definite [2]** 21/1 21/6
**definitely [1]** 94/25
**definition [12]** 9/24 14/19 46/10 52/22 60/3 61/11 62/7 62/8 71/8

**definitional [1]** 67/18
**definitionally [1]** 9/15
**definitions [7]** 10/11 10/17 14/23 19/19 62/1 65/10 112/24
**degree [2]** 95/1 131/25
**Delaney [7]** 109/4 109/4 109/7 110/1 110/6 120/21 121/1
**Delaney's [1]** 109/19
**Delaware [1]** 50/23
**delay [14]** 33/24 40/16 46/25 47/15 47/24 48/8 49/6 49/10 52/2 53/15 55/20 74/2 122/16 123/19
**delayed [1]** 51/14
**delaying [1]** 30/20
**delete [3]** 87/2 87/2 97/22
**deleted [11]** 85/25 86/1 86/8 86/22 87/5 87/10 88/18 89/2 91/9 93/4 97/13
**deleting [1]** 88/23 89/5 90/11
**deletion [5]** 95/22 96/2 96/5 96/22 97/20
**deliberate [1]** 29/20
**demeanor [1]** 118/4
**denies [1]** 90/6
**Denno [1]** 105/13
**deny [2]** 122/6 122/6
**department [4]** 78/11 102/25 103/2 130/25
**depending [1]** 123/20
**depends [1]** 136/19
**derivatives [1]** 91/24
**descend [1]** 87/25
**designed [1]** 67/20
**designee [1]** 8/21
**designees [1]** 37/23
**desk [1]** 131/2
**destroy [3]** 11/23 60/21 91/18
**destroyed [3]** 89/2 92/2 97/5
**destruction [1]** 95/22
**detail [1]** 24/19
**detained [1]** 138/21
**detention [1]** 129/23
**determination [3]** 80/3 104/20 122/16
**determinative [1]** 33/17
**determine [2]** 55/14 79/10
**development [1]** 134/16
**developments [1]** 136/15
**dictates [3]** 14/3 35/22 36/2
**dictionaries [3]** 10/12 68/13 79/6
**dictionary [7]** 9/24 10/17 11/17 19/19 60/1

**dictionary-definition [1]** 9/24
**did [32]** 11/16 19/18 42/19 42/19 50/5 55/17 59/15 63/1 63/4 77/4 79/12 80/13 80/16 85/19 87/1 87/2 98/18 101/20 102/14 107/24 118/7 119/1 119/4 119/5 120/19 127/13 129/22 134/2 134/3 134/10 137/8 141/12
**did you [1]** 98/18
**didn't [15]** 12/17 31/3 31/25 32/5 44/1 46/21 68/15 78/8 85/5 109/17 120/20 125/2 130/10 131/3 135/21
**difference [5]** 16/7 67/22 104/15 110/2 124/3
**different [63]** 7/18 16/11 20/20 20/20 24/3 25/8 25/11 28/13 29/2 33/19 34/12 42/12 43/23 56/13 57/6 58/5 60/6 65/3 65/4 66/13 66/17 67/11 67/12 70/22 72/1 72/16 72/18 74/15 75/3 79/8 84/10 84/10 87/17 91/6 92/16 94/5 95/2 95/3 99/19 102/1 102/2 102/7 102/8 102/16 102/20 103/5 106/10 110/17 112/14 112/24 113/4 117/5 117/7 118/7 121/23 121/24 124/2 124/7 126/17 133/6 133/8 134/18 136/17
**differently [3]** 78/7 80/7 92/5
**difficult [3]** 108/16 118/12 129/6
**difficulty [1]** 131/19
**dime's [1]** 67/21
**dire [17]** 104/1 108/13 108/15 111/4 112/17 114/15 115/14 115/15 117/3 117/15 117/22 117/23 120/2 120/13 122/15 125/18 126/11
**directed [3]** 14/14 41/5 42/5
**direction [1]** 123/24
**directions [1]** 125/8
**directly [4]** 23/17 96/19 121/7 135/9
**disagree [5]** 14/11 44/19 84/16 126/14 126/16
**disagreed [1]** 51/23
**disagreeing [1]** 42/2
**disagrees [1]** 14/16
**discharge [1]** 73/14
**discovery [4]** 130/3 131/8 132/19 133/9

**discretion [4]** 90/21
92/19 95/5 109/13
**discretionary [2]** 90/18
90/20
**discuss [1]** 114/12
**discussing [1]** 57/23
**discussions [2]** 135/10
136/21
**dismiss [13]** 20/22
33/1 35/14 38/14 38/17
38/20 39/4 47/19 54/6
64/9 85/22 98/23 98/24
**dismissal [9]** 26/12
30/1 31/10 33/9 34/16
47/3 86/9 86/16 96/15
**dismissed [3]** 38/16
88/14 89/25
**disposition [1]** 94/22
**dispute [6]** 10/19 22/5
22/5 22/9 99/25 101/18
**disputes [1]** 21/18
**disqualified [1]** 77/11
**disqualifying [1]** 105/7
**disregard [1]** 68/8
**disrupt [1]** 49/20
**disrupted [1]** 57/21
**disrupting [1]** 41/17
**distinct [1]** 77/21
**distinction [1]** 78/22
**distinguish [4]** 77/7
109/3 110/7 110/8
**distinguished [3]**
74/24 107/25 107/25
**distinguishing [3]** 42/8
42/10 42/16
**district [49]** 1/1 1/1
1/10 23/20 100/9
100/14 100/15 101/2
101/19 102/3 102/16
103/14 104/9 104/15
104/17 105/19 106/13
110/18 110/19 110/20
110/21 110/25 111/2
112/6 112/7 112/13
113/15 114/17 114/18
115/3 115/4 116/14
116/20 118/8 118/14
118/18 118/21 119/2
119/14 119/17 119/19
120/1 123/2 123/3
124/4 124/11 124/12
125/18 126/9
**Division [1]** 102/4
**divorce [1]** 139/25
**do [106]** 8/4 9/19 12/21
12/22 14/5 19/24 22/9
22/15 22/15 23/12
24/10 25/16 28/9 29/25
30/8 31/3 31/5 31/10
31/19 33/14 34/10
36/24 38/20 39/3 39/17
41/13 46/8 47/2 47/3
48/10 49/5 53/6 53/7
54/21 56/1 59/15 60/8
60/8 61/9 64/3 64/16
67/24 69/8 72/8 76/14
77/14 80/25 86/15 87/7

93/1 96/9 96/15 96/24
97/7 97/23 98/9 101/9
103/21 103/25 106/18
108/5 108/25 109/5
109/17 112/23 115/7
115/8 116/8 117/4
118/1 118/3 119/11
119/15 119/19 119/21
120/5 122/18 123/9
123/14 123/22 126/7
126/8 126/13 126/14
126/16 126/18 129/14
130/17 130/17 131/21
132/2 132/11 133/7
133/11 134/9 134/12
135/5 138/9 138/14
138/16 140/3 141/22
**do you [6]** 41/13 64/16
103/21 108/5 126/14
126/16
**dockyards [1]** 74/9
**document [7]** 7/3
33/11 88/24 89/18 97/6
99/22
**does [43]** 6/16 7/9
13/22 14/12 15/15
18/10 18/15 22/11
23/17 23/23 25/1 25/24
30/5 34/18 36/13 38/24
40/13 44/24 45/2 45/6
45/23 46/23 48/15
71/11 72/25 74/16 76/7
77/7 78/6 78/16 80/6
80/10 88/16 88/17 92/9
114/7 116/20 118/15
123/14 123/22 124/6
128/3 133/15
**doesn't [48]** 11/8 12/25
15/4 15/4 16/13 25/4
26/5 27/20 28/12 28/20
32/16 32/19 36/15 39/7
39/9 43/12 46/3 46/4
47/16 50/23 57/20 59/5
61/20 65/5 70/2 72/10
76/14 78/15 81/3 81/15
81/16 81/23 82/24 83/7
89/14 90/5 91/15 93/9
102/8 106/17 116/17
123/13 123/14 123/22
123/23 132/16 132/20
139/5
**doing [16]** 13/10 47/16
54/13 57/25 58/1 59/6
61/6 110/22 121/9
121/10 123/6 123/10
129/3 129/4 131/10
140/21
**domestic [1]** 102/11
**don't [92]** 6/23 7/1 7/2
10/21 11/1 11/1 11/6
13/2 13/12 14/4 14/15
15/9 19/22 19/24 21/7
21/18 22/19 23/14 28/4
28/18 31/1 31/4 31/15
31/17 32/1 32/18 33/6
36/6 40/1 44/10 44/11
54/19 57/9 63/1 63/18

68/21 73/2 73/3 75/23
76/2 76/8 76/16 77/20
80/13 80/14 80/20
83/11 83/24 84/15
84/24 85/8 87/6 87/8
87/13 92/9 93/12 99/1
99/25 100/17 104/1
104/2 104/6 105/24
111/15 113/7 113/8
121/4 121/8 121/8
121/20 121/20 122/2
127/6 127/17 128/21
129/11 129/21 131/4
131/20 132/3 132/24
135/5 135/11 136/23
137/12 139/22 140/18
141/11
**done [17]** 10/24 25/17
48/12 48/22 48/22 49/1
49/2 58/6 89/17 91/18
92/3 111/11 128/19
131/15 133/25 135/13
136/1
**doubt [1]** 81/6
**down [16]** 11/23 12/22
18/22 20/4 46/5 53/5
60/20 74/3 75/21 75/25
94/11 98/7 103/4 132/3
132/11 140/17
**draft [2]** 43/19
**drafted [5]** 7/3 15/12
19/4 19/5 73/23
**drastic [1]** 33/10
**draw [1]** 124/2
**drawing [2]** 57/7 57/10
**drawn [1]** 105/8
**draws [1]** 115/19
**Drew [1]** 96/11
**Drive [1]** 3/3
**driving [1]** 30/12
**drop [1]** 119/5
**drug [1]** 87/20
**due [1]** 57/9
**duration [1]** 122/2
**during [5]** 38/21 40/24
45/5 111/3 121/15
**duties [3]** 11/5 14/24
16/19
**duty [5]** 13/8 14/10
36/25 41/8 73/14
**dynamic [1]** 102/16

**E**

**e-Discovery [2]** 132/19
133/9
**each [2]** 32/14 95/19
**earlier [7]** 64/18 65/10
68/2 98/10 108/1 108/5
123/5
**early [7]** 40/17 42/10
42/24 48/12 59/18 66/1
118/2
**earth [1]** 140/24
**easier [1]** 135/20
**easily [2]** 38/23 98/11
**Eastern [21]** 100/9
100/14 101/2 101/19

110/20 110/21 111/2
112/7 112/13 114/18
118/8 118/17 119/13
120/1 123/3 124/11
125/18 126/9
**easy [3]** 26/24 26/24
29/25
**ECF [2]** 32/10 90/12
**ECF 95 [1]** 32/10
**Edmund [1]** 2/12
**Edward [3]** 4/7 5/12
5/13
**Edwards [2]** 1/14 5/14
**effect [4]** 16/22 17/3
17/8 74/5
**effects [1]** 116/14
**effort [5]** 49/7 49/9
49/10 49/13 140/24
**efforts [2]** 50/6 56/17
**egg [1]** 138/17
**Ehrlichman [1]** 110/4
**eight [6]** 106/3 113/3
113/20 123/16 123/24
124/2
**eight-mile [2]** 123/24
124/2
**Eighth [3]** 9/2 41/2
42/19
**either [10]** 9/11 14/13
28/19 71/5 79/17 87/1
100/22 116/5 123/24
135/9
**elaborated [1]** 9/3
**elect [2]** 16/22 17/1
**elected [2]** 17/4 75/18
**election [3]** 16/20
37/19 45/20
**Electoral [7]** 8/3 30/20
45/16 49/21 53/17
53/22 57/19
**electronic [1]** 131/8
**element [8]** 8/17 24/18
55/19 56/1 81/5 81/18
81/19 85/25
**elements [6]** 15/5 23/1
81/20 96/20 97/12
112/24
**ELMER [3]** 1/6 4/2 5/8
**else [8]** 54/25 55/6
62/1 101/2 128/8
128/17 138/23 141/11
**Email [12]** 1/17 1/18
2/5 2/10 2/14 2/19 3/5
3/11 3/16 3/20 4/5 4/11
**embarrassed [2]** 94/25
95/2
**embodying [1]** 36/11
**emphasize [2]** 35/23
100/21
**Empire [1]** 2/4
**employee [3]** 66/11
68/10 78/10
**employees [2]** 40/4
103/18
**employs [1]** 117/3
**enacted [1]** 14/22
**enacting [1]** 67/5

**enactment [2]** 77/5
77/6
**encompass [1]** 14/24
**encompasses [2]**
53/18 53/19
**encourage [1]** 140/21
**end [9]** 6/23 10/16
52/13 79/4 103/12
111/4 133/1 133/3
133/3
**endeavor [1]** 55/23
**endeavoring [3]** 55/23
56/2 59/4
**ended [2]** 48/16 52/11
**ends [2]** 46/2 46/6
**enforce [4]** 8/14 14/2
19/8 19/13
**enforcement [7]** 9/6
19/21 59/11 62/7 74/21
98/2 111/22
**enforcing [1]** 44/6
**engage [1]** 57/10
**engaged [1]** 41/6
**engages [1]** 114/14
**engaging [1]** 16/8
**English [1]** 76/25
**enjoys [1]** 75/13
**enough [8]** 15/3 26/2
29/11 29/25 34/5 92/23
93/11 108/16
**Enron [1]** 106/22
**enseared [1]** 125/12
**entered [2]** 30/14 60/9
**entirely [2]** 37/21 93/3
**entirety [3]** 38/20 54/6
81/11
**entities [2]** 40/22 72/17
**entitled [1]** 54/12
**entity [1]** 40/14
**entry [1]** 87/19
**envelope [2]** 37/6 37/7
**envelopes [1]** 36/16
**equally [3]** 92/20
107/12 123/15
**equate [1]** 23/23
**equivalent [4]** 69/19
78/19 84/23 85/9
**era [3]** 40/19 42/20
43/16
**Ervin [1]** 105/3
**especially [7]** 19/16
19/17 21/5 29/19 35/24
55/11 60/4
**essential [4]** 8/16 21/1
21/6 22/13
**essentially [9]** 55/19
56/1 59/15 61/14 77/15
89/20 103/4 120/5
121/1
**establish [2]** 79/16
96/4
**established [1]** 23/4
**establishes [1]** 98/3
**estimation [1]** 88/16
**et [5]** 1/6 27/22 84/11
84/21 136/21
**et cetera [2]** 84/11
84/21

**E**

**evaluating** [1] 65/13
**even** [27] 8/5 9/15
15/10 23/13 36/16
44/10 46/23 48/6 49/21
57/17 59/23 83/4 83/11
93/18 103/16 103/23
105/22 108/12 113/14
114/16 116/15 120/13
131/3 131/23 136/3
137/19 141/17
**event** [1] 90/5
**events** [11] 60/9 60/15
103/3 103/13 104/4
106/4 108/9 111/1
116/6 116/13 117/18
**ever** [6] 10/21 10/23
15/8 73/6 86/21 135/11
**every** [6] 22/21 89/8
89/8 116/24 116/25
117/2
**everybody** [6] 6/23
64/3 128/3 134/8
134/12 141/20
**everybody's** [1] 140/8
**everyone** [10] 5/5 6/11
20/11 22/2 30/15 63/21
64/2 100/1 125/23
128/17
**everything** [2] 122/5
140/18
**everywhere** [2] 117/19
124/22
**evidence** [22] 86/19
87/1 90/11 90/13 90/24
90/25 91/10 91/19
91/19 94/19 94/22
95/18 95/19 95/22 96/1
96/5 96/7 96/23 98/5
106/19 107/8 131/14
**evidentiary** [1] 52/17
**evil** [1] 74/12
**evolution** [1] 31/6
**exact** [4] 21/9 88/17
114/21 126/8
**exactly** [12] 43/2 54/13
54/13 86/7 92/4 93/1
94/23 95/21 107/8
107/20 122/2 126/24
**example** [25] 8/8 8/11
11/22 13/5 13/20 13/24
16/1 16/1 16/5 17/9
22/9 29/4 29/20 37/24
52/1 61/6 68/24 82/11
83/2 83/7 84/5 90/9
93/20 129/13 136/20
**examples** [2] 15/17
17/16
**excellent** [1] 104/25
**exception** [2] 83/9
83/13
**exchange** [1] 112/10
**excise** [2] 33/1 34/24
**exclusive** [2] 77/8
77/12
**exclusively** [1] 118/17
**exculpatory** [3] 93/22
93/23 93/25

**excuse** [5] 16/13 72/3
98/23 106/1 109/18
**excused** [1] 128/17
**executable** [1] 44/9
**execute** [45] 7/9 7/15
8/2 8/4 8/5 8/6 8/15
8/19 8/22 9/7 10/8 11/6
11/12 13/1 14/4 14/10
14/20 15/11 15/15 16/3
16/9 16/13 18/10 19/8
19/11 36/25 39/2 39/7
39/25 41/6 41/9 42/15
44/25 45/2 45/6 46/24
57/3 58/18 58/22 59/8
59/11 59/20 59/25 61/9
61/20
**executed** [11] 7/24
7/24 15/18 18/19 36/14
37/3 37/9 41/12 44/14
44/16 49/16
**executer** [1] 13/18
**executes** [5] 13/17
13/18 18/9 45/2 45/6
**executing** [32] 11/2
12/9 12/19 13/6 13/7
13/13 14/15 16/7 17/3
17/13 36/2 36/10 37/8
37/10 37/17 37/19
39/10 39/15 39/18
39/21 39/24 40/14 41/7
41/16 41/21 42/5 44/6
44/24 45/11 46/10
61/22 61/23
**execution** [60] 7/11
9/22 10/3 10/3 10/22
12/3 12/16 12/25 14/21
14/23 15/18 16/4 16/8
16/10 16/12 17/14
17/17 18/15 18/20
18/23 27/14 27/16
28/12 29/1 33/18 33/24
35/21 36/17 36/19
36/21 36/23 40/3 40/13
40/16 43/4 43/11 44/12
45/24 46/9 46/16 46/25
47/15 47/25 49/6 51/9
55/20 55/24 56/3 56/15
56/20 56/25 59/5 60/3
60/4 60/5 60/5 60/6
62/7 62/8 62/23
**executive** [19] 8/10
8/11 8/25 9/5 10/5 10/8
13/10 16/2 17/2 17/11
17/13 18/25 37/1 37/20
45/2 56/15 59/19 59/24
62/25
**exercise** [6] 57/7 90/21
92/18 95/5 114/14
120/4
**exercising** [2] 17/11
59/6
**exert** [1] 59/8
**exhibit** [3] 99/18 99/20
99/23
**exists** [2] 112/11
116/24
**expansive** [2] 36/6
61/10

**expect** [3] 104/16 127/3
127/6
**expectation** [2] 79/15
79/19
**expense** [1] 131/11
**experience** [3] 108/17
115/14 115/20
**explain** [3] 93/7 109/5
125/15
**explained** [1] 20/21
**explaining** [1] 93/10
105/5
**explanation** [2] 93/4
93/7
**explicitly** [1] 120/22
**exposed** [3] 114/21
114/22 116/5
**exposure** [1] 114/18
**express** [1] 22/23
**expressly** [1] 96/19
**extend** [1] 87/18
**extensive** [6] 24/7 24/8
117/15 117/23 118/1
120/2
**extensively** [1] 134/16
**extent** [6] 8/1 12/14
59/16 100/12 116/18
136/20
**Eye** [1] 4/9

**F**

**face** [2] 92/12 96/24
**facetious** [1] 27/6
**facilities** [2] 133/6
133/8
**facility** [3] 131/20
131/24 133/9
**fact** [29] 7/24 8/9 21/8
24/5 25/6 28/23 29/8
29/16 43/7 60/8 68/12
71/13 73/25 78/1 79/5
85/1 88/21 92/14 93/24
94/1 105/22 106/5
107/21 120/9 124/21
125/11 129/20 134/22
135/4
**factor** [2] 94/16 123/12
**factors** [2] 94/15
106/20
**facts** [37] 21/1 21/6
21/7 21/8 21/9 21/10
21/13 22/4 22/10 22/12
22/13 22/14 22/15
22/16 23/5 23/11 24/8
24/10 24/11 25/14
30/16 30/16 30/17
30/19 30/19 30/22
46/14 47/22 49/3 49/11
55/10 55/10 55/12
55/13 55/14 91/11
120/11
**Facts constituting** [1]
21/13
**factual** [3] 39/6 47/11
98/3
**failed** [1] 88/14
**failing** [1] 38/20
**fails** [2] 38/25 86/8

**fair** [18] 22/12 25/14
65/18 68/17 69/17 70/3
70/16 93/11 104/8
104/10 104/22 105/21
106/15 111/2 116/9
116/15 116/17 116/21
**Fairfax** [2] 124/9
124/10
**Fairfax County** [1]
124/9
**fairly** [6] 19/6 64/12
65/22 66/20 71/19
96/23
**fall** [3] 25/1 79/20
81/10
**falls** [1] 81/19
**familiarity** [3] 103/23
135/19 135/21
**families** [1] 74/3
**family** [1] 124/24
**far** [8] 15/23 19/12
57/16 84/22 108/17
110/23 114/19 140/25
**fast** [1] 79/14
**fast-forward** [1] 79/14
**fatal** [1] 89/24
**fault** [1] 32/15
**fd.org** [1] 3/16
**feared** [1] 130/10
**February** [1] 138/2
**FEC** [4] 8/9 8/13 18/18
18/25
**federal** [9] 3/13 36/9
87/21 89/15 101/7
112/4 124/5 124/8
140/5
**FedEx** [1] 130/2
**feds** [1] 103/4
**feel** [2] 7/4 20/15
**fell** [2] 80/17 85/5
**felt** [3] 114/5 117/17
117/20
**ferret** [2] 34/7 108/13
**ferreting** [2] 34/8 34/11
**few** [6] 6/21 19/3 58/13
78/4 116/6
**figure** [1] 52/18
**figured** [2] 138/8 140/9
**file** [4] 14/1 54/3 54/5
59/19
**filed** [5] 6/14 64/8 64/8
99/18 136/4
**files** [14] 86/2 86/4
86/5 86/14 87/2 87/3
87/5 87/7 87/10 88/18
89/18 97/14 97/17
97/22
**filing** [1] 84/6
**filings** [1] 83/16
**fill** [1] 26/4
**final** [1] 139/9
**finally** [3] 129/22 131/1
139/15
**find** [10] 35/10 75/1
86/22 104/3 110/6
113/21 113/21 121/12
137/8 141/21

**findings** [2] 112/2
136/24
**finds** [2] 63/6 137/14
**fine** [4] 20/2 127/2
127/6 140/21
**finished** [1] 99/9
**firearm** [2] 23/23 87/20
**first** [30] 7/9 11/14
26/15 26/17 26/18
26/20 30/9 46/13 47/6
48/20 58/14 68/18
69/17 70/21 71/21 74/3
74/16 76/13 77/5 78/3
80/18 81/16 82/19 85/6
95/14 104/19 109/12
116/19 120/21 122/14
**First Circuit** [2] 109/12
120/21
**Fischer** [27] 2/2 2/3 6/1
7/2 7/4 9/9 20/5 20/21
37/14 37/15 40/8 43/4
56/13 57/17 58/11 63/9
64/6 64/16 65/24 67/3
76/1 76/9 76/11 80/9
82/16 85/15 99/2
**Fischer's** [2] 27/11
77/3
**fischerandputzi** [1] 2/6
**fit** [3] 53/7 54/3 54/5
**fits** [1] 119/19
**five** [3] 11/19 140/15
141/20
**FL** [1] 3/19
**flailing** [1] 61/16
**flight** [1] 132/8
**flip** [1] 96/3
**Florida** [2] 105/5
113/16
**flush** [1] 28/2
**flying** [1] 132/6
**focus** [4] 44/1 51/3
121/21 121/22
**focused** [4] 40/20
56/14 114/3 123/9
**focusing** [1] 121/23
**folks** [4] 103/16 111/2
115/7 140/2
**follow** [5] 13/25 37/4
110/7 118/5 138/9
**follow-up** [1] 118/5
**followed** [1] 110/1
120/23
**following** [9] 27/4
33/24 35/22 37/6 37/7
48/4 50/10 68/6 110/16
**follows** [1] 36/2 109/4
**footnote** [5] 65/1 109/4
110/6
**force** [21] 7/14 7/14
11/23 11/25 12/5 12/7
12/8 14/14 23/9 23/11
23/17 23/23 25/3 37/1
37/12 44/4 50/11 51/1
51/2 51/4 55/20
**forceful** [1] 37/3
**forcefully** [1] 21/22
**forcible** [2] 36/5 55/21
**forcibly** [1] 59/9

Case 1:22-cr-000Germany [1] 43Document 639-15040/15427/1 Page 151 of 1365

**F**

foregoing [2] 108/14
 142/3
forget [1] 16/17
forgot [1] 37/13
forgotten [1] 127/14
form [1] 32/15
formally [1] 141/12
FormerFeds [1] 3/3
formerfedsgroup.com
 [1] 3/5
forth [14] 8/23 9/8 13/8
 17/5 22/12 23/10 25/7
 25/14 25/14 25/20
 64/12 66/6 67/25 96/20
forward [6] 13/25
 29/19 55/5 56/24 79/14
 132/13
found [5] 8/7 9/13 34/1
 96/17 120/12
four [10] 79/8 104/23
 105/3 105/18 106/19
 107/5 107/6 124/12
 125/14 133/5
fourth [2] 1/15 105/5
frame [1] 25/16
framework [1] 22/4
frankly [3] 62/22 104/2
 132/5
Franks [4] 7/12 40/19
 40/22 41/24
free [2] 7/4 20/15
freely [1] 68/1
friendly [1] 129/24
front [3] 2/8 25/1
 139/12
fruition [1] 10/10
frustrate [1] 51/8
full [1] 22/12
fully [5] 53/16 53/23
 75/13 96/18 104/4
function [5] 17/25
 18/24 57/12 57/21
 61/18
functioning [1] 105/13
functions [1] 66/15
further [10] 19/23
 31/13 35/15 45/23
 75/20 75/23 85/14
 98/14 98/15 118/14
furtherance [2] 48/6
 87/20

**G**

galore [1] 21/8
game [1] 54/11
gaps [1] 26/4
gathered [2] 26/25
gave [1] 136/24
general [8] 14/1 21/19
 67/14 67/17 71/4 83/8
 83/13 116/6
generally [1] 18/8
generic [3] 89/6 89/7
 89/23
Germaine [9] 11/15
 65/12 66/2 66/19 66/21
 67/4 67/14 84/11 84/20

get [38] 14/16 15/4
 35/7 35/13 39/22 40/6
 47/4 52/21 54/7 54/18
 79/23 80/24 82/4 87/12
 102/9 103/16 105/16
 105/23 107/2 112/22
 112/25 113/3 114/21
 116/15 125/6 127/2
 129/18 129/22 130/22
 131/15 133/16 134/13
 135/22 137/21 139/8
 140/10 140/17 140/25
gets [2] 36/13 85/17
getting [4] 29/20 42/25
 110/23 129/6
Geyer [3] 3/2 5/19
 140/19
Geyer's [1] 139/10
give [7] 13/24 19/25
 20/8 25/5 127/3 137/20
 141/1
given [4] 21/22 66/16
 82/22 82/23
gives [1] 85/3
giving [2] 25/24 61/10
glad [1] 64/13
Glen [1] 2/4
gmail.com [1] 3/11
go [28] 7/1 13/25 16/4
 20/1 20/1 30/19 32/1
 33/8 33/10 33/14 35/7
 35/12 39/4 42/18 62/1
 87/11 97/10 113/13
 113/15 115/6 120/4
 123/3 125/25 130/24
 132/8 137/16 137/20
 137/24
goes [7] 19/16 56/7
 57/16 62/4 79/14 94/20
 114/15
going [66] 15/2 15/23
 21/3 22/2 22/6 22/23
 26/9 28/16 30/13 31/23
 45/9 45/12 45/14 49/13
 49/20 50/5 53/2 55/5
 55/16 56/24 57/11
 63/16 64/5 68/7 74/2
 85/11 90/8 90/10 93/17
 93/24 94/12 99/4
 107/11 108/4 110/12
 110/24 111/14 111/17
 112/14 112/15 112/15
 112/19 112/22 112/25
 117/13 119/23 120/3
 121/13 121/16 123/10
 123/14 123/17 124/9
 124/9 124/10 125/13
 125/17 126/7 126/8
 126/9 126/11 126/24
 131/11 138/1 139/21
 141/13
gone [1] 67/25
good [19] 5/4 5/6 6/10
 20/11 20/13 20/14 32/7
 38/10 38/11 73/21 76/4
 95/13 99/10 127/20
 128/25 129/1 139/13

Gorda [1] 3/19
got [16] 6/18 22/14
 32/17 32/20 33/20
 34/12 39/7 41/11 93/23
 94/16 105/23 105/24
 125/3 127/13 133/13
 134/6
gotten [1] 133/24
governing [1] 36/9
government [175]
government's [26]
 13/16 15/10 26/14
 30/12 36/1 36/12 44/8
 44/12 46/14 49/19
 51/12 51/18 55/11
 55/25 58/14 79/15
 81/11 90/8 90/12
 107/13 113/6 118/8
 119/13 120/7 121/16
 137/11
governmental [1] 40/4
governor [2] 2/3 76/20
governors [1] 83/3
grade [1] 132/25
grand [23] 23/14 26/15
 26/23 30/10 30/12
 30/13 30/14 31/2 32/18
 33/15 33/20 34/1 34/9
 34/14 34/18 40/12 53/2
 86/19 86/19 86/21 87/1
 97/9 97/25
grand jury [1] 33/15
grant [3] 11/3 120/15
 136/2
granted [2] 83/24
 136/1
gravitas [4] 119/16
 119/20 120/8 122/24
great [5] 17/9 64/4
 128/6 129/18 129/25
greater [2] 25/15
 122/16
greatly [1] 95/4
ground [1] 93/19
grounds [1] 57/9
group [4] 22/8 31/23
 56/23 123/7
guess [18] 9/18 14/5
 17/6 18/3 19/10 20/1
 22/19 44/7 44/14 55/23
 64/25 67/13 106/9
 108/3 116/8 133/25
 136/1 136/3
guidance [2] 67/18
 87/15
guidepost [1] 68/18
guilt [9] 90/14 90/24
 91/10 91/25 94/22 96/3
 107/1 112/2 112/2
guilty [2] 89/2 91/11
gun [1] 117/1
guns [2] 60/10 119/5
guys [1] 140/17

**H**

Hackett [19] 3/12 5/11
 5/24 6/6 20/19 20/24

87/1 88/18 91/9 93/17
 94/1 97/1 97/4 97/13
 97/22
Hackett's [1] 93/6
had [50] 6/8 8/10 8/10
 8/11 14/9 14/9 15/13
 18/18 18/19 18/19
 18/20 19/6 20/7 26/18
 26/22 26/25 31/22 34/5
 43/24 45/15 49/24 55/9
 84/25 92/3 102/10
 102/12 102/24 102/25
 104/11 104/19 105/20
 106/9 107/2 107/5
 108/8 111/22 114/20
 114/22 116/6 122/20
 122/21 124/24 125/14
 130/8 130/23 133/5
 136/20 138/8 140/3
 140/16
Haldeman [10] 103/21
 103/21 108/6 108/7
 108/22 110/1 110/5
 120/23 120/23 121/3
halim [16] 3/12 3/16
 5/24 20/7 21/17 24/15
 46/21 53/9 55/8 85/19
 90/1 91/13 95/11 95/16
 98/18 99/4
Haller [5] 2/16 2/16
 5/17 99/6 99/11 100/5
 103/7 108/3 110/15
 114/6 114/25 122/12
 123/8 133/24 137/12
hallerjulia [1] 2/19
hallmarks [1] 103/22
Hamilton [1] 15/13
handicap [1] 13/7
handicap-accessible
 [1] 13/7
hang [3] 63/14 100/24
 126/13
happen [4] 50/6 91/15
 92/9 130/10
happened [3] 48/12
 84/2 129/16
happening [2] 7/10
 92/4
happens [2] 92/6
 123/20
happy [1] 75/20
harboring [1] 115/9
hard [3] 75/1 113/8
 125/14
harder [1] 112/20
hardware [1] 141/3
Harrelson [6] 3/2 5/10
 5/19 6/4 97/2 128/12
Harrisburg [1] 2/9
Hartwell [7] 11/15
 65/12 66/2 68/19 84/11
 84/20 84/25
has [90] 7/15 8/18 9/6
 13/10 14/13 14/14
 14/22 16/1 19/12 19/22
 21/15 23/17 25/13
 25/16 26/15 27/25

39/25 40/2 40/9 40/11
 40/14 41/5 41/5 44/9
 45/1 45/7 45/19 48/10
 48/11 50/16 51/11 53/9
 55/15 58/17 58/21 60/3
 61/11 64/10 64/13
 64/20 66/11 67/8 73/6
 73/16 73/17 75/9 75/11
 75/19 76/9 77/24 81/5
 85/13 89/17 91/5 95/15
 95/20 96/9 98/14
 102/20 103/5 103/22
 104/24 105/1 105/20
 105/21 106/16 113/23
 114/10 115/3 115/3
 117/13 120/11 122/5
 122/18 124/12 125/23
 130/1 131/6 131/9
 131/17 133/14 135/9
 135/12 135/13 135/19
 140/7 140/24
hasn't [2] 105/22
 108/17
hate [1] 129/2
have [191]
haven't [7] 21/21 25/17
 57/8 127/14 136/1
 136/1 138/7
having [10] 8/14 15/5
 29/17 54/17 62/6
 109/19 116/4 116/5
 117/1 134/25
Hayward [4] 41/3 41/4
 42/3 42/4
Haywood [3] 9/3 14/8
 58/23
he [25] 12/21 12/22
 12/23 15/17 82/19 87/5
 87/10 91/11 93/8 93/9
 93/14 97/23 102/22
 106/23 122/21 130/7
 130/10 135/1 135/4
 135/12 135/13 135/17
 136/25 137/5 139/10
he'd [1] 63/15
he's [8] 13/6 13/7 13/8
 36/16 63/16 129/8
 129/8 135/11
head [3] 63/16 128/1
 131/2
hear [8] 31/19 32/1
 38/8 62/13 62/23
 107/11 124/15 141/12
heard [11] 15/9 20/9
 27/19 31/24 32/1 87/1
 110/19 110/20 110/22
 114/7 138/8
hearing [5] 1/9 6/13
 109/14 123/5 130/5
hearings [4] 31/24
 36/9 121/13 121/13
heaven [1] 140/24
held [7] 7/13 72/7
 80/15 82/8 117/11
 117/16 130/2
help [5] 48/9 48/17
 50/9 50/13 139/3

**her [2]** 36/24 99/23

**here [83]** 6/11 6/13 6/23 14/17 15/2 19/4 22/2 22/9 23/1 25/8 31/11 31/25 32/7 33/17 33/18 38/13 38/14 38/19 38/24 40/12 43/2 43/11 48/22 53/12 55/4 55/11 55/13 56/12 57/10 58/5 58/6 62/12 63/2 66/16 67/15 75/11 78/7 85/25 87/4 87/9 89/4 89/16 89/21 90/10 90/10 90/21 91/5 92/4 92/23 93/1 95/1 95/21 96/9 100/8 100/15 102/9 103/24 106/13 110/17 112/11 113/1 114/12 118/24 118/25 119/6 119/16 119/20 120/2 120/9 120/10 121/5 123/1 123/6 123/15 125/19 126/1 126/7 126/17 127/25 129/13 132/5 132/9 133/12

**here's [4]** 129/16 131/18 131/19 132/2

**HI [2]** 3/10 99/11

**hiccups [1]** 136/4

**hide [3]** 54/11 55/3 91/19

**high [2]** 96/13 104/7

**Highway [1]** 2/3

**Hill [7]** 37/16 73/23 103/18 106/6 111/23 124/21 124/22

**him [9]** 129/11 129/13 130/9 130/9 130/23 131/3 132/10 132/12 135/22

**himself [1]** 94/2

**hinder [13]** 28/11 33/24 40/15 43/25 46/9 46/16 46/25 47/15 47/24 48/7 52/2 53/15 55/20

**hindered [3]** 29/21 50/25 51/14

**hindering [5]** 29/1 29/9 29/9 29/10 30/20

**hindrance [2]** 28/20 51/2

**hint [1]** 85/4

**his [18]** 10/15 12/18 36/24 38/1 48/16 57/17 63/16 73/7 86/2 87/2 97/13 97/14 102/23 106/24 128/1 131/19 132/11 133/23

**historical [2]** 60/8 60/15

**historically [3]** 17/17 19/6 73/21

**history [1]** 31/4

**hold [12]** 71/17 71/18 71/18 72/15 73/10 75/3

**holds old [8]** 80/8 80/13 83/15 83/16 83/16

**holders [1]** 79/17

**holding [17]** 9/3 16/12 70/11 70/11 70/23 71/9 71/22 72/9 72/10 77/11 81/13 83/17 83/21 108/5 109/12 109/19 110/7

**holdings [3]** 42/3 66/19 84/20

**holds [4]** 13/14 69/19 71/5 77/1

**home [5]** 50/23 113/17 140/11

**honest [2]** 30/11 106/13

**Honolulu [1]** 3/10

**honor [159]**

**Honor's [1]** 47/21

**HONORABLE [3]** 1/10 5/2 63/25

**hope [1]** 141/6

**hoping [1]** 141/15

**hostile [1]** 105/10

**hotel [1]** 133/19

**hotmail.com [1]** 2/6

**hour [3]** 63/16 129/15 131/1

**hours [5]** 48/13 107/5 107/6 112/25 112/25

**Houston [1]** 107/3

**how [38]** 12/7 21/20 22/15 22/15 24/11 34/16 45/11 45/23 46/8 48/6 48/17 50/25 52/12 52/18 54/23 55/9 56/14 57/15 62/17 62/18 79/10 99/11 100/17 103/21 105/24 107/24 107/25 108/5 112/22 112/23 114/13 116/8 122/24 130/16 131/13 132/5 132/12 133/7

**however [8]** 21/11 24/9 30/11 68/18 70/19 80/12 80/13 134/24

**huge [1]** 113/11

**hundreds [2]** 21/8 21/9

**hypothetically [6]** 32/22 46/24 57/18 80/7 80/9 124/10

**I**

**I am [5]** 87/14 90/20 95/4 136/16 138/6

**I apologize [1]** 32/8

**I appreciate [1]** 38/6

**I believe [17]** 29/12 37/19 37/20 38/3 60/21 64/23 66/18 66/25 69/17 75/17 84/5 114/19 125/22 125/22 129/20 135/12 138/10

**I can [13]** 12/4 55/4 123/21 125/20 126/21 130/19 131/13 131/21 134/9 134/12 139/2

**I can't [2]** 93/16 123/5

**I couldn't [1]** 34/23

**I did [4]** 55/17 80/13 80/16 141/12

**I didn't [1]** 46/21

**I don't [24]** 10/21 13/2 15/9 19/24 21/18 28/18 31/4 33/6 36/6 67/20 67/21 68/21 80/13 80/14 80/20 84/15 84/24 85/8 87/13 92/9 99/25 104/2 135/11 136/23

**I don't have [5]** 6/23 21/7 31/15 83/24 121/8

**I don't remember [1]** 105/24

**I guess [15]** 17/6 18/3 19/10 20/1 44/7 44/14 55/23 64/25 67/13 106/9 108/3 116/8 133/25 136/1 136/3

**I have [10]** 9/18 9/19 75/20 75/23 85/14 95/10 131/10 135/25 136/20 138/15

**I haven't [3]** 127/14 136/1 136/1

**I just [7]** 30/1 32/9 109/23 128/10 131/16 139/5 139/9

**I know [18]** 6/18 15/2 21/4 61/25 64/10 72/18 73/15 75/13 111/10 114/4 114/4 122/23 132/15 132/20 135/8 138/7 139/17 140/23

**I mean [38]** 9/10 10/11 12/24 13/16 22/21 27/19 29/25 33/2 46/20 46/21 46/24 48/4 52/17 52/19 54/2 54/12 62/12 65/25 71/15 78/7 86/4 91/16 93/16 100/13 102/3 102/5 103/20 105/23 106/12 108/7 108/19 116/12 123/16 123/19 126/3 129/7 136/18 137/18

**I misspoke [1]** 109/25

**I say [1]** 69/20

**I should [2]** 9/20 62/11

**I stick [1]** 131/2

**I think [69]** 9/1 12/10 16/12 17/21 17/25 19/6 22/24 23/16 28/1 32/10 32/14 33/8 34/15 35/2 35/18 35/23 46/20 54/17 58/3 58/7 58/23 59/10 60/10 60/11 61/5 62/2 62/9 62/22 64/11 65/18 66/3 66/19 66/24 67/16 68/18 68/20 70/3 70/20 81/3 83/12 85/9 85/24 86/17 87/19 92/20 93/12 94/23 98/22 98/25 100/1

**I am [5]** 87/14 90/20 95/4 136/16 138/6

115/23 116/2 117/9 118/11 118/13 118/14 121/18 132/2 133/2 134/8 134/10 136/14 137/16 140/8 140/23 141/4

**I thought [3]** 21/21 24/25 140/15

**I understand [9]** 12/6 30/9 31/11 58/7 84/15 97/17 114/4 128/22 129/13

**I want [7]** 6/22 27/8 64/16 105/16 123/8 128/18 139/25

**I wanted [1]** 32/4

**I was [3]** 42/17 57/15 68/2

**I will [4]** 13/24 24/8 67/25 90/17

**I would [4]** 52/9 65/11 69/10 100/20

**I'd [8]** 11/18 46/20 74/14 105/25 130/3 130/3 130/9 138/25

**I'll [12]** 14/16 16/17 19/25 20/8 65/6 101/17 132/8 133/12 133/15 135/22 136/2 137/20

**I'm [66]** 6/14 10/21 10/23 13/14 14/11 14/12 14/15 14/19 21/3 22/2 27/3 27/6 28/6 28/16 29/19 38/4 48/5 52/17 52/18 52/21 53/16 53/23 54/10 55/4 55/5 55/18 63/3 63/5 64/24 67/2 73/16 80/24 82/3 86/11 90/4 90/7 90/18 90/19 92/5 93/18 94/8 99/4 99/5 101/14 101/17 101/22 102/2 103/9 108/4 109/25 111/13 128/1 130/25 131/9 132/6 132/9 133/19 136/6 137/5 137/19 138/4 138/19 139/23 140/14 141/13 141/15

**I'm going [2]** 22/2 28/16

**I'm just [5]** 21/3 27/3 52/18 52/21 133/19

**I'm not [17]** 10/21 10/23 14/15 27/6 28/6 52/17 53/16 53/23 54/10 55/5 90/18 90/19 93/18 101/14 111/13 137/19 139/23

**I'm not sure [6]** 14/11 92/5 94/8 101/22 103/9 137/5

**I'm sorry [3]** 90/4 136/6 138/4

**I'm sure [1]** 73/16

**I'm thinking [1]** 29/19

**I've [16]** 15/9 19/17

**idea [6]** 51/3 56/7 121/25 127/20 136/20 140/14

**identified [8]** 15/17 17/16 39/19 46/23 50/17 51/25 53/13 136/11

**identifies [1]** 27/23

**identify [9]** 26/18 27/20 41/11 41/16 43/12 44/11 54/19 97/21 125/14

**identifying [2]** 43/13 55/6

**identity [3]** 22/7 91/2 139/11

**ignorant [2]** 104/2 104/4

**II [10]** 8/20 16/19 17/5 37/21 37/22 37/23 38/1 44/18 62/24 88/2

**III [9]** 1/6 4/2 5/8 7/21 18/21 25/10 31/1 33/25 119/18

**III,' [1]** 25/21

**Illegal [1]** 87/19

**imagine [1]** 36/14

**immediacy [1]** 115/2

**immediate [1]** 115/4

**immediately [2]** 41/6 62/24

**impact [9]** 110/14 114/2 115/2 115/3 123/15 124/17 125/1 125/10 125/10

**impacted [9]** 102/20 111/21 111/25 112/16 124/19 124/21 124/23 125/4 125/6

**impair [1]** 97/7

**impartial [4]** 106/15 111/3 116/21 125/6

**impede [1]** 54/15

**impediments [1]** 129/12

**implementing [1]** 16/3

**implicated [1]** 25/10

**implicit [6]** 115/9 116/16 116/24 117/11 125/12 125/13

**implicitly [1]** 116/16

**important [4]** 38/13 38/18 92/21 125/11

**importantly [1]** 123/12

**imports [2]** 9/16 9/21

**imposed [1]** 14/24

**impossibility [6]** 47/2 47/8 47/11 47/12 47/12 52/1

**impossible [1]** 47/14

**improper [2]** 90/19 123/1

**improperly [2]** 94/21

**I**

**improperly...** [1]  95/18
**inaugural** [1]  46/5
**inchoate** [1]  47/7
**incidents** [1]  124/25
**include** [5]  71/11 72/25
74/16 76/8 83/23
**included** [2]  42/23
75/18
**includes** [1]  102/4
**including** [13]  6/22
12/22 25/21 28/1 39/13
53/10 53/24 60/11
79/11 96/10 105/19
112/4 141/4
**incoming** [1]  51/12
**inconceivable** [1]
28/14
**incorporate** [1]  99/20
**incorporates** [1]  10/2
**increased** [1]  60/12
**indicate** [1]  11/16
**indicated** [6]  8/4 18/22
64/20 65/1 82/19 85/9
**indictment** [70]  7/18
7/19 7/20 8/16 8/18
8/18 8/23 9/8 20/25
21/12 21/19 22/11
22/17 23/10 23/25
24/19 25/1 25/19 25/23
26/4 26/5 26/15 27/20
27/23 28/5 29/4 29/7
30/5 30/10 31/10 32/13
32/16 33/3 35/8 35/11
35/13 38/17 38/20
38/24 38/25 39/14
40/12 41/14 41/15 48/3
48/21 52/5 53/3 53/5
53/13 53/25 53/25 54/6
55/10 59/24 64/24
70/14 80/19 88/14
88/17 89/5 89/22 90/16
96/3 96/8 96/25 96/25
110/9 110/10 118/24
**indictments** [6]  22/21
22/22 26/16 30/18
59/19 91/21
**indirectly** [1]  16/10
**individual** [7]  9/6 41/12
41/13 44/2 48/11 56/2
56/9
**individually** [2]  102/24
115/7
**individuals** [9]  8/22
12/6 56/23 60/9 66/7
70/4 76/20 77/10 84/11
**Ineligibility** [3]  83/19
83/20 84/2
**infer** [1]  94/21
**inference** [2]  23/4
94/22
**inferior** [1]  11/11
**influence** [1]  132/1
**influenced** [1]  105/11
**information** [3]  121/21
122/4 133/13
**informed** [2]  21/15
30/7

**initially** [1]  40/9
**innocent** [3]  93/4 93/7
93/10
**inquiries** [1]  92/15
**inquiry** [4]  22/15 88/4
109/20 113/25
**inside** [1]  130/24
**insight** [1]  121/8
**installing** [1]  13/6
**instance** [1]  130/23
**instead** [6]  26/12 28/13
59/12 59/13 59/25 85/3
**instruct** [4]  79/20
79/23 81/1 81/17
**instructed** [2]  36/16
81/4
**instructing** [1]  80/1
**instruction** [7]  29/23
30/3 32/4 79/24 81/24
81/25 82/2
**instructions** [2]  29/19
34/7
**insufficient** [3]  28/5
34/25 115/16
**insulates** [1]  113/9
**insurrection** [2]  102/14
102/23
**integral** [2]  44/23 45/8
**integrity** [1]  97/7
**intend** [2]  63/1 91/8
**intended** [6]  11/20
23/11 25/2 67/6 74/12
96/21
**intending** [3]  50/11
80/25 108/24
**intensity** [1]  108/8
**intent** [2]  97/7 106/18
**interests** [1]  126/25
**interfere** [2]  32/23 49/5
**interim** [1]  121/14
**interjecting** [1]  121/2
**Internet** [1]  140/13
**interpret** [3]  61/15 68/9
79/7
**interpretation** [10]
19/11 19/14 36/1 43/9
58/14 62/14 62/15
62/21 62/22 63/6
**interpreted** [1]  58/15
**interrupt** [13]  17/19
21/17 24/14 40/25 67/2
86/11 86/24 91/13
100/5 103/6 105/14
129/10 130/15
**intervention** [1]  131/17
**intimidate** [1]  91/19
**intimidated** [1]  92/1
**intimidating** [1]  70/25
**intimidation** [1]  70/2
**introduce** [1]  96/1
**introduced** [2]  90/25
90/25
**intuitive** [1]  40/9
**invalid** [1]  34/13
**investigation** [6]  26/21
96/4 97/9 110/12 114/1
123/6
**involve** [1]  22/22

involved [2]
135/10
**involvement** [1]  97/14
**involves** [1]  83/16
**involving** [2]  10/4 66/5
**irrespective** [1]  111/3
**IRS** [1]  58/20
**is** [518]
**Is my** [1]  19/11
**Is that** [1]  19/14
**is there** [1]  128/14
**isn't** [30]  10/1 10/16
12/19 12/25 15/3 17/2
26/2 26/7 26/10 33/3
33/25 34/23 35/21
36/10 39/4 47/2 54/10
54/11 65/17 70/1 83/13
86/12 86/14 92/4 94/3
100/13 103/20 106/11
107/12 122/24
**issue** [32]  6/18 21/7
21/12 23/16 35/23 39/5
46/22 62/3 63/13 86/12
95/14 96/15 100/4
100/8 101/13 116/25
117/14 118/19 121/19
128/15 130/12 131/9
131/11 131/21 131/23
134/15 135/2 135/15
136/14 139/1 139/9
140/4
**issued** [2]  64/10
136/24
**issues** [9]  17/22
115/16 116/16 119/3
128/23 132/12 132/22
133/22 139/20
**it** [282]
**It could** [1]  84/1
**It doesn't** [2]  72/10
82/24
**It had** [1]  8/11
**it would be** [10]  8/2
8/12 8/20 13/5 15/6
58/19 71/5 113/8
113/10 122/1
**it's** [136]  7/25 8/17
12/10 12/15 16/18
17/12 17/14 17/25
18/14 19/15 20/20
21/20 22/9 23/3 24/22
26/17 29/1 29/2 29/4
29/16 30/8 31/11 31/12
33/3 33/10 36/10 38/12
39/10 40/15 41/23
41/25 42/15 43/6 43/7
44/2 44/18 45/14 45/16
47/2 47/7 47/14 47/17
48/1 50/16 52/1 53/11
55/13 56/11 60/5 61/13
61/15 62/9 62/9 63/19
65/3 65/18 66/14 67/12
67/18 67/19 68/6 68/21
68/23 69/7 71/4 72/18
77/8 78/19 80/11 83/13
84/19 85/24 89/7 89/7
89/7 89/10 89/10 89/16
90/8 90/19 91/22 91/22

94/12 94/18 100/15
104/15 107/9 107/20
107/22 108/14 108/16
109/2 109/7 109/9
109/10 112/8 112/10
112/12 112/13 112/14
112/19 118/11 119/23
120/4 120/23 123/1
123/15 123/16 124/1
124/2 124/8 124/9
125/1 125/7 125/9
125/9 125/9 126/24
127/12 128/20 129/6
129/17 129/20 133/10
135/18 136/14 137/14
138/17 139/14 139/15
141/2 141/5
**it's like** [1]  125/1
**items** [1]  91/9
**its** [31]  8/14 8/18 14/21
14/21 19/12 24/4 33/4
33/5 37/2 38/21 39/1
40/3 40/11 58/1 58/17
59/12 65/16 65/21
66/15 76/6 87/16 90/21
96/23 97/7 111/9 112/7
114/10 114/11 115/19
116/14 124/11
**itself** [15]  40/2 40/5
40/10 41/23 41/25
42/13 43/1 43/3 44/5
56/8 56/11 60/16 78/2
83/8 116/22

**J**

**Jackson** [1]  105/13
**jail** [4]  130/6 130/24
131/1 132/18
**January** [42]  7/10
30/15 30/21 45/13 48/5
48/13 49/18 49/22
49/24 50/5 50/21 51/7
51/20 52/11 80/2 91/7
91/7 93/5 102/12
102/15 102/25 103/1
103/3 103/14 104/4
105/19 108/10 111/1
111/21 112/16 115/10
115/10 117/6 117/18
121/9 121/24 121/25
122/18 122/20 122/22
123/22 124/23
**January 20th** [1]  49/18
**January 6th** [8]  80/2
102/12 102/15 102/25
111/1 111/21 122/20
123/22
**JC** [2]  129/17 133/14
**jcrisp** [1]  2/10
**Jeff** [1]  13/6
**Jeffrey** [2]  1/13 5/14
**jeffrey.nestler** [1]  1/18
**Jessica** [2]  2/7 5/10
**Jessica Watkins** [1]
5/10
**job** [2]  22/12 73/8
**jobs** [2]  73/3 73/4

94/14 94/18 100/15
104/15 107/9 107/20
107/22 108/14 108/16
109/2 109/7 109/9
109/10 112/8 112/10
112/12 112/13 112/14
112/19 118/11 119/23
120/4 120/23 123/1
123/15 123/16 124/1
124/2 124/8 124/9
125/1 125/7 125/9
125/9 125/9 126/24
127/12 128/20 129/6
129/17 129/20 133/10
135/18 136/14 137/14
138/17 139/14 139/15
141/2 141/5
48/13 49/10
49/23 50/4
**Joe Biden** [4]  48/13
49/10 49/23 50/4
**joinder** [1]  90/18
**joined** [1]  123/22
**joint** [4]  45/17 45/20
80/2 93/9
**jointly** [1]  134/3
**Jonathan** [2]  2/7 5/20
**Joseph** [2]  3/12 5/11
**Jr** [2]  2/12 3/7
**judge** [8]  1/10 42/17
46/12 57/4 106/9
109/13 118/4 118/4
**judges** [1]  105/20
**judging** [1]  58/1
**judgment** [5]  36/23
104/20 112/2 115/21
116/1
**judicial** [12]  17/24
17/25 18/13 18/24
35/25 36/5 57/20 58/3
58/4 61/18 61/19 84/19
**judicial-type** [1]  35/25
**Juli** [2]  2/16 5/17
**JULIA** [1]  2/16
**June** [4]  127/22 128/4
128/6 142/7
**juries** [3]  105/18 107/6
111/10
**jurisdiction** [8]  103/19
107/2 107/8 111/8
114/24 125/7 131/20
131/25
**jurisdictions** [4]
100/22 104/10 117/14
123/18
**juror** [2]  106/2 117/2
**jurors** [15]  34/14 104/6
104/8 105/23 106/2
106/3 106/12 106/18
108/16 108/17 108/23
115/17 115/20 118/1
126/7
**jury** [75]  23/15 23/24
26/9 26/15 26/23 29/19
29/20 29/22 30/3 30/10
30/12 30/13 30/14 31/3
32/18 33/15 33/21 34/1
34/7 34/9 34/10 34/18
35/5 35/13 40/12 46/14
46/17 47/4 48/1 52/6
53/3 55/13 55/14 79/20
79/23 79/24 80/1 81/1
81/4 81/17 81/18 86/19
86/19 86/21 87/1 94/19
94/21 95/17 97/9 98/1
104/1 105/1 105/21
106/19 107/5 108/22
109/8 109/10 109/17
111/15 111/18 112/14
112/22 112/22 124/2
124/5 124/7 124/10
124/18 125/6 125/18
126/10 126/17 126/18
129/4
**jury's** [1]  105/13

**just [103]** 9/9 9/15
11/18 14/4 15/3 20/2
20/21 21/3 27/3 27/3
29/3 30/1 32/9 33/10
34/6 34/15 35/12 36/10
37/9 37/13 37/15 40/1
42/23 44/21 50/3 52/18
52/21 53/18 55/16
57/15 58/13 60/4 61/12
61/13 61/15 62/20
63/14 64/15 66/2 69/23
71/15 72/21 75/21
76/11 76/20 78/9 82/3
84/2 84/7 89/11 89/17
89/21 92/12 92/16 93/9
93/16 93/22 95/8 95/15
96/24 100/5 100/25
103/6 107/10 109/10
109/23 113/24 113/25
114/1 117/6 118/6
120/18 122/14 122/16
124/1 124/10 124/20
124/20 125/9 125/9
125/10 126/22 127/18
127/20 128/10 128/12
128/18 129/7 129/20
130/9 130/14 130/22
131/6 131/14 131/16
133/19 135/17 136/3
139/3 139/5 139/9
139/11 141/15
**justify [1]** 129/11
**Justin [2]** 1/14 5/15
**Justin Sher [1]** 5/15

## K

**Kathryn [2]** 1/13 5/14
**Kathryn Rakoczy [1]**
5/14
**kathryn.rakoczy [1]**
1/17
**keep [7]** 6/23 7/9 49/9
50/11 55/16 64/5 129/2
**Keepers [3]** 100/1
123/7 125/8
**Kelly [2]** 2/12 5/9
**Kenneth [2]** 3/2 5/9
**kind [8]** 56/4 57/9
66/13 94/10 102/7
125/17 129/7 140/16
**knew [1]** 130/13
**know [84]** 6/18 14/6
14/15 15/2 18/12 19/22
21/4 21/4 28/22 30/4
32/18 34/15 34/18
34/19 35/8 35/10 35/12
35/18 35/20 35/24
45/12 45/13 46/25 53/9
54/12 54/23 55/18
61/14 61/25 62/18
64/10 67/25 68/7 68/15
70/9 72/18 73/6 73/15
87/6 87/8 89/1 89/6
93/20 93/22 102/3
102/6 103/1 103/17
104/8 111/10 113/5

118/11 121/8 121/21
122/2 122/18 122/19
122/23 122/23 123/14
129/3 131/4 131/21
132/15 132/20 133/25
135/8 135/8 135/25
138/7 139/3 139/5
139/17 140/18 140/23
141/12 141/21
**knowledge [1]** 15/7
**knows [7]** 12/12 23/22
94/11 99/12 100/1
101/7 116/23

## L

**laborers [1]** 40/21
**lack [3]** 31/8 95/23
115/8
**lacking [1]** 22/18
**Lamar [16]** 67/24 67/25
68/3 68/5 68/12 68/16
68/24 69/1 78/3 78/3
78/7 78/8 79/2 79/9
82/7 84/22
**language [33]** 9/4
12/10 16/21 17/1 40/6
59/2 59/2 65/17 65/19
66/21 68/23 69/4 69/6
69/7 69/13 69/15 72/6
73/12 73/17 73/19
75/10 76/25 78/9 78/10
83/19 83/22 84/2 85/10
89/8 89/11 89/13 97/3
118/4
**laptop [4]** 131/8 131/10
131/12 140/16
**large [5]** 41/20 42/6
43/10 44/5 48/11
**largely [3]** 66/1 102/6
118/17
**larger [3]** 14/5 112/9
113/23
**LASSITER [1]** 4/3
**last [5]** 25/19 94/12
130/2 130/12 136/16
**last-minute [1]** 94/12
**lasting [1]** 115/4
**lastly [1]** 94/24
**late [1]** 121/10
**later [6]** 69/24 78/4
104/20 110/9 122/7
127/19
**law [120]** 2/12 2/16 3/8
7/11 7/15 8/6 8/15 8/15
8/19 9/5 9/7 10/3 10/3
10/22 11/2 11/12 12/3
12/9 12/13 12/25 13/6
13/8 13/13 13/19 14/4
14/10 14/15 15/11 16/7
16/8 16/9 16/11 16/11
16/13 17/3 17/14 18/11
18/23 19/7 19/8 19/9
19/13 19/21 22/15
23/17 24/22 25/17 27/1
28/6 28/12 28/12 28/13
28/21 29/2 29/24 30/24
31/3 32/14 33/19 35/22

37/6 37/7 37/8 39/2
39/6 39/7 39/10 39/15
39/18 39/21 40/13
40/15 40/16 41/7 41/12
41/21 42/6 43/4 43/11
43/13 44/16 45/2 45/6
46/9 46/22 54/19 54/20
54/20 55/1 55/4 55/15
55/21 56/23 56/25 57/3
58/18 58/22 59/8 59/11
59/20 59/25 60/2 61/11
61/22 61/23 62/8 62/24
64/18 65/23 67/5 69/5
75/7 75/7 98/2 111/22
120/14
**lawful [2]** 39/12 92/3
**Lawn [1]** 4/3
**laws [60]** 7/9 7/18 7/23
8/4 8/5 8/23 12/16 18/9
21/22 25/2 26/9 26/19
27/6 27/9 27/18 27/20
27/24 27/25 28/21
29/24 32/16 33/20
33/24 34/12 37/17
37/19 39/18 39/24 40/1
41/9 41/16 42/15 43/18
43/20 44/6 44/6 44/9
44/12 44/13 44/14
44/16 44/20 44/21
44/24 44/25 45/2 51/25
53/12 54/7 54/13 55/24
56/3 56/15 56/20 58/20
59/5 60/4 60/5 61/9
61/20
**lawsuit [4]** 14/2 36/19
36/20 36/25
**lays [1]** 7/20
**lead [1]** 129/8
**leading [1]** 140/24
**least [17]** 15/18 32/24
40/9 41/10 41/14 42/3
44/17 48/12 51/17 66/1
77/18 87/8 96/7 98/4
114/22 116/18 122/23
**leave [2]** 69/22 133/17
**leaves [1]** 76/18
**leaving [2]** 51/3 89/22
**Lebrón [2]** 60/9 60/23
**Lee [1]** 3/7
**left [3]** 11/7 89/6 98/25
**legal [21]** 35/9 39/1
39/5 46/22 47/1 47/2
47/11 47/12 47/17
51/24 52/1 65/13 79/22
80/3 81/1 81/5 81/7
81/24 81/24 82/1 119/3
**legally [6]** 33/14 33/16
33/20 34/24 34/25
47/14
**legislation [2]** 16/3
16/8
**legislative [1]** 82/9
**legislator [1]** 73/1
**legislators [2]** 76/19
77/18
**legislature [1]** 82/9
**lengthy [1]** 20/25

62/20
**let [18]** 27/4 32/21
39/17 41/13 43/8 59/14
63/14 64/15 72/23
75/21 77/13 78/8 109/2
114/21 129/10 132/10
133/11 135/8 139/3
**let's [8]** 12/18 30/11
38/8 41/14 101/2
126/15 133/22 141/1
**letter [2]** 103/1 103/4
**level [3]** 112/2 122/1
122/2
**levy [1]** 11/24
**lie [2]** 101/24 118/20
**light [4]** 62/5 68/10
95/5 109/14
**like [38]** 7/4 13/5 20/9
21/14 22/7 23/14 23/14
23/24 28/22 34/6 44/21
47/7 59/5 59/7 61/5
61/15 63/12 63/15
69/23 70/2 76/21 82/4
84/7 86/17 87/17 87/22
89/16 89/21 90/2 91/2
99/20 116/2 124/18
125/1 131/6 138/25
139/5 140/8
**likely [1]** 105/10
**limitation [1]** 52/14
**limitations [1]** 114/13
**limited [3]** 42/20 43/5
83/4
**limiting [2]** 52/5 56/16
**Lincoln [1]** 19/6
**Linder [7]** 4/2 4/3 5/16
6/18 128/21 130/14
133/21
**line [12]** 25/19 57/7
57/10 60/24 61/1 61/25
101/22 108/4 113/19
135/18 141/5 141/11
**line-drawing [1]** 57/7
**lines [1]** 43/17
**linguistically [1]** 76/13
**list [5]** 77/10 88/17
122/20 122/23 128/10
**listen [1]** 133/2
**literally [3]** 107/19
113/21 140/15
**litigated [1]** 62/5
**little [9]** 24/10 29/2
59/14 75/7 85/4 94/5
118/12 120/22 135/20
**live [2]** 103/19 103/19
**LLC [2]** 2/8 3/3
**location [3]** 113/5
123/23 131/19
**lockdowns [3]** 111/24
140/12 140/13
**lockup [1]** 140/11
**logically [1]** 35/12
**logistically [1]** 119/11
**long [13]** 31/22 35/3
50/12 56/3 77/10 80/18
81/17 115/4 129/3
132/5 135/5 135/5

**long-lasting [1]** 115/4
**look [31]** 11/16 11/17
14/11 19/18 22/21
25/18 29/23 33/12 34/4
68/22 75/21 78/9 79/4
88/21 88/21 103/8
103/20 103/25 105/16
105/25 114/23 116/9
116/12 131/19 132/23
134/8 136/14 136/18
137/18 137/19 139/2
**looked [9]** 35/1 35/5
67/17 68/12 68/13 69/3
69/6 79/6 134/15
**looking [3]** 21/13 74/6
126/25
**looks [3]** 79/10 82/4
115/17
**lose [1]** 113/10
**losing [1]** 36/15
**loss [1]** 48/5
**lot [12]** 21/10 92/11
99/23 113/12 115/7
116/4 120/4 127/12
128/20 133/8
**Loudoun [1]** 102/4
**love [1]** 111/9
**loved [1]** 111/22
**low [2]** 38/22 38/23
**loyal [1]** 74/1
**Lucky [1]** 75/15
**lumped [1]** 29/16

## M

**machinery [1]** 42/12
**made [10]** 12/5 12/6
32/25 40/8 44/9 95/15
101/23 103/1 105/1
108/22
**mail [1]** 130/6
**main [2]** 7/3 24/25
**make [23]** 17/3 27/8
33/11 36/4 52/19 55/16
58/23 64/17 66/10
72/16 75/11 76/14
78/21 82/24 82/25
97/11 102/11 102/13
106/20 109/23 127/20
130/20 140/1
**makes [8]** 28/5 35/13
73/11 73/21 82/5 97/12
110/6 122/15
**making [4]** 42/17 51/10
52/17 112/1
**mandatory [1]** 90/19
**many [14]** 22/4 22/5
22/6 30/16 30/16 40/11
84/9 95/5 101/12
103/22 104/3 105/22
105/24 125/8
**marching [1]** 46/5
**Marion [1]** 3/18
**market [2]** 100/15
102/1
**marriage [1]** 139/20
**Marshal [4]** 130/19
132/4 132/24 133/13

**Marshall [1]** 105/4
**Marshals [2]** 129/20
131/3
**martial [1]** 19/7
**mask [2]** 7/5 20/15
**mass [1]** 83/13
**material [2]** 26/23
26/25
**materials [3]** 93/4 98/1
139/11
**matt [1]** 4/11
**matter [20]** 11/18 28/5
30/18 39/6 47/2 47/16
57/20 64/19 78/6 80/6
81/3 81/5 81/7 81/15
81/17 112/22 112/23
120/3 138/20 142/4
**matters [5]** 6/21 6/24
31/5 127/14 128/10
**Matthew [2]** 4/7 6/2
**maximum [1]** 60/13
**may [51]** 1/5 7/7 10/25
17/17 20/4 20/5 24/2
27/10 33/8 34/12 34/13
35/2 37/8 56/4 64/7
68/4 75/25 92/24 94/19
94/21 94/24 94/25 95/1
99/5 99/8 103/20
104/12 104/25 105/8
105/10 105/14 105/25
108/18 111/3 111/6
112/12 112/15 115/9
116/16 116/16 121/6
121/25 123/19 123/19
124/19 124/20 128/17
134/1 134/1 137/7
140/3
**maybe [19]** 16/18 27/3
28/18 29/21 31/21
31/22 46/21 50/10
50/12 55/17 74/2 87/21
91/9 101/14 101/16
102/6 115/24 116/2
126/5
**mayor [4]** 102/10 103/1
110/14 110/20
**McVeigh [2]** 125/2
125/2
**McVeigh's [1]** 125/3
**MD [1]** 2/4
**me [72]** 15/11 16/18
18/14 20/2 22/24 23/3
23/25 24/15 27/3 27/4
28/2 28/14 30/2 32/21
39/6 39/17 41/13 43/8
46/9 47/18 48/9 48/9
48/17 50/9 50/13 50/14
59/14 60/14 63/12
63/14 64/15 66/9 68/4
71/14 71/17 72/23
75/15 75/21 77/13 78/9
79/18 80/25 87/11 90/2
92/18 98/23 100/7
100/25 102/8 103/12
105/20 106/1 106/12
109/3 109/18 110/24
114/21 119/10 123/23

130/18 131/12 132/10
133/11 133/20 135/8
139/3 141/20 141/21
141/22
**mean [68]** 9/10 10/8
10/11 12/24 13/15
13/16 15/14 17/16
19/20 22/10 22/21
23/19 27/19 29/25 33/2
36/8 36/13 43/9 46/20
46/21 46/24 48/4 50/5
52/8 52/9 52/17 52/19
52/22 54/2 54/12 55/12
61/2 62/12 65/17 65/25
70/7 71/15 72/23 77/14
78/7 83/7 86/4 91/16
93/16 94/1 97/17 100/7
100/13 100/13 102/3
102/5 103/20 105/23
106/12 106/17 108/7
108/19 115/11 116/12
117/12 123/16 123/19
126/3 129/7 133/4
136/15 136/18 137/18
**meaning [14]** 9/12 9/24
11/8 11/19 14/20 14/21
19/12 19/20 61/12
62/21 65/16 65/21
80/10 82/10
**means [13]** 10/8 19/13
27/17 41/11 59/11
61/13 66/23 68/9 69/12
79/11 86/25 107/23
137/23
**meant [3]** 68/11 75/3
85/11
**mechanical [1]** 4/16
**mechanism [1]** 46/6
**media [27]** 86/2 86/5
86/14 87/3 89/18 92/15
97/14 99/23 100/2
100/7 100/12 100/15
101/25 102/1 103/8
103/11 103/22 108/8
110/13 113/24 114/19
114/24 115/11 122/1
122/3 123/17 125/9
**meet [5]** 11/8 15/5
24/20 30/5 89/14
**meeting [1]** 130/23
**Meggs [22]** 2/12 5/9
5/18 6/4 6/22 113/16
128/11 133/22 134/2
134/3 134/17 135/9
135/11 136/13 136/21
136/25 137/1 137/4
137/8 137/24 138/1
138/10
**MEHTA [2]** 1/10 5/3
**member [5]** 73/5 76/21
77/1 83/2 85/5
**members [51]** 8/2 8/4
8/14 10/13 10/18 10/20
10/23 11/2 12/18 13/4
14/3 14/4 14/25 15/10
39/2 58/2 63/2 67/20
69/9 69/15 70/15 71/11

73/25 74/23 75/9 75/17
76/8 76/11 76/15 76/16
77/8 79/16 79/20 80/5
80/11 80/19 81/2 81/9
82/9 82/20 83/8 83/21
84/7 84/16 84/18 104/9
124/24
**memo [1]** 20/8
**memory [1]** 116/13
**men [1]** 124/22
**mention [1]** 120/19
**mentioned [3]** 66/2
125/13 128/15
**mere [3]** 93/14 93/17
94/1
**merely [1]** 23/22 89/13
**Merit [1]** 4/12
**met [3]** 38/24 81/5
81/18
**methods [1]** 72/1
**Metropolitan [2]**
102/24 103/2
**might [19]** 25/22 26/4
54/25 67/14 93/21
93/23 94/1 94/14 98/4
103/15 117/10 118/20
126/21 130/10 132/17
134/7 140/12 140/19
141/6
**mile [2]** 123/24 124/2
**miles [3]** 113/3 113/20
123/16
**military [2]** 19/8 74/8
**militia [2]** 19/8 37/24
**mill [3]** 92/6 92/8 92/10
**Miller [1]** 140/23
**million [1]** 107/3
**mind [3]** 7/9 51/18
52/21
**minds [1]** 116/10
**minimal [2]** 25/5 96/7
**minimis [3]** 112/9
112/10 113/2
**minimum [2]** 25/23
60/15
**minimus [1]** 107/9
**Minuta [5]** 3/7 5/11
5/23 6/6 97/3
**minute [1]** 94/12
**minutes [4]** 63/15
63/18 131/1 140/15
**mirror [1]** 84/2
**missing [5]** 8/17 24/16
85/25 126/2 128/14
**mission [1]** 140/4
**mission-critical [1]**
140/4
**misspoke [1]** 109/25
**mistaken [2]** 38/4
64/24
**mitigated [2]** 95/17
95/18
**modes [1]** 67/7
**modifications [1]**
140/12
**Moerschel [4]** 3/17
5/12 5/25 6/8

41/15 95/8 119/10
**months [2]** 78/4 98/6
**more [35]** 23/24 43/5
44/15 53/18 64/13
66/14 75/20 87/17
92/11 92/17 93/13
100/3 103/15 103/15
103/23 104/9 104/17
105/9 105/10 107/12
113/14 113/22 115/4
115/4 115/11 116/2
118/1 119/16 123/12
124/14 124/23 125/11
125/11 131/17 141/2
**morning [6]** 48/12 50/5
130/24 131/3 132/9
133/18
**most [13]** 18/2 24/22
44/21 45/15 50/16
61/10 62/23 73/25 90/9
105/6 114/1 134/16
135/2
**motion [28]** 1/9 20/22
32/9 38/14 38/17 47/19
54/4 54/6 64/9 64/25
85/20 98/25 99/18
99/23 100/3 101/13
120/15 121/7 122/6
122/6 125/22 131/7
133/25 134/22 136/2
136/3 139/10 141/11
**motions [5]** 6/14 6/17
7/1 98/22 98/24
**Mouat [1]** 65/13
**movants [1]** 125/21
**move [8]** 16/16 63/12
65/6 101/1 101/1 122/8
132/12 138/1
**moved [5]** 100/25
125/3 126/19 132/18
140/24
**moves [1]** 85/22
**moving [4]** 100/21
135/5 135/23 137/21
**Mr [3]** 40/25 67/3
136/22
**Mr. [92]** 6/18 6/19 6/22
7/2 7/4 9/9 20/5 20/19
20/21 20/24 21/14 27/1
27/11 31/19 31/21 32/9
32/15 35/16 35/18
37/14 37/15 38/11 40/8
43/4 44/15 56/13 57/17
58/11 61/4 63/9 64/6
64/16 65/24 76/1 76/3
76/9 76/11 77/3 80/9
82/15 82/16 82/19 83/2
84/22 85/15 85/22 86/1
87/1 88/18 91/9 93/6
93/17 94/1 97/1 97/2
97/3 97/4 97/13 97/22
99/2 127/24 128/11
128/11 128/12 128/21
128/22 130/4 130/14
132/18 133/21 133/22
133/24 134/2 134/3
136/4 134/11 134/11

73/5 135/1 135/8
135/9 135/9 136/24
136/25 137/3 137/12
137/20 137/24 138/10
139/10 139/19 140/19
**Mr. and [1]** 134/17
**Mr. Caldwell [1]** 35/18
**Mr. Conley [1]** 134/11
**Mr. Connolly [1]**
136/24
**Mr. Fischer [23]** 7/2
7/4 9/9 20/5 20/21
37/14 37/15 40/8 43/4
56/13 57/17 58/11 63/9
64/6 64/16 65/24 76/1
76/9 76/11 80/9 82/16
85/15 99/2
**Mr. Fischer's [2]** 27/11
77/3
**Mr. Geyer [1]** 140/19
**Mr. Geyer's [1]** 139/10
**Mr. Hackett [15]** 20/19
20/24 21/14 27/1 85/22
86/1 87/1 88/18 91/9
93/17 94/1 97/1 97/4
97/13 97/22
**Mr. Hackett's [1]** 93/6
**Mr. Harrelson [2]** 97/2
128/12
**Mr. Linder [4]** 6/18
128/21 130/14 133/21
**Mr. Meggs [8]** 6/22
128/11 133/22 134/2
135/9 136/25 137/24
138/10
**Mr. Minuta [1]** 97/3
**Mr. Nestler [8]** 38/11
61/4 76/3 82/15 82/19
84/22 134/6 139/19
**Mr. Nestler's [1]** 83/2
**Mr. Peed [2]** 31/21
35/16
**Mr. Peed's [1]** 44/15
**Mr. Rhodes [6]** 6/19
127/24 128/11 128/22
130/4 132/18
**Mr. Vallejo [2]** 31/19
32/15
**Mr. Vallejo's [1]** 32/9
**Mr. Wilson [2]** 134/3
137/3
**Mr. Wise [5]** 134/11
135/1 135/8 135/9
137/20
**Mr. Woodward [2]**
133/24 137/12
**Ms. [49]** 20/7 21/17
24/15 46/21 53/9 55/8
85/19 90/1 91/13 95/11
95/12 95/16 98/17
98/18 99/4 99/6 99/11
100/5 103/7 108/3
110/15 114/6 114/23
114/25 118/6 122/10
122/12 123/8 125/16
126/6 127/13 129/18
131/6 131/13 131/24
132/15 133/15 133/24

Case 1:22-cr-00015-APM Document 159 Filed 06/13/22 Page 156 of 165

**M**

Ms.... [11] 134/3
134/11 134/17 135/11
136/13 136/21 137/1
137/8 137/12 138/1
140/23
Ms. Halim [13] 20/7
21/17 24/15 46/21 53/9
55/8 85/19 90/1 91/13
95/11 95/16 98/18 99/4
Ms. Haller [12] 99/6
99/11 100/5 103/7
108/3 110/15 114/6
114/25 122/12 123/8
133/24 137/12
Ms. Meggs [8] 134/3
134/17 135/11 136/13
136/21 137/1 137/8
138/1
Ms. Miller [1] 140/23
Ms. Rakoczy [13]
95/12 98/17 114/23
118/6 122/10 126/6
127/13 129/18 131/6
131/13 131/24 132/15
133/15
Ms. Rakoczy's [1]
125/16
Ms. Soller [1] 134/11
much [15] 9/15 25/15
85/11 86/17 95/25
99/25 108/8 110/16
112/22 112/23 119/24
123/6 127/11 138/5
141/19
multiple [8] 25/7 25/15
27/22 28/21 28/22
28/23 82/8 87/2
munitions [1] 42/11
Murphy [2] 105/4
105/5
must [8] 7/14 41/8 42/5
55/21 55/23 88/8 89/25
91/11
mutilated [2] 89/1 97/5
mutilation [1] 88/23
mutually [2] 77/8 77/12
my [36] 10/1 10/2
13/23 15/7 16/25 19/11
22/3 51/18 63/17 64/12
64/18 64/25 67/3 68/1
75/22 83/15 84/5
101/16 101/25 105/23
106/7 113/22 126/5
128/10 129/6 130/5
131/1 131/2 131/7
132/8 132/25 133/14
133/15 136/25 138/21
141/4
My recollection [1]
136/25

**N**

name [1] 97/18
namely [1] 126/9
names [1] 122/22
narrow [2] 33/3 98/6
narrowed [1] 140/17

140/17
narrower [2] 62/14
62/14
narrowing [2] 53/3
53/5
nation [1] 117/4
national [2] 117/20
119/22
nationally [1] 117/13
nature [11] 18/13
21/15 22/21 22/23 30/7
57/20 58/3 92/13 92/13
103/13 121/2
necessarily [1] 122/25
necessary [4] 96/20
117/16 117/22 120/3
need [17] 43/12 44/20
56/1 57/10 68/8 80/20
88/17 88/17 121/17
128/8 129/11 129/11
130/17 130/17 134/9
137/16 141/20
needs [3] 122/5 131/14
131/16
nefarious [1] 106/18
negates [1] 107/21
neighborhood [1]
63/20
neither [1] 37/7
Nestler [12] 1/13 5/14
38/11 40/25 61/4 76/3
82/15 82/19 84/22
134/6 136/22 139/19
Nestler's [1] 83/2
never [3] 15/9 30/14
36/13
new [1] 46/2
news [2] 45/14 45/15
newspapers [1] 102/6
next [11] 22/14 45/8
46/7 48/14 49/24 50/4
50/17 51/14 57/11
63/13 127/17
nice [2] 139/14 139/15
nine [1] 106/22
NJ [1] 3/4
no [63] 1/4 5/7 5/8 5/9
5/9 5/10 5/10 12/13
13/10 13/12 13/17
13/18 13/18 13/20
13/21 18/2 18/12 19/24
19/24 23/12 31/10
31/15 34/8 34/11 36/14
39/7 39/25 41/18 53/4
55/3 56/16 61/11 61/22
62/20 64/13 73/5 75/23
77/22 85/15 86/3 98/19
108/10 109/10 109/22
110/10 110/17 112/22
112/23 120/3 121/25
126/2 126/2 126/2
126/20 126/21 126/23
126/24 131/10 136/4
136/20 137/13 137/15
137/17
nobody [3] 48/10
61/20 140/7

None [3] 7/23 38/14
105/20
noon [2] 49/18 51/7
normally [2] 44/24
45/3
North [2] 2/8 117/17
northern [1] 101/12
112/6 112/8
not [244]
note [1] 78/21
notes [2] 24/5 75/22
nothing [6] 9/7 62/1
75/20 77/11 85/14
98/15
notice [5] 21/22 25/5
30/15 66/11 136/3
notion [3] 11/10 85/1
107/21
notoriety [1] 117/8
nouns [2] 72/2 72/12
72/17
November [1] 137/24
now [29] 18/21 27/22
27/25 30/22 31/9 36/8
37/22 40/17 49/1 49/2
50/19 53/12 54/23 55/4
57/4 61/18 63/19 70/1
77/6 83/24 93/13
113/11 122/5 122/17
127/19 134/18 138/10
139/21 140/5
now President [1]
50/19
null [1] 100/8
number [7] 84/16
92/16 106/8 106/25
109/3 115/20 119/15
numerous [2] 36/8
45/1
NW [5] 1/15 2/13 2/17
4/9 4/14

**O**

Oak [1] 4/3
oath [5] 46/4 76/17
100/1 123/7 125/8
obeying [2] 36/8 36/11
object [26] 26/19 33/2
34/25 40/20 48/24 51/8
51/18 51/24 52/24 70/8
70/9 70/10 81/24 82/1
85/25 86/7 86/22 86/22
88/24 88/25 89/6 89/18
89/23 92/2 97/6 137/12
objecting [1] 117/24
objection [2] 119/13
137/15
objects [6] 28/23 28/24
33/4 33/5 33/12 33/16
obligations [1] 13/3
observation [1] 57/18
obstructed [2] 25/3
27/21
obstructing [1] 118/24
obstruction [2] 36/5
91/23
obtain [1] 42/13

obvious [4] 99/9
107/10 137/18
obviously [7] 12/12
19/25 37/23 64/10
68/21 70/18 140/21
occasions [1] 84/16
occupied [1] 70/2
occupy [1] 70/4
occur [2] 118/14
119/19
occurred [4] 118/24
118/25 119/17 121/24
occurring [3] 50/8
95/21 119/20
odd [1] 24/6
off [1] 119/5
offense [12] 21/2 22/16
24/18 38/21 38/24
85/23 86/8 91/2 91/23
91/23 95/19 96/21
offenses [1] 104/2
offensive [1] 21/13
offer [2] 73/5 82/22
offered [3] 73/4 73/7
82/23
office [47] 1/15 3/13
48/16 48/16 49/8 49/10
49/11 49/15 51/3 51/5
51/20 69/20 69/25 70/2
70/4 70/11 70/23 71/5
71/7 71/10 71/17 71/25
72/3 72/4 72/13 72/19
72/24 73/8 73/9 73/10
73/14 75/3 76/12 76/15
76/17 76/18 77/1 77/11
80/17 83/5 83/10 83/17
84/12 99/22 112/5
129/23 140/5
officer [46] 17/2 37/16
37/18 44/3 65/14 65/20
66/11 66/22 68/10
68/25 69/1 69/4 69/5
69/11 69/18 69/22 70/3
70/9 70/24 71/1 73/15
73/16 74/16 75/2 77/23
78/10 78/12 78/16
78/18 78/19 78/20
78/23 78/24 79/11 80/9
84/5 84/9 84/12 84/15
84/18 84/23 84/24 85/2
85/3 85/12 87/21
officer's [1] 67/10
officers [31] 11/11
37/2 40/4 66/23 67/6
69/12 73/20 74/7 74/7
74/9 74/25 75/8 77/9
77/17 77/25 78/5 78/8
78/25 79/17 80/5 80/12
80/15 82/9 82/9 82/11
84/8 84/8 84/17 84/19
85/6 102/23
offices [7] 2/16 3/8
73/25 74/10 79/17
82/20 83/22
official [9] 4/13 36/2
56/4 59/20 59/25 67/13
79/25 80/2 97/8
officially [1] 136/2

officials [4] 35/21
35/22 58/21 75/18
often [2] 22/23 92/9
oh [6] 20/17 90/4 131/2
135/15 137/7 138/12
okay [60] 6/10 6/13 7/1
21/25 23/8 24/1 24/24
27/2 28/8 29/14 29/21
31/7 31/13 32/24 34/21
37/11 38/5 39/16 49/1
49/2 51/22 52/7 52/16
53/1 53/8 55/7 56/6
58/7 63/8 63/20 64/4
76/2 81/22 82/13 90/1
95/7 95/12 98/13 98/21
99/7 103/16 106/2
108/9 120/17 122/10
126/20 127/3 127/6
127/7 127/8 127/11
128/6 128/16 133/22
135/22 135/23 136/8
137/21 138/13 141/9
once [2] 50/15 134/1
one [84] 13/17 13/18
13/21 17/17 17/18 18/4
21/24 22/9 28/16 28/19
28/21 29/17 30/13 31/5
31/11 32/16 32/18
32/19 32/25 33/4 33/5
33/20 34/12 34/13
34/19 35/4 37/13 39/6
44/2 45/13 47/18 51/13
51/13 51/15 51/16
56/17 56/21 59/23
60/11 60/21 61/22
63/14 67/7 70/9 70/22
76/11 78/4 78/7 78/23
79/3 79/20 80/19 81/2
81/18 83/7 83/9 86/12
87/8 87/20 91/22 92/17
93/9 93/15 94/2 94/13
94/15 94/18 95/8 105/5
105/20 108/9 109/3
110/8 111/22 112/12
113/25 115/25 117/9
119/15 123/9 123/11
128/1 129/15 131/22
140/14
ones [3] 111/10 122/23
137/18
ongoing [3] 26/22
92/15 96/5
only [28] 8/22 11/10
15/6 15/7 28/20 33/15
39/14 41/12 45/13
46/24 51/15 53/10
56/17 56/21 58/23
58/24 73/11 93/6
100/18 100/18 100/25
101/1 106/3 106/6
116/10 119/23 135/1
140/14
open [2] 36/15 37/5
opening [1] 37/9
opens [1] 37/7
operate [1] 50/15
operating [1] 7/25
operation [4] 48/8 50/11
50/20 50/25

**operative [2]** 78/14 97/3
**opinion [5]** 12/14 14/7 18/18 64/11 121/4
**opinions [2]** 42/9 116/6
**opportunity [2]** 19/25 20/8
**oppose [6]** 11/24 39/12 40/15 43/25 44/4 135/5
**opposed [10]** 7/16 9/23 21/23 26/10 33/1 35/21 42/6 86/15 126/1 134/14
**opposing [4]** 38/22 42/14 56/19 56/19
**opposition [7]** 24/4 87/16 90/8 90/12 101/20 113/6 120/20
**option [2]** 93/6 93/9
**options [2]** 25/24 28/13
**oral [1]** 128/19
**orally [3]** 31/24 45/19 137/15
**order [14]** 7/13 47/23 47/24 48/25 50/7 52/4 64/1 72/13 88/19 89/2 92/24 96/4 131/7 131/21
**ordering [1]** 94/17
**Ordinarily [1]** 90/24
**ordinary [6]** 9/23 10/9 11/8 12/24 29/2 115/12
**original [1]** 18/3
**originally [1]** 19/4
**other [76]** 9/6 10/7 14/13 15/10 16/14 16/16 19/3 26/3 26/8 27/25 37/25 38/1 39/1 42/22 43/5 44/10 44/21 46/1 46/22 47/7 49/17 51/9 53/12 53/13 53/23 54/7 55/4 64/13 65/5 66/6 68/15 68/22 69/3 69/6 70/10 70/24 70/25 75/19 76/21 77/15 79/6 79/6 80/24 81/15 81/20 84/18 87/8 87/17 89/18 90/16 93/2 93/15 93/16 94/2 95/20 96/8 97/6 98/19 100/8 102/17 104/10 106/8 106/9 108/2 108/10 112/3 115/5 128/16 130/16 132/15 132/18 132/18 138/2 138/20 139/11 140/7
**others [7]** 11/15 12/23 25/23 50/7 74/11 91/9 96/11
**others' [1]** 105/7
**otherwise [4]** 26/5 119/12 130/18 135/25
**ought [3]** 47/18 132/2 137/23
**our [37]** 43/6 43/16

59/16 62/6 62/8 63/6 63/15 76/14 82/6 87/17 87/22 88/21 89/4 96/10 96/25 98/7 98/16 99/17 100/3 105/4 107/4 107/9 111/10 120/20 122/22 125/22 130/2 130/19 131/25 132/3 134/22 136/12 139/20
**ourselves [2]** 113/3 121/12
**out [70]** 7/20 10/9 11/18 12/20 12/22 13/3 14/7 19/7 21/9 26/5 26/8 28/2 34/8 34/8 34/11 35/4 35/12 36/12 38/21 44/21 45/5 52/18 52/18 54/17 55/8 55/9 55/23 56/3 58/24 59/2 64/23 64/25 65/11 66/21 68/1 68/20 69/17 73/13 73/19 73/25 74/6 74/10 74/14 74/22 76/9 76/13 76/18 76/23 82/6 84/2 95/21 97/12 101/10 104/14 108/13 113/21 113/21 120/21 126/7 131/2 132/6 132/10 133/8 133/12 135/22 138/18 140/10 140/14 140/23 141/18
**outgoing [1]** 51/11
**outlier [4]** 104/16 112/3 112/3 120/22
**outlook.com [1]** 2/19
**outside [1]** 130/24
**outskirts [2]** 23/20 101/10
**over [20]** 12/1 21/9 22/7 22/7 26/22 26/22 99/4 103/19 104/21 107/3 111/2 111/9 111/19 113/1 113/1 113/1 127/12 130/7 136/7 140/2
**overcome [1]** 103/21
**overlap [1]** 77/15
**overt [6]** 48/4 48/6 48/21 118/13 118/23 119/2
**overthrow [2]** 11/22 60/20
**owe [1]** 129/21
**own [12]** 37/2 58/2 58/17 75/22 94/9 96/18 98/7 104/9 114/16 115/19 117/15 119/21

**P**
**P.A [1]** 2/3
**p.m [7]** 1/6 45/12 50/21 51/20 63/24 63/24 141/24
**PA [2]** 2/9 3/15
**package [1]** 130/2
**page [3]** 24/5 90/11 109/24

121/3
**pale [2]** 61/5 114/13
**panel [4]** 106/6 112/14 112/15 124/5
**papers [1]** 98/16
**paragraph [7]** 7/19 25/18 53/11 53/25 97/4 97/11 97/11
**paragraphs [2]** 24/6 24/9 24/13 30/17
**paralegal [1]** 130/5
**parallel [2]** 121/13 123/6
**paraphrase [1]** 65/18
**Park [1]** 2/13
**parlance [1]** 10/9
**parrot [2]** 89/13 96/24
**parroted [1]** 89/8
**parroting [1]** 89/11
**parse [2]** 21/3 112/23
**part [12]** 12/1 21/11 31/23 44/23 45/8 68/24 68/25 74/17 74/21 85/6 105/9 107/19
**particular [24]** 9/14 9/20 12/8 26/11 26/13 32/15 33/19 56/2 58/18 58/22 59/20 60/13 67/1 86/21 87/22 88/14 90/6 91/4 92/19 96/22 116/7 116/25 117/10 117/12
**particularly [3]** 21/12 104/7 115/10
**particulars [11]** 26/2 26/3 26/7 28/3 54/4 54/7 86/15 87/11 87/25 97/25 98/10
**partly [1]** 60/18
**parts [1]** 77/23
**party [1]** 92/24
**party's [1]** 36/15
**pass [2]** 77/4 119/5
**passed [6]** 18/20 73/23 74/15 74/17 74/20 74/23
**passing [1]** 16/11
**past [1]** 68/12
**pay [1]** 132/25
**Peed [5]** 4/7 4/8 6/2 31/21 35/16
**Peed's [1]** 44/15
**Pelosi's [1]** 38/3
**penal [1]** 79/7
**Pence [1]** 50/3
**pending [1]** 96/4
**Pennsylvania [1]** 2/17
**people [41]** 12/6 13/12 19/7 38/1 40/22 42/15 58/17 60/11 71/16 72/14 72/15 100/13 102/6 102/19 103/18 104/3 104/17 107/3 110/19 110/20 110/21 111/9 111/24 112/1 112/15 113/17 114/4 115/9 115/24 116/4 116/9 116/15 116/25

122/21 123/7 123/18 124/19 132/25
**people's [1]** 116/10
**percent [12]** 83/24 102/19 104/22 106/7 106/7 111/19 112/3 114/20 115/24 116/3 116/20 117/17
**perfectly [1]** 59/17
**perhaps [4]** 24/2 30/24 34/3 37/2 44/18 85/4 103/23 108/9 110/15 115/5 116/10 132/11 134/2 137/19
**periods [1]** 25/11
**perplexed [1]** 102/2
**person [31]** 6/5 8/19 14/9 20/11 29/21 31/25 42/5 45/14 50/17 50/20 50/22 50/24 51/3 51/5 51/13 56/2 70/10 70/18 70/20 70/25 71/3 71/4 71/5 71/9 71/15 91/1 91/25 92/1 93/24 129/14 139/16
**personal [3]** 110/14 125/10 125/10
**personally [2]** 102/20 112/16 117/18
**personnel [1]** 74/8
**persons [1]** 80/16
**perspective [6]** 67/23 102/21 103/5 120/7 129/7 137/11
**petit [2]** 34/10 35/5
**Philadelphia [1]** 3/15
**phillip [3]** 4/2 4/6 5/16
**phone [10]** 87/3 91/9 97/19 97/20 129/21 129/24 132/3 133/14 133/15 134/12
**phones [2]** 86/4 89/20
**phrase [11]** 10/3 40/15 41/23 42/20 58/3 60/5 71/9 72/25 76/24 78/14 82/11
**phrases [4]** 42/14 77/9 77/10 78/22
**physical [1]** 123/22
**physically [1]** 70/1
**pick [2]** 108/16 134/12
**picked [2]** 32/19 131/3
**place [24]** 15/10 69/20 69/23 69/23 69/23 70/2 70/11 71/6 71/10 71/18 72/3 72/5 72/13 72/19 72/24 73/9 73/10 75/4 77/1 80/17 83/17 101/11 123/21 129/8
**places [5]** 70/5 79/18 79/18 113/17 115/5
**plain [16]** 9/4 11/19 12/10 14/19 14/20 14/21 19/20 20/25 21/5 28/16 48/24 54/21 54/24 61/12 62/21 72/6
**Plaintiff [1]** 1/4

**plano [5]** 63/18 63/19 121/10 122/17 132/3
**planned [1]** 44/4
**plausible [5]** 62/9 62/10 62/22 63/6 107/12
**play [1]** 52/18
**played [1]** 121/25
**playing [1]** 44/23 55/3
**pleading [2]** 114/10 114/11
**please [9]** 5/4 7/7 58/12 64/2 64/7 82/18 85/21 99/4 141/22
**plenty [3]** 79/6 103/17 103/18
**point [45]** 11/1 11/18 14/5 14/7 22/2 29/13 30/9 36/12 36/25 37/2 39/5 40/8 42/17 55/17 58/24 59/16 59/22 64/23 65/11 67/3 68/17 68/20 69/17 74/14 74/22 76/9 87/6 89/12 90/3 90/20 94/20 99/5 99/6 99/17 100/20 101/6 103/5 105/12 107/4 107/7 107/9 110/1 113/12 113/24 122/24
**pointed [14]** 15/10 38/21 45/5 48/4 54/17 55/8 55/9 68/1 76/9 76/13 76/23 82/6 95/21 101/10
**points [7]** 16/15 16/16 19/3 48/4 58/13 76/10 104/14
**police [8]** 37/16 37/18 37/20 38/3 102/13 102/25 103/2 114/10
**police's [1]** 102/22
**politicians [1]** 110/21
**pollants [1]** 114/20
**pollination [1]** 15/23
**polling [12]** 114/9 114/13 114/13 114/16 114/24 116/17 116/20 116/22 117/15 117/19 118/4 119/22
**polls [1]** 114/11
**portion [2]** 74/20 92/25
**posited [1]** 86/13
**position [18]** 13/17 13/21 13/23 37/15 43/6 44/13 55/11 55/25 56/15 57/2 58/8 71/2 76/19 97/16 97/21 116/12 121/12 121/16
**posse [1]** 37/24
**possessing [1]** 23/22
**possibilities [1]** 94/10
**possibility [3]** 93/14 93/17 94/6
**possible [1]** 8/22
**possibly [1]** 49/5
**posted [2]** 22/8 138/7
**Postmasters [1]** 74/8

**P**

**posture** [1] 38/13
**potential** [5] 73/7 83/9 83/14 115/8 134/5
**potentially** [1] 101/18
**power** [16] 15/16 15/16 15/23 16/1 16/2 18/4 18/7 18/11 39/12 49/17 51/6 51/7 51/10 51/13 57/12 120/25
**PowerPoint** [1] 98/2
**powers** [5] 9/16 9/22 10/2 15/24 19/13
**practical** [4] 35/2 105/16 113/20 113/23
**practically** [2] 73/12 83/18
**practiced** [1] 111/8
**pre** [4] 104/20 112/2 115/21 116/1
**pre-judgment** [4] 104/20 112/2 115/21 116/1
**precatory** [2] 16/21 17/1
**precedent** [5] 8/13 18/19 35/25 65/15 108/19
**preceding** [2] 91/7 97/10
**precious** [1] 24/10
**precise** [2] 22/16 51/17
**precisely** [2] 24/15 26/8
**preclude** [1] 136/12
**prefer** [1] 112/12
**prejudice** [30] 33/9 34/16 90/9 90/23 92/12 92/16 92/17 92/21 92/22 92/24 94/20 95/16 96/13 99/16 100/4 102/18 105/7 106/21 107/8 107/18 107/22 107/23 108/13 109/1 112/11 113/12 120/12 122/7 125/25 126/3
**prejudicial** [6] 94/16 99/13 104/19 108/24 113/11 126/7
**preliminarily** [1] 6/16
**preliminary** [1] 6/25
**premise** [1] 9/10
**prepare** [2] 98/7 122/17
**prepared** [4] 53/16 53/23 54/1 55/5
**preparing** [1] 130/8
**prescribed** [1] 11/5
**prescriptive** [2] 66/6 67/19
**present** [7] 52/6 53/24 64/24 79/16 85/19 96/6 98/5
**presentation** [3] 52/9 93/3 98/2
**presentations** [1] 127/12
**presented** [6] 20/23 35/19 86/19 86/21 98/20 115/1
**presenting** [1] 95/2
**preserve** [1] 81/11
**preserved** [1] 87/10
**President** [47] 8/21 8/24 10/14 10/15 10/18 11/10 11/11 12/17 12/19 13/3 13/9 14/25 16/20 16/22 16/23 17/4 18/7 18/8 36/15 36/18 36/24 37/5 37/6 37/8 37/9 37/23 45/9 45/12 45/16 45/19 48/14 48/15 49/7 49/9 49/24 49/25 50/3 50/4 50/11 50/17 50/18 50/19 50/21 50/24 51/19 57/11 73/18
**President Trump** [2] 49/9 50/11
**President Trump's** [2] 49/7 51/19
**President's** [7] 8/21 12/21 43/21 46/2 46/3 46/10 84/17
**Presidential** [5] 39/12 51/10 57/12 73/13 73/19
**presiding** [1] 5/3
**Presumably** [1] 119/6
**presume** [2] 86/25 86/25
**presumed** [5] 65/16 84/13 106/21 107/18 107/22
**presumption** [2] 69/11 120/12
**presupposes** [3] 73/5 82/21 82/22
**pretty** [1] 85/24
**Prettyman** [1] 4/14
**prevail** [1] 62/15
**prevent** [16] 33/23 45/24 46/8 46/16 46/25 47/14 47/24 48/7 49/6 49/23 50/7 52/2 53/15 55/20 56/24 133/6
**prevented** [2] 25/17 51/14
**primary** [1] 87/15
**principle** [2] 67/14 67/17
**principles** [1] 21/19
**prior** [3] 32/11 134/17 135/21
**Prius** [1] 84/6
**private** [6] 13/13 35/22 40/21 42/8 42/16 42/23
**probable** [4] 23/4 34/1 98/4 105/9
**probably** [3] 108/10 134/16 135/20
**probing** [1] 126/11
**problem** [9] 29/17 29/18 32/13 113/7 119/23 130/1 130/16
**procedural** [4] 38/13 44/15 44/16 113/7
**Procedure** [2] 89/15 101/8
**procedures** [1] 17/4
**proceed** [1] 6/15
**proceeding** [7] 35/25 36/6 61/7 79/25 80/2 97/8 136/9
**proceedings** [6] 1/9 4/16 6/5 121/22 141/24 142/4
**process** [12] 16/22 17/24 34/8 34/19 35/9 45/22 57/9 114/15 117/3 135/23 137/20 138/19
**processes** [2] 17/4 115/14
**proclamation** [2] 43/20 43/21
**produced** [1] 4/17
**producers** [2] 42/11 42/11
**productive** [1] 141/18
**proffer** [1] 47/21
**profile** [1] 104/7
**profoundly** [3] 103/15 125/4 125/6
**prohibits** [2] 83/21 88/2
**prolong** [3] 49/7 49/14 51/19
**prompted** [1] 96/5
**prong** [1] 40/11
**prongs** [2] 40/11 43/5
**proof** [8] 28/11 56/1 79/16 83/24 91/1 91/3 95/1 106/11
**proper** [12] 33/25 34/23 52/24 98/10 101/9 101/15 101/18 113/4 113/18 118/9 118/9 123/3
**properly** [1] 119/16
**propose** [1] 131/18
**proposes** [1] 131/24
**proposition** [5] 17/10 34/22 42/25 43/14 81/1
**prosecute** [1] 58/19
**prosecution** [5] 88/9 88/25 108/11 109/20 110/3
**prosecutions** [2] 104/7 117/7
**prosecutor** [1] 85/4
**prosecutors** [1] 59/16
**protect** [2] 67/20 126/25
**protected** [2] 60/16 60/19
**protective** [1] 66/14
**protects** [1] 113/9
**protestations** [1] 105/8
**prove** [5] 28/16 46/15 55/14 88/22 89/2
**proven** [1] 46/14
**proves** [1] 88/23
**provide** [4] 40/23 79/3 131/10 140/16
**provided** [4] 14/23 78/2 97/25 115/18
**provides** [1] 28/13
**provision** [4] 7/25 15/7 15/12 36/18
**provisionally** [1] 136/2
**provisions** [4] 15/15 25/9 53/21 54/24
**psychological** [1] 105/12
**public** [5] 46/4 99/21 112/4 121/13 140/5
**pudding** [1] 106/11
**pulling** [1] 124/7
**pulls** [2] 124/5 124/14
**punish** [1] 67/6
**punished** [1] 96/21
**punishing** [1] 67/12
**punishment** [2] 67/5 67/9
**Punta** [1] 3/19
**purely** [1] 90/18
**purpose** [7] 18/16 19/5 25/20 33/23 49/23 74/12 93/10
**purposes** [7] 18/11 35/3 39/3 51/16 64/19 66/17 91/22
**pursuant** [1] 85/22
**pushed** [1] 73/25
**put** [10] 11/23 28/15 30/15 41/14 60/20 75/1 80/7 111/15 126/15 129/7
**putting** [2] 52/13 124/18
**PUTZI** [1] 2/3

**Q**

**QRF** [2] 101/11 119/5
**qualifications** [1] 58/1
**qualified** [5] 105/24 105/24 105/25 106/1 106/1
**qualify** [1] 54/25
**quasi** [2] 8/10 18/25
**quasi-executive** [2] 8/10 18/25
**question** [57] 9/18 10/6 13/15 14/18 15/3 16/25 18/3 18/6 18/10 18/14 19/10 27/13 32/12 36/13 37/13 39/24 44/7 46/13 46/17 46/20 47/21 48/1 52/13 53/17 53/24 54/2 57/6 58/5 58/18 58/22 60/7 66/5 66/25 70/16 79/13 86/13 86/20 88/3 88/7 88/11 93/12 101/16 101/25 104/21 105/8 108/4 109/2 115/7 116/8 118/7 121/6 123/5 126/5 133/25 134/8 136/18 138/18
**questioning** [1] 104/21
**questionnaire** [5] 117/25 118/1 120/1 125/18 126/10
**questions** [12] 19/23 64/13 64/14 65/6 75/19 85/14 98/15 104/18 115/21 115/25 116/1 118/5
**quick** [1] 37/12
**quite** [6] 28/18 30/2 60/6 62/22 92/9 117/7
**quote** [2] 90/8 104/25
**quoting** [1] 55/19

**R**

**raise** [4] 6/17 6/19 127/15 128/11
**raised** [2] 102/18 122/7
**Rakoczy** [15] 1/13 5/14 95/12 98/17 114/23 118/6 122/10 126/6 127/13 129/18 131/6 131/13 131/24 132/15 133/15
**Rakoczy's** [1] 125/16
**ramps** [1] 13/7
**random** [1] 71/4
**rare** [1] 29/4
**rarely** [1] 62/5
**rate** [1] 115/24
**rather** [1] 11/9 43/3
**rationale** [1] 66/15
**re** [2] 87/19 122/7
**re-entry** [1] 87/19
**re-raised** [1] 122/7
**reach** [8] 10/17 10/18 10/20 61/15 61/16 132/10 133/12 135/22
**reaching** [1] 15/14
**read** [8] 42/7 59/2 77/15 100/14 100/14 102/7 116/10 123/18
**reading** [15] 25/14 34/1 36/6 48/10 58/25 59/9 59/10 62/2 69/18 70/3 84/25
**ready** [3] 6/14 137/24
**Real** [1] 37/12
**reality** [5] 15/25 105/12
**really** [29] 11/7 36/7 57/12 57/13 57/20 66/25 76/14 81/3 81/15 81/17 89/10 94/9 100/8 103/2 103/11 104/24 110/4 110/23 111/11 113/8 114/13 123/8 123/12 123/23 128/18 129/6 136/18 140/3 140/24
**Realtime** [1] 4/13
**reason** [11] 17/7 19/5 32/7 33/13 35/6 70/19 89/24 90/7 92/18 113/24 120/15
**reasonable** [4] 23/3 62/14 81/6 101/23
**reasoning** [2] 35/6

**reasoning... [1]** 65/4
**reasons [4]** 75/17 79/6
90/22 120/8
**rebellious [1]** 36/18
**rebuttal [3]** 20/1 82/16
98/18
**recall [1]** 130/1
**receive [1]** 25/5
**received [3]** 115/11
130/3 130/8
**recently [2]** 102/14
135/2
**recess [2]** 63/23 63/24
**recitation [1]** 24/8
**recollection [1]** 136/25
**record [9]** 81/11 81/12
88/23 89/17 92/2 97/6
116/11 136/24 142/3
**recorded [1]** 4/16
**reducing [1]** 112/11
**redundancy [1]** 77/18
**refer [1]** 82/12
**reference [1]** 113/24
**referenced [1]** 43/11
**referencing [1]** 101/10
**refers [1]** 40/10
**Reffitt [2]** 115/18
115/23
**reflection [2]** 107/12
107/13
**refusal [3]** 88/3 88/8
88/11
**refused [2]** 13/25
36/24
**refuses [1]** 37/5
**refute [1]** 76/10
**regarding [4]** 16/2
30/10 105/19 113/12
**region [1]** 112/8
**Registered [1]** 4/12
**regular [1]** 130/6
**regularly [1]** 28/23
**regulations [1]** 54/25
**rejected [1]** 19/1
**relate [1]** 121/7
**related [2]** 53/21 64/9
**relation [4]** 61/7 91/6
101/12 102/12
**Relativity [3]** 140/8
140/10 141/2
**released [1]** 121/15
**relevant [5]** 25/8 30/8
31/2 52/20 114/2
**reliability [1]** 105/7
**relied [2]** 41/1 98/4
**relies [1]** 96/17
**relinquish [1]** 51/7
**relinquishing [1]** 51/6
**rely [3]** 68/16 94/17
116/11
**remainder [1]** 43/15
**remedy [14]** 26/10 30/2
30/4 31/10 31/12 32/25
33/10 34/15 34/23 39/5
47/3 52/3 52/4 86/9
**remember [8]** 16/17
53/11 65/25 97/18

134/7
**remiss [1]** 120/18
**remote [1]** 6/12
**remotely [5]** 5/20 5/22
6/2 6/7 130/18
**removal [1]** 82/7
**remove [2]** 7/5 20/15
**removed [1]** 113/15
**repealing [1]** 16/10
**repeat [1]** 21/3
**reply [4]** 36/12 99/17
99/21 120/20
**report [4]** 97/18 97/18
97/19 121/14
**reporter [6]** 4/12 4/12
4/13 4/13 63/15 106/5
**reporting [1]** 45/15
**reports [1]** 121/21
**reposes [1]** 73/18
**represent [1]** 125/20
**representation [2]**
6/22 136/12
**representatives [4]**
77/16 77/24 78/5 78/25
**represented [1]** 134/3
**representing [2]**
111/24 137/4
**request [2]** 90/6
141/14
**requested [1]** 93/21
**require [3]** 35/11 53/2
53/4
**required [5]** 25/5 45/17
48/21 48/22 110/7
**requirement [1]** 12/15
**requirements [2]** 30/6
89/14
**requires [6]** 9/4 26/8
28/11 45/19 57/6 88/22
**research [1]** 118/19
**residents [8]** 103/14
110/14 111/20 114/2
114/17 114/17 116/14
116/21
**resistance [3]** 55/22
59/3 59/3
**resists [1]** 59/9
**resolution [1]** 137/5
**resolvable [1]** 47/19
**resolve [1]** 132/22
**resource [1]** 140/9
**resource-constrained
[1]** 140/9
**respect [8]** 9/14 16/20
23/16 96/15 97/1 114/9
114/24 119/3
**respectfully [7]** 7/10
20/24 61/5 67/21 72/11
73/11 87/13
**respond [5]** 97/24
98/12 104/12 122/14
133/20
**responding [2]** 102/23
103/3
**response [5]** 57/16
104/18 112/1 113/5
125/16

**rest [1]** 22/3
**restricted [1]** 66/12
**result [1]** 60/14
**resume [2]** 63/19 63/20
**retain [1]** 51/4
**retort [1]** 107/11
**return [3]** 34/18 35/11
129/21
**returned [2]** 26/15
30/10
**review [2]** 60/2 135/1
**RHODES [11]** 1/6 4/2
5/8 5/16 6/4 6/19
127/24 128/11 128/22
130/4 132/18
**Rigby [1]** 99/22
**right [100]** 12/22 13/13
15/16 16/20 16/24
17/15 18/5 20/7 21/15
22/24 23/21 27/13
28/21 29/5 30/6 31/13
31/16 31/17 35/2 35/15
36/8 37/12 38/5 38/8
39/2 41/21 43/8 44/10
45/21 45/23 47/3 47/10
48/13 53/12 53/20 54/9
55/4 58/10 63/9 64/3
64/5 64/22 65/2 67/8
67/13 71/16 74/19
75/15 78/13 78/17
80/23 81/14 81/17
90/4 91/2 91/23 92/3
93/13 94/7 94/8 98/22
100/16 103/21 106/11
108/14 109/6 109/11
109/16 113/11 114/7
114/24 115/6 119/8
122/5 123/13 124/3
127/9 128/8 133/11
134/19 135/3 135/7
137/2 137/7 137/8
137/9 138/6 138/12
139/2 139/7 139/8
140/16 141/10 141/17
141/17 141/19
**RIOS [1]** 3/18
**rise [3]** 5/2 63/22 63/25
**rises [1]** 81/19
**risk [4]** 95/17 96/13
99/16 116/23
**Ritchie [1]** 2/3
**river [1]** 103/16
**RMR [2]** 142/2 142/8
**Road [1]** 2/13
**robbed [1]** 91/3
**Roberto [2]** 3/7 5/11
**Robertson [2]** 115/19
116/2
**robust [1]** 126/10
**role [2]** 12/21 121/25
**rolling [1]** 139/8
**root [1]** 126/7
**rooted [1]** 11/9
**roughly [1]** 114/19
**route [1]** 86/15
**routinely [1]** 91/20

**rule [25]** 6/14 20/22
21/4 24/21 27/11 28/6
30/6 33/3 38/14 46/18
48/23 48/23 54/6 55/12
62/12 62/17 62/20 80/4
85/23 88/15 89/14
89/14 92/23 101/8
101/8
**Rule 12 [11]** 6/14 27/11
38/14 46/18 48/23 54/6
55/12 85/23 88/15
89/14 101/8
**ruled [1]** 80/3
**rules [5]** 44/15 44/16
89/15 101/7 101/7
**ruling [1]** 52/17
**run [6]** 73/8 74/4 74/10
92/6 92/8 92/10
**Russell [12]** 86/18
87/14 87/17 87/18
87/21 87/22 87/24
88/10 88/19 89/21
96/16 96/17

**S**

**said [41]** 16/9 17/23
18/12 18/23 31/22
39/23 45/1 46/24 61/21
67/11 68/7 69/1 69/7
71/15 73/6 76/11 78/3
84/22 88/13 102/1
103/25 104/10 104/17
104/21 104/23 105/21
106/16 106/22 108/7
108/12 110/20 114/20
114/25 116/21 121/1
125/4 126/6 128/20
130/6 132/2 134/22
**same [43]** 9/12 13/9
14/18 17/6 30/17 30/22
35/3 39/24 46/20 65/5
72/2 72/11 72/17 72/19
72/19 79/11 80/4 80/22
86/12 89/7 93/8 97/2
100/14 100/15 102/5
102/6 106/8 109/20
109/24 110/10 110/12
112/1 117/4 120/1
120/5 120/5 123/17
124/5 125/17 126/6
126/8 126/24 134/9
**satisfy [3]** 13/1 80/19
88/19
**saw [5]** 53/7 54/3 54/5
85/11 124/22
**say [47]** 11/14 15/8
17/20 21/20 21/20
27/19 29/6 29/23 32/22
39/18 41/11 46/3 46/4
46/24 48/15 51/23 52/1
56/22 59/14 61/13
69/20 71/20 72/10 80/6
80/8 83/10 86/20 88/17
91/8 91/11 92/23 93/23
104/8 106/14 107/20
107/21 110/21 111/3
111/17 116/9 116/11

118/12 118/16
121/17 126/22 127/23
**saying [5]** 50/10
51/15 58/20 62/13 63/3
89/22 106/12 110/2
111/15 112/21 113/5
116/1 123/2 124/9
124/15
**says [20]** 25/2 25/19
25/24 30/22 30/23 41/4
41/8 43/4 46/1 55/18
61/8 67/4 69/22 72/9
77/11 77/17 87/16
87/24 88/6 93/22
**scale [1]** 117/7
**scenario [1]** 36/14
**scheduled [2]** 6/13
121/10
**scheduling [1]** 121/14
**scope [2]** 119/22
123/10
**scott [3]** 3/17 3/20 5/25
**scrutiny [2]** 108/8
134/23
**seared [1]** 116/13
**seat [1]** 113/22
**seated [5]** 5/4 64/1
64/2
**seating [1]** 105/21
**second [15]** 21/11
25/19 47/20 63/14 68/3
68/4 70/7 72/22 74/20
77/5 78/4 79/8 80/20
81/3 92/20
**Secondly [2]** 83/15
84/4
**section [20]** 7/22 16/18
16/18 16/19 16/21
18/21 18/21 25/4 25/10
25/21 30/25 33/25
60/25 65/14 69/1 70/21
71/23 74/16 82/8 88/1
**Section 1 [2]** 16/18
16/19
**Section 1442 [1]** 82/8
**Section 192 [1]** 88/1
**sections [2]** 60/22
74/15
**sector [1]** 13/13
**secure [1]** 134/5
**security [3]** 122/21
130/24 130/25
**seditious [22]** 7/13
9/21 18/16 26/17 26/19
28/25 30/10 30/23 36/4
36/7 38/16 39/3 43/18
47/6 48/17 51/24 51/24
56/8 56/25 60/16 61/6
74/18
**seditious-conspiracy
[1]** 9/21
**seditiously [3]** 32/23
52/2 54/14
**see [26]** 20/11 29/4
29/5 31/5 91/20 100/17
113/7 113/8 121/20
123/21 129/11 129/13
132/10 133/16 134/12

see... [5] 138/20 139/11 139/14 139/15 141/20
seeing [4] 28/6 30/12 128/1 139/20
seek [2] 31/24 125/17
seeking [2] 90/7 100/21
seem [6] 14/24 15/11 41/10 102/8 106/12 123/23
seems [13] 28/2 30/2 39/5 42/4 46/9 47/18 48/9 50/14 66/9 68/4 87/11 92/24 103/12
seen [3] 87/7 105/2 125/15
selected [1] 46/11
selection [2] 126/17 126/19
selective [1] 44/2
self [5] 7/25 39/24 45/11 46/10 116/4
self-acknowledged [1] 116/4
self-executing [3] 39/24 45/11 46/10
self-operating [1] 7/25
selves [1] 98/7
Senate [2] 10/15 60/10
Senators [4] 60/11 77/16 77/25 78/25
send [3] 130/6 131/13 131/14
sending [1] 19/7
sense [27] 35/14 36/11 40/9 44/17 44/17 49/15 50/10 58/23 58/24 59/10 62/2 66/10 68/6 71/4 72/16 73/12 73/22 75/12 76/14 78/1 82/5 82/24 82/25 99/15 112/17 119/22 136/19
senses [1] 113/4
sent [3] 130/3 130/9 131/6
separate [4] 70/8 71/22 94/19 96/1
separated [2] 35/12 70/8
separately [2] 92/25 94/18
separation [6] 9/16 9/22 10/2 19/2 13/23 125/1 124/2
September [5] 121/11 138/11 138/12 138/15 140/18
serious [2] 99/16 102/11
seriously [1] 124/23
serve [2] 134/10 135/17
service [2] 37/24 44/2
session [4] 45/17 45/20 64/1 80/2
set [24] 8/23 9/8 12/18

25/13 25/14 30/22 54/2 60/15 64/11 66/6 96/20 128/6 129/18 129/24 130/9 130/23 133/10 133/16 138/10 138/15
sets [1] 23/10
setting [2] 22/12 25/19
seven [2] 112/8 124/14
seventh [4] 9/2 26/14 41/3 42/19
sever [2] 92/19 93/16
several [3] 35/20 91/6 114/12
severance [9] 85/20 90/2 90/4 90/7 90/20 93/18 93/20 94/3 95/14
severe [1] 112/11
severed [3] 90/15 94/18 134/18
sexual [1] 117/1
shake [1] 128/1
share [1] 99/15
she [4] 55/8 103/1 103/4 132/20
she's [4] 99/9 131/15 132/16 140/23
Sher [2] 1/14 5/15
Sheriff's [2] 129/23 130/25
Sherman [1] 84/6
Shipley [3] 3/7 3/8 5/22
short [1] 25/1
shot [2] 18/22 60/10
should [20] 9/20 31/24 41/9 54/23 56/14 62/11 62/15 63/7 65/20 66/15 77/15 86/20 90/15 92/5 99/25 103/3 119/18 120/12 121/5 122/6
shouldn't [2] 46/17 86/25
show [9] 8/11 49/12 92/22 93/13 93/23 96/3 97/19 102/25 120/11
showed [1] 97/14
shown [1] 102/19
shows [3] 69/15 108/15 117/15
side [3] 96/4 113/20 113/23
sign [1] 131/7
significance [1] 117/21
significant [5] 107/19 111/20 122/1 134/16 134/21
significantly [6] 60/19 64/12 95/17 95/18 100/2 112/19
silly [1] 58/19
similar [3] 57/25 79/25 89/10
simple [2] 125/7 141/1
simply [7] 34/24 36/10 46/1 46/5 49/20 53/3 112/14
simultaneously [1] 83/21

25/13 35/24 95/14 120/19 134/17 135/18 136/15 140/3
single [5] 56/18 57/4 57/4 89/8 115/12
sir [2] 6/20 133/20
sit [3] 75/21 132/3 132/11
sit-down [1] 132/11
site [1] 114/21
sitting [1] 130/25
situation [12] 11/4 12/8 26/13 44/23 45/7 49/7 72/4 75/6 75/9 96/11 106/10 122/9
six [1] 26/16
Sixth [6] 20/23 21/14 24/20 28/6 30/6 119/18
Sixth Amendment [6] 20/23 21/14 24/20 28/6 30/6 119/18
Skilling [5] 106/20 106/23 107/4 107/18 108/1
slides [1] 98/1
slightly [1] 106/10
small [1] 115/20
smaller [2] 12/10 116/2
Smith [1] 65/12
so [257]
So I think [7] 12/11 22/11 71/3 85/17 110/22 118/18 139/21
So I'm not sure [1] 13/14
so it's [4] 29/2 65/3 120/4 124/8
So there [1] 21/10
So these [1] 123/7
so this is [3] 20/22 73/18 95/25
so this lack [1] 31/8
so without [1] 86/7
So you [1] 110/10
soldiers [1] 74/11
solely [1] 68/16
Soller [1] 134/11
solve [4] 26/2 29/22 119/23 130/16
solved [2] 30/3 32/13
some [55] 9/6 11/14 15/18 17/16 24/6 27/25 30/24 32/10 33/13 34/4 34/4 34/4 34/14 36/17 36/25 37/2 37/25 40/9 42/3 48/7 56/4 57/6 61/25 62/11 66/10 77/23 83/3 87/17 91/7 91/17 91/23 96/7 98/5 106/4 111/20 114/10 114/12 115/1 116/18 119/3 124/19 124/20 124/23 124/23 124/24 124/24 127/19 131/17 131/25 132/22 136/19 137/19 139/10 140/12 140/16

14/2 44/3 44/11 51/5 59/9 84/13 135/18
somebody [1]
somebody's [1] 111/16
somehow [3] 43/4 110/24 136/12
someone [23] 7/15 8/24 9/5 12/9 12/15 14/13 14/14 14/14 37/16 41/5 58/19 58/21 59/7 59/23 69/19 71/24 71/24 128/14 131/12 131/14 131/17 135/20 137/8
someone's [1] 49/15
something [21] 11/9 22/7 30/2 34/9 67/19 70/1 75/3 82/22 82/23 89/5 92/14 93/13 94/5 98/11 105/13 117/2 122/17 129/18 131/16 132/17 134/6
sometimes [1] 94/11
somewhat [2] 59/17 59/18
somewhere [1] 138/23
soon [1] 133/12
sorry [12] 17/19 67/2 76/7 83/1 86/11 86/24 90/4 99/5 109/25 136/6 138/4 138/7
sort [39] 10/9 10/12 10/16 11/3 11/9 13/15 15/14 15/17 15/20 16/21 18/13 19/12 20/7 21/18 32/10 36/6 44/15 55/18 56/13 57/5 57/6 59/15 62/12 66/16 67/3 67/14 68/5 68/9 70/7 78/15 82/3 91/23 102/2 106/8 110/15 119/22 131/20 138/17 139/10
sound [1] 59/5
sounds [3] 23/24 59/7 91/8
sources [2] 79/9 123/17
space [3] 30/14 110/10 112/9
span [1] 25/15
speak [5] 54/21 78/8 100/16 134/20 136/7
Speaker [1] 38/3
speaking [7] 7/5 8/17 18/9 20/16 64/16 64/17 95/15
speaks [1] 16/19
specific [12] 6/24 22/16 26/19 44/11 46/3 65/17 87/7 97/22 127/14 128/10 128/15 140/20
specifically [10] 8/7 17/23 19/1 24/22 26/25 29/1 30/21 41/4 74/24 83/20
specificity [2] 31/8 86/3

specified [5] 87/3 88/8 88/10 89/4 89/6
specifies [1] 77/16
specify [10] 25/16 26/25 28/12 31/1 31/3 39/9 40/14 56/2 87/9 97/17
specifying [2] 86/7 88/13
spell [3] 26/5 26/8 64/25
spells [3] 12/20 12/22 13/3
spend [1] 139/22
spoke [1] 136/25
spoken [5] 67/9 135/1 135/9 135/11 135/19
spouses [1] 124/24
spread [2] 21/9 133/8
Sr [1] 2/2
staff [1] 129/17
stage [12] 34/9 34/10 35/6 35/14 38/14 38/17 46/5 46/18 47/19 55/12 80/8 98/4
stand [6] 20/4 35/8 42/24 53/12 75/25 103/4
standard [4] 38/22 65/13 120/25 121/4
standing [3] 12/23 50/22 55/4
stands [5] 34/22 53/3 53/5 63/22 141/23
stanley [3] 2/12 2/15 5/17
start [4] 35/9 38/13 99/1 128/21
started [1] 103/8
state [11] 38/21 38/24 52/20 76/20 83/4 85/23 86/8 124/3 124/6 124/7 124/8
stated [2] 7/18 22/4
statement [4] 21/1 21/6 48/24 125/17
statements [3] 102/11 102/13 102/22
states [78] 1/1 1/3 1/10 5/7 8/24 10/14 16/23 16/23 17/2 18/7 18/8 29/1 35/25 37/17 40/13 40/16 41/7 43/6 48/14 49/25 50/1 50/4 50/18 50/24 51/23 55/21 55/22 57/1 59/4 65/14 65/20 66/22 67/6 68/25 69/6 69/12 69/19 69/22 70/4 70/10 70/24 71/1 71/11 72/25 73/15 73/16 74/17 74/25 75/2 77/2 77/9 77/17 77/23 77/25 78/5 78/8 78/11 78/16 78/19 78/20 78/24 79/1 79/17 80/5 80/10 80/12 80/15 82/10 82/12 83/18 84/12 84/24 85/3 85/7

states... [4] 85/12
87/15 88/2 112/3
stations [5] 72/5 72/7
72/14 72/15 102/5
status [2] 127/17 130/2
statute [86] 9/4 9/12
9/16 9/17 9/21 10/1
11/19 11/20 12/2 12/13
12/21 14/20 14/22 15/5
15/7 16/10 18/16 18/20
19/4 19/5 19/11 19/16
19/20 27/16 28/10
37/25 39/3 40/6 40/10
42/18 45/18 57/8 60/13
60/17 60/19 60/22
60/25 61/8 61/12 62/4
65/15 66/12 66/13
66/14 66/17 67/9 67/12
67/19 68/11 68/23
68/24 69/1 69/8 69/18
69/21 69/24 70/20
70/21 71/23 72/2 72/6
72/19 73/22 74/4 74/12
74/15 74/18 75/2 75/6
75/10 75/17 76/23 78/6
78/16 82/10 83/6 83/8
83/12 85/6 85/10 88/9
89/11 89/13 96/18
96/25 97/3
statute's [1] 14/6
statutes [10] 12/12
36/9 43/23 62/6 65/11
66/20 66/22 66/25 79/7
79/7
statutory [7] 10/11
13/1 14/23 15/7 60/12
62/21 78/10
stay [1] 123/8
staying [1] 127/21
stenography [1] 4/16
step [2] 22/14 24/2
steps [3] 46/5 50/22
137/16
STEWART [3] 1/6 4/2
5/8
stick [3] 101/2 131/1
131/2
still [15] 10/6 14/18
44/13 47/17 48/5 50/6
52/19 52/20 57/21 68/8
103/12 108/14 124/13
130/7 130/10
stood [1] 139/12
stop [1] 54/21
story [2] 119/23 135/5
straight [3] 62/21
73/13 73/19
straightforward [2]
85/24 141/6
strange [1] 83/22
street [6] 1/15 2/8 3/9
3/14 4/9 71/5
strength [1] 107/13
stretch [1] 76/25
stricken [2] 106/4
106/7
strict [1] 19/15

63/7 66/10
strong [2] 102/13
117/1
struck [2] 106/2 106/3
stuck [1] 84/4
SUAREZ [1] 3/18
subject [7] 88/7 88/7
88/8 88/12 88/13 89/23
98/23
subjective [1] 121/2
submissions [1]
128/19
submit [12] 19/19
65/13 69/14 81/9 81/12
95/20 98/15 112/11
112/20 113/18 115/13
123/4
submits [2] 76/5 82/6
submitted [2] 20/7
99/22
submitting [1] 125/5
subpoenaed [1]
122/19
subset [1] 12/10
subsets [1] 84/10
substantive [4] 91/1
91/17 91/23 95/23
successful [1] 49/14
such [5] 17/3 51/5
97/25 119/7 121/21
sufficiency [2] 23/25
39/1
sufficient [12] 23/11
24/19 26/6 28/10 28/15
29/7 34/18 41/20 46/15
53/6 56/21 120/11
suggest [7] 25/22
25/22 42/4 69/10 77/14
90/25 94/4
suggested [7] 15/13
32/22 34/24 110/16
120/11 124/12 131/15
suggesting [14] 11/5
13/5 54/10 62/11 63/5
72/23 90/18 90/19
94/23 111/13 111/13
111/19 112/9 132/16
suggestion [2] 9/15
44/9
suggests [3] 40/5
96/14 115/2
suing [1] 111/17
suit [1] 35/3
Suite [7] 2/4 2/17 3/9
3/14 3/19 4/4 4/9
summarizes [1] 99/23
super [1] 89/7
Superior [1] 124/6
Superior Court [1]
124/6
superseding [1] 26/16
supervisory [1] 120/25
supervisory-power [1]
120/25
supplanted [1] 89/17
supplies [1] 40/24
support [1] 47/23

supported [1] 49/12
supporting [1] 49/12
suppose [1] 31/21
supposed [8] 12/21
12/22 12/23 14/19
21/19 21/20 67/4 131/9
Supreme [30] 8/12
8/13 11/14 12/14 14/6
18/12 19/14 42/18 45/1
57/23 58/3 65/15 66/10
67/8 67/17 67/22 68/3
78/3 79/2 79/5 79/9
84/20 87/24 88/12
104/23 105/3 106/16
107/15 107/17 125/14
Supreme Court [29]
8/12 8/13 11/14 12/14
14/6 18/12 19/18 42/18
45/1 57/23 58/3 65/15
66/10 67/8 67/17 68/3
78/3 79/2 79/5 79/9
84/20 87/24 88/12
104/23 105/3 106/16
107/15 107/17 125/14
Supreme Court's [1]
67/22
sure [27] 13/14 14/11
14/12 27/8 48/19 54/16
54/22 55/16 64/17
70/13 73/16 79/3 92/5
93/18 94/8 101/17
101/22 103/9 104/13
109/23 111/7 118/22
127/18 127/21 133/21
136/16 137/5
surely [1] 27/23
surprised [1] 139/6
surrounding [2]
124/22 133/23
survey [3] 102/19
104/9 104/14
surveyed [1] 104/11
survive [1] 48/25
survives [1] 79/14
suspect [1] 92/11
swath [1] 76/18
switches [1] 12/1
sympathizers [1]
74/10
synonymous [1] 78/23
syntax [1] 75/11
system [2] 36/9 56/18

T

tablets [1] 140/3
take [15] 6/22 15/25
22/14 24/2 25/18 56/23
57/2 63/18 76/17 78/9
83/7 128/8 130/19
131/13 134/24
taken [4] 35/4 105/22
112/20 134/13
takes [1] 123/20
talk [9] 27/22 45/10
49/3 92/11 94/8 108/23
132/12 132/24 134/4
talked [6] 16/6 34/6
56/13 61/17 106/24

talking [14] 16/2 17/22
29/3 40/7 42/10 43/5
56/21 57/24 66/1 90/9
90/11 94/10 106/20
123/24
talks [4] 12/2 12/14
59/2 61/4
tampering [1] 90/15
tank [1] 84/6
target [3] 11/21 12/2
12/7
targeted [5] 12/9 12/15
56/9 56/10 58/21
task [1] 75/14
technically [2] 65/3
113/11
technologically [1]
97/23
telephone [2] 86/2
97/13
telephones [1] 122/19
television [1] 102/5
tell [4] 24/15 71/14
110/24 130/18
telling [1] 33/10
ten [1] 114/22
tentatively [1] 137/24
tenure [1] 49/8
term [40] 9/23 10/4
10/22 11/9 11/20 13/1
14/20 14/23 28/1 44/15
46/2 46/3 46/6 46/7
48/15 48/16 49/15
51/19 53/10 59/10 60/6
65/14 65/20 66/22 68/9
68/14 68/15 69/11
69/18 69/21 75/2 77/24
78/15 80/11 83/4 84/4
84/15 89/17 115/8
116/1
terms [26] 9/11 9/12
9/13 15/4 38/25 43/11
52/8 54/21 54/24 67/9
69/8 71/19 73/12 73/13
77/18 77/21 90/21 91/7
81/21 86/4 89/8 91/10
92/14 94/15 95/10
98/11 107/13 107/24
107/25 108/19 111/4
116/23 117/13 117/23
119/12 121/3 121/4
123/11 126/20 127/2
127/2 127/5 127/6
127/6 127/20 129/25
130/6 131/21 131/25
132/25 133/7 135/15
136/8 137/8 138/12
140/4 140/21
their [23] 6/9 11/16
22/22 50/23 73/3 73/4
73/25 74/3 74/10 76/16
76/17 76/19 76/19
76/20 82/20 96/18
101/20 110/8 111/11
113/10 116/17 126/25
140/3
thelinderfirm.com [1]
4/6
them [30] 14/16 17/18

thank [44] 7/6 20/5
20/10 20/17 20/18
31/16 32/3 38/5 38/7
58/9 58/10 63/9 63/11
63/21 65/7 65/8 75/24
76/1 82/14 82/15 82/17
85/15 85/16 90/1 95/10
95/11 98/17 98/21 99/9
114/6 122/10 122/11
127/8 127/10 127/11
128/18 133/20 135/24
136/6 137/22 139/18
141/8 141/19 141/22
thank you [34] 7/6
20/5 20/10 20/18 31/16
32/3 38/5 38/7 58/9
58/10 63/9 65/7 65/8
75/24 76/1 82/14 82/15
82/17 85/15 90/1 95/10
95/11 98/17 98/21 99/9
114/6 122/10 122/11
127/10 135/24 136/6
137/22 141/8 141/22
thanked [1] 102/22
that [909]
that's [104] 7/15 10/23
11/9 11/17 13/8 13/9
13/15 13/21 16/25 17/9
17/17 17/18 18/23
18/23 18/24 22/16
22/17 25/8 25/8 26/1
27/13 29/15 29/25 30/2
30/5 32/24 32/25 39/5
39/6 39/10 39/22 45/18
45/21 45/23 46/6 46/17
47/17 47/25 50/12
56/11 58/2 58/5 58/23
58/24 59/21 60/25 61/5
61/7 62/5 62/17 62/18
63/17 65/22 66/16
66/21 67/19 68/17 70/6
70/16 71/12 73/19
77/18 79/22 80/21 81/7
81/21 86/4 89/8 91/10
92/14 94/15 95/10
98/11 107/13 107/24
107/25 108/19 111/4
116/23 117/13 117/23
119/12 121/3 121/4
123/11 126/20 127/2
127/2 127/5 127/6
127/6 127/20 129/25
130/6 131/21 131/25
132/25 133/7 135/15
136/8 137/8 138/12
140/4 140/21

them... [28] 17/18 22/6
32/16 32/17 34/19
36/10 36/11 36/11 40/2
54/5 59/9 79/2 91/17
99/20 104/5 107/2
114/11 129/21 131/21
132/20 132/21 133/5
133/8 134/4 134/25
135/20 140/20 141/1
themselves [8] 40/1
74/6 74/24 82/12 83/23
107/25 111/23 131/4
then [66] 12/1 14/1
16/4 22/13 26/1 28/12
29/6 30/23 31/24 32/2
32/17 32/19 33/20
34/18 34/19 35/8 38/2
39/7 40/19 41/19 42/1
42/19 44/7 45/23 47/2
50/12 50/17 50/21 51/8
52/3 52/10 52/10 59/8
60/12 63/7 67/24 75/11
77/13 77/16 80/6 80/8
80/12 88/11 88/12
88/16 89/22 90/6 94/24
98/25 104/20 105/8
108/14 118/2 118/3
121/15 121/16 130/12
130/19 131/23 133/17
134/12 136/4 137/3
137/15 141/10 141/21
theoretical [3] 93/14
94/6 94/10
theoretically [1] 8/6
theory [5] 49/19 52/6
116/18 118/16 132/16
there [105] 6/21 7/8
7/18 9/1 14/2 14/8
14/13 15/4 15/14 15/16
15/21 15/22 21/7 21/8
21/8 21/10 23/13 23/14
24/5 24/8 25/7 25/14
25/22 26/15 28/11
30/23 32/4 32/8 34/8
34/11 36/17 36/25
37/22 44/3 45/4 48/17
50/6 50/11 51/4 53/9
53/12 55/21 68/2 68/7
68/9 69/5 70/6 71/22
72/1 78/9 79/8 82/4
87/19 88/22 93/3 94/16
98/1 99/15 99/25
101/24 103/17 103/18
103/19 105/18 105/23
106/5 106/11 106/22
107/1 107/23 108/10
108/15 110/2 112/8
112/15 113/5 116/16
118/18 118/20 119/1
119/2 119/11 119/11
120/6 120/7 120/12
120/15 121/13 124/24
124/24 126/17 128/14
128/22 130/22 131/14
131/16 132/21 135/15
136/4 136/15 137/12
137/13 138/21 140/12

there's [37] 6/25 9/7
12/13 13/18 15/18
15/23 17/10 22/1 22/6
23/1 32/15 32/19 37/2
39/14 43/23 45/13 53/6
55/3 56/16 67/9 67/21
67/21 69/5 69/13 69/14
70/8 92/15 101/7
101/23 102/16 105/4
109/13 110/2 113/11
113/20 113/23 122/25
therefore [1] 67/4
therein [1] 97/15
thereof [1] 78/12
these [43] 6/5 21/14
21/23 22/4 28/16 29/24
29/24 31/24 39/24
41/16 42/7 42/24 44/9
44/13 44/14 44/20
53/14 55/10 59/19
65/10 69/7 73/12 77/20
90/13 92/12 92/13
96/12 111/14 112/22
113/17 115/10 115/21
117/16 117/23 117/25
121/22 122/19 123/7
126/12 134/24 139/6
140/10 140/17
they [178]
they'll [2] 82/1 131/13
they're [26] 7/19 7/20
16/2 17/8 19/7 23/19
30/17 31/4 37/20 38/3
54/13 54/20 54/20
61/14 70/7 72/17 73/3
78/2 83/10 83/11
106/14 111/17 120/2
131/4 140/11 140/11
they've [10] 23/4 26/18
28/1 38/15 58/15 87/7
91/18 129/23 136/20
140/2
thing [12] 11/14 13/9
79/12 80/4 89/1 93/2
94/11 102/7 113/25
116/24 120/5 140/7
things [19] 7/8 15/21
22/7 28/19 89/19 89/19
91/2 100/14 110/11
126/6 126/8 132/13
134/24 136/16 137/21
139/6 139/12 139/21
141/3
think [128] 9/1 10/21
11/1 12/10 12/11 13/12
16/12 17/21 17/25 19/6
19/24 21/18 22/11
22/24 23/14 23/16
24/16 26/4 28/1 28/4
30/8 31/4 31/5 31/10
32/10 32/14 33/6 33/8
34/15 35/2 35/14 35/18
35/23 36/6 37/16 40/8
46/20 52/12 52/14
54/17 54/25 55/4 58/3
58/7 58/19 58/23 59/10
60/10 60/11 61/5 62/2

earlier [something] 62/[...] 62/[...]
64/11 65/7 65/18 65/22
66/3 66/19 66/24 67/16
67/20 67/21 68/18
68/20 68/21 70/3 70/20
71/3 75/23 77/20 80/13
80/13 80/14 81/3 83/12
85/9 85/17 85/24 86/17
87/19 92/20 93/12
94/23 98/22 98/25
99/25 100/1 102/4
104/2 104/22 105/23
110/22 112/6 113/14
114/23 115/23 116/2
117/9 118/11 118/13
118/14 118/18 119/19
119/21 120/13 121/4
121/18 122/4 128/20
130/17 131/4 131/16
132/2 133/2 134/8
134/10 135/9 135/11
136/14 136/18 137/16
139/21 140/8 140/23
141/4
thinking [8] 29/19
29/20 66/16 74/7 82/3
83/9 136/19 137/19
thinks [1] 134/9
third [1] 114/1
this [235]
Thomas [3] 2/2 5/12
113/16
Thompson [4] 68/2
76/6 79/12 80/14
thoroughly [1] 17/21
those [83] 6/11 7/1
7/23 9/13 10/11 11/10
15/20 21/18 22/10
22/15 22/15 24/7 24/9
24/10 24/11 25/8 25/10
25/12 27/9 27/18 30/18
30/19 37/3 41/8 41/10
42/9 42/14 43/16 43/18
43/22 44/1 44/6 44/6
48/6 54/23 55/10 55/12
55/14 60/9 60/22 65/25
65/25 66/1 66/16 67/7
70/23 71/18 72/14 74/9
75/3 75/16 76/20 78/22
79/5 79/7 80/20 83/25
86/3 87/19 87/22 91/11
97/12 97/17 103/16
104/18 105/20 106/3
106/19 112/1 115/16
115/21 116/1 116/7
118/3 119/4 120/14
128/12 128/16 128/17
132/22 132/25 137/16
141/3
though [7] 20/25 23/13
30/4 31/11 36/16 81/9
141/7
thought [10] 21/21
24/25 27/19 47/16
61/21 61/23 92/2 121/1
135/18 140/15
threat [1] 87/21
three [33] 7/18 15/17

earlier [something] 62/[...] 62/[...]
29/24 32/13 33/19
33/24 34/2 34/12 34/17
39/18 51/25 53/13
71/19 74/4 94/15 94/16
106/8 107/5 107/6
108/1 112/3 112/25
123/15 128/12 128/16
130/7 132/19 132/20
133/9
three-count [1] 32/13
through [33] 17/21
21/4 22/3 23/4 23/9
24/13 30/18 37/1 37/2
40/3 41/12 52/14 53/19
82/3 85/17 85/18 91/12
93/7 104/1 108/13
114/15 115/6 119/5
120/4 129/23 130/24
132/12 136/16 137/16
137/20 139/20 141/7
141/14
throwing [1] 140/14
tie [2] 23/17 65/1
ties [1] 102/17
time [30] 8/12 10/17
14/22 19/17 25/11
25/15 26/18 26/20 30/1
30/9 31/22 46/2 46/3
58/16 79/24 91/15 92/7
93/9 109/20 110/10
110/13 118/3 120/16
122/16 129/3 132/7
134/25 136/16 137/9
138/25
times [3] 11/19 35/20
114/22
timing [1] 46/6
Timothy [1] 125/3
tip [3] 94/13 94/14
123/23
Title [7] 7/21 18/21
25/10 25/21 31/1 33/25
88/2
Title II [1] 88/2
Title III [1] 31/1
titled [1] 142/4
today [9] 42/2 130/7
130/9 130/23 132/5
133/17 138/17 139/22
141/18
together [7] 32/17
54/19 65/1 93/6 94/13
96/12 110/11
told [4] 26/22 100/25
103/4 137/11
tomorrow [2] 132/6
133/17
too [2] 108/16 133/15
took [3] 74/3 101/11
107/1
touch [2] 128/13
129/22
touches [1] 32/10
toward [1] 115/9
Towers [1] 2/4
town [2] 111/20 130/13
track [1] 127/21

traditional [1] 85/12
traditionally [1] 11/1
trafficking [1] 87/20
transcript [3] 1/9 4/16
142/3
transcription [1] 4/17
transcripts [1] 115/18
transfer [14] 39/12
51/10 51/13 57/12 99/1
100/9 100/21 108/15
108/8 109/10 109/18
109/18 110/17 123/13
translate [1] 54/24
translated [1] 14/8
transport [1] 113/3
treat [1] 94/22
treated [1] 92/5
treaties [1] 45/6
treaty [4] 15/16 16/1
16/2 16/4
trial [35] 22/6 39/4
41/14 41/15 46/15
47/22 49/19 52/8 53/14
54/2 56/23 56/24 61/20
79/15 80/8 80/25 90/14
90/15 90/25 92/25
92/25 93/9 95/20 96/2
97/8 98/5 98/7 109/13
116/7 121/14 121/15
123/20 127/18 138/11
138/15
trials [4] 96/1 106/19
107/5 134/18
tried [12] 49/5 59/23
78/21 93/6 93/8 94/13
94/18 96/12 97/22
105/18 120/3 129/4
trouble [1] 105/21
Troy [2] 1/14 5/14
true [5] 45/3 68/6 70/6
100/19 113/4
Trump [4] 49/9 50/11
76/6 79/12
Trump's [3] 48/15 49/7
51/19
trust [23] 69/20 70/1
70/3 70/4 70/11 71/6
71/10 71/18 72/3 72/5
72/13 72/24 73/9 73/10
73/14 73/18 75/4 77/1
79/18 79/18 80/17
83/17 83/17
truthful [1] 106/14
try [5] 24/3 50/7 61/16
118/9 120/9
trying [16] 14/2 27/6
43/24 44/3 52/18 52/22
54/20 54/20 57/15 59/8
59/20 59/25 61/14
80/24 119/13 129/18
turn [6] 7/1 31/17
37/12 76/2 99/4 133/22
turned [1] 60/12
two [31] 7/8 9/2 28/19
41/1 42/9 46/12 60/11
67/22 70/22 71/21
71/22 72/1 72/16 72/18
74/15 77/9 78/22 80/20

**T**

**two... [13]** 91/22 91/24 101/7 101/7 106/9 112/25 115/25 123/12 123/16 126/10 130/7 130/12 131/23
**TX [1]** 4/4
**type [11]** 8/11 9/6 35/25 37/25 73/17 75/10 95/16 96/11 131/2 131/12 138/17
**types [3]** 15/21 87/2 96/12
**typically [1]** 54/19

**U**

**U.S [10]** 1/15 41/2 41/3 41/4 41/7 54/24 59/4 105/5 130/19 132/4
**U.S.C [12]** 13/18 15/1 25/4 27/5 29/10 39/13 45/18 53/18 53/19 56/16 76/7 77/6
**ultimate [2]** 57/16 62/3
**ultimately [7]** 46/17 48/2 55/12 68/8 80/8 87/10 97/23
**unambiguous [4]** 65/19 68/23 69/13 69/14
**unambiguously [1]** 83/23
**unanimity [1]** 34/7
**unanimously [1]** 29/23
**unaware [1]** 104/4
**unbiased [1]** 105/22
**uncertainty [1]** 96/19
**unconnected [1]** 31/5
**undeniable [1]** 124/18
**under [47]** 7/12 8/20 12/24 13/10 14/19 14/25 19/15 20/22 27/11 28/6 33/6 35/8 37/20 37/21 38/1 38/3 48/23 48/23 54/5 57/25 58/2 64/24 65/15 65/16 69/1 70/20 71/10 72/6 72/25 73/23 73/24 77/2 78/10 82/7 83/18 84/11 87/18 88/9 88/14 96/23 97/1 107/5 107/6 110/9 114/16 119/17 120/14
**undercuts [1]** 116/22
**undergone [1]** 115/15
**undermines [1]** 68/5
**underpinning [1]** 18/18
**understand [24]** 12/4 12/6 19/12 22/19 28/4 30/9 31/11 48/6 48/9 48/17 50/9 50/13 52/22 57/15 58/7 84/15 97/17 114/4 126/21 128/22 129/12 129/13 133/7 134/21
**understanding [8]** 11/8 12/24 14/21 43/9 68/14 71/9 113/22

**understands [1]** 123/5
**understood [5]** 9/25 10/4 10/8 52/25 55/2
**undertaken [1]** 50/7
**unduly [1]** 111/1
**Union [1]** 74/1
**unique [7]** 11/4 31/9 44/22 77/24 95/5 124/4 129/8
**UNITED [74]** 1/1 1/3 1/10 5/7 8/24 10/14 16/23 16/23 17/2 18/7 18/8 37/17 40/13 40/16 41/7 43/6 48/14 49/25 50/1 50/4 50/18 50/24 55/21 55/22 57/1 59/4 65/14 65/20 66/22 67/6 68/25 69/6 69/12 69/19 69/22 70/4 70/10 70/24 71/1 71/11 72/25 73/15 73/16 74/17 74/25 75/2 77/2 77/9 77/17 77/23 77/25 78/5 78/8 78/11 78/16 78/19 78/20 78/24 79/1 79/17 80/5 80/10 80/12 80/15 82/10 82/12 83/18 84/12 84/24 85/3 85/7 85/12 87/15 88/2
**United States [67]** 8/24 10/14 16/23 16/23 17/2 18/7 18/8 37/17 40/13 40/16 41/7 43/6 48/14 49/25 50/1 50/4 50/18 50/24 55/21 55/22 57/1 59/4 65/14 65/20 66/22 67/6 68/25 69/6 69/12 69/19 69/22 70/4 70/10 70/24 71/1 71/11 72/25 73/16 74/17 74/25 75/2 77/2 77/9 77/17 77/23 77/25 78/5 78/8 78/11 78/16 78/19 78/20 78/24 79/1 79/17 80/5 80/10 80/15 82/10 82/12 83/18 84/24 85/3 85/7 85/12 87/15 88/2
**United States of [1]** 5/7
**unless [5]** 6/25 69/13 85/13 98/14 136/15
**unlike [3]** 87/21 96/16 111/1
**unread [1]** 104/6
**unreasonable [3]** 19/14 19/15 62/8
**unreliable [1]** 121/3
**unsee [2]** 105/1 125/15
**until [4]** 30/15 108/9 122/15 141/12
**unwittingly [4]** 105/11 105/11 106/17 108/24
**up [34]** 6/23 12/6 12/6 14/17 30/15 55/12 55/15 56/23 59/16 62/13 72/21 91/18

106/13 116/18 118/5 120/19 128/9 129/2 129/13 129/19 129/24 130/2 130/23 131/3 133/1 133/3 133/4 133/10 133/16 134/12 140/24
**uphold [2]** 8/13 108/25
**upon [10]** 14/24 32/10 36/18 37/3 37/9 96/17 98/4 115/19 123/20 128/13
**us [9]** 23/17 26/22 55/6 74/2 85/17 99/15 112/12 113/3 140/9
**usdoj.gov [2]** 1/17 1/18
**use [11]** 12/4 23/9 23/11 23/23 51/4 70/2 78/15 83/23 84/5 97/8 115/25
**used [16]** 9/11 9/23 28/1 37/24 40/12 42/14 53/10 58/3 65/15 66/20 66/21 68/15 68/18 68/24 70/19 71/3
**useful [1]** 140/19
**user [1]** 97/20
**uses [5]** 11/20 69/23 69/24 76/23 84/9
**using [5]** 10/22 41/23 82/11 87/14 91/11
**usually [1]** 33/16
**utmost [1]** 136/9

**V**

**vagueness [1]** 57/9
**Valeo [4]** 8/7 8/9 17/21 17/23
**valid [2]** 51/24 94/3
**Vallejo [7]** 4/7 5/13 6/3 6/6 31/19 32/15 118/16
**Vallejo's [1]** 32/9
**variety [1]** 90/22
**various [5]** 43/22 43/23 101/3 113/17 124/25
**vendor [1]** 141/4
**venire [1]** 108/1
**veniremen [1]** 105/6
**venue [24]** 98/25 99/19 100/21 101/8 101/9 101/13 101/18 101/24 108/15 109/18 113/4 113/18 118/9 118/20 119/7 119/10 120/15 122/24 123/1 123/2 123/13 125/3 126/4 126/19
**venues [1]** 101/3
**verb [1]** 27/14
**verbatim [1]** 83/19
**verbs [1]** 71/21
**verdict [2]** 107/2 129/5
**version [1]** 31/10
**versus [15]** 5/8 7/12 40/18 40/22 41/2 41/3 41/4 41/7 41/24 76/6

105/13 126/17
**very [38]** 7/19 9/1 16/12 17/21 21/4 22/22 25/2 31/9 35/19 41/4 75/6 79/2 85/1 89/10 95/25 96/16 102/11 102/13 102/20 103/5 104/3 105/16 110/23 113/19 116/6 117/10 123/5 124/4 125/7 125/13 126/6 126/10 126/11 127/11 129/8 130/3 131/5 141/19
**vests [1]** 18/6
**veto [1]** 15/22
**via [4]** 2/7 3/7 4/8 84/13
**Vice [19]** 10/14 10/18 12/17 12/19 12/20 13/3 13/9 14/25 16/23 36/15 36/18 36/24 37/5 37/6 37/8 37/9 45/16 45/19 50/3
**victim [3]** 111/15 112/16 124/18
**victims [1]** 83/14
**view [7]** 22/3 29/11 41/19 44/8 73/1 77/17 118/8
**views [4]** 60/16 116/5 117/1 117/9
**violate [6]** 47/24 54/19 54/20 58/20 71/22 71/23
**violated [6]** 24/23 27/1 29/25 43/19 70/21 70/22
**violating [2]** 72/2 72/18
**violation [5]** 30/24 55/15 86/23 88/1 89/9
**violence [1]** 117/1
**Virginia [25]** 100/9 101/1 101/2 101/9 101/10 101/12 110/18 112/7 112/7 112/13 113/13 113/15 114/3 114/18 118/8 118/18 119/2 119/5 119/14 120/1 123/3 124/11 125/19 126/1 126/9
**virtually [1]** 12/13
**voir [17]** 104/1 108/13 108/15 111/3 112/17 114/15 115/14 115/15 117/3 117/15 117/22 117/23 120/2 120/13 122/15 125/18 126/11
**vote [1]** 30/21
**voted [2]** 34/4 34/4 34/5
**votes [5]** 17/7 34/19 45/16 50/15 50/16
**vs [1]** 1/5

**W**

**wait [4]** 39/4 47/4 122/15 141/22

**waiting [1]** 64/4
**waivable [1]** 137/14
**waive [1]** 129/17
**waived [2]** 6/9 137/14
**waivers [1]** 134/5
**waiving [2]** 125/21 125/24
**walk [1]** 124/21
**Walnut [1]** 3/14
**Walton [1]** 106/9
**want [30]** 6/7 6/18 6/22 27/8 31/19 32/1 32/5 35/23 36/15 64/16 85/19 87/5 104/7 105/16 109/23 118/19 123/8 125/17 126/7 126/8 126/10 126/11 127/13 127/15 128/18 129/12 132/16 132/20 139/25 140/20
**wanted [9]** 32/4 32/9 37/13 127/19 128/11 128/12 139/9 139/11 140/1
**wants [1]** 134/12
**war [16]** 11/24 17/7 17/11 23/14 40/19 40/24 40/24 42/11 42/12 42/20 43/16 43/20 43/21 43/22 45/7 62/5
**War I [1]** 43/16
**warranted [1]** 123/19
**warrants [1]** 110/17
**was [128]** 7/10 7/10 14/9 14/22 18/4 18/6 18/10 18/18 18/25 18/25 19/1 19/4 19/5 19/6 21/21 22/8 22/8 24/22 25/17 26/20 26/22 28/11 29/8 30/23 31/23 33/23 34/8 34/11 35/7 36/25 40/20 42/12 42/17 48/13 49/13 49/13 49/23 50/5 50/18 51/4 51/19 52/20 55/9 57/15 57/23 57/24 58/1 59/6 59/20 59/25 60/10 60/21 65/1 66/7 66/19 67/3 67/13 68/2 68/2 68/9 68/15 68/18 69/1 73/22 73/23 74/2 74/11 74/12 74/12 74/15 74/17 74/17 74/20 74/23 76/5 78/7 78/9 78/10 79/2 80/2 83/8 85/10 85/25 86/8 86/19 86/21 86/22 87/19 88/1 88/7 88/17 88/18 88/14 88/23 89/1 89/1 90/18 92/3 95/16 96/4 99/18 101/25 103/8 106/5 106/6 106/21 106/23 106/23 107/23 108/9 108/10 109/12 109/21 111/22 115/23 116/2 117/20 118/17 121/1 121/2 125/4 130/13

**W**

**was... [6]** 134/11 135/2 135/15 136/4 139/10 141/1

**wash [3]** 100/13 103/12 114/25

**Washington [6]** 1/5 1/16 2/13 2/18 4/10 4/15

**wasn't [8]** 32/3 59/6 75/8 97/23 101/16 126/5 127/18 136/3

**watch [2]** 45/15 74/3

**Watergate [4]** 103/22 108/9 108/11 109/2

**Watkins [4]** 2/7 5/10 5/21 6/4

**way [27]** 13/10 14/8 33/8 33/17 37/3 42/7 45/13 50/14 61/5 70/24 79/3 87/11 87/23 89/24 92/21 94/13 94/14 98/10 103/25 108/12 111/20 123/21 126/14 126/15 136/23 139/23 140/10

**ways [4]** 68/14 70/22 71/22 72/18

**we [242]**

**we believe [13]** 38/17 44/20 46/13 48/1 48/23 49/11 53/5 56/11 57/10 78/18 79/22 99/14 117/22

**we can [1]** 49/3

**We have [2]** 48/22 56/18

**we will [4]** 92/11 98/6 121/18 141/19

**we would [3]** 79/25 113/12 124/10

**we'd [2]** 52/12 118/1

**we'll [11]** 20/1 34/18 63/18 63/19 122/8 128/6 133/16 135/22 137/20 137/21 139/8

**we're [37]** 15/2 15/14 22/17 25/24 27/8 29/3 38/13 42/25 51/15 56/21 66/1 68/7 68/21 75/5 84/4 90/9 90/10 93/1 94/5 94/6 94/9 97/12 109/23 111/13 123/1 124/8 124/9 127/21 134/14 138/1 139/1 139/6 140/5 141/7

**we've [18]** 17/16 22/13 34/11 49/2 62/1 63/15 65/12 67/25 94/16 102/10 102/12 129/24 133/13 133/25 134/15 138/5 139/20 141/18

**week [3]** 114/22 129/14 130/12

**weeks [9]** 74/2 74/4 98/6 121/15 130/7

**141/20**

**Weinberg [3]** 3/17 3/18 5/25

**welcome [3]** 6/11 6/12 134/23

**well [64]** 9/11 10/6 10/25 11/13 13/16 13/23 15/13 15/20 17/12 17/14 17/20 18/17 21/4 22/19 26/1 28/18 33/6 33/12 33/16 34/3 35/19 39/9 39/17 39/20 41/13 43/15 44/17 46/19 47/10 48/3 59/13 60/2 60/3 60/18 61/4 61/20 64/15 66/18 67/2 67/16 69/7 69/25 71/20 72/23 81/11 84/8 84/8 91/10 99/19 100/24 106/16 107/20 107/24 109/9 116/19 117/9 117/11 119/15 125/20 128/19 131/5 135/8 139/2 139/21

**well-done [1]** 128/19

**went [7]** 17/21 59/24 74/4 80/14 83/25 136/16 140/4

**were [74]** 7/23 8/14 9/2 10/11 15/14 15/16 15/17 21/22 25/2 25/3 26/9 26/16 27/20 30/17 30/19 31/23 32/22 40/22 42/10 42/10 42/22 43/19 43/24 44/4 47/1 47/16 47/17 48/22 50/6 50/11 52/1 52/23 57/18 66/5 66/6 73/24 74/1 74/7 74/9 75/8 75/9 75/18 80/7 80/12 80/15 80/16 80/16 83/12 86/4 87/10 95/15 100/18 100/19 100/22 104/18 106/1 106/2 106/3 106/4 106/7 106/25 110/9 111/20 111/23 111/23 111/25 113/5 113/17 116/1 116/13 117/18 124/19 124/23 134/3

**weren't [5]** 31/22 31/23 73/24 74/6 107/1

**West [1]** 3/14

**Western [1]** 113/15

**what [161]**

**what's [10]** 9/19 18/21 39/20 43/14 52/3 92/4 92/19 98/25 121/15 125/16

**whatever [4]** 54/25 91/3 105/25 140/22

**whatsoever [1]** 84/25

**when [55]** 14/16 15/11 16/1 17/7 19/18 30/5 32/17 35/21 39/22 42/9 42/14 42/17 42/22 45/10 46/6 46/7 48/15

**58/1 58/2 59/16 59/18 62/4 62/23 66/20 66/21 67/5 73/22 76/6 76/17 79/12 79/23 90/24 91/16 93/20 94/8 95/19 99/8 106/14 114/14 114/16 121/9 121/19 122/9 123/24 124/3 125/25 129/21 129/22 130/12 130/13 134/2**

**where [51]** 11/4 11/17 12/2 12/13 12/23 15/10 15/23 21/11 22/17 25/2 29/3 31/9 36/14 37/2 40/19 45/1 45/5 59/23 72/4 75/6 75/9 82/8 87/18 92/6 95/25 96/12 97/4 98/1 100/22 101/3 101/11 103/8 104/15 104/25 105/6 107/2 112/17 113/15 113/16 119/19 120/3 121/12 123/20 125/12 132/18 132/25 133/3 139/12 140/8 140/25 141/21

**whereas [1]** 94/13

**wherever [1]** 117/16

**whether [25]** 18/15 22/7 37/16 46/14 49/13 50/22 55/14 57/4 61/6 67/18 67/19 87/6 87/8 101/17 111/21 111/22 111/23 121/22 121/23 123/15 123/16 131/23 134/6 134/8 140/11

**which [82]** 10/7 10/9 13/16 14/18 16/18 18/4 24/22 25/12 25/17 28/25 29/24 31/1 32/18 33/9 34/12 34/13 34/24 35/5 38/16 40/6 40/8 40/9 41/24 43/2 43/10 43/16 44/24 46/14 46/21 51/9 53/21 54/13 59/9 60/5 60/9 61/17 62/7 64/9 65/15 65/21 66/2 67/3 67/9 68/14 69/4 69/5 70/9 72/3 74/16 79/11 85/6 85/11 86/13 87/3 87/5 87/9 88/2 89/5 89/11 93/13 94/23 97/1 99/21 99/21 99/23 102/17 102/18 104/24 107/5 107/11 108/2 108/5 108/22 110/5 112/4 113/18 118/7 118/15 124/11 124/14 131/10 131/19 131/24

**while [6]** 7/5 20/15 55/22 59/4 68/6 72/1

**white [1]** 102/11

**who [62]** 6/11 6/12 7/15 8/14 8/15 8/19 8/22 11/11 12/15 13/10 37/3 37/5 37/6 39/17 41/5 41/6 41/11 41/16 42/15 43/12 45/8 45/12**

**49/23 50/16 56/2 57/11 58/17 59/20 59/25 67/13 69/19 70/4 70/10 70/23 71/5 74/9 75/3 76/19 77/10 80/16 84/13 103/3 103/16 103/18 104/6 104/8 111/22 112/15 115/11 115/20 116/15 118/16 119/1 119/4 121/25 131/13 131/17 135/20 140/2**

**who's [12]** 12/9 37/17 42/5 43/13 58/22 59/7 66/12 71/24 71/25 83/3 125/22 135/18

**whoever [1]** 56/3

**whole [2]** 115/7 120/4

**wholly [1]** 58/4

**whose [1]** 41/8

**why [63]** 7/1 7/2 8/12 9/18 9/19 9/20 10/7 10/7 10/16 12/17 12/19 12/25 12/25 15/3 15/3 15/4 17/2 19/5 22/19 25/1 25/4 25/6 25/8 26/1 26/7 26/10 28/4 31/17 32/1 33/14 33/22 35/8 35/20 39/3 46/19 47/2 47/3 47/25 50/23 56/11 63/18 64/5 66/15 67/14 70/6 71/14 76/2 86/12 86/14 87/3 92/5 93/4 99/1 101/22 103/20 113/8 116/17 117/23 126/21 128/21 132/3 132/24 133/3

**wide [1]** 76/18

**widely [1]** 108/11

**will [31]** 13/24 24/8 37/3 41/15 49/12 53/14 67/25 70/9 76/16 81/4 81/18 90/17 92/11 94/25 95/17 98/6 99/2 105/6 117/15 117/22 119/25 121/18 121/21 121/22 121/23 126/14 131/9 131/13 136/5 140/18 141/19

**William [7]** 2/2 3/7 3/8 4/12 5/22 142/2 142/8

**Wilson [3]** 134/3 137/1 137/3

**wings [1]** 38/2

**winner [1]** 45/20

**Wise [5]** 134/11 135/1 135/8 135/9 137/20

**wish [4]** 63/4 98/18 114/7 141/1

**withdraw [2]** 136/3 141/15

**withdrew [1]** 137/3

**within [6]** 78/2 81/10 82/10 118/14 124/11 131/25

**without [7]** 33/9 34/16 82/23 86/7 96/19**

**witness [1]** 92/1

**witnesses [1]** 91/19

**wittingly [1]** 111/14

**won't [3]** 22/5 114/11 134/20

**wonder [1]** 67/14

**Woodward [5]** 2/12 2/12 5/17 133/24 137/12

**word [16]** 19/11 53/24 60/4 69/21 69/23 69/24 70/3 70/18 71/3 79/10 82/21 83/15 84/9 84/12 84/12 95/23

**worded [2]** 78/7 83/6

**words [25]** 10/7 14/13 16/21 23/13 26/3 39/1 42/22 44/10 46/1 46/22 49/17 51/9 58/17 66/6 70/25 77/15 80/24 81/16 83/25 93/16 96/18 96/24 96/25 100/8 130/16

**work [10]** 31/3 32/17 32/19 103/18 112/22 122/21 124/3 128/3 132/17 141/14

**worked [1]** 34/20

**working [7]** 117/24 133/10 138/19 139/1 139/6 139/19 141/7

**works [3]** 20/2 62/18 138/18

**world [5]** 40/19 40/24 42/20 43/15 84/1

**World War I [1]** 40/24

**worry [1]** 127/6

**worth [6]** 26/21 26/24 67/22

**would [193]**

**wouldn't [3]** 10/7 72/16 91/25

**writ [5]** 41/20 42/6 43/10 44/5 48/11

**writing [3]** 28/16 134/6 137/15

**written [6]** 21/1 21/6 22/8 40/15 92/23 128/19

**wrong [5]** 33/8 47/17 60/25 109/21 109/22

**wrote [1]** 83/25

**Y**

**Yates [4]** 33/7 35/5 35/7 35/11

**yeah [8]** 62/19 65/7 66/4 70/16 99/7 104/21 117/5 138/9

**year [4]** 30/13 110/2 110/8 110/10

**year's [2]** 26/21 26/24

**years [2]** 111/9 129/4

**Yep [1]** 128/24

**yes [47]** 6/20 17/8 20/5 20/6 20/12 23/6 24/17 27/7 27/12 27/15 35/17

**Y**

**yes... [36]** 51/21 57/3
63/17 64/21 66/8 76/1
85/21 88/20 88/20
91/14 95/10 100/11
101/5 103/10 104/14
105/15 109/15 111/5
112/6 112/9 112/20
113/14 115/21 115/25
119/9 122/13 122/25
127/1 127/4 127/16
127/20 128/5 132/23
135/14 137/25 141/15
**yet [3]** 71/1 110/9
117/2
**you [291]**
**You know [1]** 67/25
**you'd [4]** 7/4 20/9
22/24 34/24
**you'll [2]** 34/6 130/1
**you're [34]** 7/5 20/15
25/5 29/17 30/1 31/25
43/8 44/10 45/21 47/10
50/10 54/14 62/4 64/16
64/17 67/8 80/25
107/11 109/22 110/24
113/14 114/23 115/6
123/24 124/7 124/15
125/17 125/24 126/2
126/6 126/8 126/9
126/11 126/25
**you've [21]** 6/18 7/3
32/17 32/20 32/21
33/20 39/7 39/18 41/11
46/23 48/4 49/1 51/25
53/10 62/13 66/2 93/23
100/8 100/25 100/25
101/1
**your [208]**
**your Honor [154]**
**Your Honor's [1]** 47/21

**Z**

**Zaremba [3]** 4/12
142/2 142/8
**Zoom [4]** 2/7 3/7 4/8
129/25
**Zsuzsa [1]** 2/16