# UNITED STATES DISTRICT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| ) | |
| **v.** ) | Case No. 22-cr-00015-APM |
| ) | |
| **STEWART RHODES, et. al.,** ) | |
| ) | |
| ) | |
| **Defendant** ) | |
| ) | |

## DEFENDANTS MINUTA, CALDWELL, HARRELSON, WATKINS, MOERSCHEL, AND MEGGS MOTION TO DISMISS THE SUPERSEDING INDICTMENT

William L. Shipley
PO Box 745
Kailua, Hawaii 96734
Tel: (808) 228-1341
Email: 808Shipleylaw@gmail.com
*Attorney for Defendant*

1

Defendants Roberto Minuta, Thomas Caldwell, Kenneth Harrelson, Jessica Watkins, David Moerschell, and Kelly Meggs, through their respective Counsel of Record, hereby move this Court to dismiss the Superseding Indictment returned on July 22, 2022, by a federal grand jury sitting the District of Columbia.

> An indictment returned by a legally constituted <u>and unbiased grand jury</u>, [FN] like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more.
> <u>Costello v. United States</u>, 350 U.S. 359, 363 (1956)(Emphasis added).

In the footnote, the Court quoted from its earlier decision in <u>Pierre v. Louisiana</u>, 306 U.S. 354 (1939). "If petitioner's evidence of such systematic exclusion of negroes from the general venire was sufficient to support the trial court's action in quashing the Petit Jury drawn from that general venire, it necessarily follows that the indictment returned by a Grand Jury, selected from the same general venire, should also have been quashed."

The underlying principle of <u>Pierre</u> is that a situation that creates prejudice in the Petit juror pool must also create prejudice in the grand juror pool when they are one and the same.

In previous hearings before this Court, the question of what spectacle might come from the public hearings of the January 6 Committee of the House of Representatives remained a matter of speculation. That is no longer the case. What the House Committee has done is every bit as prejudicial to the Defendants in this case as what the King Committee did in <u>United States v. Delaney</u>:

> Here the United States, through its legislative department, by means of an open committee hearing held shortly before the trial of a

> pending indictment, caused and stimulated this massive pre-trial publicity, on a nationwide scale. Some of this evidence was indicative of Delaney's guilt of the offenses charged in the indictment. Some of the damaging evidence would not be admissible at the forthcoming trial, because it related to alleged criminal derelictions and official misconduct outside the scope of the charges in the indictment. None of the testimony of witnesses heard at the committee hearing ran the gauntlet of defense cross-examination. Nor was the published evidence tempered, challenged, or minimized by evidence offered by the accused.

United States v. Delaney, 199 F.2d 107, 113 (1st Cir. 1952).

The atmosphere created by the January 6 Committee should be considered as if it was the Attorney General or United States Attorney for the District of Columbia who engaged in the same conduct:

> If all this material had been fed to the press by the prosecuting officials of the Department of Justice, we think that an appellate court would have had to say that the denial of a longer continuance was an abuse of discretion…. [¶] But the prejudicial effect upon Delaney, in being brought to trial in the hostile atmosphere engendered by all this pre-trial publicity, would obviously be as great, whether such publicity were generated by the prosecuting officials or by a congressional committee hearing. In either case he would be put under a heavy handicap in establishing his innocence at the impending trial. Hence, so far as our present problem is concerned, we perceive no difference between prejudicial publicity instigated by the United States through its executive arm and prejudicial publicity instigated by the United States through its legislative arm.

United States v. Delaney, 199 F.2d at 113-14.

On June 21, 2022, in United States v. Nordean, 21-cr-175 (TMK), the Government filed a response to a motion by the Defendants to continue the trial in that case due to the activities of the January 6 Committee.

In the response the Government stated:

> Representatives of the Committee have indicated that the relationship between the Trump Administration and the Proud Boys <u>and other groups</u> will be the subject of a future hearing….”
>
> [¶] The timing and prominence of the Committee's hearings and conclusions, and its focus on the conduct of Proud Boys, including specific descriptions of defendants in this case, heighten the need for a rigorous *voir dire* process."

<u>United States v. Nortean, et. al</u>., 21-cr-175 (TJK) ECF Doc. No. 414, p. 3-4. (Emphasis added].[1]

The Government's statement is a concession that it recognizes there is unfair prejudicial in the District of Columbia juror pool that can only be addressed <u>after</u> the Committee hearings have been concluded, and with a "rigorous *voir dire* process" of members of the juror pool.

Yet the pool of potential trial jurors and the pool of grand jurors is identical. The current environment in the District of Columbia is such that the Government agrees a fair verdict from a trial jury is not possible without *voir dire* that specifically addresses the prejudicial publicity caused by the January 6 Committee. The same rationale must hold true with obtaining an unbiased indictment from grand jurors drawn from the same juror pool. Both require fair minded consideration of evidence and a dispassionate judgment on the same. Prejudicial bias cannot be tolerated in either, and where it is found in one, the Supreme Court held it will be found in the other.

But the problem now in this case now did not arise from the grand jurors. The grand jurors did not summon the Government for the purpose of

---

[1] The Defendants here presume that the Government's reference to "other groups" includes a reference to the "Oath Keepers" as the Oath Keepers have been a group prominently mentioned throughout the January 6 Committee hearings to date.

returning an unsolicited Superseding Indictment.  The Government went to a grand jury – for the 11th time – at a moment when it knew the grand jurors are burdened by the same prejudicial publicity the Government acknowledged in the Nordean case.  That was misconduct.

Dismissal of an indictment for prosecutorial misconduct before the grand jury is rare.  The circumstances generally involve some form of intentionally deceptive behavior or knowing use of compromised evidence by the Government.  Even in such circumstances, dismissal of an indictment has been denied to all but a very narrow category of cases where a defendant shows that the misconduct was prejudicial, i.e., that it "influenced substantially the grand jury's decision to indict…"  Bank of Nova Scotia v. United States, 487 U.S. 250, 259 (1988).

But the compromising influences on the grand jury here were known to the Government on June 22.  The Government's concession in in the Nordean case establishes prejudice here.

The action by the Government in seeking a Superseding Indictment under these circumstances brings the matter within the "supervisory authority" of the Court.

> [T]he grand jury [is] an independent, pre-constitutional body that relies on the power of the judiciary when it needs assistance in accomplishing its constitutionally-assigned task of returning indictments.   See Brown v. United States, 359 U.S. 41, 49 (1959), overruled on other grounds, Harris v. United States, 382 U.S. 162, 168 (1965); John Roe, Inc. v. United States (In re Grand Jury Proceedings), 142 F.3d 1416, 1424-25 (11th Cir.1998) (explaining that although a grand jury relies on the judiciary when it seeks subpoenas or contempt sanctions, it "performs its investigative and deliberative functions independently").   When a court invokes its supervisory power to check grand jury abuses, therefore, it is

really supervising the prosecutor, who, as an officer of the court, presents cases for the grand jury to consider."

United States v. Sigma Intern., Inc., 196 F.3d 1314, 1320 (11th Cir 1999).

Pursuant to its inherent supervisory authority, the Defendants turn to the Court for relief with regard to the Government having gone to the grand jury at a time it knew the grand jury was likely biased by events. The Government opted to do so when the Government knew the milieu of the District of Columbia is such that jurors or grand jurors cannot be presumed to be immune from the prejudicial influences of the Congress of the United States.

Based on the foregoing, the Defendants request that the Court dismiss the Superseding Indictment in this case dated June 22, 2022, on the basis that it is not the produced of an unbiased grand jury as required by the Supreme Court in Costello.

Date: June 24, 2022

Respectfully Submitted,

/s/ William L. Shipley
William L. Shipley
PO Box 745
Kailua, Hawaii 96734
Tel: (808) 228-1341
Email: 808Shipleylaw@gmail.com

*Attorney for Defendant Roberto Minuta*

**Stanley Edmund Woodward , Jr.**
BRAND WOODWARD LAW
1808 Park Road NW
Washington, DC 20010
202-996-7447

Fax: 202-996-0113
Email: stanley@brandwoodwardlaw.com

*Attorney for Defendant Kelly Meggs*
**Bradford L Geyer**
FORMERFEDSGROUP.COM LCC
141 I Route 130 South
Suite 303
Cinnaminson, NJ 08077
856-607-5708
Email:
bradford.geyer@formerfedsgroup.com

*Attorney for Defendant Kenneth Harrelson*

**Jonathan W. Crisp**
CRISP AND ASSOCIATES, LLC
4031 North Front Street
Harrisburg, PA 17110
(717) 412-4676
Email: jcrisp@crisplegal.com

*Attorney for Defendant Jessica Watkins*

**Scott Weinberg**
BROWN, SUAREZ, RIOS & WEINBERG
265 E Marion Avenue
Suite 114
Punta Gorda, FL 33950
941-575-8000
Email: scott@bsrlegal.com

*Attorney for Defendant David Moerschel*

**David William Fischer , Sr.**
FISCHER & PUTZI, P.A.
7310 Governor Ritchie Highway
Empire Towers, Suite 300
Glen Burnie, MD 21061-3065
(410) 787-0826
Fax: (410) 787-1853
Email: fischerandputzi@hotmail.com

*Attorney for Defendant Thomas Edward Caldwell*