# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | **Case No. 1:21-cr-00015-APM** |
| **v.** ) | |
| ) | |
| **KELLY MEGGS,** ) | |
| ) | |
| **Defendant.** ) | |

## DEFENDANT KELLY MEGGS'S MOTION TO DISMISS ON THE BASIS OF SELECTIVE PROSECUTION

Defendant Kelly Meggs, by and through the undersigned counsel, and pursuant to Federal Rules of Criminal Procedure 12(b)(3)(A)(iv), hereby respectfully requests the Court to dismiss the June 22, 2022, Superseding Indictment for selective prosecution.

### I.    BACKGROUND

On January 12, 2022, a grand jury first returned an indictment charging Defendant Kelly Meggs ("Mr. Meggs") and eleven others with ten counts in violation of federal statutes relating to alleged unlawful conduct that occurred on and leading up to January 6, 2021.  On June 22, 2022, a grand jury returned a Superseding Indictment and what is now the operative indictment.

Mr. Meggs and his co-defendants are a handful of many who are being prosecuted by the U.S. Department of Justice for, *inter alia*, joining a rally protesting the results of the 2020 Presidential Election.  Specifically, Mr. Meggs and his co-defendants are alleged to have

participated in a seditions conspiracy intended to overturn the results of that election. Their alleged conduct, however, is not dissimilar from the conduct of numerous others

## II.    LEGAL ANALYSIS

### a.    *Selective Prosecution and Equal Protection of the Law*

"The requirements for a selective-prosecution claim draw on 'ordinary equal protection standards.'" *United States v. Armstrong*, 517 U.S. 456, 465 (1996) (internal citations omitted). The rules of Federal Criminal Procedure embody this fundamental premise, "ordinary equal protection." FRCP Rule 12(b)(3)(A)(iv) (addresses the fundamental need to file a motion to dismiss for "a defect in instituting the prosecution, including. . . (iv) selective or vindictive prosecution; and (v) an error in the grand jury proceeding or preliminary hearing") Lack of such ordinary equal protection reflects defects in the indictment, which includes the legal standard of selective prosecution, as set forth below.

The *Armstrong* Court explained the similarly situated requirement by citing *Yick Wo. v. Hopkins*. *Id.* (*citing Yick Wo v. Hopkins*, 118 U.S. 356, 374 (1884) (finding discriminatory application of a statute where the authorities had denied the applications of 200 Chinese subjects for permits to operate shops in wooden buildings, but granted the applications of 80 individuals who were not Chinese subjects to operate laundries in wooden buildings "under similar conditions.") "Courts in this district have interpreted the phrase 'similarly situated' narrowly, insisting that a defendant must show that the crimes charged and those allegedly committed by the comparator are the same or similar and arose in the similar circumstances." *United States v. Stone*, 394 F. Supp. 3d 1, 31, (D.C. Cir. 2019).

Prosecutorial discretionary decisions need to show substantial evidence, as well as meet constitutional requirements. "Selectivity in the enforcement of criminal laws is, of course,

subject to constitutional constraints." *U.S. v. Batchelder*, 442 U.S. 114, 124-25 (1979). These constraints include the Fifth Amendment's Equal Protection Clause, which requires that "the decision whether to prosecute may not be based on 'an unjustifiable standard such as race, religion, or other arbitrary classification.'" *Oyler v. Boles*, 368 U. S. 448, 456 (1962).

Such "arbitrary classifications" include "a suspect's exercise of constitutional rights through participation in political activity." *United States v. Hastings*, 126 F.3d 310, 313 (4th Cir. 1997); *United States v. Cyprian*, 23 F.3d 1189, 1195 n. 10 (3d Cir. 1994), cert denied, 513 U.S. 879 (1994) (same); *United States v. Berrios*, 510 F.2d 1207, 1211 (2d Cir. 1974) (same).

> ### b.    *Sedition and Obstruction of Justice have never been charged against Protestors at the Capitol.*

"Courts in this district have interpreted the phrase 'similarly situated' narrowly, insisting that a defendant must show that the crimes charged and those allegedly committed by the comparator are the same or similar and arose in the similar circumstances." *United States v. Stone*, 394 F. Supp. 3d 1, 31, (D.C. Cir. 2019).

> ### i.    **Improper Purpose**

To succeed in a claim of selective prosecution, the claimant must demonstrate that the federal prosecutorial policy "had a discriminatory effect and that it was motivated by a discriminatory purpose." *Id*. "If the defendant establishes a prima facie case, the burden shifts to the government to prove that the prosecution did not arise from discriminatory motives." *Attorney Gen. of United States v. Irish People, Inc.*, 684 F.2d 928, 932 (D.C. Cir. 1982) (further citations omitted).  In other words, a defendant "must demonstrate that the federal prosecutorial policy 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'" *Branch Ministries, Inc. v. Richardson*, 970 F. Supp. 11, 17 (D.D.C. 1997) (citations omitted). "To establish a discriminatory effect, a defendant must show that 'similarly situated' individuals

were not prosecuted." *Id.* Similarly situated requires "some degree of commonality among the indictable group, such that the defendant challenging his indictment may make a supportable demonstration that those unindicted persons are, in fact, similarly situated, and consequently…'" *Id*.

"A plaintiff alleging discrimination is not required to produce direct evidence of intent; indeed, direct evidence of motive or intent is rarely available. As in any equal protection case, evidence concerning the unequal application of the law, statistical disparities and other indirect evidence of intent may be used to show bias or discriminatory motive." *Id. (citing King v. Palmer*, 250 U.S. App. D.C. 257, 778 F.2d 878, 881 (D.C. Cir. 1985) (party asserting intentional discrimination need not produce direct evidence of discriminatory intent but may demonstrate it through indirect evidence) (*citing Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981)). *See also Wayte v. United States*, 470 U.S. 598, 608-610, (1985) (selective prosecution cases are to be judged under ordinary equal protection standards).

Here, the "improper purpose" rests in the difference in prosecution over content of the message brought by the protestors at the Capitol on January 6, 2021 versus protestors in Portland who mobilized starting on May 28, 2020. While the messages differ, and the politicians who embrace the respective messages differ, both groups sought to be heard, are now seeking equal application of the Law, and object to injustice. Both groups contained among them bad actors who intended to engage in criminal activity. Despite the similarities, not a single protestor from Portland was charged in the George Floyd Riots with Obstruction of Justice under §1512 despite burning courthouses, or Sedition despite yells of "*F… the United States*" while burning federal

property.[1]  Cases relating to 18 U.S.C. § 1512(c)(2) in the United States District Court for the District of Columbia appear to have four such reported prosecutions initiated prior to January 6, 2021, of which none related to a protest or any matter before Congress:

1.    *United States v. Hawkins*, 185 F.Supp.3d 114 (D.D.C. 2016). Defendant was found to have violated 1512(c)(2) where he "made false statements to FBI agents and the U.S. Attorney's Office in an attempt to influence the grand jury investigation into the GOTV initiative." *Id*.

2.    *United States v. Ring*, 628 F.Supp.2d 195 (D.D.C. 2009). "It is enough that the indictment alleges the elements of obstructing justice as set out under § 1512(c)(2): that Ring (1) corruptly (2) did or attempted to obstruct, influence, or impede an official proceeding by providing false statements to Firm B's outside counsel 'to cause and in an attempt to cause' those misrepresentations to be provided to the grand jury and Indian Affairs Committee." *Id*. at 224.

3.    *United States v. Robertson*, 608 F.Supp.2d 89 (D.D.C. 2009). In this case, it was alleged the "defendants worked together to obstruct justice" in violation of § 1512(c)(2) in a 2008 trial by obstructing manufacturing false evidence and producing perjured testimony. *Id*. at 90.

4.    *United States v. Brown*, 2007 WL 2007513 (D.D.C. 2007). Defendants were charged with violation of § 1512(c)(2) relating "to their investigation" of a murder, which included "their interactions with witnesses during their investigation." *Id*.

---

[1] It must be noted that similar unrest to that in Portland in May 2020 in response to the death of George Floyd occurred in Washington, D.C., the same city as the January 6, 2021 Capitol Protest. Consider a description of the protests at Washington, D.C.'s Lafayette Park in June of 2020:

> In the park, protesters faced the familiar pop, pop, pop of pepper bullets and stinging clouds of tear gas meant to push back hundreds of them as they tried, again and again, to break through the police barricades set up around President Trump's home. Later, American flags and parked cars and buildings were lit ablaze — including St. John's Church, a historic landmark opened in 1816 and attended by every president since James Madison. Firefighters quickly extinguished the basement fire, which police said was intentionally set . . . The smell of fire hung heavy in the air, and shattered glass speckled the pavement. Gone were the windows of the Lafayette Building, home to the U.S. Department of Veterans Affairs. Next door, all the outdoor umbrellas at the Opaline Bar and Brasserie were warped and charred. As police and firefighters showed up to investigate, the destruction continued around them, the looters uncaring.

Rebecca Tan, Marissa J. Lang, Antonio Olivo, Rachel Chason and John Woodrow Cox, Night of destruction across D.C. after protesters clash with police outside White House, *The Washington Post* (June 1, 2020), available at https://www.washingtonpost.com/local/dc-braces-for-third-day-of-protests-and-clashes-over-death-of-george-floyd/2020/05/31/589471a4-a33b-11ea-b473-04905b1af82b_story.html.

There are no prior cases in which protestors at the Capitol have been charged with charges under Obstruction of Justice, 18 U.S.C. § 1512, much less § 2384.

This court has previously found that "[t]he very rarity of an official act can support a finding of discriminatory intent, although alone it may not necessarily be a sufficient basis for such a finding. *Branch Ministries, Inc. v. Richardson*, 970 F. Supp. 11, 17, (D.D.C.1997) (citing *United States v. Al Jibori*, 90 F.3d 22, 23, 26 & n. 1 (2d Cir. 1996)) (emphasis added). This, however, is not the only question in reviewing for discriminatory intent, but it makes the case ripe for worthy consideration for selective prosecution.

### ii.    Statements of Discrimination

President Biden accused the "MAGA crowd" of being the "most extreme political organization that's existed."[2]   The President previously called J6 "[t]he worst attack on our democracy since the Civil War."[3]   Attorney General Garland has repeatedly compared J6 to the Oklahoma City bombing case, alleging at his confirmation hearing that "there was a line that connected the January insurrection to the Oklahoma City bombing and back to the battles of the original Justice Department against the Ku Klux Klan."[4]

---

[2] *See* Herb Scribner, *Biden: "MAGA crowd" is "most extreme" political group in U.S. history*, AXIOS, https://www.axios.com/2022/05/04/biden-maga-crowd-extreme (May 4, 2022).

[3] *See* Lee Brown, Biden ripped for calling Capitol riots 'worst attack on our democracy since the Civil War', NEW YORK POST, https://nypost.com/2021/04/29/biden-calls-capitol-riots-worst-attack-on-our-democracy-since-the-civil-war/ (Apr. 29, 2021).

[4] *See* Zoe Tillman, *Merrick Garland Pledged To Investigate The Capitol Insurrection From The Rioters On "Up" As Attorney General*, BUZZFEED NEWS, https://www.buzzfeednews.com/article/zoetillman/merrick-garland-investigate-capitol-riots-attorney-general (Feb. 22, 2021).

The Attorney General's repeated comparisons of the Oklahoma City bombing to J6 is particularly relevant to this motion as the Attorney General, a senior DOJ official at the time, supervised the prosecution of Timothy McVeigh and his co-conspirators.[5]

Of note, criminal justice "leaders," including then Acting United States Attorney Channing Phillips, joined a civil lawsuit as a Plaintiff against the Trump administration seeking damages and relief for arrests of Portland's protestors as people merely "expressing grief." *Don't Shoot Portland, et al., v. Chad Wolf, et al.*, 1:20-cv-2040-CRC.[6] The lawsuit also alleges that, when police encounter protestors who are angry and frustrated, every effort should be made to "stabilize the situation and reduce the immediacy of the threat so that more time, options, and resources can be called upon to resolve the situation without the use of force or with a reduction in the force necessary." *Id.* By contrast, Acting United States Attorney Michael Sherwin described the protesters on January 6th who would be prosecuted: "the great majority of the people" who were "protesters" and not "rioters.... 'After the 6th, we had an inauguration on the 20th. So, I wanted to ensure, and our office wanted to ensure, that there was shock and awe that we could charge as many people as possible before the 20th. And it worked because we saw through media posts that people were afraid to come back to D.C. because they're like, "If we go there, we're gonna get charged."[7] This statement makes a bias clear. The Improper Purpose

---

[5] *See* Matt Zapotosky and Ann E. Marimow, *How the Oklahoma City bombing case prepared Merrick Garland to take on domestic terrorism"*, THE WASHINGTON POST, https://www.washingtonpost.com/national-security/merrick-garland-oklahoma-city-bombing/2021/02/19/a9e6adde-67f2-11eb-8468-21bc48f07fe5_story.html (Feb. 19, 2021).

[6] "... George Floyd protestors took "...*to the streets to express their collective grief, anger, and frustration over not just one senseless act of violence, but the countless other abuses people of color have endured for years.*" (ECF 25-2, at p. 2).

[7] Inside the prosecution of the Capitol rioters, CBS News, Mar. 22, 2021, available at: https://www.cbsnews.com/news/capitol-riot-investigation-sedition-charges-60-minutes-2021-03-21/ (emphasis added)

arises because it becomes about the content of the message that has led to the different
prosecutorial decisions of what the court has recognized included similar physical violent acts.

### iii.    Indirect Evidence of Similar Case

#### a.  *Portland*

Since May 26, 2020, federal law enforcement authorities have arrested 100 people for
crimes committed during local demonstrations. *Seventy-four faced federal charges, including
felonies, misdemeanors, and citation violations.* Alleged crimes include assaults on federal
officers, some resulting in serious injuries; arson and attempted arson; damaging federal
government property; failing to obey lawful orders; and unlawful use of a drone; among others.
*See* Press Release, 74 People Facing Federal Charges for Crimes Committed During Portland
Demonstrations (Aug. 27, 2020), *available at* https://www.justice.gov/usao-or/pr/74-people-
facing-federal-charges-crimes-committed-during-portland-demonstrations (last visited July 11,
2022). It was reported "that the protest is a continuation of a daytime march that occurred this
afternoon."[8] …"Footage showed the rioters attempting to force their way into the courthouse
while chanting "f*** the United States!" *Id.* ' Later in the evening rioters set a fire outside the
courthouse entrance.'[9]  The federal Court House closed for weeks under attack and
burned.[10]   Closure of a court room in a courthouse would be more consistent with the definitions
recognized in caselaw on § 1512 as "official proceedings." And statements of "*f*** the United
States!*" as statements potentially evidencing seditious activity, but none were so

---

[8]  *See Rioters Set Fire to Federal Courthouse in Portland One Day after Fencing Removed (yahoo.com)*Zachary
Evans*, Rioters Set Fire to Federal Courthouse in Portland One Day after Fencing Removed
https://news.yahoo.com/rioters-set-fire-federal-courthouse-162333860.html.*

[9]  "Demonstration Devolves into Riot July 4 to 5 2020-Arrests Made, Firearm Recovered (Photo), by Portland Police
Bureau: https://www.portlandoregon.gov/police/news/read.cfm?id=250952&ec=1&ch=twitter.

[10] *See* Portland Police Chief Slams Violence At Riots | National Review, August 6, 2020 Zackary Evans,
https://www.nationalreview.com/news/portland-police-chief-slams-incomprehensible-violence-says-rioters-target-
local-officers-with-mortars-and-commercial-grade-fireworks/.

charged.[11]  According to the federal government, the protests in Portland include several assaults on federal officers:

> After repeatedly defying verbal commands to move back, one defendant "placed his right arm around the neck of CBP officer 1 in headlock maneuver." *Id*. at 6. When another officer came to "remove [defendant's] right arm from around the neck of Officer 1… all three individuals went to the ground." *Id*. At the time, the defendant "was carrying a leaf blower and a shield."

*United States v. Judd*, case no. 1:21-cr-00040, ECF 138 pp.3-4 (*citing United States v. Bouchard*, case no. 3:20-mj-00165 (D. Ore. July 24, 2020), ECF 1-1, at 4-5. (The Exhibit documents federal charges and dispositions of 39 defendants arrested with charges including 18:111(a)(1), Assaulting a Federal Officer beginning on May 26, 2020 in Portland, Oregon.)

Nearly all of these charged were dismissed or marked *nolle prosequi*, with one action pending, (and who was dismissed because he died before they could dismiss); and for the few that remained, the government agreed to recommend probation.  *Id*.  The government acknowledged in its Opposition on the *Judd* motion that, "*Although it is true that each case was eventually dismissed by the government for unknown reasons (typically after the defendants repeatedly agreed to waive their rights to a preliminary hearing or indictment over a period of months), all were initially facing felony charges.*)."  Gov't. Opp. Doc. 154 at 17 (emphasis added).  Those felony charges, however, did not include 18 U.S.C. § 2384, §1512(c)(2) and 2, or § 1512(k).

---

[11]      [T]hough § 1515(a)(1)(A) defines an official proceeding as one "before a judge or court," it does not require that obstructive conduct occur in the same location. How do we know this? First, the phrase "before a judge or court" in § 1515(a)(1)(A) only describes which types of proceedings can be considered "official," not where the criminal obstruction must occur. Obstruction of justice occurs when a defendant acts to impede the types of proceedings that take place before judges or grand juries. But the defendant need not interfere while court is actually in session to be held liable."

*U.S. v. Burge*, *surpra* at 809.

      *b.  May 31, 2020 – June 2, 2020, Washington DC Protests*

For context of similarity for the lack of application of § 2384(a)(1), 18 U.S.C. § 1512(c)(2) and 2, or § 1512(k), against protestors, one does not need to reach back far in the history of protests in Washington, D.C.  On May 31, 2020, Protesters descended on Washington, DC over unrest in relation to the death of George Floyd.  The Mayor of DC ordered a curfew from 11 PM May 31, 2020 through 6 AM on June 1, 2020.[12]  According to then-Attorney General William Bar, "Things were so bad that the Secret Service recommended that the President go down to the bunker."[13]  The Metropolitan Police Department issued public data for arrests during periods of "unrest" from May 30, 2020 through January 7, 2021: May 30 to June 3, a total of 428 arrests were made.[14]  61 arrests for felony rioting, 6 for assault on a police officer, 55 for burglary, and 6 for destruction of property.[15]  None were charged with 18 U.S.C. § 2384(a)(1), §1512 (c)(2), (2) or (k).

      *c.  Protests at the Capitol*

Hundreds of people have been arrested for demonstrating and obstructing proceedings while Congress is in session.  During the 2018 confirmation hearing for Judge Brett Kavanaugh, over two-hundred demonstrators were arrested.[16]  These protesters blocked hallways, "unfurled banners inside a Senate office building," and even blocked one Senator from closing an elevator

---

[12] Mayor Bowser Orders a Citywide Curfew for the District of Columbia from 11 pm on Sunday, May 31 until 6 am on Monday, June 1.  Sunday, May 31, 2020, WASHINGTON, DC, https://mayor.dc.gov/release/mayor-bowser-orders-citywide-curfew-district-columbia-11-pm-sunday-may-31-until-6-am-monday.

[13] Maegan Vazquez, Barr Contradicts Trump: 'The Secret Service Recommended That the President Go Down to the Bunker' For Safety, CNN (June 8, 2020), *available at* https://www.cnn.com/2020/06/08/politics/bill-barr-donald-trump-white-house-bunker/index.html.

[14] MPD DATA, https://mpdc.dc.gov/publication/mpd-unrest-related-arrest-data-set.

[15] Excel Spreadsheet of Metropolitan Police Department Unrest Data from May 30, 2020 through January 7, 2021. https://mpdc.dc.gov/publication/mpd-unrest-related-arrest-data-set.

[16] Jason Breslow, NPR, The Resistance at the Kavanaugh Hearings: More than 200 Arrests, Sept. 8, 2018, https://www.npr.org/2018/09/08/645497667/the-resistance-at-the-kavanaugh-hearings-more-than-200-arrests.

door.[17]   According to reports: "At least 227 demonstrators were arrested between the start of the nomination hearings on Tuesday and the end of testimony on Friday, according to the U.S. Capitol Police. Most of those charged this week with disorderly conduct, crowding or obstructing paid fines of $35 or $50."[18]

Similar protests took place in 2020 during the confirmation hearings for Supreme Court Nominee Amy Coney Barrett.   "[P]rotesters angered by Barrett's nomination staged a sit-in at which 21 people were handcuffed and arrested by U.S. Capitol Police."  None of these defendants who obstructed Justice Barrett's confirmation hearing were charged with obstructing an official proceeding or any charges under these felony statutes.  The history of protests both in front of Congress and inside is rich. [19] None have faced charges under § 2384 or § 1512(c)(2), (2), or (k).

## CONCLUSION

For the foregoing reasons, Defendant Kelly Meggs respectfully requests this Court dismiss the Superseding Indictment as against him.

[SIGNATURE ON NEXT PAGE]

---

[17] Doug Stanglin and Caroline Simon, *USA Today, 'Rise up, women!': Angry crowds flood Capitol Hill to protest Brett Kavanaugh nomination*, Sept. 28, 2018, https://www.usatoday.com/story/news/2018/09/28/brett-kavanaugh-hearing-protesters-christine-blasey-ford/1453524002/.

[18] Jason Breslow, NPR, Jason Breslow, Sept. 8, 2018, *supra* note 21, (*emphasis added*).

[19] In 2012, birthday-suit-clad protesters rushed House Speaker John Boehner's office when Seven naked protesters swarmed the office of Speaker John Boehner (R-OH) on Tuesday for some 20 minutes of loud chanting against cuts to AIDS funding.  *After police showed up and repeatedly threatened to arrest the protesters for indecent exposure, they eventually put on their clothes and walked out of the Speaker's office.* The three female protesters stuck around in the hallway to speak to reporters and were arrested anyway; the four male protesters appeared to get away, the organizers said.

*See* Sahil Kapur, *Nude Protesters Arrested After Storming Speaker Boehner's Office*, , TPM, (Nov. 27, 2012), https://talkingpointsmemo.com/dc/nude-protesters-arrested-after-storming-boehner-s-office.  *See also Why protesters Code Pink stay out of jail,* By Daniel Nasaw, BBC News Magazine, 19 September 2014, https://www.bbc.com/news/magazine-29280937.

Dated: July 11, 2022                  Respectfully submitted,

                                         */s/ Stanley E. Woodward, Jr.*

Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
BRAND WOODWARD, LP
1808 Park Road, Northwest
Washington, DC  20010
202-996-7447 (telephone)
202-996-0113 (facsimile)
Stanley@BrandWoodwardLaw.com

                                         */s/ Juli Z. Haller*

Juli Z. Haller, (DC 466921)
The Law Offices of Julia Haller
601 Pennsylvania Avenue, Northwest, Suite 900
Washington, DC 20004
Telephone: (202) 729-2201
HallerJulia@outlook.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| | )) **Case No. 1:21-cr-00015-APM** |
| **v.** | ) |
| | ) |
| **KELLY MEGGS,** | ) |
| | ) |
| **Defendant.** | ) |

## CERTIFICATE OF SERVICE

On July 11, 2022, the undersigned hereby certifies that a true and correct copy of the
foregoing was electronically filed and served via the CM/ECF system, which will automatically
send electronic notification of such filing to all registered parties.

                              */s/ Stanley E. Woodward, Jr.*
                              Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
                              BRAND WOODWARD LAW, LP
                              1808 Park Road, Northwest
                              Washington, DC  20010
                              202-996-7447 (telephone)
                              202-996-0113 (facsimile)
                              Stanley@BrandWoodwardLaw.com